**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA        :
                                :
      -against-                 :          No. 12 Cr. 691 (JFK)
                                :          **OPINION & ORDER**
JOSEPH ROMANO,                  :
                                :
              Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - -X

APPEARANCES

FOR UNITED STATES OF AMERICA
Eric H. Holder, Jr.
 Attorney General of the United States
William J. Hochul, Jr.
 United States Attorney, Western District of New York
By:  Marshall L. Miller
     Una A. Dean

FOR DEFENDANT JOSEPH ROMANO
Joseph F. Kilada
Michael K. Bachrach

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a series of pretrial motions filed by

the Government and by Defendant Joseph Romano ("Defendant" or

"Romano").  Romano will soon undergo psychological evaluation to

determine his competence to stand trial.  But because neither

side desires oral argument on these motions, and because they do

not require an evidentiary hearing, the Court will decide them

on the papers with the consent of both sides.  Romano's motion

to suppress his statements to law enforcement is not addressed

in this opinion.  If Romano is determined competent to stand

trial, a hearing will be held on that motion at a later date.

## I.  Background

The parties' familiarity with the facts of this case is presumed.    Briefly stated, Romano has been charged with conspiracy to murder an Assistant United States Attorney and a United States District Judge, in violation of Title 18, United States Code, Sections 1114 and 1117.    The Government alleges that Romano took steps to hire a contract killer to murder the Assistant, who had prosecuted Romano in a previous case, as well as the Judge, who had sentenced him in that previous case.    The indictment also charged Romano's co-defendant, Dejvid Mirkovic, with helping Romano to arrange the planned contract murders. Mirkovic pled guilty to Count One of the indictment, conspiracy to murder an employee of the United States, on March 13, 2013.

## II.  Discussion

### A.    The Government's Motion for an Anonymous Jury and Other Protective Measures

The Government requests an anonymous jury for Defendant's trial - specifically, "that the names, addresses and places of employment of members of both the venire and petit juries not be revealed." (Gov. Mot. at 5.)    It also asks that jurors be kept together during recesses and lunch, and that U.S. Marshalls escort them to and from the courthouse throughout the trial, a procedure called "partial sequestration."

2

The Government argues that an anonymous jury is warranted both by the nature of the alleged conduct, which involves attempts to violently corrupt the judicial process, and the likelihood of publicity at trial. The Government also urges that Romano will not be prejudiced by an anonymous jury, especially if the Court instructs the jury "in a neutral manner that anonymity is necessary to protect them from the media and the curious, and that selection of anonymous juries is not an unusual procedure." (Gov. Mot. at 18.)

Counsel for Defendant Romano argue that an anonymous jury would deny Romano a fair trial because it "would poison the atmosphere of the case and serve to bolster the Government's proof by creating the impression that the defendant on trial is guilty and dangerous." (Def. Opp. at 1.) They also assert that the Government cannot show a serious threat to juror safety, both because Romano has never specifically attempted to tamper with jurors and because he is currently housed in solitary confinement under administrative detention. Romano's attorneys offer that it would be acceptable to them if the jurors' names and identifying information were withheld from the public record, and even from Defendant Romano, as long as counsel had access to the information.

The Second Circuit has repeatedly stated that "when genuinely called for and when properly used, anonymous juries do

3

not infringe a defendant's constitutional rights." E.g., United States v. Pica, 692 F.3d 79, 88 (2d Cir. 2012). A court has the discretion to empanel such a jury "upon (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." E.g., United States v. Gotti, 459 F.3d 296, 345 (2d Cir. 2006) (citation and internal quotation marks omitted). Factors to be considered in determining whether a jury needs the protection of anonymity include:

> (1) the seriousness of the charges; (2) the dangerousness of the defendant; (3) the defendant's ability to interfere with the judicial process by himself or through his associates; (4) previous attempts to interfere with the judicial process by the defendant or his associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that could impair their ability to be fair.

United States v. Antico, No. 08 Cr. 559, 2010 WL 2545877, at *1 (E.D.N.Y. June 11, 2010), aff'd sub nom. United States v. Pica, 692 F.3d 79 (2d Cir. 2012), cert. denied, No. 12-600, 2013 WL 1091776 (March 18, 2013); see also Gotti, 439 F.3d at 345-46; United States v. Mason, No. 96 Cr. 126, 2000 WL 554213, at *2 (S.D.N.Y. May 4, 2000) (considering the seriousness of the charges, the potential for corruption of the judicial process, and the possibility of publicity).

Based on these factors, an anonymous jury is warranted in this case. The charges are very serious, and if true, suggest that the Defendant is both dangerous and desirous of interfering with the judicial process. See also Gov. Mot. at 11 (Government's allegation that Romano injured and threatened to murder a potential witness, and that he plotted to escape from prison). Additionally, the potential for media attention is demonstrated by the fact that the media has already covered various pretrial developments. See, e.g., Jessica Dye, "Man to Plead Guilty in Plot to Kill Judge, Prosecutor," Reuters (Mar. 5, 2013), http://newsandinsight.thomsonreuters.com/Legal/News/ 2013/03_-_March/Man_to_plead_guilty_in_plot_to_kill_judge,_ prosecutor/; Robert E. Kessler, "Two Accused in Plot Against Judge Plead Not Guilty," Newsday (Nov. 13, 2012), http://www.newsday.com/long-island/suffolk/two-accused-in-plot-against-judge-plead-not-guilty-1.4219487.

At this time, the Court sees no need to use a written jury questionnaire. It is soundly within this Court's discretion to conduct voir dire without a questionnaire, even with an anonymous jury, so long as the voir dire is thorough and calculated to uncover the biases of potential jurors. See United States v. Tomero, 486 F. Supp. 2d 320, 324-25 (S.D.N.Y. 2007). See generally Rosales-Lopez v. United States, 451 U.S. 182, 189 (1981) (plurality opinion) (noting that "federal judges have

been accorded ample discretion in determining how best to conduct the voir dire"). Moreover, the jurors will be given a "plausible and nonprejudicial reason for not disclosing their identities" and "for taking other security measures." Gotti, 459 F.3d at 345; Paccione, 949 F.2d at 1192-93. These measures will ensure that Romano is in no way prejudiced by the use of an anonymous jury.

## B. Defendant's Motions

### 1. Motion to Direct Government to Produce Jencks Act Material at Least Sixty Days Before Trial

Defense counsel requests an order directing the Government to produce prior witness statements that are subject to the Jencks Act at least sixty days before trial. This motion is made in light of the "breadth and complexity of this case, and the volume of discovery material produced." (D. Mot. at 1.) In opposing the motion, the Government notes that both the statutory text and Second Circuit precedent indicate that issuing such an order is beyond the Court's power. See 18 U.S.C. § 3500(a) (stating that no Jencks material "shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case"); United States v. Coppa, 267 F.3d 132, 145-46 (2d Cir. 2001); In re United States, 834 F.2d 283, 287 (2d Cir. 1987). In view of the statutory text and clear Second Circuit precedent, this motion is denied.

6

## 2. Motion to Direct Government to Disclose Rule 404(b) Evidence No Later than Sixty Days Before Trial

Without elaboration, Defendant argues that he needs sixty days to "investigate and analyze the relevant facts and legal authorities as to why any 404(b) evidence proffered by the government may not be admissible." (D. Mot. at 3.)  This Court previously directed the Government to disclose 404(b) material within one month of trial. (Tr. of Dec. 17, 2012 Status Conf. at 13-14.)  In the absence of any argument from Defendant about why that ruling was unreasonable, the Court adheres to its prior ruling.  This motion is denied.

## 3. Motion to Direct Government to Provide the Names of Any Expert Witnesses and a Written Summary of Any Expert Testimony Pursuant to FRE 702, 703, and 705 No Later than Sixty Days Before Trial

Defense counsel asks for an order directing the Government to produce the names of any expert that may testify at trial, along with a written summary of the testimony, no later than sixty days before trial.  The Government argues that the motion should be denied as moot, because the Government has already provided expert notice regarding the forensic document examiner it plans to call.  It represents that if it decides to call additional experts to testify, it will comply with Criminal Rule 16.  In view of the Government's representation, the application is denied at this time.  Defendant may renew the motion if it

7

has reason to believe that the Government is not complying with
its obligations.

### 4. Motion to Direct Government to Disclose All Favorable Material in Its Possession to the Extent Not Already Provided

Defense counsel moves for an order requiring the Government
to immediately disclose all exculpatory material in its
possession. With respect to Brady material, the Government
represents that it is unaware of any Brady material at this time
but will produce any that is discovered.

As to Giglio information, the Government opposes
Defendant's request for immediate disclosure. It argues that,
as impeachment evidence, Giglio material must be provided only
"with sufficient time for it to be useful to the defense." (Gov.
Opp. at 13.) The Government therefore proposes that it produce
Giglio material for each witness "approximately one week in
advance" of that witness's testimony. (Id.)

It is common, however, for production of all Giglio
material to occur before the start of trial, rather than
incrementally in advance of each witness. See, e.g., United
States v. Barret, 824 F. Supp. 2d 419, 456 (E.D.N.Y. 2011)
("With respect to the Giglio material, the government indicates
that it intends to 'adhere to its customary practice of
producing any such material at the same time it produces Jencks
Act material,' one week before trial."); United States v. Swain,

8

No. 08 Cr. 1175, 2011 WL 4348142, at *8 (S.D.N.Y. Aug. 16,
2011).  Accordingly, the Government is directed to produce any
Giglio material one week before the commencement of trial.

### 5.   Motion for Severance

Defendant Romano moves that his trial be severed from that
of his co-Defendant, Dejvid Mirkovic, pursuant to Rule 14(a) of
the Federal Rules of Criminal Procedure.  Given that Defendant
Mirkovic has pled guilty, this motion is denied as moot.

### 6.   Motion for Permission to Join in Motions of Co-defendant

Defendant also seeks an order granting him permission to
join in the motions of co-Defendant Mirkovic.  Because Mirkovic
has pled guilty, this motion is denied as moot.

### 7.   Motion to Recuse the Assistant United States Attorneys on this Case

Defendant raises a new argument in his opposition papers:
that the U.S. Attorney's Office for the Eastern District of New
York, including the two Assistants who have been working on this
case since last fall, must be disqualified from this case and
replaced by a special prosecutor from another District.  This,
he asserts, "is the only fair and adequate manner in which to
effectively curtail the Government's conflict of interest."
(Def. Opp. at 18.)

In support of this motion, Defendant states that "it is
impossible to ignore the fact that the charges themselves
present a motive for one or more members of the Eastern District

9

United States Attorney's Office to possess an 'axe to grind against the defendant.'" (Id. at 19 (quoting Wright v. United States, 732 F.2d 1048, 1056 (2d Cir. 1984)).) Defendant notes that — out of an abundance of caution — the Eastern District judges, U.S. Attorney Loretta Lynch,[1] and the entire Eastern District office have recused themselves, with the exception of the two Assistant U.S. Attorneys who are trying the case, Marshall Miller and Una Dean. This, Defendant posits, proves his point regarding "the motive for misconduct, and the appearance of impropriety derived therefrom." (Id.)

Defendant also recites the following parade of horribles: (1) Discovery delays "will raise the specter of gamesmanship, regardless whether the delay is intentional"; (2) any delay or dispute regarding Brady or Giglio material "will carry with it the presumption of bad faith, even though bad faith would not ordinarily be presumed"; and (3) "the potential for mistrial would grow exponentially, since any prosecution misstep would be viewed within the context [of] the 'extremely high' 'threat of corruption of the judicial process.'" (Id. at 22.) Defendant's argument ends with a lengthy excerpt from United States v. Wright, 603 F. Supp. 2d 506 (E.D.N.Y. 2009), in which Judge Vitaliano granted an unopposed motion to transfer venue where

---

[1] As noted in the "Appearances" section at the top of this Opinion, this case is being prosecuted under the supervision of William J. Hochul, Jr., the U.S. Attorney for the Western District of New York.

10

the defendant had allegedly attacked an Assistant at his

sentencing hearing in the courthouse.  Judge Vitaliano rejected

"as totally unfounded even the mere thought" that the defendant

would be treated unfairly in the Eastern District, but

nevertheless transferred the case to the Southern District to

protect "the public's perception of the judicial process." Id.

at 508.  Defendant acknowledges that relocation from Central

Islip to Brooklyn has occurred in the instant case, but

nevertheless opines that Wright supports his position because

the entire Eastern District U.S. Attorney's Office recused

itself in that case.

       It bears mentioning that Defendant's motion is untimely,

having been made after the motion cutoff, as well as five months

after the indictment in this case.  The Government notes the

untimeliness but waives any procedural objection.

Substantively, the Government argues that recusal is unwarranted

by the facts of this case and would be inconsistent with federal

caselaw.

       As Defendant acknowledges, the motion to recuse Mr.

Miller and Ms. Dean is, in effect, a motion to disqualify the

entire U.S. Attorney's Office for the Eastern District of New

York. See Def. Opp. at 22 ("All of these fears can be mitigated,

however, if the Eastern District Untied [sic] States Attorney's

Office is disqualified and a special prosecutor appointed from

another District."); id. at 25 (concluding that "the United
States Attorney's Office for the Eastern District of New York
should be disqualified"). "The overwhelming weight of authority
counsels against disqualification of an entire U.S. Attorney's
office." United States v. Basciano, 763 F. Supp. 2d 303, 313
(E.D.N.Y. 2011). In fact, it is such a drastic remedy that
"every circuit court that has considered the disqualification of
an entire United States Attorney's office has reversed the
disqualification." United States v. Bolden, 353 F.3d 870, 879
(10th Cir. 2003) (citing United States v. Whittaker, 268 F.3d
185 (3d Cir. 2001); United States v. Vlahos, 33 F.3d 758 (7th
Cir. 1994); United States v. Caggiano, 660 F.2d 184 (6th Cir.
1981)). Even when individual prosecutors had acted negligently,
see Whittaker, 268 U.S. at 194, or had an arguable conflict, see
Caggiano, 660 F.2d at 190-91, disqualification of the entire
office was unwarranted.

    In this case, Defendant concedes that he is "aware of no
misconduct that has occurred thus far," and that he has "no
doubt that the two [Assistants] will make every effort to play
by the rules." (Def. Opp. at 17-18.) There is therefore no
basis whatsoever for the Court to take the drastic action of
disqualification. See Basciano, 763 F. Supp. 2d at 314 n.8
("Absent extreme and unusual circumstances, which are not
present here, the court will not intrude upon the prosecutor's

12

discretion to decide whether an alleged conflict requires recusal of an entire U.S. Attorney's Office."). It is patently unnecessary to remove the final two Assistants remaining from the Eastern District, who have been on the case since at least October of 2012 and who are the only two attorneys prepared to try it. The motion is denied.

### III. Conclusion

For the reasons stated above, the Government's motion for an anonymous jury and other protective measures is granted. Defendant's motion for early disclosure of Jencks Act material is denied. His motion to direct the Government to disclose Rule 404(b) evidence earlier than the Court has already directed is denied. His motion to direct the Government to provide the names of expert witnesses and a summary of their testimony is denied at this time. With respect to Giglio material, the Government is directed to complete any disclosures one week before the commencement of trial. Defendant's motions for severance and to join in the motions of co-Defendant Mirkovic are denied as moot. His motion to recuse Assistant United States Attorneys Marshall Miller and Una Dean is denied.

**SO ORDERED.**

Dated:     New York, New York
           March 20 , 2013                    s/John F. Keenan
                                            _____
                                               John F. Keenan
                                            United States District Judge

13