LAW OFFICE OF
# MICHAEL K. BACHRACH
276 FIFTH AVENUE, SUITE 501
NEW YORK, N.Y. 10001
-------------
TEL. (212) 929-0592 • FAX. (866) 328-1630

MICHAEL K. BACHRACH *  
* admitted in N.Y. and D.C.

http://www.mbachlaw.com  
michael@mbachlaw.com

January 13, 2014

By ECF and by email

AUSA Marshall Miller  
AUSA Una Dean  
United States Attorney's Office  
Eastern District of New York  
271 Cadman Plaza East  
Brooklyn, New York 11201

*Re: United States v. Joseph Romano,*  
*12 Cr. 691 (JFK) (EDNY)*

Dear Mr. Miller and Ms. Dean:

We represent Defendant Joseph Romano in the above-referenced matter and write to memorialize discovery demands that we raised orally this morning. The following requests are being made pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150, 154 (1972), Kyles v. Whitley, 514 U.S. 419 (1995), and their progeny. See also United States v. Mahaffy, 693 F.3d 113, 130 (2d Cir. 2012) (holding that evidence is "material" for purposes of Brady when "its exculpatory character harmonize[s] with the theory of the defense case") (internal citation omitted).

Last night at approximately 9:46 p.m. the defense received from the Government an unsigned cooperation agreement, dated, "March __, 2012" (GX 3500-GM-30 at 13), labeled "draft" (id. at 1), which appears to have been drafted in relation to the cooperation of Gerald Machacek. This is the first time the Government has put the defense on notice that a cooperation agreement had been drafted for Machacek prior to the time when other discovery indicates Machacek first mentioned Romano (i.e., prior to August 2012).

This "draft" cooperation agreement is notable, for purposes of Brady, Giglio, and Mahaffy, in that: (1) on page 11 it appears to reference a February 9, 2012 proffer session for which we have received no prior notice or discovery;[1] and (2) on page 13 the agreement is dated, "March ___, 2012", indicating that it was expected to be signed in

---

[1] February 9, 2012 is also the date that Romano was sentenced by the Honorable Joseph F. Bianco under Indictment. No 09 Cr. 170 (JFB) (EDNY).

March and thus a reasonable inference can be made that one or more additional proffer sessions had taken place to which we have received no prior notice or discovery.

To clarify the record, to date we have received notes or reports regarding three proffer sessions that appear to have preceded Machacek's first mention of Romano to the Government: (1) January 26, 2012 (four pages of notes, none referencing Romano); (2) April 10, 2012 (two pages of notes, none referencing Romano); and (3) July 17, 2012 (one page of notes, no reference to Romano). We have also received the notes and a report related to a proffer session occurring on August 8, 2012, which is the first and earliest reference to Romano during any proffer session noticed in Machacek's 3500 material. Additionally, we have received notes and reports relating to proffer sessions that followed on August 10, 2012, September 26, 2012, September 28, 2012, January 24, 2013, April 18, 2013, and June 25, 2013.

To date we have received no law enforcement reports related to the January 26, 2012, April 10, 2012, and July 17, 2012, proffer sessions. We have also received absolutely no notes or reports related to the apparent February 9, 2012 proffer session, nor for any other proffer session occurring in February or March 2012 or for any other date not referenced above.

Since it appears from a review of the March 2012 draft cooperation agreement that Machacek was debriefed by the Government on one or more dates for which no discovery was provided, we hereby repeat our demands for such discovery pursuant to, inter alia, Brady, Giglio, and Mahaffy (see Letter, dated, January 3, 2014 [*ecf* #134]).

In addition to Machacek's draft cooperation agreement, last night the defense also received for the first time interview notes and a law enforcement report related to a February 1, 2013, interview of an inmate named Bobby Brown. According to the newly disclosed interview notes and law enforcement report, Brown informed the Government that Romano had offered to pay Brown money to hurt an individual in Suffolk County that appears to be a reference to Nick Pittas. The report also claims that Brown was asked during his interview whether he ever mentioned anything about his judge and prosecutor, and Brown apparently responded that Romano had wished the judge was dead and hoped someone would do something to him, however no where in the report is it alleged that Romano offered to pay Brown or anyone else to actually kill his judge and/or prosecutor (nor Nick Pittas, for that matter).

The Bobby Brown interview notes and report appears to be discovery that "is inculpatory as well as exculpatory, and 'its exculpatory character harmonize[s] with the theory of the defense case,' " Mahaffy, 693 F.3d at 130 (citations omitted); it harmonizes with the defense in that it supports defense argument that the evidence at trial will show that Romano may have wanted certain people harmed, and certainly stated to inmates that he wanted the judge and prosecutor killed, but that he never actually intended to kill the

  judge or prosecutor and never took any steps to make it happen <u>prior to</u> being induced by Gerald Machacek.

  In light of the theory of the defense, we hereby request any other interview notes or law enforcement reports indicating that Brown, or any other inmate interviewed by the Government, provided information that Romano made statements or actions indicating an intent to harm, rather than an actual intent to kill or conspire to kill. We believe such notes or reports are discoverable pursuant to <u>Mahaffy</u>.

  Please call us if you have any questions about any of the issues raised in this letter.

            Respectfully submitted,

            Michael K. Bachrach
            George R. Goltzer
            *Attorneys for Defendant Joseph Romano*

cc: AUSA Marshall Miller (by email and by ECF)
   AUSA Una Dean (by email and by ECF)