1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,      :    12-CR-691(JFK)
                               :
                               :    U.S. Courthouse
                               :    Brooklyn, New York
        -against-              :
                               :    TRANSCRIPT OF
                               :    PLEADING
                               :
                               :
DEJVID MIRKOVIC,               :    March 13, 2013
a/k/a "Dave Mirkovic,"         :    3:00 p.m.
a/k/a "David Mirkovic"         :
and a/k/a "Dejuid             :
Mirkovic",                     :
                               :
        Defendant.             :
- - - - - - - - - - - - - - X

BEFORE:
            HONORABLE JOHN F. KEENAN, U.S.D.J.

APPEARANCES:

For the Government:      LORETTA E. LYNCH, ESQ.
                         United States Attorney
                         271 Cadman Plaza East
                         Brooklyn, New York 11201
                         BY:  MARSHALL L. MILLER, ESQ.
                              UNA A. DEAN, ESQ.
                              BRIAN MORRIS, ESQ.
                              Assistant U.S. Attorneys


For the Defendant:      SUSAN G. KELLMAN, ESQ.


Court Reporter:     Holly Driscoll, CSR
                    Official Court Reporter
                    225 Cadman Plaza East
                    Brooklyn, New York 11201
                    (718) 613-2274
Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.

2

1          THE COURT:  Good afternoon, everyone.  All right.
2  You may be seated.  Thank you.
3          Would you please rise, Mr. Mirkovic, and good
4  afternoon to you, Ms. Kellman.  Good afternoon, Mr. Miller.
5          MS. KELLMAN:  Good afternoon, Your Honor.
6          THE COURT:  Ms. Dean.
7          MS. DEAN:  Good afternoon, Your Honor.
8          THE COURT:  And Mr. Morris.  We have an added
9  starter here.
10          MR. MILLER:  Yes, Your Honor.  Mr. Morris is in our
11  forfeiture unit, Your Honor.
12          THE COURT:  In the forfeiture unit.
13          MR. MILLER:  Yes, Your Honor.
14          THE COURT:  All right, fine.
15          MS. KELLMAN:  We also have an added starter, Your
16  Honor.  With the Court's permission, also at counsel table
17  with me is Ms. Mary Bejarano.
18          THE COURT:  Ms. Bejarano, how do you do.  Nice to
19  see you.
20          MS. BEJARANO:  Good afternoon, Your Honor.
21          THE COURT:  Good afternoon to you, Mr. Mirkovic.
22          All right.  Would you swear the defendant please,
23  Mr. Ryan.
24          (Defendant sworn by the clerk.)
25          THE COURT:  You have to talk a little louder than

3

1    that, okay.

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  What is your full name, sir?

4              THE DEFENDANT:  It is Dejvid Mirkovic.

5              THE COURT:  You can sit down, that way you can speak

6    into the microphone.

7              Go ahead.

8              THE DEFENDANT:  It is Dejvid Mirkovic.  The first

9    name is spelled a little funny, D-E-J-V-I-D.

10             THE COURT:  How old are you, Mr. Mirkovic?

11             THE DEFENDANT:  I'm 38 years old, sir.

12             THE COURT:  All right.  Now, I placed you under

13   oath because I want you to tell me the truth and I have, as

14   it were, an insurance policy now that you will tell me the

15   truth because if you made a misstatement an intentional

16   misstatement, in other words, if you lied under oath, you

17   could be prosecuted additionally for perjury and/or making a

18   false statement, so it is very important that you tell me the

19   truth.  If there's anything I ask you that you don't

20   understand, you just turn to Ms. Kellman, tell me you need

21   some time and she'll explain it to you.  I don't want you

22   trying to answer anything you don't understand.

23             So far are we on the same page?

24             THE DEFENDANT:  Yes sir.

25             THE COURT:  All right.  I take it that you read,

4

1    write, speak and understand English; is that right?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  And do you waive the reading of the

4    indictment or do you require us to read it to you?

5            THE DEFENDANT:  I waive the reading of the

6    indictment.

7            THE COURT:  Okay.  How far did you go in school,

8    sir?

9            THE DEFENDANT:  I did finish high school as well as

10   I just did a few classes in college, sir.

11           THE COURT:  Where did you go to college?

12           THE DEFENDANT:  I did a little bit at University of

13   Miami, then I did courses through -- I did courses through the

14   Marine Corps.

15           THE COURT:  Okay.  And you're how old again?

16           THE DEFENDANT:  I'm 38 years old.

17           THE COURT:  38, all right.  And when you were

18   arrested where were you living?

19           THE DEFENDANT:  I was living in West Palm Beach,

20   Florida.

21           THE COURT:  In West Palm, okay.  And are you married

22   or single, sir?

23           THE DEFENDANT:  I'm married, sir.

24           THE COURT:  Do you have any children?

25           THE DEFENDANT:  I have one son.

1           THE COURT:  How old is he?

2           THE DEFENDANT:  He's four years old.

3           THE COURT:  When you work, what do you do for a

4    living?

5           THE DEFENDANT:  I had a business, I was selling,

6    telemarketing coins, gold and silver coins.

7           THE COURT:  Was that down in Florida or up here?

8           THE DEFENDANT:  That was down in Florida, sir.

9           THE COURT:  Where, in Lake Worth, in West Palm,

10   where?

11          THE DEFENDANT:  The office was located in Delray

12   Beach, Florida.

13          THE COURT:  I see.  All right.

14          And are you currently or have you ever been under

15   the care of a doctor or a psychiatrist for mental or emotional

16   problems?

17          THE DEFENDANT:  I've seen a therapist but that's as

18   far as that goes.

19          THE COURT:  How long ago was that?

20          THE DEFENDANT:  Right before I got arrested.

21          THE COURT:  Before you were arrested?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  All right.  And how long before you were

24   arrested about?

25          THE DEFENDANT:  I was 38 years old, just turned

6

1  38 years old.

2          THE COURT:  And when was it that you saw the --

3          THE DEFENDANT:  I've been seeing my therapist for

4  the last two years.

5          THE COURT:  Before you were arrested?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  And what were you seeing a therapist

8  for?

9          THE DEFENDANT:  Just to deal with my emotions.

10          THE COURT:  Okay.  There's no question as to the

11  defendant's competency, is there, Ms. Kellman?

12          MS. KELLMAN:  No, Your Honor.

13          THE COURT:  All right.  Have you ever been

14  hospitalized or treated for alcoholism, narcotic addiction or

15  any other kind of drug abuse?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Other than probably being nervous this

18  afternoon because you know this is very serious, are you

19  feeling all right this afternoon?

20          THE DEFENDANT:  I'm feeling all right, sir.

21          THE COURT:  Okay.  Are you under the influence of

22  anything such as drugs or alcohol that would affect or might

23  affect your ability to understand what you're doing?

24          THE DEFENDANT:  I'm not under the effect of

25  anything, sir, no, sir.

7

1          THE COURT:  You can move that microphone closer to

2    you if you want if that is easier, that way you don't have to

3    lean over every time.  All right.

4          Did you receive a copy of the indictment and did you

5    go over the indictment with Ms. Kellman?

6          THE DEFENDANT:  Yes, sir, I did, sir.

7          THE COURT:  And did she explain to you the charges

8    in the indictment and do you feel you fully understand them?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Did you tell Ms. Kellman everything you

11    know about the case?

12          THE DEFENDANT:  Yes, I have, sir.

13          THE COURT:  Did you hold anything back from her?

14          THE DEFENDANT:  No, sir.

15          THE COURT:  Did you really level with her?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Now, you have the right to continue to

18    plead not guilty, to persist in that plea and to go to trial,

19    do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And if you were to continue to plead not

22    guilty, you have the right to a speedy and a public trial in

23    front of a jury of 12 people, do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  You have the right to be represented by

8

1    a lawyer at trial and at every other stage of the proceedings.

2    Since apparently you can't afford a lawyer, if for some reason

3    Ms. Kellman could not continue to represent you, I would

4    appoint another lawyer to represent you free of charge, do you

5    understand that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  If I accept your plea of guilty here,

8    there will be no further trial of any kind, do you understand

9    that?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  And if you were to continue to plead not

12    guilty and if you went to trial, at a trial you would be

13    presumed to be innocent unless and until the government proved

14    that you were guilty beyond a reasonable doubt to the

15    satisfaction of all 12 jurors, do you understand that?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  At a trial you would have the right to

18    confront and to cross-examine any and all witnesses that the

19    government called against you, do you understand that?

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  At a trial you would have the right to

22    remain silent and no inference could be drawn against you

23    because of your silence.  On the other hand, if you wanted to,

24    you could take the witness stand and testify in your own

25    defense, do you understand that?

9

1       THE DEFENDANT:  Yes, sir.

2       THE COURT:  Now, if you wanted it and if Ms. Kellman

3   requested it on your behalf and if the government in the

4   persons of Mr. Miller and Ms. Dean agreed and if I agreed and

5   if this is what you wanted and everybody agreed, you could be

6   tried by the Court without a jury.  That means you'd have a

7   non-jury trial or a bench trial.  If you had that, you would

8   still have all these constitutional rights that I set forth

9   for you just now and the government would still have the

10  burden of proving that you were guilty beyond a reasonable

11  doubt, do you understand that?

12      THE DEFENDANT:  Yes, sir.

13      THE COURT:  At a trial you would have the right to

14  subpoena witnesses and evidence in your own defense, do you

15  understand that?

16      THE DEFENDANT:  Yes, sir.

17      THE COURT:  Now, if I accept your offer to plead

18  guilty here this afternoon, you're giving up all these rights

19  with respect to the charges against you in the indictment.

20  There will be no further trial of any kind and I could

21  sentence you just as if the jury had brought in a verdict of

22  guilty against you, do you understand that?

23      THE DEFENDANT:  Yes, sir.

24      THE COURT:  Now, you entered what is called a plea

25  agreement, I'm holding the original of it up in my hand, and

1    it was signed by Ms. Dean and Mr. Miller earlier today,

2    March 13th, and you signed it and Ms. Kellman signed it.  Did

3    Ms. Kellman explain the plea agreement to you before you

4    signed it?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Do you have any questions at all

7    concerning the plea agreement?

8            THE DEFENDANT:  No, sir.

9            THE COURT:  Do you feel you honestly understand it?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  Now, I'm going to go over some of the

12   highlights of the plea agreement.  I'm going to return the

13   original to the government for safekeeping but I'm going to go

14   over some of the highlights of it.

15           First of all, as I understand it, you're going to

16   plead guilty to the one count of the indictment, right?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Or Count One.

19           Now, statutorily and by statutorily I mean what the

20   Congress fixed as the maximum punishment under Count One is up

21   to your natural life, do you understand that?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  And when you get out of prison, you face

24   a period of supervised release of up to five years and in the

25   event that you violated any of the terms of supervised

1  release, I could have you brought back before me and sentence

2  you to the whole period of supervised release as though it

3  hadn't even started yet, do you understand that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Now, do you have the plea agreement in

6  front of you?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Okay.  I'm going over now to page two in

9  a second.  Now, the first thing also about the plea agreement

10  that is important is that you understand that the parties to

11  the plea agreement are the government on the one side and you

12  on the other, that I'm not a party to the agreement, do you

13  understand that?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  In other words, it's not binding on me,

16  it's binding on you on one side and the government on the

17  other, do you understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Okay.  Now, the plea agreement points

20  out that the maximum fine in this case is up to a quarter of a

21  million dollars, do you understand that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Do you also understand that I have to

24  order, according to the plea agreement, restitution.  The

25  amount of the restitution is to be determined by me.  That's

12

1    not statutory but I do have to do it, do you understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Do you also understand that you're

4    agreeing to an order of forfeiture and the government has

5    supplied me an order of forfeiture here and the order of

6    forfeiture is in accordance with paragraphs 5 through 11 of

7    the plea agreement and that's the provisions on pages 4, 5, 6,

8    7, and 8 as well as the top of -- well, the top of 8, and that

9    you understand that the forfeiture is not the same thing as

10   restitution, do you understand that?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Okay.  So, in other words, you face both

13   the fine and the forfeiture, do you understand that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Okay.  Also, no matter what I do, I have

16   to fix what is called a special assessment of $100, do you

17   understand that?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Now, in the United States, as you know

20   from the plea agreement, we have what are called the

21   sentencing guidelines.  Do you understand that the guidelines

22   are not mandatory and they're not binding on me, they're

23   merely advisory, but I have to consider the plea agreement and

24   the guidelines in sentencing you, do you understand that?

25             THE DEFENDANT:  Yes, sir.

13

1          THE COURT:  Do you also understand that I have to

2   consider the factors, and now I'm in paragraph two at page two

3   right about the middle of the page of the agreement, that I

4   have to consider the factors that are set forth in Title 18 of

5   the United States Code, Section 3553(a) to arrive at an

6   appropriate sentence in this case, do you understand that?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  All right.  Now, according to the

9   agreement, the total offense level in your case is 43 but if

10  you allocute, and by allocute I mean admit the charges here

11  this afternoon, you're going to go down to an adjusted offense

12  level of 40, do you understand that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  We're now in the middle of page three of

15  the agreement.  And you have a Criminal History Category of

16  Roman Numeral I, do you understand that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  So, therefore, the range of sentence

19  under the guidelines, if I follow the guidelines, is between

20  292 to 360 months, do you understand that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  And you understand, as I said, the

23  guidelines are not binding on me and, as I understand it, if I

24  sentence you to a term -- this is the top of page four now, if

25  I sentence you to a term of imprisonment of 405 months or

14

1   below, in other words, less than 405 months, you're agreeing

2   not to file an appeal or in any other way challenge the

3   conviction; is that correct?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  And you're also agreeing to forfeit the

6   property as I set forth and I'll go over the various things

7   that you've agreed to forfeit.  You've agreed to forfeit

8   approximately $100,268.03 that was seized back on October 9,

9   2012 from the Wells Fargo Bank, do you understand that?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  And now we're going over to the top of

12  page five of the agreement.

13           You've also agreed to forfeit approximately $48,000

14  that was seized from the Regions Bank, and that was $48,000;

15  and you also agreed to forfeit approximately $43,000 in

16  currency that was seized from you in the following amounts and

17  increments:  First, about $1,500 on September 14, 2012;

18  $13,500 that was seized on or about the 25th of September,

19  2012; $10,000 that was seized about October 2nd and 18,000

20  that was seized approximately October 9th.

21           Also, you're agreeing to forfeit a 2012 Honda Accord

22  automobile, a Kel Tec Kahr 9mm semi-automatic handgun; a rifle

23  called a Finar, a Springfield Arms Socom rifle called 16, and

24  they were all seized approximately the 9th of October, is that

25  correct?

15

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And also you're also agreeing to forfeit

3   $9,000 that was seized from Karen Romano on October 9th, is

4   that right?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Okay.  And you're consenting to the

7   entry of the preliminary order of forfeiture; is that right?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  All right.  I've signed the preliminary

10  order of forfeiture.  Okay.

11         There's a paragraph here that I'm going to read to

12  you at the top of page seven, paragraph nine; you should be

13  aware of this, I'm sure Ms. Kellman pointed it out to you but

14  I just want to make sure you know it:

15         If you fail to forfeit any of the monies or

16  properties that are required, that would be a material

17  breach of this agreement and if that happened, the office --

18  by that office I mean the United States Attorney -- could

19  bring additional criminal charges against you.

20         Do you understand that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  And the government has agreed, we're on

23  page eight now, not to make any motion for an upward departure

24  under the sentencing guidelines, do you understand?  That

25  means the government is not going to ask me to be any stricter

1   than the guidelines, do you understand that?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Okay.  You're also waiving any right to

4   appeal any fine that I impose if I impose a fine of a quarter

5   of a million dollars or less, do you understand that?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Is there anything else that the

8   government wants to inquire of the defendant concerning the

9   plea agreement?  If there is, you just go ahead and do it,

10  Mr. Miller, you ask him.

11           MR. MILLER:  Thank you, Your Honor.  I just wanted

12  to ensure that there were no threats or promises other than

13  those set forth in the plea agreement.

14           THE COURT:  All right, yes.  Did anybody threaten

15  you or force you to sign the plea agreement?

16           THE DEFENDANT:  No, sir.

17           THE COURT:  Did anybody promise you anything other

18  than what is contained in the plea agreement?

19           THE DEFENDANT:  No, sir.

20           MR. MILLER:  One more thing, Your Honor.  What this

21  agreement sets forth is the government's best estimate at this

22  point as to what the guidelines might be based on the

23  information known to the government now but reserves the right

24  for the government, if new information comes forward or if the

25  estimate is wrong, to revise that estimate.

1      THE COURT:  All right.  What he's saying is as of

2  today, March 13th at 3:21 p.m., this is the best information

3  the government has as to what the guidelines are.  He's saying

4  if they found out that the guidelines were worse from your

5  point of view or even better, that they have the right to

6  bring that to my attention, that's what he's saying, do you

7  understand that?

8      THE DEFENDANT:  Yes, sir.

9      THE COURT:  Okay.  Anything else?

10     MR. MILLER:  No, Your Honor.

11     Thank you.

12     THE COURT:  Thank you.

13     Are you satisfied with the legal representation that

14 has been supplied to you by Ms. Kellman?

15     THE DEFENDANT:  Very.

16     THE COURT:  Okay.  Now, it's possible, I don't know

17 that this happened but it happens in many cases, it's

18 possible, in fact I'd say it is probably likely that the

19 government has met or discussed you and your case with

20 Ms. Kellman without you being there, they may have spoken on

21 the telephone, they may have had meetings face-to-face, they

22 may have exchanged e-mails or faxes about you and your case,

23 do you understand that?

24     THE DEFENDANT:  Yes, sir.

25     THE COURT:  Okay.  The plea agreement is acceptable

1  to me.

2          Now, have you been induced or offered to plead

3  guilty by reason of any promise or statement by anybody to the

4  effect that you would get leniency or special treatment or

5  consideration by pleading guilty instead of going to trial?

6          THE DEFENDANT:  No.

7          THE COURT:  Are you offering to plead guilty of your

8  own free will?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Have you been induced or offered to

11  plead guilty by any fear or pressure or threat or force or

12  anything like that?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  Is there anything you want to ask me at

15  this time about the charges in the case or the consequences of

16  pleading guilty?

17          THE DEFENDANT:  No, sir.

18          THE COURT:  Are you offering to plead guilty because

19  in truth and in fact you are guilty, sir?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Does the government represent that it

22  has sufficient evidence to establish a prima facie case,

23  Mr. Miller?

24          MR. MILLER:  Yes, Your Honor.

25          THE COURT:  All right.  And Ms. Kellman, do you know

1  of any valid legal defense that would likely prevail if you

2  went to trial or do you know of any reason why Mr. Mirkovic

3  should not plead guilty?

4      MS. KELLMAN:  No, Your Honor.

5      THE COURT:  Now, I was supplied with a written

6  allocution, by allocution that means a statement as to what it

7  is that you did that was wrong.  I read it, I have it in front

8  of me.  I'm going to have a few other questions of you besides

9  what is in the written allocution, but you tell me what it is

10 that you did wrong.

11     THE DEFENDANT:  Okay, sir.

12     THE COURT:  Nice and loud now.

13     THE DEFENDANT:  I agreed with another individual who

14 was not a government agent to kill a federal judge and a

15 federal prosecutor in the Eastern District of New York on

16 account of the performance of their official duties.

17     THE COURT:  Okay.  Hold it a second now.  Did that

18 agreement or part of it at least take place between the period

19 February 1st, 2012 and October 9th, 2012?

20     THE DEFENDANT:  Mostly in September and October,

21 sir.

22     THE COURT:  Of 2012?

23     THE DEFENDANT:  Yes, sir.

24     THE COURT:  Most of it in September and October?

25     THE DEFENDANT:  Yes, sir.

20

1           THE COURT:  Thank you.

2           All right.  Go ahead.

3           THE DEFENDANT:  And to accomplish that I traveled

4  between Florida and Long Island on several occasions between

5  September and October of 2012.

6           THE COURT:  And when you traveled back and forth on

7  some occasions, did you pay money to a person who turned out

8  to be an undercover police officer on several of those

9  occasions?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right.

12          Is the plea adequate for the government's purposes?

13          MR. MILLER:  Yes, Your Honor.

14          THE COURT:  All right.  And this is sort of obvious

15  but I nevertheless am going to ask it; you knew that this was

16  illegal and that you weren't allowed to engage in an agreement

17  to kill a federal judge and a prosecutor, is that right?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  All right.  Is the plea adequate for

20  your purposes, Ms. Kellman?

21          MS. KELLMAN:  Yes, Your Honor.

22          THE COURT:  All right.  I agree with counsel.  I

23  accept the plea.  I direct that the plea be entered upon the

24  minutes of the Court.

25          Now, I'm going to ask both Ms. Kellman and

21

1   Mr. Marshal Miller if I'm correct, over in the Southern

2   District Probation needs at least three months to prepare the

3   probation report, is it the same here in the Eastern District?

4           MR. MILLER:  Yes, Your Honor.

5           MS. KELLMAN:  Yes.

6           THE COURT:  All right, fine.  Then I set sentence

7   down for June 19th at 3:00 in the afternoon here in this

8   courtroom and the Probation Department is to prepare a

9   presentence report for me.

10          I also direct you, Mr. Miller, and you, Ms. Dean, to

11  supply the prosecution case summary for purposes of the

12  probation report to Probation no later than 14 days from this

13  Friday which is March 15th and, Ms. Kellman, I want you to

14  make yourself available with Mr. Mirkovic to be interviewed by

15  Probation no later than 14 days from this Friday, March 15th;

16  in other words, both of those directives are to take place and

17  to be carried out by the close of business March 29th.  The

18  reason for those two directives is to ensure that the

19  Probation Department has adequate time to prepare the

20  presentence report thereby complying with the requirements of

21  Rule 32 of the Federal Rules of Criminal Procedure and also

22  giving Ms. Kellman adequate time to prepare whatever

23  presentence material she wants to submit to me.

24          Ms. Kellman, I would very much appreciate it, and

25  you and I have dealt with each other many times before so when

1   I say I would appreciate it, it's a direction, I'm ordering

2   you.

3           MS. KELLMAN:  I understood that, Judge.

4           THE COURT:  Okay.  Get me your presentence material

5   by --  Mr. Ryan, what is the 19th, a Thursday?

6           THE CLERK:  Yes, I believe it is a Thursday.

7           THE COURT:  Okay, get me --

8           THE CLERK:  I'm sorry, Wednesday, Judge.

9           THE COURT:  Get me the material by the close of

10  business June 10th, would you.

11          MS. KELLMAN:  Yes, Your Honor.

12          THE COURT:  Okay.  Thank you.

13          And the government, if you have anything you want to

14  respond to Ms. Kellman, get it to me by the close of business

15  June 14th.  That gives me a lot of time to read everything

16  because I have a feeling I'm going to get a lot of papers, all

17  right.

18          MR. MILLER:  Yes, Your Honor.

19          MS. KELLMAN:  I think that's true.

20          THE COURT:  Thank you very much.  All right.  These

21  proceedings are concluded.  Thank you.

22          MS. KELLMAN:  Thank you, Your Honor.

23          MR. MILLER:  Thank you.

24          THE COURT:  Now, on the record, as soon as --

25          Marshals, that's all with Mr. Mirkovic but I want to

1   leave a few things on the record.  You're welcome to stay,

2   Ms. Kellman, or welcome to leave but I want to put a few

3   things on the record.

4           Thank you, Marshals.

5           (Defendant leaves the courtroom.)

6           THE COURT:  Here's what I want to talk to you about.

7           MR. MILLER:  Yes, Your Honor.

8           THE COURT:  You can sit down.  As I say, you're

9   welcome to hear this.

10          And are you ordering these minutes?

11          MR. MILLER:  I will, Your Honor, yes.

12          THE COURT:  Make sure a copy of these minutes is

13  sent immediately as soon as you get them to Mr. Kilada because

14  I want him to know exactly what's been said here.

15          MR. MILLER:  Yes, Your Honor.

16          THE COURT:  Now, I'm sure you got a letter from

17  Mr. Kilada, I'm addressing the government, in which he wants

18  an adjournment of the May 20th trial date.  I'm not happy

19  adjourning the case.  The reason I'm not happy adjourning the

20  case is, one, the defendant is in custody; two, it's a very

21  serious case and it should be tried as soon as it can be

22  tried; three, selfishly, I don't want to be trying the case in

23  the middle of the summer, frankly.  This is not going to be an

24  easy case to get a jury in and it's going to be harder to get

25  a jury in the middle of the summer.

24

1         Also, I have what is now a twelve defendant, what

2    I'm told by the prosecutors over in the Southern District will

3    be a nine defendant or ten defendant case which is scheduled

4    to go to trial September 23rd.  With that number of

5    defendants, that's going to take four or five weeks.  I'd much

6    prefer not to have to try this, or when I say try it, I'd much

7    prefer not to have to put this over till November.

8         I have not communicated with Mr. Kilada, I've told

9    my clerks to call him and I think they have concerning the

10   application that's going to be made on Monday, as I understand

11   it, for a psychiatric examination but I want you to advise him

12   of what I just said.

13        MR. MILLER:  Yes, Your Honor.

14        THE COURT:  And to supply the minutes to him

15   because I don't want in any way to be talking to the

16   government ex parte.

17        MR. MILLER:  Yes, Your Honor.

18        THE COURT:  I just want him on notice of where we're

19   at.  All right.

20        Now, I'm going to see you then Monday at 3:00, as I

21   understand it, that's March 18th.  Also, we were scheduled to

22   have on March 18th argument on that portion of Mr. Kilada's

23   motions where the government contests or objects to the

24   applications part of the motion.  As I understand it, the

25   government has consented to an evidentiary hearing.  And in

1    view of the psychiatric issue that has been raised concerning

2    competency, not responsibility but competency, it seems to me

3    that it is better to adjourn both the oral argument and

4    certainly not to have a hearing while that's pending.  So, I'm

5    not going to have the oral argument on Monday.  I think my law

6    clerks told that to Mr. Kilada that we're not going to have

7    the oral argument on Monday.  If they haven't, they will ex

8    parte.

9           All right.  I'll see you Monday at 3:00.

10          MR. MILLER:  Thank you, Your Honor.  I just wanted

11   to let you know that Ms. Dean will be representing the

12   government on Monday, I have to be elsewhere that day but she

13   will be handling it, Judge.  Thank you, Your Honor.

14          THE COURT:  She seems very competent.  It will be my

15   pleasure to see her.  Thank you.

16          MR. MILLER:  Thank you, Your Honor.

17          THE COURT:  Ms. Kellman, nice to see you as always.

18          MS. KELLMAN:  Thank you.

19          LAW CLERK:  Judge, I left Mr. Kilada a message, I

20   haven't been able to reach him yet.

21          THE COURT:  Okay.

22          (Time noted:  3:35 p.m.)

23          (End of proceedings.)

24

25