1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - -    X

UNITED STATES OF AMERICA,    :    12 CR 691

                             :

     -against-               :
                                  United States Courthouse
                                  Brooklyn, New York

JOSEPH ROMANO,               :

                                  January 6, 2014
          Defendant.         :    10:00 o'clock  a.m.

- - - - - - - - - - - -    X

                    TRANSCRIPT OF TRIAL
          BEFORE THE HONORABLE JOHN F. KEENAN
               SITTING BY DESIGNATION
          UNITED STATES SENIOR JUDGE, and a jury.

APPEARANCES:

For the Government:          WILLIAM J. HOCHUL, JR.
                             United States Attorney
                             Western District of New York
                             BY:  MARSHALL MILLER
                                  UNA DEAN
                             Assistant United States Attorneys
                             271 Cadman Plaza East
                             Brooklyn, New York

For the Defendant:           GEORGE GOLTZER, ESQ.
                             200 West 57th Street
                             New York, NY 10019


                             MICHAEL BACHRACH, ESQ.
                             276 Fifth Avenue
                             New York, NY 10001

              GR     OCR     CM     CRR     CSR

2

```
1   Court Reporter:              Gene Rudolph
                                 225 Cadman Plaza East
2                                Brooklyn, New York
                                 (718) 613-2538
3
4   Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription.
5
6                        * * * * * *
7
8            (The following occurred in the absence of the
9   prospective jury panel.)
10               THE COURT:  Good morning, everybody.
11               Everybody can be seated.
12               Bring the defendant in, please.
13               Good morning, Mr. Romano.
14               THE DEFENDANT:  Good morning, Judge.
15               THE COURT:  All right.  First of all, it is my
16  pleasure to introduce Judge Vernon Broderick, who is a new
17  judge in the Southern District of New York, who wanted to come
18  over and observe jury selection and I told him he was more
19  than welcome and, indeed, that's why he is here.  I will
20  obviously be pleased to introduce him to the jury.
21               Secondly, I received three letters, apparently they
22  got to my chambers yesterday, one from the government and two
23  from the defense.
24               I don't think there is anything to do about these
25  right now, is there?
```

3

1           MR. GOLTZER:  We can certainly pick the jury and

2     then when the time comes we can --

3           THE COURT:  That is what I thought.

4           MR. MILLER:  Yes, Your Honor.

5           THE COURT:  All right.  The government's letter is

6     rather lengthy.  The first defense letter which relates to the

7     government's letter, that is, to this person Machacek, if I am

8     pronouncing the name correctly, that whole thing is an

9     evidentiary issue, and for the first time here I learn that

10    the defense intends to introduce evidence of entrapment or are

11    going to ask me to charge entrapment.

12          Indeed, I will certainly study that and listen to

13    the evidence and make the appropriate ruling at the

14    appropriate time.  But I don't see any need to address that

15    right now.

16          MR. GOLTZER:  We just hope Your Honor will give us

17    the ruling before the opening, so we --

18          THE COURT:  Yes.  I doubt if the openings will be

19    today.

20          MR. GOLTZER:  We were counting on it not being

21    today, Judge.

22          THE COURT:  I believe everybody has received a copy

23    of my jury selection procedure, is that correct?

24          MR. MILLER:  Yes, Your Honor.

25          MR. GOLTZER:  Yes, Your Honor.

4

1          THE COURT:  All right.  Mr. Ryan, you can mark one

2   copy of that Court's Exhibit 1.  Give that back to me after

3   you have done that, please.

4          (Marked.)

5          THE CLERK:  Yes, Your Honor.

6          THE COURT:  I don't think there is much else we have

7   to do until the jury gets here.

8          MR. MILLER:  Your Honor, I think we would just state

9   our appearances.  Marshall Miller, Una Dean for the

10  government, with Special Agent Reynaldo Tariche from the FBI

11  and a paralegal from our office, Jashayla Smith who is sitting

12  at this government table.

13         MS. DEAN:  Good morning, Your Honor.

14         MR. GOLTZER:  Good morning, Your Honor.

15         THE COURT:  The defendant and Mr. Goltzer and

16  Mr. Bachrach.

17         MR. GOLTZER:  Yes.

18         THE COURT:  All right.  One other thing.  There is

19  no need for realtime production of the minutes here.  You are

20  going to get an overnight copy.  Everybody will get an

21  overnight copy.  The government is ordering one and, as I

22  understand it, under the Criminal Justice Act, if I haven't

23  ruled that you are entitled to overnight copy, I so rule now

24  and you are entitled to overnight copy.

25         MR. GOLTZER:  Thank you.

5

1          MR. BACHRACH:  Thank you, Your Honor.

2          MR. MILLER:  Thank you.

3          MR. BACHRACH:  Your Honor, just so you know, there

4    was an IT person that was going to be coming later today to

5    that set that up.  In light of Your Honor's ruling, if she

6    comes I will explain it to her.

7          THE COURT:  All you need is the telephone.  You can

8    use the telephone.

9          MR. BACHRACH:  I don't know her number, Your Honor.

10          THE COURT:  You don't know her number.  All right.

11    Then you can't call.

12          (Recess taken.)

13          (The following occurred in the presence of the

14    prospective jury panel.)

15          THE COURT:  Good morning, everybody.

16          My name is John Keenan.  I am a federal judge.

17    Seated here with me, who is going to observe the proceedings,

18    is my colleague, Vernon Broderick, who is a new federal judge.

19    That's why there are two of us.  Only one of us is going try

20    the case but Judge Broderick will be observing.

21          We are about to select a jury in a criminal case.

22    The procedure that we are going to follow is, I am going to

23    make some introductory remarks to you, tell you a little bit

24    about what the case involves, and then we are going to examine

25    the jurors individually.  When I say "individually," I mean

6

1    one by one on the witness stand, and the rest of you will be

2    in a waiting room while we do that.

3              I want to tell you a little bit about the case

4    before we start so that you understand.

5              This is a criminal case.  The defendant is the man

6    at the table there.

7              Would you stand up, please, Mr. Romano?

8              Thank you.

9              He is the defendant.  His name is Joseph Romano.

10             Mr. Romano is represented by two lawyers.  The

11   lawyers are Mr. George Goltzer, the gentleman closest to the

12   bench -- he raised his left hand; and also the defendant is

13   represented by Mr. Michael Bachrach, the shorter gentleman

14   there, who is right next to Mr. Romano.

15             Thank you.

16             The government is represented by two Assistant

17   United States Attorneys.  Their names are Marshall Miller, the

18   gentleman there who faces you, and Ms. Una Dean.

19             Also with the government we have people from the

20   United States Attorney's Office.  The lady there is Oashayla

21   Smith, that lady; and we also have an FBI agent who is here.

22   His name is Reynaldo Tariche.

23             Did I pronounce your name correctly, sir?

24             AGENT TARICHE:  Yes, sir.

25             THE COURT:  Okay.  Fine.

GR     OCR     CM     CRR     CSR

7

1          Thank you.

2          All right.  I wanted to let you know who is at the

3  table.  The various other folks here are court officials who

4  are present.

5          I am going to read off a whole lot of names for you

6  in a moment.  I want you to listen to the names carefully.  I

7  want to make sure that you understand that those are people

8  who will probably be referred to during the trial of the case

9  and some of them may even be witnesses in the case.  I am

10 going to read a lot of names.

11         First, I want to tell you just briefly what the case

12 is about.  I told you it is a criminal case, and a criminal

13 case involves two counts -- a count is a charge, two

14 charges -- and the charges are in an indictment.

15         The charges are, first, that the defendant

16 conspired, that means that he agreed -- conspiracy is a big

17 hifalutin legal word -- all it means is an agreement to break

18 the law.  Allegedly, he agreed with at least one other person

19 to break the law.  And how is he going to allegedly break the

20 law?  He was conspiring allegedly to murder a federal judge

21 and the federal judge's name is Joseph Bianco.

22         The second count is that he is charged with

23 conspiring, in other words, agreeing with one other person at

24 least, to murder an Assistant United States Attorney, whose

25 name is Lara Treinis Gatz, G A T Z.

8

1          All right.  If either of you know Judge Bianco or

2    Ms. Gatz, if any of you know either Judge Bianco or Ms. Gatz,

3    you should let me know that right now.

4          All right.  Now, before I read off the names of

5    people, I am going to read off the names of organizations and

6    facilities so that you know that these organizations and

7    facilities may be mentioned during the testimony in the case.

8          The American Coin Company.

9          The All American Coin Company.

10          The Last Quarter Coin Company.

11          The Universal Coin Collections Incorporated.

12          Collectible Coins, Incorporated.

13          Millennium Custom Auto.

14          Olympic Enterprises LLC.

15          Nassau County Correctional Center.

16          The Queens Private Detention Facility.

17          The Metropolitan Detention Center.

18          All right.  Those are the facilities.

19          If any of you have any particular knowledge of any

20    of those entities, let me know as soon as you are called.  We

21    will discuss it.

22          Now, these are the people whose names are going to

23    be referred to during the trial, and some of them, as I said,

24    may well be witnesses.

25          I've already introduced you to Mr. Romano, Joseph

GR      OCR      CM      CRR      CSR

9

1  Romano.

2          All right.  So his relatives names may be in the

3  testimony too.

4          Michael Romano.

5          Salvatore Romano.

6          Vincent Romano.

7          Karen Romano.

8          Then a man by the name of Dejvid -- or maybe if you

9  Anglicize it it would be David -- Mirkovic.

10          Megan Mirkovic.

11          Michael Mirkovic.

12          Steven Candemeres.

13          Tom Cleere, C L E R E.

14          Kevin Wells.

15          Bruce Wilson.

16          Thomas Arnold.

17          Anthony Lanza.

18          Russell Rusty Barnes.

19          Michael Dibari.

20          Jazmin Anthony.

21          If any of you know any of these people just raise

22  your hand now.

23          All right.

24          THE CLERK:  Excuse me.

25          THE COURT:  Come up, sir.  Let's chat.  Come on over

GR     OCR     CM     CRR     CSR

10

1   to the side bar.

2           (Side bar with juror.)

3           THE COURT:  Let's get your number.

4           THE PROSPECTIVE JUROR:  Joseph Vreelend.

5           THE COURT:  It is an anonymous jury.  Okay.

6           Do you know Michael Romano?

7           THE PROSPECTIVE JUROR:  I painted his house a few

8   years ago.

9           THE COURT:  We will excuse you.

10          Thank you.

11          THE PROSPECTIVE JUROR:  Okay.  Should I go sit down?

12          THE COURT:  No.  You are excused.

13          THE CLERK:  Back to the central jury room.

14          (In open court.)

15          THE LAW CLERK:  Judge, one more.

16          THE COURT:  Yes.  Come up, please.

17          (Side bar with juror.)

18          THE COURT:  How are you, sir?

19          Your number is 43?

20          THE PROSPECTIVE JUROR:  Yes.

21          I know a person you mentioned, Anthony Lanza.  I am

22  a Patrick Lanza.  I know of an Anthony Lanza that I went to

23  school with at FDR back in the day.  I am 60 years old now.

24  That's about --

25          THE COURT:  Hold it a second.

GR      OCR      CM      CRR      CSR

11

1          MR. MILLER:  It's difficult to say if that's the

2     same person.

3          Do you know where he lived?  Do we know where he

4     lives now?

5          THE PROSPECTIVE JUROR:  I really -- I am 60 years

6     old now.

7          THE COURT:  You are 60.  You went to school with

8     him?

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  You got out of school --

11         THE PROSPECTIVE JUROR:  Just mentioning it.

12         THE COURT:  You got out of school 42 years ago.

13         THE PROSPECTIVE JUROR:  1971.

14         MR. GOLTZER:  There was something I needed to tell

15    the Court outside the juror's presence.

16         THE COURT:  Yes.  Were you very friendly with him?

17         THE PROSPECTIVE JUROR:  Yes.  I don't know if he was

18    my relative but the same last name, you know.

19         THE COURT:  All right.

20         THE PROSPECTIVE JUROR:  I was friendly with the

21    fellow, yes.

22         THE COURT:  Okay.  All right.

23         Do you want me to keep him?

24         MR. MILLER:  He thinks he's related to him.

25         MR. GOLTZER:  For sure.

12

1              THE COURT:  You are excused.  Back to the central

2    jury room.

3              (Juror leaves side bar.)

4              THE COURT:  Yes.  I know it's an anonymous jury.

5    Thank you.  Okay.

6              MR. GOLTZER:  Great.  He gave his name.

7              THE COURT:  Yes.  He volunteered it.  In the first

8    instance, I made the mistake.  We all do.

9              (In open court.)

10             THE COURT:  I think the last name I read off was

11   Russell Rusty Barnes.

12             Then there is a Michael Dibari, D I B A R I.

13             Jazmin Anthony.

14             Melissa Han.  Excuse me.  I am wrong.  Melissa

15   Hasan, H A S A N.

16             Nicole Olson.

17             Anthony Filippono.  No.  I am on a roll here.  I got

18   that wrong too.  Anthony Filipponi.  Excuse me.

19             I said Joseph Bianco.

20             I've already mentioned Lara Treinis Gatz.

21             A Nicholas Pittas.

22             A Christopher Pittas.

23             A Gregory Giblin.

24             A Charles Carnesi.

25             A Vincent Ansanelli.

13

1          A Mark Goidell.

2          Robert Seimer, S E I M E R.

3          Robert Strecker.

4          John Wighaus.

5          I introduced Mr. Tariche, Reynaldo Tariche.

6          James Lopez.

7          James -- he has a nickname apparently -- Randy Cox,

8     C O X.

9          William Hessle.

10         Sean McMullen.

11         Patrick Quinn.

12         I am not sure of the pronunciation of this name, but

13    I think it's Gerald Machacek, M A C H A C E K.

14         Eric Tassiello.

15         Ramel Thompson.

16         Jose Torres.

17         Juan Vialovos-Coreas.  That's V I A L O V O S dash

18    Coreas, C O R E A S.

19         Jose Estrella.

20         Anthony Basile.

21         Bobby Brown.

22         John Cabrejal.

23         Jason Hawxhurst.

24         Rasoul Johnson.

25         James Moran.

GR      OCR      CM      CRR      CSR

14

1          Vincent Namaconti.

2          Vincent Traficante.

3          Luis Navarro.

4          Karen Powell.

5          Marc Darshin.

6          Charles Grandberry.

7          Juan Orengo.

8          Barry Costa.

9          Joseph Coppola.

10          All right.  Now, let me tell you another thing here.

11          As the trial develops and as jury selection goes on,

12  you are going to become more and more interested in the case.

13  Ten years ago when I was picking a jury I would tell the

14  people, don't read anything in the newspapers about the case,

15  don't listen to anything on the radio about the case, don't

16  watch anything on television about the case.

17          I say the same thing now, if there is anything in

18  the papers, and there may well be about the case, don't read

19  it.  If there is anything on television or on the radio, don't

20  watch it.  Don't listen to it.

21          But now I have to add that because of the Internet,

22  don't research the case.  It's violative of the rules and if

23  you are chosen as a juror it will be violative of your oath if

24  you research the case on the Internet.

25          When I say don't research the case, don't look me up

GR      OCR      CM      CRR      CSR

15

1    on the Internet.  Don't look Mr. Goltzer up on the Internet.

2    There is more probably about him than there is about me but

3    don't look him up.  Don't look any of the prosecutors up.

4    Don't look the case up.

5        You will learn about the case in the courtroom, not

6    on the Internet.  I just want to make sure everybody

7    understands that.

8        Now, in a lot of federal criminal cases, we keep the

9    names and the identities of the jurors in confidence.  That's

10   not particularly unusual.  Experience has shown that in a case

11   like this, it is wise for us to take steps to make certain

12   that the jurors' right to privacy is respected.  The media and

13   members of the public are often curious about the identity of

14   the jurors and they may seek to inquire, perhaps, into the

15   personal affairs of the jury.

16       Anonymity, in other words, keeping your names

17   private, to yourselves and not to anybody else.  Anonymity

18   will ensure that the jury will not be exposed to such prying

19   and to opinions, commentaries and inquiries that in some way

20   might impair the jury's ability to decide the case solely on

21   evidence presented in court.  It is very important to ensure

22   that the jury is in no way influenced by media or by other

23   members of the public.

24       Now I am going to give you certain rules that apply

25   not only to this case but to every criminal case tried

GR    OCR    CM    CRR    CSR

1    anywhere in the United States.  I apologize ahead of time, as

2    is obvious from my voice, I have a cold and if I start to

3    cough, please excuse me.

4            Now, you should know that in this case the defendant

5    is charged by way of an indictment.  I am holding a copy of

6    the indictment up in my hand.  The indictment is the means or

7    the vehicle whereby the defendant is brought into court.

8            The indictment in a sense is like the summons in a

9    civil case.  Civil cases are tried here in this court.  If

10   somebody from New Jersey comes over to New York and gets hit

11   by a car and the damages are serious enough, that becomes a

12   federal case because the person is from Jersey and the

13   accident occurred here in the Eastern District.  They call

14   that a diversity of citizenship case.  The way you start that

15   case is with a summons and a complaint.

16           The way we start a criminal case is with an

17   indictment.

18           Now, the indictment, as I say -- I am holding a copy

19   of it up here for you -- the indictment is proof of nothing,

20   zippo, zero.  The indictment is nothing but the vehicle or the

21   way we bring a defendant in to court.  The fact that he is

22   charged in an indictment does not mean that he is guilty.  It

23   doesn't mean that he did anything wrong.

24           He has pleaded not guilty to the indictment.  He is

25   presumed to be innocent.

GR      OCR      CM      CRR      CSR

17

1       So you've got two rules of law now.  The indictment

2   is proof of nothing; and the defendant is presumed to be

3   innocent.

4       The burden is on the government throughout the

5   course of the trial to prove the defendant is guilty beyond a

6   reasonable doubt.  That's the rule of law that applies here in

7   the Eastern District of New York.  It applies as far west as

8   Hawaii.  It applies in every federal court in the United

9   States.  The burden is upon the government to prove the

10  defendant guilty beyond a reasonable doubt.

11      So what that means is this.  Since he's presumed to

12  be innocent, and since the government has the burden of

13  proving he is guilty, he and his lawyers don't have to do

14  anything.  All Mr. Romano has to do is be present here in

15  court.  His lawyers don't have to say a word and you can't

16  hold it against Mr. Romano.  If he chooses not to testify, you

17  can't hold that against Mr. Romano.  If he chooses to testify,

18  that's another thing.  But if he chooses not to, that's his

19  absolute inviolable constitutional right and his lawyers, as I

20  said, need not do anything or ask any questions.

21      Now, Mr. Goltzer has tried cases before me in the

22  past and I know Mr. Bachrach a little bit.  I'll be astounded

23  if Mr. Goltzer doesn't have something to say.  If he doesn't,

24  you can't hold that against Mr. Romano.  All right?

25      So you've got four rules of law that I just gave

1    you.  Very quickly, the indictment is the means by which the

2    defendant is brought into court but it's proof of nothing.

3              The defendant is presumed to be innocent.

4              The burden is on the government to prove him guilty

5    beyond a reasonable doubt.

6              And he and his lawyers need do nothing, he need not

7    testify, and you can't hold it against him if he doesn't.

8              Another rule of law is this.  The law is for me.  I

9    tell you what the law is.  You apply the law to the facts as

10   you find the facts to be.  You are supreme on questions of

11   fact but on questions of law you have to abide by what I tell

12   you.

13             Now, the final rule of law that I am going to tell

14   you about is this.  Punishment or the sentence that would flow

15   from your verdict, if your verdict is guilty, is no concern of

16   yours and is not to be considered by you in arriving at a

17   verdict in the case.  All you have to be concerned with is the

18   question of whether or not the government has proved the

19   defendant guilty beyond a reasonable doubt of the charges in

20   the indictment.

21             All right.  Now, we can choose one juror.

22             THE CLERK:  I have to swear them, first.

23             THE COURT:  Swear the jury and choose one juror and

24   the rest of them can be escorted back down to the central jury

25   room.

Prospective Juror 56                                    19

1        THE CLERK:  I believe they are going to Judge

2   Gershon's courtroom.

3        THE COURT:  Across the way.  Okay.  Fine.

4        Thank you.

5        THE CLERK:  Would the jurors please rise and raise

6   your right hand?

7        (The entire panel is duly sworn by Clerk of Court.)

8        THE CLERK:  The first juror is 56.  56.

9        All right.  Come on up here, ma'am, if you would.

10  Have a seat in the jury box.

11       The rest of you can go with the clerk.

12       (Prospective jurors leave courtroom and prospective

13  juror number 56 remains.)

14       THE COURT:  All right.  Good morning again.

15       THE PROSPECTIVE JUROR:  Good morning.

16       THE COURT:  Were you able to hear what I had to say

17  so far?

18       THE PROSPECTIVE JUROR:  Yes.

19       THE COURT:  Do you know what would be a good idea?

20  Although you are talking to me, look out that way.  That way,

21  they will all be able to hear you.

22       Why don't you move the microphone a little closer to

23  you?  That way the microphone will pick up what you have to

24  say.

25       If you are chosen as a juror here, you are going to

GR      OCR      CM      CRR      CSR

Prospective Juror 56                                    20

1   find out that it is very important that people speak with loud

2   voices so everybody can hear you.  It is very important that

3   Mr. Romano, who is the furthest away from you I think, that he

4   hears you and the lawyers and also everybody at the government

5   table.

6          You don't have to look at me.  You won't be

7   disrespectful or impolite if you don't.  Just talk to them.  I

8   will move sort of a little bit away from you.  That way we

9   will be sure that you are talking to them.

10         All right.  Are you married or single?

11         THE PROSPECTIVE JUROR:  Widow.

12         THE COURT:  Do you work?

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  What do you do for a living?

15         THE PROSPECTIVE JUROR:  I am a case worker with --

16         THE COURT:  Social worker, caseworker?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Do you work for a governmental

19   department?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  Which one?

22         THE PROSPECTIVE JUROR:  County.

23         THE COURT:  Of Nassau County?

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  How long have you been doing that?

1          THE PROSPECTIVE JUROR:  Five years.

2          THE COURT:  What is your educational background?

3          THE PROSPECTIVE JUROR:  I have a masters in social

4   work.

5          THE COURT:  Where did you get the masters from,

6   ma'am?

7          THE PROSPECTIVE JUROR:  Stony Brook University.

8          THE COURT:  Where did you do undergraduate?

9          THE PROSPECTIVE JUROR:  Hofstra University.

10          THE COURT:  You went to Hofstra?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  What did you get your undergraduate

13   degree in?

14          THE PROSPECTIVE JUROR:  Sociology.

15          THE COURT:  And your late husband, what did he do

16   for a living?

17          THE PROSPECTIVE JUROR:  Supervisor with Con Edison.

18          THE COURT:  Do you have children?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  How many?

21          THE PROSPECTIVE JUROR:  Four.

22          THE COURT:  Are they grown?

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  Could you tell us what they do for a

25   living?

Prospective Juror 56                                            22

1          THE PROSPECTIVE JUROR:  My oldest daughter works for

2     the railroad; my son is an  X-ray technician; I have a

3     third -- a second daughter who is a social welfare examiner;

4     and a younger daughter who just graduated with a degree in

5     mental health.

6          THE COURT:  Okay.  You live in Nassau County?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  I don't want to know your address, but

9     what town do you live in?

10         THE PROSPECTIVE JUROR:  Freeport.

11         THE COURT:  Freeport.

12    Do you own your own home or do you rent?

13         THE PROSPECTIVE JUROR:  Own.

14         THE COURT:  How long have you lived there?

15         THE PROSPECTIVE JUROR:  Thirty-seven years.

16         THE COURT:  From what you heard about the case, do

17    you think you'd be fair and impartial?

18         THE PROSPECTIVE JUROR:  I believe I can.

19         THE COURT:  Have you ever been a juror before?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  What kind of case?

22         THE PROSPECTIVE JUROR:  One was criminal, one was

23    civil.

24         THE COURT:  Were they both in the state?

25         THE PROSPECTIVE JUROR:  Yes.

Prospective Juror 56                                    23

1          THE COURT:  In the criminal case -- I don't want to

2     know the verdict, that's none of my business -- but did you

3     reach a verdict?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Okay.  Again, I don't want to know what

6     the verdict was, but do you remember what the charge was?

7          THE PROSPECTIVE JUROR:  Insurance, I believe.

8          THE COURT:  Insurance fraud?

9          THE PROSPECTIVE JUROR:  I think so.

10         THE COURT:  Okay.  About how long ago was that?

11         THE PROSPECTIVE JUROR:  Quite a while.  I can't

12    remember.

13         THE COURT:  That was in Nassau County, Supreme

14    Court?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  County court?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Okay.  Have you ever been the victim of

19    a violent crime?

20         THE PROSPECTIVE JUROR:  No.

21         THE COURT:  Was your late husband ever the victim of

22    a violent crime?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  Now, if I were trying a case here about

25    embezzlement, a charge of embezzlement from a bank, it would

GR      OCR      CM      CRR      CSR

Prospective Juror 56                          24

1   likely be that there would be people testifying who worked for

2   banks.  The rule is that because somebody works for a bank,

3   they are not entitled to any greater or less belief than

4   anybody else just because they work for a bank.  In other

5   words, everybody starts off equal when they start.  They don't

6   start with an advantage because they work for a bank or a

7   disadvantage because they work for a bank.

8           The same thing would apply, let's say it was an

9   arson case, the charge was arson, not what the charge is here.

10  It was an arson case, the likelihood is there would be firemen

11  who would testify here.  That would make sense to you, right?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  A firefighter, fireman isn't entitled to

14  any greater or less belief than anybody else.

15          Do you understand that?

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  All right.  The same thing applies to

18  law enforcement agents.  If somebody is an FBI agent or a

19  detective or a DEA agent, they are not entitled to greater or

20  less belief than anybody else.  The fact that somebody is a

21  federal agent doesn't mean they are necessarily telling the

22  truth, doesn't mean they are necessarily accurate.  It doesn't

23  mean they are lying necessarily either.  You have to take each

24  person individually.

25          Do you understand that?

Prospective Juror 56                                    25

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Do you have my problems with that?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  Okay.  In this case, you are going to

5   hear recordings, tape recordings played.  Some of the language

6   on the tape recordings is a little rough, some of it.

7          In the course of your life, you have heard some

8   tough language, is that right?

9          THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Okay.  That's not going to affect your

11   verdict, is it?

12          THE PROSPECTIVE JUROR:  I don't believe it would

13   have any impact.

14          THE COURT:  Thank you.

15          I will just check my notes here for a minute.

16          Here is one they want me to ask you.

17          Are you taking any medication or do you have any

18   particular medical condition?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  Okay.  Both sides want me to ask this so

21   I will ask it.  Normally I don't ask it.  I will accommodate

22   both the government and the defense.

23          What newspapers do you read?

24          THE PROSPECTIVE JUROR:  I don't read the newspaper.

25          THE COURT:  Okay.  Do you read any magazines?

1              THE PROSPECTIVE JUROR:  No.

2              THE COURT:  Okay.  Do you watch television ever?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  What news programs do you watch, if you

5     do?

6              THE PROSPECTIVE JUROR:  Channel 12.

7              THE COURT:  Okay.  What that?  That's local news?

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  Okay.  Any particular programs you like

10    to watch?

11             THE PROSPECTIVE JUROR:  Soap operas.

12             THE COURT:  Soap operas.  Good for you.  I didn't

13    think they still had them.

14             THE PROSPECTIVE JUROR:  Very few.

15             THE COURT:  Very few.  Okay.

16             You think you can be fair and impartial, right?

17             THE PROSPECTIVE JUROR:  I believe I can.

18             THE COURT:  Let me just run through this list here.

19             Have you ever sued the government or been sued by

20    the government?

21             THE PROSPECTIVE JUROR:  No.

22             THE COURT:  I am asked by the lawyers to ask this.

23    It's the only reason I'm asking it.  I don't mean to insult

24    you in any way.

25             You've never been in trouble with the law, have you?

Prospective Juror 56                              27

1   Maybe you got a parking ticket or something.  But I am talking

2   about anything serious.

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  Okay.  Thank you very much.

5              All right.  Any challenges for cause?

6              MR. MILLER:  No, Your Honor.

7              MR. GOLTZER:  No.

8              THE COURT:  All right.  Nothing else from this

9   juror?

10             All right.  The juror is qualified.

11             If you'd come back to the central jury room Thursday

12  morning 10:00 o'clock.

13             THE PROSPECTIVE JUROR:  Okay.

14             THE COURT:  Thank you very much.

15             THE PROSPECTIVE JUROR:  Thank you.

16             (Juror leaves courtroom.)

17             THE COURT:  Let's get another juror.

18             THE CLERK:  Number 27.

19             MR. GOLTZER:  Before the juror comes in, if I may.

20             THE COURT:  Yes.

21             MR. GOLTZER:  We would ask the Court just to inquire

22  generally of each juror whether the nature of the charges or

23  the nature of the alleged victims would cause them to have any

24  bias for or against.

25             THE COURT:  I asked if they could be fair and

GR      OCR      CM      CRR      CSR

Prospective Juror 27                          28

1   impartial.  I don't want to highlight the charge

2   unnecessarily.  I have asked if they could be fair and

3   impartial, if there is any reason she couldn't serve.  I think

4   that covers it.

5              MR. GOLTZER:  In addition, Your Honor --

6              THE COURT:  Excuse me?

7              MR. GOLTZER:  -- whether anyone close to them other

8   than a spouse was the victim of a crime.

9              (Juror number 27 present.)

10             THE COURT:  Good morning, sir.

11             THE PROSPECTIVE JUROR:  Good morning.

12             THE COURT:  How are you?

13             THE PROSPECTIVE JUROR:  Good.

14             THE COURT:  Make yourself comfortable, please.

15             If you look out there, you see the gentleman behind

16  Mr. Romano, the fellow way back there?

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  Talk to him.  If you talk to him,

19  everybody who has to hear you will hear you.

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  I will try and sit back here.  Don't

22  look at me.  Forget me.  Forget looking at me anyway.  Just

23  answer my questions, if you would.  Okay?

24             THE PROSPECTIVE JUROR:  Okay.

25             THE COURT:  All right.  Are you married or single,

1   sir?

2          THE PROSPECTIVE JUROR:   Single.

3          (Continued on next page.)

1           THE COURT:  What do you do for a living?

2           THE PROSPECTIVE JUROR:  Operation support

3    coordinator at a graduate school.

4           THE COURT:  At a graduate school.  I don't know what

5    an operations coordinator does.  What do you do?

6           THE PROSPECTIVE JUROR:  Basically a little bit of

7    everything.  We handle everything that's compliance reasons so

8    the departments can't do certain things to go through on,

9    like, financial aid for admissions.

10          THE COURT:  I see.  Take your time.  You don't have

11   to go that fast.  Take your time.  The court reporters are the

12   best in the country; they won the competition, both of them,

13   but talk a little slower.  You do that kind of thing.  What is

14   your educational background?

15          THE PROSPECTIVE JUROR:  Bachelor degree in finance.

16          THE COURT:  Where did you get that?

17          THE PROSPECTIVE JUROR:  Manhattan College.

18          THE COURT:  Build and purchase?

19          THE PROSPECTIVE JUROR:  Correct.

20          THE COURT:  And did you go to high school up in

21   Westchester?

22          THE PROSPECTIVE JUROR:  No, I went to high school in

23   Staten Island at Monsignor High School.

24          THE COURT:  And do you live in Staten Island?

25          THE PROSPECTIVE JUROR:  Correct.

1          THE COURT:  What part do you live in?

2          THE PROSPECTIVE JUROR:  Huguenot.

3          THE COURT:  Huguenot.  My mother was from

4    Tottenville.  Is that close?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Pretty close to you.

7          THE PROSPECTIVE JUROR:  I'm over there a lot,

8    actually.

9          THE COURT:  Have you ever been on a jury before?

10          THE PROSPECTIVE JUROR:  No, I have not.

11          THE COURT:  Anything about the case, the charges,

12    the names that I read, or anything about it -- do you think

13    you should let us know anything about it, about your ability

14    to be fair and impartial?

15          THE PROSPECTIVE JUROR:  Just in general, myself,

16    personally, I kind of have -- I don't know if I can deal with

17    that kind of thing on my conscience, giving guilty or innocent

18    plea (sic), not knowing.

19          THE COURT:  Well, you don't know.

20          THE PROSPECTIVE JUROR:  I don't know the facts yet,

21    but even if I did, even if I heard them, I'm not sure, having

22    heard them, if I could live with my conscience giving a guilty

23    or innocence verdict.

24          THE COURT:  Well, it's not innocent.  It's not

25    guilty or guilty.  You don't have to find anybody innocent.

Prospective Juror 27                                    32

1  You got to find them not guilty beyond a reasonable doubt.

2  Have you ever been on a jury?

3           THE PROSPECTIVE JUROR:  No.

4           THE COURT:  What about the case makes you feel that

5  you would be unable to reach a verdict?

6           THE PROSPECTIVE JUROR:  It's a touchy subject, but

7  the whole thing possibly being murder, allegedly.

8           THE COURT:  Go ahead.

9           THE PROSPECTIVE JUROR:  It's all alleged.  It's a

10  little touchy subject for me.  I'm not very comfortable with

11  it.

12           THE COURT:  All right.  I'll excuse you.

13           THE CLERK:  Next juror is Number 10.

14           THE COURT:  Good morning, sir.  How are you?

15           THE PROSPECTIVE JUROR:  Good.

16           THE COURT:  Were you able to hear me when I spoke to

17  you before?

18           THE PROSPECTIVE JUROR:  Yes, sir.

19           THE COURT:  Now, you see the man behind Mr. Romano,

20  the man who just raised his hand?

21           Do it again.

22           Talk to him not me, because if you talk to him,

23  you'll talk loud enough for everybody here to hear you.  Okay?

24           THE PROSPECTIVE JUROR:  Okay.

25           THE COURT:  Speak into the microphone, if you would.

NICOLE CANALES, CSR, RPR

1   Good.  And where do you live, sir?

2              THE PROSPECTIVE JUROR:  In Queens.  In Queens.

3              THE COURT:  You live in Queens.  What part of

4   Queens?

5              THE PROSPECTIVE JUROR:  Fresh Meadows.

6              THE COURT:  Fresh Meadows.  You own your own home?

7              THE PROSPECTIVE JUROR:  No.

8              THE COURT:  You rent?

9              THE PROSPECTIVE JUROR:  (Inaudible response.)

10             THE COURT:  Are you married or single?

11             THE PROSPECTIVE JUROR:  Married.

12             THE COURT:  And what do you do for a living?

13             THE PROSPECTIVE JUROR:  Not working at the moment.

14             THE COURT:  When you work, what do you do?

15             THE PROSPECTIVE JUROR:  Designer.

16             THE COURT:  A designer.  What did you design?

17             THE PROSPECTIVE JUROR:  Sunglasses.  Sunglasses.

18             THE COURT:  Sunglasses.  And did you work for a

19  large company or a small company?

20             THE PROSPECTIVE JUROR:  A small company.

21             THE COURT:  Small company.  And are you out of work

22  because of the difficult times that we're going through now?

23             THE PROSPECTIVE JUROR:  Yes, sir.

24             THE COURT:  And how long have you been out?

25             THE PROSPECTIVE JUROR:  About, I'd say, almost a

1    year.

2              THE COURT:  Almost a year.  Does your wife work?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  What does she do, sir?

5              THE PROSPECTIVE JUROR:  She does nail service.

6              THE COURT:  A nail service.

7              THE PROSPECTIVE JUROR:  Nails.

8              THE COURT:  Fingernails.

9              THE PROSPECTIVE JUROR:  Right.

10             THE COURT:  Okay.  And does she work in -- remember,

11   talk over there.  And a little louder, please.  Does she work

12   in, what I guess they call, a parlor, a beauty parlor?  They

13   call it a beauty parlor.  Does she work in, like, a nail

14   parlor?

15             THE PROSPECTIVE JUROR:  Right.

16             THE COURT:  Is that in Queens or Manhattan?

17             THE PROSPECTIVE JUROR:  In Queens.

18             THE COURT:  And do you have children?

19             THE PROSPECTIVE JUROR:  No.

20             THE COURT:  And what is your educational background?

21             THE PROSPECTIVE JUROR:  College.

22             THE COURT:  Where did you go?

23             THE PROSPECTIVE JUROR:  Pratt Institute in Brooklyn.

24             THE COURT:  You went to Pratt Institute in Brooklyn?

25             THE PROSPECTIVE JUROR:  Yes, sir.

1          THE COURT:  And what kind of degree did you get?

2          THE PROSPECTIVE JUROR:  Bachelor.

3          THE COURT:  In what?

4          THE PROSPECTIVE JUROR:  Design.

5          THE COURT:  In design.  I see.  And about how long

6    ago did you get the degree?

7          THE PROSPECTIVE JUROR:  Four years.

8          THE COURT:  Four years ago.

9          THE PROSPECTIVE JUROR:  When?

10         THE COURT:  Yeah, about.

11         THE PROSPECTIVE JUROR:  Oh, 20 years ago.

12         THE COURT:  Twenty years ago.  Okay.  And have you

13   ever been on a jury before?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  And is there anything that you've heard

16   so far in this courtroom that would cause any problem being

17   fair and impartial in this case?

18         THE PROSPECTIVE JUROR:  To be fair, yeah.

19         THE COURT:  You could be fair and impartial?

20         THE PROSPECTIVE JUROR:  Well, there -- maybe there

21   are things I need to speak privately about.  I don't know.

22         THE COURT:  You just tell me what are they.

23   Nobody's here but us.  That's one of the reasons I don't have

24   the other jurors here.  Tell me what is it.

25         THE PROSPECTIVE JUROR:  My brother is -- older

1    brother, he's was a lawyer.

2              THE COURT:  He's a lawyer.

3              THE PROSPECTIVE JUROR:  Right.  Now, he left the

4    country.  Now, he didn't give up the citizenship.  Because he

5    got into some, you know, trouble with, you know, things and --

6              THE COURT:  He got into trouble with things?

7              THE PROSPECTIVE JUROR:  Not that he did some kind of

8    trouble.  I mean, not that he did something, but, you know.

9              THE COURT:  Well, I don't know.  You keep saying I

10   know.  I don't know.

11             THE PROSPECTIVE JUROR:  He got scared of something.

12   He left the country and now he's in Asian.

13             THE COURT:  Uh-huh.

14             THE PROSPECTIVE JUROR:  So I don't know that's gonna

15   do with this case, but --

16             THE COURT:  I don't see what that has to do.

17             THE PROSPECTIVE JUROR:  I'm just telling you that.

18             THE COURT:  Is there anything else you thought you

19   should tell me?

20             THE PROSPECTIVE JUROR:  That's it.  I mean --

21             THE COURT:  Now, you've mentioned that, so that's

22   obviously something that's on your mind.  What is the trouble?

23   Was it one of his clients that was in trouble or was it him?

24   What?

25             THE PROSPECTIVE JUROR:  Yeah, the people he knew,

1    you know.  He didn't tell me the whole detail, things, you

2    know, but he got a little scared of some things going on, so

3    that's why.

4            THE COURT:  Like what?

5            THE PROSPECTIVE JUROR:  I guess, you know --

6            THE COURT:  I don't even know your name, so if you

7    tell me what it is, we're not going to know any more about it.

8    I just want to get an idea of what troubled him.

9            THE PROSPECTIVE JUROR:  He wasn't a criminal lawyer,

10   but he was mostly taking care of dealing moneys and some

11   stuff.  I don't know what is, but they force him to -- I guess

12   they forced him to do something he didn't want to do, so at

13   the end, you know, he didn't explain much to me, but that was

14   the main reason.  He left the -- that's a big decision to

15   make.

16           THE COURT:  Yes.

17           THE PROSPECTIVE JUROR:  Right.

18           THE COURT:  And you think that could affect your

19   service here?

20           THE PROSPECTIVE JUROR:  Could be.

21           THE COURT:  Why?

22           THE PROSPECTIVE JUROR:  Because, you know, I didn't

23   like what happened with him, and, you know, I didn't want

24   anything like that to happen to me by doing anything.  I'm

25   just --

Prospective Juror 2                                    38

1          THE COURT:  I'll excuse you.  Thank you.

2          THE CLERK:  Report to the central jury room, sir.

3    The next juror is Number 2.

4          MR. MILLER:  Your Honor, can I ask a brief question?

5    I think in the Court's instruction about anonymity it became

6    clear that the jurors, I think, don't understand that the

7    parties in the court don't even know their names.  I wonder if

8    your Honor wouldn't mind instructing them as they come in.

9          MR. GOLTZER:  We, of course, don't see a need to

10   instruct them.

11         THE COURT:  I'll handle that, Mr. Goltzer.  If

12   there's an objection to the way I conduct voir dire, express

13   your objection and I will rule.

14         MR. GOLTZER:  There is no objection to date.

15         THE COURT:  All right.  Maybe there will be in the

16   future.

17         MR. GOLTZER:  I doubt it.

18         THE COURT:  If you object, I'll rule.

19         MR. GOLTZER:  We were not objecting to your Honor's,

20   we were objecting to the government's request.  You know I'm

21   not bashful.

22         THE COURT:  Hello there.  How are you?  Number 2,

23   huh.  A lot of good quarterbacks are Number 2 these days; did

24   you know that?

25         THE PROSPECTIVE JUROR:  I don't watch much football.

1       THE COURT:  Where do you live, sir?

2       THE PROSPECTIVE JUROR:  Queens.

3       THE COURT:  Whereabouts in Queens?

4       THE PROSPECTIVE JUROR:  Jamaica.

5       THE COURT:  Jamaica.  You see the last man over

6   there, the gentleman there?  He just raised his hand.  Talk to

7   him not me, because he's got -- everybody over there has to

8   hear you.  You talk to him.  Everybody over there will hear

9   you.

10      THE PROSPECTIVE JUROR:  Okay.

11      THE COURT:  All right.  Fine.  What do you do for a

12  living?

13      THE PROSPECTIVE JUROR:  Currently unemployed.

14      THE COURT:  You are currently unemployed.  What do

15  you do?

16      THE PROSPECTIVE JUROR:  I worked in JFK as an

17  import/expert coordinator.

18      THE COURT:  Import/export coordinator.  What does

19  that mean?  You do stuff with what's coming in from out of the

20  country?

21      THE PROSPECTIVE JUROR:  Yes.

22      THE COURT:  Like what kind of stuff?

23      THE PROSPECTIVE JUROR:  Anything; from money,

24  diamonds, freight, stuff like that.

25      THE COURT:  How long did you work at JFK?

Prospective Juror 2                    40

1          THE PROSPECTIVE JUROR:  In that specific job,

2     overall, eight years.

3          THE COURT:  Eight years.

4          THE PROSPECTIVE JUROR:  Different.

5          THE COURT:  Are you laid off?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Is it temporary?

8          THE PROSPECTIVE JUROR:  Yes.  No, permanent.

9          THE COURT:  No, permanent?

10          THE PROSPECTIVE JUROR:  Uh-huh.

11          THE COURT:  It's permanent?

12          THE PROSPECTIVE JUROR:  Yes.  I'm laid off since

13     2008.

14          THE COURT:  You're laid off for five years?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Have you worked at all in the five

17     years?

18          THE PROSPECTIVE JUROR:  Odd jobs.

19          THE COURT:  Like what?

20          THE PROSPECTIVE JUROR:  Went back to school to be a

21     mechanic.  Right now I'm training with a friend of mine to be

22     more -- to be certified in.

23          THE COURT:  In what kind of mechanics?

24          THE PROSPECTIVE JUROR:  Cars, motorcycles.  Training

25     in trucks now.

1        THE COURT:  Trying trucks now?

2        THE PROSPECTIVE JUROR:  Yeah.

3        THE COURT:  And you work in a garage, was it?

4        THE PROSPECTIVE JUROR:  Yes.

5        THE COURT:  Is that in Queens, too?

6        THE PROSPECTIVE JUROR:  Yes.

7        THE COURT:  In Jamaica?

8        THE PROSPECTIVE JUROR:  Yes.

9        THE COURT:  Okay.  And are you married?

10       THE PROSPECTIVE JUROR:  No.

11       THE COURT:  And have you ever been on a jury before?

12       THE PROSPECTIVE JUROR:  No.

13       THE COURT:  I have to ask this of all the jurors.

14   I'm going to ask you, have you ever been arrested or in

15   trouble?

16       THE PROSPECTIVE JUROR:  No.

17       THE COURT:  Okay.  And have you ever been the victim

18   of a violent crime?

19       THE PROSPECTIVE JUROR:  No.

20       THE COURT:  And you've never been on a jury?

21       THE PROSPECTIVE JUROR:  No.

22       THE COURT:  Never been called?

23       THE PROSPECTIVE JUROR:  Summoned but never been --

24   summoned, like, the same thing.  Not like this.

25       THE COURT:  In other words, you were summoned to

Prospective Juror 2                                    42

1   appear and you appeared and you weren't chosen?

2              THE PROSPECTIVE JUROR:  That's right.

3              THE COURT:  Okay.  How long ago was that?

4              THE PROSPECTIVE JUROR:  A while back.

5              THE COURT:  Was that in state court or federal

6   court?

7              THE PROSPECTIVE JUROR:  I think it was state.

8              THE COURT:  State.  And that was where?  In Kew

9   Gardens?

10             THE PROSPECTIVE JUROR:  I think it was in Brooklyn.

11             THE COURT:  In Brooklyn.  I thought you lived in

12  Queens?

13             THE PROSPECTIVE JUROR:  I used to live in Brooklyn.

14  I moved to Queens.

15             THE COURT:  That's why they called you to Brooklyn.

16  Okay.  Were any of the names I read off familiar to you in any

17  way?

18             THE PROSPECTIVE JUROR:  Huh-uh.

19             THE COURT:  Anything about the case that causes you

20  any problems at all?

21             THE PROSPECTIVE JUROR:  No.

22             THE COURT:  Okay.  Do you have any close friends or

23  relatives in law enforcement, in other words, on the police

24  department or FBI?

25             THE PROSPECTIVE JUROR:  A friend of mine.

Prospective Juror 2                                    43

1          THE COURT:  A friend?

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  What is he?  A cop?

4          THE PROSPECTIVE JUROR:  Just turned detective.

5          THE COURT:  A detective.  Okay.  Now, the rule is

6   that a detective, or an FBI agent, or a sergeant, a police

7   officer or patrolman, they're not entitled to any greater

8   belief than anybody else, just because they are a policeman.

9   In other words, there are good policemen and bad policemen and

10  a lot in the middle?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  You take each one individually; do you

13  understand that?

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Would you say, well, the guy's an FBI

16  agent, therefore, he's got to be lying?  Would you say that?

17         THE PROSPECTIVE JUROR:  Depends.

18         THE COURT:  Depends on whether he's lying or not?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  A guy takes the stand; he's an FBI

21  agent, and you say he's telling the truth or not?

22         THE PROSPECTIVE JUROR:  Well, to me, some people

23  stretch the truth, some people don't.

24         THE COURT:  Some people do stretch the truth.

25         THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  And some people don't.  And you have to

2     judge everybody out individually; right?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Will you do that?

5          THE PROSPECTIVE JUROR:  Sure.

6          THE COURT:  Okay.  Now, you've never been the victim

7     of a violent crime; right?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  All right.  Now, you're going to hear

10    some recordings here, tape-recordings, they call them, maybe

11    even phone conversation recordings.  Some of the language in

12    the recordings is not what you hear at church on Sunday; do

13    you understand what I mean?

14         THE PROSPECTIVE JUROR:  Sure.

15         THE COURT:  What?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  But is that going to affect you in any

18    way?

19         THE PROSPECTIVE JUROR:  No.

20         THE COURT:  You've heard that before; right?

21         THE PROSPECTIVE JUROR:  Yeah.

22         THE COURT:  Okay.  So that's not going to affect

23    you.  Can you be fair and impartial?

24         THE PROSPECTIVE JUROR:  Yes and no.

25         THE COURT:  What do you mean, no?  What?  You seem

1   like a perfectly nice, normal fellow.

2           THE PROSPECTIVE JUROR:  To me, it depends on the

3   case.

4           THE COURT:  I'm not asking you how you're going to

5   vote.  You don't know anything about the case.  I don't know

6   anything about the case, other than I know what the charges

7   are.  You don't know anything about the case.  Have you heard

8   of any of the witnesses?

9           THE PROSPECTIVE JUROR:  No.

10          THE COURT:  All I'm asking you, can you be fair?

11          THE PROSPECTIVE JUROR:  Yeah.

12          THE COURT:  I'm not saying -- you haven't reached a

13  verdict.  After you hear the evidence.  All I'm saying is, at

14  the beginning of this whole thing, can you be fair?  Can you

15  be objective?  That's all.

16          THE PROSPECTIVE JUROR:  Yeah.

17          THE COURT:  You think so?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Any challenges for cause?

20          MR. MILLER:  No objection.

21          MR. GOLTZER:  No.

22          THE COURT:  All right.  Thank you very much.  You

23  come back Thursday morning.

24          THE CLERK:  Thursday at 10:00 o'clock.

25          THE COURT:  10:00 o'clock, same place, Thursday at

Prospective Juror 44                                    46

1    10:00 o'clock.

2            THE CLERK:  Thursday, central jury room, same place

3    you reported this morning.

4            THE PROSPECTIVE JUROR:  Okay.

5            THE COURT:  Thank you very much.

6            THE PROSPECTIVE JUROR:  You're welcome.

7            MR. GOLTZER:  Does your Honor mind if I move around?

8    I'm being blocked by the stenographer.

9            THE COURT:  Why don't you sit in front of the table.

10           MR. GOLTZER:  Will do.

11           THE COURT:  Juror 44.

12           THE CLERK:  Juror 44.

13           THE COURT:  If you have to move down, go.

14           MR. GOLTZER:  Would your Honor ask if anybody's been

15   the victim or someone closer that's been the victim of fraud?

16   Because the juror's going to learn there's been a conviction.

17           THE COURT:  All right.

18           Good morning, sir.

19           THE PROSPECTIVE JUROR:  Good morning.

20           THE COURT:  How are you?  Have a seat.  Make

21   yourself comfortable there.  If you want, you can take your

22   coat off.  If you want to leave it on, you can, too.  If you

23   want to take it off --

24           THE PROSPECTIVE JUROR:  Wet.

25           THE COURT:  It's wet?

1          THE PROSPECTIVE JUROR:  A little bit.

2          THE COURT:  Then don't leave it on; you'll catch

3   cold.  All right.  You see Mr. Goltzer there, the lawyer

4   raising his hand?  Talk to him not me, because he's got to

5   hear you.  If you talk loud enough for him to hear you, I'll

6   hear you and everything.

7          THE PROSPECTIVE JUROR:  He got to talk loud to me

8   because I don't hear too good.

9          THE COURT:  You don't hear too good?

10          THE PROSPECTIVE JUROR:  Not -- it depends.

11          THE COURT:  All right.  I think we'll excuse you,

12   then.  Thank you.  Okay.  Thanks.  If you don't hear well --

13   the key to a case is you got to hear it.  Thank you very much.

14          THE CLERK:  Go back to the central jury room where

15   you came this morning.

16          Next juror is Number 41.

17          THE COURT:  Hello, ma'am.  Come on up here.  Yes,

18   come on over here.  Have a seat there.  And you can put your

19   coat over the railing, if you would like, or a chair.

20   Whatever you'd rather.  Thank you.  I think it might be better

21   on the railing.  That's good.  Okay.  All right.  Make

22   yourself comfortable as you can.  And if you'd talk to the

23   last gentleman there, Mr. Goltzer, the man who raised his

24   hand.  Speak to him, because he's got on hear you.  Okay.

25   Where do you live?

1            THE PROSPECTIVE JUROR:  Queens.

2            THE COURT:  Queens.  What part of Queens?

3            THE PROSPECTIVE JUROR:  Fresh Meadows.

4            THE COURT:  Fresh Meadows.  Do you own your own

5    home?

6            THE PROSPECTIVE JUROR:  Yes.

7            THE COURT:  How long have you lived in the home

8    about?

9            THE PROSPECTIVE JUROR:  Twelve years.

10           THE COURT:  Twelve years.  You married?

11           THE PROSPECTIVE JUROR:  Yes.

12           THE COURT:  What does your husband do for a living?

13           THE PROSPECTIVE JUROR:  He survey salary scales.  He

14   do surveys for coming up with salary sales.

15           THE COURT:  Gallery sales?

16           THE PROSPECTIVE JUROR:  Salary scales.

17           THE COURT:  I'm sorry.  I didn't understand you.

18   What does that mean?  I'm not sure I understand.  What do you

19   do exactly?

20           THE PROSPECTIVE JUROR:  He?

21           THE COURT:  He.

22           THE PROSPECTIVE JUROR:  He goes to countries.  Some

23   people will take a survey of companies, and then they'll say,

24   okay; a cleaner is how much in this company?  Cleaner is how

25   much in that company, and they come to a point where the

Prospective Juror 41                         49

1    salary would match for the company.

2              THE COURT:  And do you work yourself?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  What do you do for a living?

5              THE PROSPECTIVE JUROR:  I'm in budgeting.

6              THE COURT:  Budgeter.  For what kind of office do

7    you work in?  You work in an office; right?

8              THE PROSPECTIVE JUROR:  Yes, uh-huh.

9              THE COURT:  What?  In a city office?  State office?

10   Private office?

11             THE PROSPECTIVE JUROR:  I can say the company or --

12             THE COURT:  Just tell us what they do.  I don't have

13   to know the name of the company.

14             THE PROSPECTIVE JUROR:  They work for -- they work

15   for children.

16             THE COURT:  Work for children.

17             THE PROSPECTIVE JUROR:  Uh-huh.

18             THE COURT:  And you budget for children?

19             THE PROSPECTIVE JUROR:  Well, I budget the money for

20   people to do certain things, yeah.

21             THE COURT:  And so what you do is budget in the

22   company things with children.  Do they make clothes for

23   children?  Toys for children?  Do they take care of children?

24   What do they do for the children?

25             THE PROSPECTIVE JUROR:  They try to see what

Prospective Juror 41                              50

1   countries need help, like vaccine for Malaria.

2              THE COURT:  Countries like Bangladesh?  Countries

3   like India?

4              THE PROSPECTIVE JUROR:  Yeah.  And maybe try to have

5   materials for HIV people, those type of things.

6              THE COURT:  I see.  And how long have you been doing

7   that?

8              THE PROSPECTIVE JUROR:  Since '94.

9              THE COURT:  And are you a native of the New York

10  area, or did you come from overseas?

11             THE PROSPECTIVE JUROR:  I'm a native of New York

12  area.

13             THE COURT:  Okay.  And how far did you go in school?

14             THE PROSPECTIVE JUROR:  I graduated from college.

15             THE COURT:  Where did you go to college?

16             THE PROSPECTIVE JUROR:  Baruch.

17             THE COURT:  Baruch.  In Manhattan?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  What degree did you get?

20             THE PROSPECTIVE JUROR:  Just B.A.

21             THE COURT:  B.A.?

22             THE PROSPECTIVE JUROR:  Accounting.

23             THE COURT:  In accounting.

24             THE PROSPECTIVE JUROR:  Uh-huh.

25             THE COURT:  Did you go to any school after you got

Prospective Juror 41                                    51

1    the B.A.?

2              THE PROSPECTIVE JUROR:  No.

3              THE COURT:  Okay.  Do you have any children?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  How old are they?

6              THE PROSPECTIVE JUROR:  Twenty-four and a half and

7    twenty-one.

8              THE COURT:  Is it boys, girls, or one of each?

9              THE PROSPECTIVE JUROR:  One of each.

10             THE COURT:  What do they do?

11             THE PROSPECTIVE JUROR:  Son is working at a

12   hospital.  Daughter is in the second year of college.

13             THE COURT:  Where does she go?

14             THE PROSPECTIVE JUROR:  She's going to St. John's.

15             THE COURT:  In Queens?

16             THE PROSPECTIVE JUROR:  Queens.

17             THE COURT:  And do you know what she's studying?

18             THE PROSPECTIVE JUROR:  Physician assistant.

19             THE COURT:  Physician's assistant.  Have you ever

20   been on a jury before?

21             THE PROSPECTIVE JUROR:  I haven't served on a jury.

22             THE COURT:  Never served?

23             THE PROSPECTIVE JUROR:  Huh-uh.

24             THE COURT:  Okay.  Have either you or your husband

25   ever been the victim of a fraud or a crime of violence?

1              THE PROSPECTIVE JUROR:  We've been victims of a

2      crime, yes.

3              THE COURT:  What crime?

4              THE PROSPECTIVE JUROR:  Robbery.

5              THE COURT:  Robbery.

6              THE PROSPECTIVE JUROR:  Uh-huh.

7              THE COURT:  Did they come in your house?

8              THE PROSPECTIVE JUROR:  No, it was, like, gunpoint.

9      We were robbed in our place where we live, the garden area,

10     the co-op place.

11             THE COURT:  Did you live in a co-op in the past?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Was that in Manhattan?

14             THE PROSPECTIVE JUROR:  No, that was in Queens also.

15             THE COURT:  Queens.  And how long ago was that,

16     ma'am?

17             THE PROSPECTIVE JUROR:  Fifteen years.

18             THE COURT:  Fifteen years?

19             THE PROSPECTIVE JUROR:  Uh-huh.

20             THE COURT:  Did they catch anybody?

21             THE PROSPECTIVE JUROR:  They did, but he got off.

22             THE COURT:  He got off?

23             THE PROSPECTIVE JUROR:  Uh-huh.

24             THE COURT:  I see.  Would that affect your service

25     here?

Prospective Juror 41                                53

1        THE PROSPECTIVE JUROR:  I would think so.

2        THE COURT:  What?

3        THE PROSPECTIVE JUROR:  I would think so.

4        THE COURT:  Why?

5        THE PROSPECTIVE JUROR:  Just because that wasn't the

6    first time that I have been robbed.  I worked in restaurant

7    where my parents own.  That's in -- I forgot.  Brooklyn area,

8    where usually we've been constantly robbed at gunpoint.

9        THE COURT:  You think that would affect you?

10        THE PROSPECTIVE JUROR:  I think so.

11        THE COURT:  In other words, it would be hard for you

12    to be fair?

13        THE PROSPECTIVE JUROR:  Yeah.

14        THE COURT:  All right.  I'll excuse you.  Thank you

15    very much.

16        THE CLERK:  Just report to the central jury room.

17    Let them know you've been excused.

18        THE PROSPECTIVE JUROR:  Downstairs.

19        THE CLERK:  Yes.  Downstairs.

20        THE COURT:  Thank you.

21        THE CLERK:  Next juror is Number 29.

22        THE COURT:  Hello.  How are you?

23        THE PROSPECTIVE JUROR:  Good.

24        THE COURT:  Why don't you put your coat down and

25    make yourself comfortable.  Make sure the coat doesn't fall on

Prospective Juror 29                                              54

1    the floor there.  Pull it up a little bit.

2                THE PROSPECTIVE JUROR:  I'll put it across.

3                THE COURT:  Okay.  Whatever you want.  Okay.  Good.

4    Were you able to hear what I had to say when you were in here

5    with all the other jurors?

6                THE PROSPECTIVE JUROR:  Yes.

7                THE COURT:  Could you speak nice and loud, please.

8    The gentleman at the end of the table, the one with the white

9    hair who's whispering in the other lawyer's ear, would you

10   talk to him.  That way, if you talk to him, everybody in the

11   courtroom here inside the rail will hear.  Okay?

12               THE PROSPECTIVE JUROR:  Okay.

13               THE COURT:  Don't be shy.  Talk up.  Everybody is

14   going to be friendly.  Just talk up.  Okay.  Where do you

15   live?

16               THE PROSPECTIVE JUROR:  I live in Jamaica, Queens.

17               THE COURT:  Jamaica, Queens.  Do you have your own

18   home?

19               THE PROSPECTIVE JUROR:  Yes.

20               THE COURT:  How long have you had the home?

21               THE PROSPECTIVE JUROR:  Thirteen years now.

22               THE COURT:  Thirteen?

23               THE PROSPECTIVE JUROR:  Yes.

24               THE COURT:  Okay.  And you're married?

25               THE PROSPECTIVE JUROR:  Living with someone.

Prospective Juror 29                                      55

1           THE COURT:  You're living with someone?  All right.
2   How long have you and -- is it a man?
3           THE PROSPECTIVE JUROR:  Yes.
4           THE COURT:  These days you never know whether it's a
5   man or woman; that's why I got to ask.
6           THE PROSPECTIVE JUROR:  Right.
7           THE COURT:  Now, have you been living with him a
8   while?
9           THE PROSPECTIVE JUROR:  Sixteen years.
10          THE COURT:  That's a while.  Okay.  A lot of people
11  aren't even married that long.  What does he do for a living?
12          THE PROSPECTIVE JUROR:  He works in machine shop.
13          THE COURT:  In a machine shop?
14          THE PROSPECTIVE JUROR:  Yes.
15          THE COURT:  And does he own the home, or do you own
16  the home, or do the both of you own the home?
17          THE PROSPECTIVE JUROR:  Both of us.
18          THE COURT:  Both of you?
19          THE PROSPECTIVE JUROR:  Yeah.
20          THE COURT:  So you trust him quite a bit?
21          THE PROSPECTIVE JUROR:  Yes.
22          THE COURT:  What?
23          THE PROSPECTIVE JUROR:  Yes.
24          THE COURT:  What do you do for a living?
25          THE PROSPECTIVE JUROR:  I do home care.

Prospective Juror 29                          56

1            THE COURT:  You do home care?

2            THE PROSPECTIVE JUROR:  Yes.

3            THE COURT:  In other words, you take care of people

4    that are sick?

5            THE PROSPECTIVE JUROR:  The elderly.

6            THE COURT:  Do you work, theoretically, for a

7    hospital?

8            THE PROSPECTIVE JUROR:  No, I work in the home, the

9    house, the apartment.

10           THE COURT:  You work in their apartment?

11           THE PROSPECTIVE JUROR:  Yeah.

12           THE COURT:  Who sends you to the apartment?

13           THE PROSPECTIVE JUROR:  I work with the agency.

14           THE COURT:  The agency?

15           THE PROSPECTIVE JUROR:  Yes.

16           THE COURT:  I see.  Are you a native of the New York

17   area?

18           THE PROSPECTIVE JUROR:  Like, moving around?

19           THE COURT:  No, where are you from originally.

20           THE PROSPECTIVE JUROR:  Oh, I'm from -- I born in

21   Guyana.

22           THE COURT:  Indiana?

23           THE PROSPECTIVE JUROR:  Guyana.

24           THE COURT:  Oh, Guyana.  Okay.  How long have you

25   been in the United States?

1              THE PROSPECTIVE JUROR:  '89.

2              THE COURT:  Since 1989?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Thirty-four years?

5              THE PROSPECTIVE JUROR:  No, 20.  23.  24.

6              THE COURT:  '89?  That's -- 11 and 13's 24.  You're

7      right.  I'm wrong; right?

8              THE PROSPECTIVE JUROR:  Sometimes you forgot and

9      make mistake.

10             THE COURT:  Okay.  Sure, we all do.  I certainly do.

11     All right.  So did you go to school in Guyana?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  What did you study?

14             THE PROSPECTIVE JUROR:  I just went to primary

15     school, to seventh grade.

16             THE COURT:  Seventh grade?

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  And you're a citizen?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  And when did you become a citizen?

21             THE PROSPECTIVE JUROR:  I become a citizen five

22     years after I came over here.

23             THE COURT:  Five years after you got here?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  Were you sworn in here, in this

1   building, or the old building?

2           THE PROSPECTIVE JUROR:  I don't remember if -- I

3   think it was at the same building.

4           THE COURT:  Same building?

5           THE PROSPECTIVE JUROR:  Yeah, I think.

6           THE COURT:  Have you ever been on a jury before?

7           THE PROSPECTIVE JUROR:  I was.  No.  But they call

8   it Jamaica, Queens.

9           THE COURT:  They called you to Jamaica?  They asked

10  you questions and then they let you go?

11          THE PROSPECTIVE JUROR:  Yeah.

12          THE COURT:  Okay.  How long ago was that?

13          THE PROSPECTIVE JUROR:  A few years.  I don't

14  remember.

15          THE COURT:  A few years ago?

16          THE PROSPECTIVE JUROR:  Yeah.

17          THE COURT:  And is there anything about this case

18  that gives you any problems about being fair and impartial?

19  Can you be fair and impartial?

20          THE PROSPECTIVE JUROR:  For me, education wise, I

21  didn't go far in school to do that in, like, education.

22          THE COURT:  Well, have you been able to understand

23  what I'm saying?

24          THE PROSPECTIVE JUROR:  Yes, I understand what

25  you're saying.

1          THE COURT:  If you understand what I'm saying you

2    got enough education.  All right.  But you do understand me?

3          THE PROSPECTIVE JUROR:  Yes, I understand.

4          THE COURT:  Okay.  Fine.  Do you understand that

5    policemen and FBI agents, you have to judge their testimony

6    the same as everybody else's?  You can't say, well, he's an

7    FBI agent, he has to be telling the truth; he's an FBI agent,

8    he's got to be lying?  You don't say that.  You say I'm going

9    to judge each guy individually.  Is that right?

10         THE PROSPECTIVE JUROR:  Yes.

11         THE COURT:  Do you agree with me?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Okay.  Now, when did you buy the home?

14   How many years ago?

15         THE PROSPECTIVE JUROR:  Thirteen.

16         THE COURT:  Thirteen years ago.

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  You must have worked hard to do it.

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  You own your own home, is pretty good

21   stuff?

22         THE PROSPECTIVE JUROR:  Yes, paying a mortgage every

23   month.

24         THE COURT:  Excuse me?

25         THE PROSPECTIVE JUROR:  It's paying a mortgage every

1  month; I have to work hard.

2          THE COURT:  Is -- your companion, is he from Guyana,

3  too?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Do you have children?

6          THE PROSPECTIVE JUROR:  One son.

7          THE COURT:  How old is he?

8          THE PROSPECTIVE JUROR:  Fifteen.

9          THE COURT:  Fifteen.  Does he go to school?

10         THE PROSPECTIVE JUROR:  Yes.  He's in high school.

11         THE COURT:  Has he ever been in any kind of trouble?

12         THE PROSPECTIVE JUROR:  No.

13         THE COURT:  All right.  And any challenges for

14  cause?

15         MR. GOLTZER:  No, your Honor.

16         MR. MILLER:  No, sir.

17         THE COURT:  Okay.  You come back Thursday morning,

18  10:00 o'clock, in the central jury room.  Thank you very much.

19         THE PROSPECTIVE JUROR:  Thank you.  10:00 o'clock

20  Thursday.

21         THE COURT:  This Thursday, 10:00 o'clock.

22         THE PROSPECTIVE JUROR:  Okay.  Thank you.

23         THE COURT:  To the central jury room.

24         THE PROSPECTIVE JUROR:  Okay.  Thank you.

25         MR. GOLTZER:  Did your Honor ask about victim

1    offenses?  I don't recall.

2              THE COURT:  About what?

3              MR. GOLTZER:  Victim of crime?

4              THE COURT:  Yeah, I thought I did.

5              You haven't been the victim of a crime?

6              THE PROSPECTIVE JUROR:  No, but they breaking in my

7    house, and they came when I was coming home.  I go to open the

8    door, the guy open the door, two of them, and they say good

9    afternoon to me, and they walk out and I call the cops.

10             THE COURT:  Did the cops come?

11             THE PROSPECTIVE JUROR:  Yeah, they came.

12             THE COURT:  Did they catch them?

13             THE PROSPECTIVE JUROR:  No, they took everything I

14   had in the apartment; my money, and jewelry, everything.

15             THE COURT:  Very unpleasant experience.  Would that

16   affect your service?

17             THE PROSPECTIVE JUROR:  I think so.

18             THE COURT:  How?

19             THE PROSPECTIVE JUROR:  A little scared.

20             THE COURT:  Well -- but how long ago was that?

21             THE PROSPECTIVE JUROR:  Last year.

22             THE COURT:  This year?

23             THE PROSPECTIVE JUROR:  Last year.

24             THE COURT:  And you think that would affect you?

25             THE PROSPECTIVE JUROR:  Just a little scared, that's

Prospective Juror 26                                    62

1   all.

2          THE COURT:  Are you scared here in court?

3          THE PROSPECTIVE JUROR:  No, I'm not scared here, but

4   at the time I was scared.

5          THE COURT:  At the time, sure; you saw a guy that

6   was in your house.

7          THE PROSPECTIVE JUROR:  Because they could have

8   pulled me into the apartment.

9          THE COURT:  Would that affect you here, is what I

10  want to know?

11         THE PROSPECTIVE JUROR:  I'm not sure.

12         THE COURT:  All right.  I'll excuse you.  Thank you.

13  You're excused.

14         THE PROSPECTIVE JUROR:  Okay.  Thank you.

15         THE CLERK:  Just go back to the central jury room

16  and let them know you've been excused.

17         THE PROSPECTIVE JUROR:  Okay.

18         THE CLERK:  Next juror is Number 26.

19         THE COURT:  Hello.  How are you?

20         THE PROSPECTIVE JUROR:  Good.  How are you?

21         THE COURT:  Fine.  Get yourself set.  Get yourself

22  comfortable.  Okay.

23         THE PROSPECTIVE JUROR:  Okay.

24         THE COURT:  Good.  Will you speak to the last

25  gentleman at the table there, the gentleman with the white

Prospective Juror 26                    63

1   hair.  If you talk to him, everybody here will hear you.  It's

2   important everybody hears you.

3                THE PROSPECTIVE JUROR:  Okay.

4                THE COURT:  Where do you live?

5                THE PROSPECTIVE JUROR:  Brooklyn, New York.

6                THE COURT:  What part of town?

7                THE PROSPECTIVE JUROR:  Bensonhurst.

8                THE COURT:  Bensonhurst.  How long you lived there?

9                THE PROSPECTIVE JUROR:  The past 20 years.

10               THE COURT:  All right.  What do you do for a living?

11               THE PROSPECTIVE JUROR:  I work for the City under

12   the Deputy Mayor of Health and Human Services.

13               THE COURT:  You work for the Deputy Mayor of Health

14   and Human Services?

15               THE PROSPECTIVE JUROR:  (Inaudible response.)

16               THE COURT:  You work in Manhattan?  Brooklyn?

17               THE PROSPECTIVE JUROR:  Brooklyn.

18               THE COURT:  Where?  Down the street?

19               THE PROSPECTIVE JUROR:  Yeah, J Street.

20               THE COURT:  How long you been doing that?

21               THE PROSPECTIVE JUROR:  I started in March.

22               THE COURT:  In March.  And how far did you go in

23   school?

24               THE PROSPECTIVE JUROR:  Graduate school.

25               THE COURT:  What did you take as a graduate degree?

1          THE PROSPECTIVE JUROR:  Master's in social work.

2          THE COURT:  Where did you go?

3          THE PROSPECTIVE JUROR:  Columbia.

4          THE COURT:  Where did you go undergraduate?

5          THE PROSPECTIVE JUROR:  Baruch.

6          THE COURT:  And where did you go to high school?

7          THE PROSPECTIVE JUROR:  In Brooklyn, New Utrecht

8   High School.

9          THE COURT:  Are you married or single?

10          THE PROSPECTIVE JUROR:  I'm single.

11          THE COURT:  And do you live with your folks, or do

12   you live alone or with someone?

13          THE PROSPECTIVE JUROR:  I live alone.

14          THE COURT:  You live alone.  Do you have a co-op or

15   do you rent?

16          THE PROSPECTIVE JUROR:  I have a house.

17          THE COURT:  And you rent the house?

18          THE PROSPECTIVE JUROR:  Yes, I rent it from my

19   parents.

20          THE COURT:  Oh, okay.  They don't live there?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  And are your parents both alive?

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  What does your dad do for a living.

25          THE PROSPECTIVE JUROR:  Retired.

1          THE COURT:  What did they do?

2          THE PROSPECTIVE JUROR:  He worked in a restaurant as

3    a cook.

4          THE COURT:  Did your mother work?

5          THE PROSPECTIVE JUROR:  She worked as a seamstress.

6          THE COURT:  As a seamstress?

7          THE PROSPECTIVE JUROR:  On and off.

8          THE COURT:  On and off.  And do you have brothers

9    and sisters.

10         THE PROSPECTIVE JUROR:  I have two older brothers.

11         THE COURT:  What do they do?

12         THE PROSPECTIVE JUROR:  One is a waiter.  The other

13   is a -- he works in finance.

14         THE COURT:  In a bank?

15         THE PROSPECTIVE JUROR:  No, also for the City, in

16   the Finance Department.

17         THE COURT:  I see.  And have you ever been the

18   victim of a crime of anything?

19         THE PROSPECTIVE JUROR:  No.

20         THE COURT:  Okay.  So far as you know, has your

21   mother or father ever been the victim of a crime?

22         THE PROSPECTIVE JUROR:  No.

23         THE COURT:  Okay.  Have you ever been on a jury

24   before?

25         THE PROSPECTIVE JUROR:  No.

1          THE COURT:  And do you have any close friends or

2    relatives in the police department are in the Federal Bureau

3    of Investigation?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  If we were trying a bank robbery case,

6    there would be people here from banks.  We're not trying a

7    bankrupt robbery case, we're trying this case, which is

8    conspiracy of alleged conspiracy to murder.  There's going to

9    be FBI agents testifying.  Do you understand each witness has

10   to be gauged and judged individually?  You can't say, well, if

11   it was a bank robbery, it was somebody from a bank, they're

12   not automatically telling the truth because they're from a

13   bank; right?

14         THE PROSPECTIVE JUROR:  Right.

15         THE COURT:  On the other hand, they're not

16   automatically lying because they're from a bank, are they?

17         THE PROSPECTIVE JUROR:  Correct.

18         THE COURT:  What do you do?  You judge them how?

19         THE PROSPECTIVE JUROR:  Judge them based on other

20   evidence that was presented.

21         THE COURT:  And also on their own testimony; right?

22         THE PROSPECTIVE JUROR:  Right.

23         THE COURT:  Okay.  You judge them individually, in

24   other words?

25         THE PROSPECTIVE JUROR:  Correct.

1          THE COURT:  Okay.  There are going to be recordings

2     that are played here.  Some of them are telephone recordings.

3     Some of them are other recordings.  If I let the recordings be

4     played, they're part of the evidence.  You don't have to

5     decide whether they're in evidence or not in evidence; I

6     decide that.  But I'm going to tell you ahead of time some of

7     the language on some of the recordings you're not going to

8     hear in church, if you go to church on Sunday; do you

9     understand what I'm saying?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Okay.  Would that affect you in any way?

12    You've heard language like that before; right?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Okay.  Unfortunately I guess we all do

15    in New York; right?

16          THE PROSPECTIVE JUROR:  (Inaudible response.)

17          THE COURT:  What?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Okay.  Is there anything about the case

20    can you be fair and impartial?

21          THE PROSPECTIVE JUROR:  I believe so.

22          THE COURT:  Okay.  Any challenge for cause?

23          MR. GOLTZER:  No, your Honor.

24          MR. MILLER:  No, sir.

25          THE COURT:  All right.  You come back, if you would.

Prospective Juror 26                                    68

1    And you're Juror Number 26?

2            THE PROSPECTIVE JUROR:  Correct.

3            THE COURT:  You come back Thursday morning at

4    10:00 o'clock.  Report to the central jury room, please.

5    Thank you.

6            THE PROSPECTIVE JUROR:  Thursday at 10:00.

7            THE COURT:  Thursday at 10:00.  Thank you very much.

8            THE CLERK:  The Next Juror is Number 7.

9                (Proceedings continued on next page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Prospective Juror 7                                    69

1    (CONTINUING)

2              (Prospective Juror 7 enters the courtroom.)

3              THE COURT:  Good afternoon.

4              THE PROSPECTIVE JUROR:  Hello, sir, how are you?

5              THE COURT:  Be as comfortable as you can.  If you

6    want to put your coat over the rail, you can, thank you.

7              Were you able to hear what I had to say when you

8    were all here in the room earlier?

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  Good.  And the gentleman there at the

11   end of table who just raised his right hand, speak to him not

12   me.

13             THE PROSPECTIVE JUROR:  Sure.

14             THE COURT:  If you speak to him, everybody here will

15   hear you and it's important everybody hear you, not just me.

16             THE PROSPECTIVE JUROR:  Yes, sir.

17             THE COURT:  Other than to answer my question, forget

18   me, talk to them.

19             Where do you live?

20             THE PROSPECTIVE JUROR:  I live in Downtown Brooklyn.

21             THE COURT:  Downtown Brooklyn.  Do you have a co-op

22   or do you rent?

23             THE PROSPECTIVE JUROR:  Co-op.

24             THE COURT:  Are you married or single.

25             THE PROSPECTIVE JUROR:  Single.

Prospective Juror 7                                    70

1          THE COURT:  What do you do for a living?

2          THE PROSPECTIVE JUROR:  I am a bookkeeper at a

3    business management firm.

4          THE COURT:  A business management firm.

5          Is that firm in Manhattan, Brooklyn or somewhere

6    else?

7          THE PROSPECTIVE JUROR:  Manhattan.

8          THE COURT:  Manhattan.

9          How long have you been working there?

10         THE PROSPECTIVE JUROR:  I've been working there

11   since October.

12         THE COURT:  October, and what did you do before

13   that.

14         THE PROSPECTIVE JUROR:  I did the same kind of work

15   at a different firm.

16         THE COURT:  A different firm.  Is this a better job?

17         THE PROSPECTIVE JUROR:  It is a better job.

18         THE COURT:  Okay, that means you get paid more.

19         THE PROSPECTIVE JUROR:  I do.

20         THE COURT:  Good for you.  That's what we all want.

21         Now, how far did you go in school?

22         THE PROSPECTIVE JUROR:  Some college.

23         THE COURT:  And where did you go?

24         THE PROSPECTIVE JUROR:  I went to Los Rios Community

25   College in northern California.

Prospective Juror 7                                        71

1           THE COURT:  Northern California.

2           THE PROSPECTIVE JUROR:  Correct.

3           THE COURT:  Are you from California or New York or

4    some other place?

5           THE PROSPECTIVE JUROR:  Born in Plattsburg.

6           THE COURT:  Plattsburg, New York.

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  That's the old Army --

9           THE PROSPECTIVE JUROR:  Air Force, that's where I

10   was born.

11          THE COURT:  There used to be an old National Guard

12   place.  You're born in Plattsburg, yes.

13          THE PROSPECTIVE JUROR:  Grew up in Sacramento.

14          THE COURT:  Capital of the State.

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Nice town, good town Sacramento.

17          How long have you been in New York?

18          THE PROSPECTIVE JUROR:  I've been in New York for

19   eight years.

20          THE COURT:  Okay.  And the co-op, how long have you

21   lived there?

22          THE PROSPECTIVE JUROR:  Eight years.

23          THE COURT:  Have you ever been on a jury before?

24          THE PROSPECTIVE JUROR:  I've served as an alternate

25   on a jury.

Prospective Juror 7                                    72

1          THE COURT:  That was in State Court or Federal

2    Court?

3          THE PROSPECTIVE JUROR:  State Court.

4          THE COURT:  And do you remember -- I don't want to

5    know what the result of the case was, that's none of my

6    business -- but do you remember what the charge of the case

7    was?

8          THE PROSPECTIVE JUROR:  It was a criminal charge, I

9    believe it was drug possession.

10          THE COURT:  Drug possession, okay.

11          How long ago was that, about?

12          THE PROSPECTIVE JUROR:  It was 2008.

13          THE COURT:  Five years ago, okay.

14          Is there anything about this case that causes you

15    any particular problems, can you be fair and impartial in

16    other words?

17          THE PROSPECTIVE JUROR:  I can be fair and impartial.

18          THE COURT:  Okay.

19          Do you understand that the testimony of law

20    enforcement officials, whether they be FBI agents or whether

21    they be New York policemen, whether they be DEA agents, Secret

22    Service men or Secret Service women, that their testimony is

23    to be gauged and judged the same as anybody else?

24          In other words, nobody gets an advantage because of

25    their job or title, or nobody has a disadvantage.  Every

Prospective Juror 7                                       73

1   witness has to be judged individually.

2          Do you accept that?

3          THE PROSPECTIVE JUROR:  Yes, sir.

4          THE COURT:  Okay.

5          There are going to be tape recordings played here, I

6   can tell you that.  Some of the language on the tape

7   recordings -- you're smiling for me so you anticipate what I'm

8   going to tell you -- some of the language on the tape

9   recordings, as I said to some of the other folks that have

10  been in the chair there, you wouldn't hear in church on

11  Sunday.

12         Is that going to particularly upset you?

13         THE PROSPECTIVE JUROR:  No.

14         THE COURT:  Okay.  You've heard that language

15  before.

16         THE PROSPECTIVE JUROR:  I have.

17         THE COURT:  We all have in New York; right?

18         THE PROSPECTIVE JUROR:  Eight years.

19         THE COURT:  Okay.  You maybe even heard it in

20  Sacramento, for all I know.

21         THE PROSPECTIVE JUROR:  Yeah.

22         THE COURT:  Have you ever been a victim of a crime?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  Okay.  You can be fair and impartial.

25         THE PROSPECTIVE JUROR:  Yes, sir.

Prospective Juror 7                                      74

1          THE COURT:  Any challenges for cause?

2          MR. MILLER:  No, Your Honor.

3          MR. GOLTZER:  No.

4          THE COURT:  Okay.

5          Come back Thursday morning to the central jury room

6    please, sir.

7          THE PROSPECTIVE JUROR:  Thursday morning.

8          THE COURT:  Thursday morning at 10:00 o'clock.

9          THE PROSPECTIVE JUROR:  Okay, thank you.

10         THE COURT:  Thank you very much, don't forget your

11   jacket, thank you.

12         THE PROSPECTIVE JUROR:  Thank you.

13         (Prospective Juror 7 exits the courtroom.)

14         THE COURTROOM CLERK:  The next juror is Juror

15   Number 1.

16         (Discussion held off the record.)

17         MR. MILLER:  Your Honor, if I could raise one issue?

18         THE COURT:  Yes.

19         MR. MILLER:  I think we would request some sort of a

20   question of the jurors during the colloquy as to something of

21   the effect of have you ever had an experience with the Federal

22   Government that would affect your ability to serve fairly or

23   impartially.

24         THE COURT:  In other words --

25         MR. GOLTZER:  They've paid their taxes, it seems to

Prospective Juror 1                                    75

1    me.

2                THE COURT:  We all have unpleasant experiences, all

3    right.

4                (Prospective Juror 1 enters the courtroom.)

5                THE PROSPECTIVE JUROR:  Good morning, Your Honor.

6                THE COURT:  Good morning.  It's not morning anymore.

7                THE PROSPECTIVE JUROR:  Yes, it's just

8    12:00 o'clock.

9                THE COURT:  How are you?

10               THE PROSPECTIVE JUROR:  All right, how about you?

11               THE COURT:  Good, good.

12               Speak up nice and loud so that the gentlemen at the

13   very end of the table there who has raised his hand, so he can

14   hear you because everybody inside the rails here can hear you,

15   so talk to him instead of me.

16               THE PROSPECTIVE JUROR:  Sounds good, all right,

17   sure.

18               THE COURT:  All right.

19               THE PROSPECTIVE JUROR:  All right, cool.

20               THE COURT:  Where do you live?

21               THE PROSPECTIVE JUROR:  Kings Park, New York.

22               THE COURT:  Kings Park.

23               THE PROSPECTIVE JUROR:  Suffolk County, yes.

24               THE COURT:  What do you do, take the Long Island in?

25               THE PROSPECTIVE JUROR:  Yes.

Prospective Juror 1                              76

1          THE COURT:  To the Brooklyn station?

2          THE PROSPECTIVE JUROR:  Take the Long Island

3    Railroad in.  I took the 6:28 this morning.

4          THE COURT:  6:28.

5          THE PROSPECTIVE JUROR:  Yeah, it's all right.

6    Everyone's gotta wake up early.

7          THE COURT:  Where is that, that's past Northport?

8          THE PROSPECTIVE JUROR:  Yeah, one stop past

9    Northport.

10         THE COURT:  How long have you lived out there.

11         THE PROSPECTIVE JUROR:  I moved there, I grew up in

12   Brooklyn.  I grew up in Marine Park and I moved out there, I

13   think, eight years ago now, nine years ago.

14         THE COURT:  Do you work out there?

15         THE PROSPECTIVE JUROR:  Yeah, I work at a physical

16   therapist's -- physical therapy office, I'm an aide there.

17         THE COURT:  You're an aide in a physical therapist's

18   office?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Is that out in Kings Park also?

21         THE PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Are you married or single?

23         THE PROSPECTIVE JUROR:  Single.

24         THE COURT:  And do you have your own home, do you

25   rent, do you live with your folks.

Prospective Juror 1                         77

1          THE PROSPECTIVE JUROR:  I live with my parents right

2     now.

3          THE COURT:  I see.

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  What do your father and mother do?

6          THE PROSPECTIVE JUROR:  My father is a retired

7     police officer from the NYPD and my mother is a bookkeeper for

8     a company near Hempstead.

9          THE COURT:  Now, there are not going to be any

10    New York police testifying that I know of.  If there were, I

11    think they would have indicated that to me on the long list

12    that I read off, but the fact of the matter is that law

13    enforcement agents, whether they're policemen, FBI agents, DEA

14    agents, Secret Service people, Nassau County policemen,

15    Suffolk County policemen, they are not entitled to any greater

16    belief or less belief just because they are a cop.

17          Does that make sense to you?

18          THE PROSPECTIVE JUROR:  Yes.  Absolutely.

19          THE COURT:  Absolutely, right.  Because there are

20    good cops and bad cops.

21          THE PROSPECTIVE JUROR:  Of course.

22          THE COURT:  Good judges and bad judges, like

23    everything in the world.

24          THE PROSPECTIVE JUROR:  Right.

25          THE COURT:  Okay.  Now, can you be fair and

1  impartial in this case?  You've heard the charges, you don't

2  know anything about the case, but you've heard the charges.

3             THE PROSPECTIVE JUROR:  I have heard and to me,

4  honestly, I do agree that there are good cops and bad cops but

5  for me being the son of a police officer, I just kind of think

6  that -- I know I'm supposed to look at things objectively.

7             THE COURT:  Yes.

8             THE PROSPECTIVE JUROR:  But for me sometimes, it's

9  just hard to take the word of an officer as kind of wrong.

10  Just the way growing up with a cop, everything like that.

11             THE COURT:  But there are not going to be any cops

12  testifying.

13             THE PROSPECTIVE JUROR:  I understand, I'm just

14  saying when you're talking about police officers.

15             THE COURT:  But how about FBI agents?

16             THE PROSPECTIVE JUROR:  Well, yeah.  FBI agents I

17  think are another story.  I think, yeah.

18             THE COURT:  You think they're another story.

19             THE PROSPECTIVE JUROR:  I think they're more

20  honorable.

21             THE COURT:  You think they are more honorable.

22             THE PROSPECTIVE JUROR:  I think they hold themselves

23  to a higher...

24             THE COURT:  Okay.  But could there be bad FBI

25  agents?

1    THE PROSPECTIVE JUROR:  There could be, sure.  Sure

2  there could be.

3    THE COURT:  Wasn't there a guy by the name of Ames?

4    THE PROSPECTIVE JUROR:  There was.

5    THE COURT:  Remember him?

6    THE PROSPECTIVE JUROR:  I do.

7    THE COURT:  What did he do?  He sold secrets to the

8  Russians, didn't he?

9    THE PROSPECTIVE JUROR:  Yeah, he was bad.

10    THE COURT:  That wasn't a particularly good way of

11  operating.  Maybe I've got the wrong name, but the point is

12  you're a physical therapist.  There are plenty of good

13  physical therapists and plenty of bad ones, same thing.

14    THE PROSPECTIVE JUROR:  Exactly, right, I agree.

15    THE COURT:  Okay.  So, can you take everything

16  individually?  That's what I'm asking.

17    THE PROSPECTIVE JUROR:  Yeah, sure.

18    THE COURT:  Have you ever been the victim of a

19  crime.

20    THE PROSPECTIVE JUROR:  Yes.  Disorderly conduct.

21    THE COURT:  You were a victim of disorderly conduct?

22    THE PROSPECTIVE JUROR:  No, not a victim, excuse me,

23  I'm sorry.

24    THE COURT:  They said you were disorderly.

25    THE PROSPECTIVE JUROR:  They said I was disorderly,

Prospective Juror 1                    80

1   yes.

2           THE COURT:  Did you have a couple of drinks too

3   many?

4           THE PROSPECTIVE JUROR:  It was a bad night in

5   college, my friends got into a fight and I got involved,

6   trying to...

7           THE COURT:  Trying to break it up.

8           THE PROSPECTIVE JUROR:  Trying to break it up and I

9   got the bad rap, so.

10          THE COURT:  Where did you go to college?

11          THE PROSPECTIVE JUROR:  SUNY Oswego.

12          THE COURT:  SUNY Oswego.  Oh, the Upstate cops must

13  be tough.

14          THE PROSPECTIVE JUROR:  They're all right.

15          THE COURT:  They're all right.

16          THE PROSPECTIVE JUROR:  They're all right.  I grew

17  up with a City cop, so they're not as tough as him.

18          THE COURT:  They're not as tough as New York City

19  cops.

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  But they brought you to court in Oswego?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Did you do time?

24          THE PROSPECTIVE JUROR:  No, no.  I pleaded.  Under

25  the advice of my father, I pleaded guilty and I just said all

Prospective Juror 1                              81

1   right.  And they gave -- I didn't have any community service

2   or anything like that.

3            THE COURT:  They gave you a pardon?

4            THE PROSPECTIVE JUROR:  They gave me a pardon, yes.

5            THE COURT:  So, you can be mad at cops, too, because

6   they locked you up.

7            THE PROSPECTIVE JUROR:  You know what, it's all

8   right.

9            THE COURT:  All right.  And have you ever had any

10  problems with the Federal Government?

11           THE PROSPECTIVE JUROR:  Not with the Federal, no.

12           THE COURT:  Just with the people up in Oswego.

13           THE PROSPECTIVE JUROR:  Just with the people up

14  there, yeah.

15           THE COURT:  What year were in you when that

16  happened?

17           THE PROSPECTIVE JUROR:  I think I was a junior at

18  that point.

19           THE COURT:  What was it a Saturday night?

20           THE PROSPECTIVE JUROR:  Yeah, it was a Saturday

21  night.  I was on the wrestling team.

22           THE COURT:  Oh, you were on the wrestling team.

23           THE PROSPECTIVE JUROR:  Yeah, my friends happened to

24  be -- they get the beer muscles.  I really don't get it.

25           THE COURT:  They get the beer muscles, okay.

1          THE PROSPECTIVE JUROR:  That term is just when

2    people go out drinking, they tend to think they're tougher

3    than they are, and I was trying to be the peacemaker of all

4    that.

5          THE COURT:  At my age, I don't go drinking anymore,

6    but I can remember back to college people got a little

7    firewater in them, they thought they were tougher than they

8    were.

9          THE PROSPECTIVE JUROR:  Sure.

10          THE COURT:  All right, now, in this case, if you're

11    chosen, you're going to hear tapes, tape recordings.  Some of

12    them are phone conversations, some of them are just

13    person-to-person conversations.  Some of the language you

14    wouldn't hear, if you go to church, you wouldn't hear in

15    church.

16          Do you understand what I mean?

17          THE PROSPECTIVE JUROR:  Mm-hmm.

18          THE COURT:  Is that going to foul you up in any way

19    insofar as being fair and impartial?

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  Can you be fair and impartial?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  All right.

24          Have you ever been on a jury?

25          THE PROSPECTIVE JUROR:  No.

```
                        Side-Bar                      83

 1            THE COURT:  All right.

 2            Any challenges for cause?

 3            MR. MILLER:  No, Your Honor.

 4            MR. GOLTZER:  Yes.

 5            THE COURT:  Challenge for cause?

 6            MR. GOLTZER:  Yes, sir.

 7            THE COURT:  All right, come on up and let's hear it.

 8            (Side-bar conference held on the record out of the

 9    hearing of the jury.)

10

11            (Side-bar.)

12            THE COURT:  What is your challenge?

13            MR. GOLTZER:  We feel that his relationship with his

14    father and his statement that New York City police are

15    probably to be believed more than most and that FBI agents are

16    even more honorable, we give him a state of mind that he

17    wouldn't be able to be putting aside.

18            THE COURT:  What about what I discussed with him

19    about Agent Ames?

20            MR. GOLTZER:  I think that's the exception that

21    probably proves the rule to him.  He still --

22            THE COURT:  Let me ask him.

23            MR. GOLTZER:  Judge.

24            THE COURT:  Look, if we excused everybody that was

25    related to a law enforcement official, we would never get a
```

Proceedings                                84

1    jury.

2            Now my wife has been on four juries in Bronx County,

3    we live in Riverdale, okay?

4            MR. GOLTZER:  I would probably pick your wife.

5            THE COURT:  This is a true story.  She was on an

6    arson case one time, okay, a State arson case.  The Judge knew

7    me, the lawyers knew me, I was on the bench then two or three

8    years.  They then said:  But do you have any contact with fire

9    officials?  At that point in time Joe Hynes was the fire

10   commissioner.  We had had dinner with Joe Hynes and his wife

11   the night before; this was on a Monday, we had dinner with

12   them on Sunday.

13           She said yes, as a matter of fact, we had dinner

14   with the fire commissioner yesterday.  They still picked her.

15   I mean, come on.

16           I am going to ask him a couple more questions, but

17   what do you want to say.

18           MR. GOLTZER:  I just want to say for the record that

19   I would never ask you to just disqualify somebody because they

20   were related or cared for a police officer.  This guy has an

21   attitude about cops that's going to put us at a serious

22   disadvantage.

23           THE COURT:  We'll ask about it.

24           (Side-bar end.)

25           (In open court.)

Prospective Juror 42                                    85

1          THE COURT:  The discussion we're having over here

2    relates to the fact that your father is a police officer and

3    you indicated that you might feel some partiality towards a

4    police officer.  Initially, you said that.

5          Then, as I understand it, you said well you could

6    judge all witnesses individually.

7          Now, do you honestly feel that you would be more

8    partial and view an FBI agent's testimony more favorably than

9    anybody else just because the person is a FBI agent?

10         THE PROSPECTIVE JUROR:  I sorta do.

11         THE COURT:  You do?  You're excused.

12         THE PROSPECTIVE JUROR:  Thank you.

13         THE COURT:  Thank you.

14         (Prospective Juror 1 exits the courtroom.)

15         THE COURTROOM CLERK:  The next juror is 42.

16         MR. GOLTZER:  Thank you, Judge.

17         THE COURT:  Just doing my job, you don't have to

18   thank me.

19         MR. GOLTZER:  I retract it.

20         (Discussion held off the record.)

21         (Prospective Juror 42 enters the courtroom.)

22         THE PROSPECTIVE JUROR:  Sit down?

23         THE COURTROOM CLERK:  Yes.

24         THE COURT:  All right.  Would you speak nice and

25   loud, please, so that the gentleman at the very end of the

VB        OCR        CRR

Prospective Juror 42                                86

1   table there can hear you.

2            THE PROSPECTIVE JUROR:  Sure.

3            THE COURT:  Where do you live, sir?  Just speak to

4   them, don't bother with me.

5            THE PROSPECTIVE JUROR:  A town and address?

6            THE COURT:  No, no, just what town do you live in?

7            THE PROSPECTIVE JUROR:  Lindenhurst.

8            THE COURT:  Lindenhurst?

9            THE PROSPECTIVE JUROR:  Yes.

10           THE COURT:  Okay.  Do you own your home or rent?

11           THE PROSPECTIVE JUROR:  I rent.

12           THE COURT:  Okay, and are you married or single?

13           THE PROSPECTIVE JUROR:  I'm married.

14           THE COURT:  And what do you do for a living?

15           THE PROSPECTIVE JUROR:  I work at JetBlue Airways as

16   a repairs coordinator.

17           THE COURT:  How long have you been doing that?

18           THE PROSPECTIVE JUROR:  For about a year now.

19           THE COURT:  Does your wife work outside of the home?

20           THE PROSPECTIVE JUROR:  Yes.

21           THE COURT:  What does she do?

22           THE PROSPECTIVE JUROR:  She works in retail.

23           THE COURT:  What does she sell?

24           THE PROSPECTIVE JUROR:  Clothing at Marshalls.

25           THE COURT:  Okay.  And does she work out on the

Prospective Juror 42                                    87

1    Island or in town?

2              THE PROSPECTIVE JUROR:  Out on the Island.

3              THE COURT:  Out on the island.

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Do you have any children, sir?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  How old are they?

8              THE PROSPECTIVE JUROR:  One.  I'm sorry, four years

9    old.  One child, four years old.

10             THE COURT:  I'm sorry, I asked the question in a way

11   that called for an answer that might be confusing.  It was my

12   question, not your answer.

13             How far did you go in school, sir?

14             THE PROSPECTIVE JUROR:  I took some technical

15   schooling twice and finished both of them.

16             THE COURT:  Where did you go?

17             THE PROSPECTIVE JUROR:  I went to Wilson Tech and

18   Flight Safety International.

19             THE COURT:  Was that out in the Island?

20             THE PROSPECTIVE JUROR:  Wilson Tech was out in the

21   Island, Flight Safety was here in Queens.

22             THE COURT:  I see, and are you a native of Queens?

23             THE PROSPECTIVE JUROR:  No.

24             THE COURT:  Where are you from originally?

25             THE PROSPECTIVE JUROR:  I was born in Dominican

Prospective Juror 42                                    88

1    Republic.

2              THE COURT:  How long have you been here?

3              THE PROSPECTIVE JUROR:  My whole life, I'm just born

4    down there.

5              THE COURT:  You don't have any accent at all.

6              THE PROSPECTIVE JUROR:  No, no.

7              THE COURT:  Is there anything about the case that

8    gives you any problems being fair and impartial?

9              THE PROSPECTIVE JUROR:  No, no issues.

10             THE COURT:  You can be fair and impartial?

11             THE PROSPECTIVE JUROR:  Of course.

12             THE COURT:  Do you have any close friends or

13   relatives in the New York City Police Department?

14             THE PROSPECTIVE JUROR:  No.

15             THE COURT:  Okay.  Have you ever been the victim of

16   a crime; fraud or a stick-up or anything like that?

17             THE PROSPECTIVE JUROR:  No.

18             THE COURT:  Okay.  And have you ever been on a jury

19   before?

20             THE PROSPECTIVE JUROR:  No.

21             THE COURT:  Now, you may go to church on Sunday or

22   some Sunday or probably you went certainly at Christmastime

23   and I'm starting everything that way because you're going to

24   hear tape recordings in this case and on the tape recordings

25   you're going to hear some language that you wouldn't have

Prospective Juror 42                                    89

1    heard on Christmas Day in church.

2          So, you understand what I mean?

3          THE PROSPECTIVE JUROR:  Gotcha.

4          THE COURT:  All right.

5          Now, would that affect you in any way?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  You've heard that language.

8          THE PROSPECTIVE JUROR:  I hear it all day, every

9    day.  Hear it all the time.

10          THE COURT:  You hear it all the time.

11          THE PROSPECTIVE JUROR:  Just driving here I heard

12   it.

13          THE COURT:  All right.  You judge the testimony of a

14   law enforcement agent the same as anybody else's; is that

15   right?

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  And you've never been the victim of a

18   crime?

19          THE PROSPECTIVE JUROR:  Never.

20          THE COURT:  Good.

21          All right, any challenges for cause?

22          MR. GOLTZER:  No.

23          MR. MILLER:  No, Your Honor.

24          THE COURT:  All right.  You return to us, sir, on

25   Thursday morning at 10:00 o'clock to the central jury room.

Prospective Juror 8                                    90

1    Thursday morning, 10:00 o'clock.

2             THE PROSPECTIVE JUROR:  Thursday morning,

3    10:00 o'clock.

4             THE COURT:  All right, please, write it down, thanks

5    very much.

6             THE PROSPECTIVE JUROR:  So, I'm selected for the

7    case?

8             THE COURT:  No, you're selected to be back here

9    Thursday morning.  They'll decide Thursday morning.

10            THE PROSPECTIVE JUROR:  Okay.

11            THE COURT:  Then the lawyers will decide, not me.

12            THE PROSPECTIVE JUROR:  Okay.  Thank you very much.

13            THE COURT:  Thank you.

14            THE COURTROOM CLERK:  You can go.

15            THE PROSPECTIVE JUROR:  I can go home now?

16            THE COURTROOM CLERK:  Yes.

17            THE PROSPECTIVE JUROR:  Okay, cool.

18            (Prospective Juror 42 exits the courtroom.)

19            THE COURTROOM CLERK:  Next juror is Number 8.

20            (Prospective Juror 8 enters the courtroom.)

21            THE COURT:  Come over here, sir.

22            Good day, sir, how are you?

23            THE PROSPECTIVE JUROR:  Sit down?

24            THE COURT:  Yes, please, sit down, thank you.  Do

25    you want to leave your coat on, take it off?

1          THE PROSPECTIVE JUROR:  I'll make myself

2    comfortable.

3          THE COURT:  Make yourself comfortable.

4          THE PROSPECTIVE JUROR:  Thank you.

5          THE COURT:  Okay.  Would you talk to the last

6    gentleman at the table there instead of me because everybody

7    here has to hear you and if you talk to him, that way

8    everybody will hear you, okay?

9          THE PROSPECTIVE JUROR:  Okay.

10          THE COURT:  Good.  Use the microphone, don't

11   hesitate.

12          THE PROSPECTIVE JUROR:  Okay.

13          THE COURT:  Where do you live, sir?

14          THE PROSPECTIVE JUROR:  Brooklyn.

15          THE COURT:  A little louder.

16          THE PROSPECTIVE JUROR:  I live in Brooklyn.

17          THE COURT:  Good, what part of town?

18          THE PROSPECTIVE JUROR:  What part?  It's called

19   Borough Park.

20          THE COURT:  Borough Park, okay.

21          Do you have your own home or do you rent?

22          THE PROSPECTIVE JUROR:  Own home.

23          THE COURT:  Own home.  And are you married?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  What do you do for a living?

Prospective Juror 8                                    92

1          THE PROSPECTIVE JUROR:  I'm retired.

2          THE COURT:  Retired.  What did you do?

3          THE PROSPECTIVE JUROR:  I used to be a programmer.

4          THE COURT:  A programmer.  What kind of programmer?

5          THE PROSPECTIVE JUROR:  I used to program in a

6    language called FoxPro.

7          THE COURT:  FoxPro.

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Tell me about it, I don't know about it.

10         THE PROSPECTIVE JUROR:  FoxPro, it's a database

11   language.

12         THE COURT:  Oh.

13         THE PROSPECTIVE JUROR:  So, this was for a

14   healthcare company.

15         THE COURT:  A healthcare company.

16         THE PROSPECTIVE JUROR:  I also used to do

17   construction.

18         THE COURT:  Construction, too.

19         THE PROSPECTIVE JUROR:  Before that.

20         THE COURT:  How long did you work for the healthcare

21   company?

22         THE PROSPECTIVE JUROR:  I worked for a few

23   companies.  I worked about 12 to 13 years, something like

24   that.

25         THE COURT:  Doing that work.

Prospective Juror 8                                    93

1              THE PROSPECTIVE JUROR:  Yeah.

2              THE COURT:  And how long were you in construction?

3              THE PROSPECTIVE JUROR:  Oh, more.  About 20 years.

4              THE COURT:  About 20 years.  Did you have your own

5     company?

6              THE PROSPECTIVE JUROR:  Yes, my own company.

7              THE COURT:  What did you do, foundations?

8              THE PROSPECTIVE JUROR:  Renovations, mainly.

9              THE COURT:  Renovations.

10             THE PROSPECTIVE JUROR:  Yeah.

11             THE COURT:  All right.  Are you a native of

12    Brooklyn?

13             THE PROSPECTIVE JUROR:  Yeah, sure.

14             THE COURT:  You were born here.

15             THE PROSPECTIVE JUROR:  No, I was born in Canada.

16             THE COURT:  Oh, you were born in Canada.  What part?

17             THE PROSPECTIVE JUROR:  Actually, sorry, sorry.

18    I'll go back.

19             THE COURT:  It's okay.

20             THE PROSPECTIVE JUROR:  I was born in

21    Czechoslovakia, I came to Canada and then I moved here.

22             THE COURT:  I see.  How long have you been here?

23             THE PROSPECTIVE JUROR:  Thirty years.

24             THE COURT:  All right.  You became a citizen right

25    away?

Prospective Juror 8                                    94

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  And what part of Canada were you from?

3          THE PROSPECTIVE JUROR:  Montreal, Quebec.

4          THE COURT:  Quebec province.

5          THE PROSPECTIVE JUROR:  In Quebec, yeah.

6          THE COURT:  You say Quebec; right?

7          THE PROSPECTIVE JUROR:  It depends who.

8          THE COURT:  All right.  Do you speak French, too?

9          THE PROSPECTIVE JUROR:  A bit, if I have to, yeah.

10          THE COURT:  If you have to, you do.  Okay.  And have
11   you ever been on a jury before?

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  Have you ever been a victim of a crime?

14          THE PROSPECTIVE JUROR:  No.

15          THE COURT:  You are married you said; right?

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  Has your wife ever been the victim of a
18   crime?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  Do you have children?

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  How old are they?

23          THE PROSPECTIVE JUROR:  The youngest one is around
24   20.  The oldest one is around 39.

25          THE COURT:  How many, all together?

Prospective Juror 8                                        95

1            THE PROSPECTIVE JUROR:  Seven.

2            THE COURT:  Seven.  All right.  Tell us what they do

3    and whether it's a boy or a girl.  Start with the 39-year old.

4            THE PROSPECTIVE JUROR:  Okay.  The oldest one is a

5    girl.  She takes care of the house.

6            THE COURT:  She's married.

7            THE PROSPECTIVE JUROR:  Okay.  The next one, I have

8    twins and one works in an office and the other one just takes

9    care of her kids.

10           And the next one is a boy.  The boy, he works.  He

11   works in real estate.

12           I have another son who also works in real estate.

13           Next daughter takes care of the house.

14           And the youngest one takes care of the house.  She

15   works in a store also.

16           THE COURT:  Okay, so they're all busy people.

17           Now, I note that you wear a yarmulke, so you're

18   observant; right?

19           THE PROSPECTIVE JUROR:  Yes.

20           THE COURT:  Okay.  Now you're going to hear tapes in

21   this case where there are recordings of voices.

22           THE PROSPECTIVE JUROR:  Yeah.

23           THE COURT:  Of people talking.  Some of the language

24   you're going to hear, you wouldn't hear at temple.

25           Do you understand that?

Prospective Juror 8                                          96

1          THE PROSPECTIVE JUROR:  No, obviously not.

2          THE COURT:  Okay.  Point being -- excuse me, I think

3    I mentioned I have a bad cold, I apologize for coughing.

4          THE PROSPECTIVE JUROR:  Okay, I hope you get well

5    fast.

6          THE COURT:  You, too.

7          THE PROSPECTIVE JUROR:  Contagious.

8          THE COURT:  Do you want a drink of water?

9          THE PROSPECTIVE JUROR:  No, thank you, it's okay.

10         THE COURT:  Do you want a lozenge?

11         THE PROSPECTIVE JUROR:  No, thank you.

12         THE COURT:  Okay.

13         So, what I'm saying is, would that affect your

14   service, the fact that you're going to hear bad language?

15         THE PROSPECTIVE JUROR:  I don't know, I'm not sure,

16   but maybe not.

17         THE COURT:  Maybe not.

18         THE PROSPECTIVE JUROR:  Yeah, maybe not.

19         THE COURT:  Why would it affect you?

20         THE PROSPECTIVE JUROR:  I'm not used to listening to

21   vulgar language.  I'm not used to it, but I mean, I've heard

22   it.

23         THE COURT:  Yes.

24         THE PROSPECTIVE JUROR:  On occasion, but I'm not

25   used to it.

Prospective Juror 8                                97

1          THE COURT:  You don't like it.

2          THE PROSPECTIVE JUROR:  I don't like it, no, no.

3          THE COURT:  Okay.  You'd rather people didn't swear.

4          THE PROSPECTIVE JUROR:  Right, okay.  It's not a

5     perfect world, is it?

6          THE COURT:  No, that's right.  You said it.

7          So, the fact is, nobody's charged here with

8     swearing, that's not the charge.  The charge is conspiracy.

9          You understand that?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Conspiracy to commit murder.  So,

12     swearing doesn't have any connotation that there's guilt,

13     that's the point.

14          Do you understand that?

15          THE PROSPECTIVE JUROR:  Probably not.  I'm saying, I

16     don't think it would affect me that much.

17          THE COURT:  But would it affect you at all?

18          THE PROSPECTIVE JUROR:  It bothers me.

19          THE COURT:  All right, I'm going to excuse you,

20     okay, thank you.  Thank you.  Go back down to the central jury

21     room.

22          THE PROSPECTIVE JUROR:  Thank you.

23          THE COURT:  Thank you, very much.

24          (Prospective Juror 8 exits the courtroom.)

25          THE COURTROOM CLERK:  Next juror is Number 9.

Prospective Juror 9                                    98

1   Number 9.

2            (Prospective Juror 9 enters the courtroom.)

3            THE COURT:  Come up here, sir, over here, thank you.

4            How are you?

5            THE PROSPECTIVE JUROR:  Okay.

6            THE COURT:  Good, have a seat.

7            Put your coat over the rail if you're comfortable.

8   Are you comfortable holding it?

9            THE PROSPECTIVE JUROR:  Yes.

10           THE COURT:  Okay, fine.  Would you speak nice and

11  loud so the last gentleman there can hear you.  Speak to him

12  because everybody here has to hear you.

13           Do you understand that?

14           THE PROSPECTIVE JUROR:  You have, when you were

15  speaking...

16           THE COURT:  Yes?

17           THE PROSPECTIVE JUROR:  I have a bilateral hearing

18  loss.

19           THE COURT:  You have a problem hearing, you said?

20           THE PROSPECTIVE JUROR:  Yes.

21           THE COURT:  I'll excuse you.  You didn't hear me

22  very well?

23           THE PROSPECTIVE JUROR:  No.

24           THE COURT:  You're excused, thank you very much.

25           THE COURTROOM CLERK:  Okay, just report to the

Prospective Juror 30                                    99

1    central jury room, the room that you started in this morning,

2    the first room that you went to this morning.

3            THE PROSPECTIVE JUROR:  All right.

4            THE COURT:  Tell them you've been excused.

5            THE PROSPECTIVE JUROR:  All right.

6            (Prospective Juror 9 exits the courtroom.)

7            THE COURTROOM CLERK:  The next juror is Number 30.

8            (Prospective Juror 30 enters the courtroom.)

9            THE COURT:  Hello, how are you?

10           THE PROSPECTIVE JUROR:  I'm fine, thank you.

11           THE COURT:  Very good, have a seat, and if you want

12   to take your jacket off, you can.  If you're comfortable with

13   it on, leave it on.

14           THE PROSPECTIVE JUROR:  Okay.

15           THE COURT:  Okay, would you speak nice and loud, the

16   last gentleman there has to hear you, okay?

17           THE PROSPECTIVE JUROR:  Yes.

18           THE COURT:  As a matter of fact, speak to him, don't

19   even look at him, just speak to him, okay.

20           THE PROSPECTIVE JUROR:  Okay.

21           THE COURT:  Where do you live?

22           THE PROSPECTIVE JUROR:  Brooklyn.

23           THE COURT:  Brooklyn.  What part of Brooklyn?

24           THE PROSPECTIVE JUROR:  Canarsie.

25           THE COURT:  Canarsie.  And are you married or

Prospective Juror 30                          100

1    single?

2              THE PROSPECTIVE JUROR:  Single.

3              THE COURT:  Okay.  Do you live with your folks?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  And what do you do for a living?

6              THE PROSPECTIVE JUROR:  I'm in construction.

7              THE COURT:  In construction.

8              THE PROSPECTIVE JUROR:  I'm an assistant.

9              THE COURT:  What do you do in construction?

10             THE PROSPECTIVE JUROR:  I'm an assistant.

11             THE COURT:  You work in an office?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  And what do you do, bookkeeping?

14             THE PROSPECTIVE JUROR:  Secretarial.

15             THE COURT:  Secretarial.

16             THE PROSPECTIVE JUROR:  Filing, I do a lot of stuff.

17             THE COURT:  You work computers, too?

18             THE PROSPECTIVE JUROR:  Yes, work with the

19   computers.

20             THE COURT:  And how long have you been doing that?

21             THE PROSPECTIVE JUROR:  Seven years.

22             THE COURT:  You live in Canarsie?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Do you have an apartment or do you rent?

25             THE PROSPECTIVE JUROR:  Apartment, rent.

Prospective Juror 30                                    101

1          THE COURT:  You rent an apartment.

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  I meant, do you rent an parent.

4          You're single.  Have you ever been on a jury before?

5          THE PROSPECTIVE JUROR:  Never been on a jury and

6     yes, I am single.

7          THE COURT:  Do you have any close friends or

8     relatives in law enforcement?

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  Who is that?

11         THE PROSPECTIVE JUROR:  My cousin, she works in

12    NYPD.

13         THE COURT:  In NYPD.

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Now, policemen or police ladies are not

16    entitled to any greater belief than anybody else and the same

17    applies to FBI agents.  Would you judge everybody's testimony

18    the same?

19         In other words, do you think that because somebody

20    is an FBI agent, they are automatically going to be telling

21    the truth?

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  You do.

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  Why do you think that?

1          THE PROSPECTIVE JUROR:  Because they're upholding

2     the law.

3          THE COURT:  Well, they should be, but sometimes

4     they're not; right?

5          THE PROSPECTIVE JUROR:  True.  True.

6          THE COURT:  Well, so then, what do you think about

7     that first answer when you said yes?

8          I mean, in other words, all I'm saying to you is FBI

9     agents are individuals, they're like people that work in

10    construction offices; some of them are good, some of them are

11    bad, a lot of them are in between.  The point is, can you take

12    witnesses, FBI agents, and anybody else at their face value?

13         In other words, can you take them and judge their

14    testimony individually?  Or if you honestly think that you are

15    more apt to believe an FBI agent than somebody else, okay,

16    tell me about it.  What do you think?

17         THE PROSPECTIVE JUROR:  I believe FBI agents because

18    just what I said before, they're supposed to be upholding the

19    law.  Yes, there are bad and good ones, but I personally would

20    look at them first as a person who is doing the right thing or

21    should be doing the right thing.

22         THE COURT:  All right, thank you very much, we will

23    excuse you.

24         THE PROSPECTIVE JUROR:  Okay.

25         THE COURT:  Thank you.

Prospective Juror 23                          103

1          THE COURTROOM CLERK:  Go back to the central jury
2    room.
3          THE PROSPECTIVE JUROR:  Okay.
4          (Prospective Juror 9 exits the courtroom.)
5          THE COURTROOM CLERK:  Next juror is Number 23.
6          (Prospective Juror 23 enters the courtroom.)
7          THE COURT:  Hello, how are you?
8          THE PROSPECTIVE JUROR:  Good.
9          THE COURT:  Good.  Would you sit down and make
10   yourself comfortable.  Do you want to take your jacket off?
11         THE PROSPECTIVE JUROR:  I will.
12         THE COURT:  Good, okay.  And would you speak to the
13   gentleman at the end of table who just raised his hand -- do
14   it again, Mr. Goltzer -- would you speak to him because
15   everybody inside the rail here has to hear you and if you
16   speak nice and loud to him, then everybody will hear you,
17   okay?
18         THE PROSPECTIVE JUROR:  Hello.
19         MR. GOLTZER:  Hi.
20         THE COURT:  Good, okay, that's fine.  Why don't you
21   move the chair up a little closer to the mic or move the mic
22   closer to you.
23         THE PROSPECTIVE JUROR:  Okay.
24         THE COURT:  Where do you live?
25         THE PROSPECTIVE JUROR:  Staten Island.

Prospective Juror 23                                104

```
1          THE COURT:  Staten Island.  What part of

2   Staten Island?

3          THE PROSPECTIVE JUROR:  Willowbrook.

4          THE COURT:  Willowbrook.  Are you married or single?

5          THE PROSPECTIVE JUROR:  Married.

6          THE COURT:  What do you do for a living?

7          THE PROSPECTIVE JUROR:  I'm a social worker in

8   public school in New Jersey.

9          THE COURT:  Oh.  Which town in Jersey?

10         THE PROSPECTIVE JUROR:  Linden.

11         THE COURT:  What do you do, take the bridge out?

12         THE PROSPECTIVE JUROR:  Yeah, straight over the

13  Goethals.

14         THE COURT:  Okay.  And what does your husband do for

15  a living?

16         THE PROSPECTIVE JUROR:  Insurance sales.

17         THE COURT:  And does he work in Staten Island?

18  Manhattan?

19         THE PROSPECTIVE JUROR:  He works from home.

20         THE COURT:  From home.  Do you have children?

21         THE PROSPECTIVE JUROR:  Yes.  This is my second

22  marriage.  I have three children from my first.  He has five

23  children.

24         THE COURT:  Okay.  Are they all in school or are

25  some of them grown?
```

1          THE PROSPECTIVE JUROR:  All of mine are still in

2     school.  Some of his are grown.

3          THE COURT:  Okay.  The ones that are grown, what do

4     they do?

5          THE PROSPECTIVE JUROR:  The 23-year old is studying

6     like, in a religious seminary.  Like, a rabbinical student.

7          The 21-year old works for wholesale plumbing.

8          And the 19-year old does alarm installation.

9          THE COURT:  Okay.

10         THE PROSPECTIVE JUROR:  All the others are in

11    school.

12         THE COURT:  All right.  Have you ever been the

13    victim of a crime?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  Has your husband ever been the victim of

16    a crime?

17         THE PROSPECTIVE JUROR:  No.

18         THE COURT:  Okay.  Do you have any close friends or

19    relatives in law enforcement?

20         THE PROSPECTIVE JUROR:  No.

21         THE COURT:  All right.  Now, law enforcement

22    testimony has to be gauged or judged the same as anybody

23    else's testimony.  If we were trying a case where the charge

24    was embezzlement from a Federally-insured bank, there would be

25    bank employees testifying, that makes sense, right?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  If we were trying an arson case, the

3    likelihood is there would be firefighters testifying; right?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  That makes sense.

6          Now, firemen are not entitled to any greater belief

7    than anybody else, nor are bank officials.  The same rule

8    applies to law enforcement.  In other words, law enforcement

9    officials have to be judged and gauged and their testimony has

10   to be weighed and analyzed the same as anybody else's

11   testimony.

12         Do you have any quarrel with that proposition?

13         THE PROSPECTIVE JUROR:  No.

14         THE COURT:  Okay.

15         Do you feel you can be fair and impartial in this

16   case?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Okay.  Have you ever been on a jury

19   before?

20         THE PROSPECTIVE JUROR:  No.

21         THE COURT:  All right.  Have you ever been called

22   for jury service?

23         THE PROSPECTIVE JUROR:  Yes.

24         THE COURT:  Was that in Staten Island?

25         THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Is it Port Richmond?  What is the town

2    there?

3          THE PROSPECTIVE JUROR:  It was right by the ferry,

4    Bay Street.

5          THE COURT:  The main street by the ferry?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  For some reason, I'm blocking on the

8    name.

9          There are going to be tape recordings played in this

10   case of phone conversations and also people talking

11   face-to-face.  Some of the language in some of the

12   conversations is not what you would hear say, if you went to

13   church or you went to temple.

14         Do you understand that?

15         THE PROSPECTIVE JUROR:  Yes, I understand.

16         THE COURT:  Okay.  Would that affect your ability to

17   be fair?

18         THE PROSPECTIVE JUROR:  No.

19         THE COURT:  Okay.  Unfortunately, you've probably

20   heard language like that.

21         THE PROSPECTIVE JUROR:  I have five teenage boys.

22         THE COURT:  You have five teenage boys, all right, I

23   won't pursue that much further.

24         And are you a native of the New York area?

25         THE PROSPECTIVE JUROR:  I'm born and raised in

1   Canada.

2          THE COURT:  Oh, where?

3          THE PROSPECTIVE JUROR:  Montreal.

4          THE COURT:  Montreal.

5          THE PROSPECTIVE JUROR:  Yes, but I moved here to go

6   to college.  I'm a U.S. citizen, I have dual citizenship.  I

7   moved here to go to college.

8          THE COURT:  Where did you go to college?

9          THE PROSPECTIVE JUROR:  Under-grad was Touro and

10  graduate school at Fordham.

11         THE COURT:  What did you study at Fordham?

12         THE PROSPECTIVE JUROR:  Social work.

13         THE COURT:  Up at Lincoln Center?

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  And you have a masters in social work?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  And how long ago was that?

18         THE PROSPECTIVE JUROR:  I graduated in 2002.

19         THE COURT:  Okay.

20         All right, now, do you think you can be fair and

21  impartial?

22         THE PROSPECTIVE JUROR:  I do.

23         THE COURT:  Okay.

24         Any challenge for cause?

25         MR. MILLER:  No, Your Honor.

Prospective Juror 23                              109

1              MR. GOLTZER:  No, sir.

2              THE COURT:  All right.

3              If you would come back, please.  You are excused now

4    for the rest of the day.  If you would come back Thursday

5    morning at 10:00 o'clock to the central jury room, thank you

6    very much.

7              THE PROSPECTIVE JUROR:  Thank you.

8              THE COURT:  Thank you.

9              (Prospective Juror 9 exits the courtroom.)

10             THE COURT:  All right, we'll recess for lunch now.

11   We'll recess until 2:15.

12             Thank you.

13             (Recess taken.)

14

15             (Continued on following page with AFTERNOON

16   SESSION.)

17

18

19

20

21

22

23

24

25

1              A F T E R N O O N        S E S S I O N

2         (The following occurred in the absence of the

3    prospective jury panel.)

4         THE COURT:  Okay.  As soon as the defendant is back,

5    we can start.

6         MR. MILLER:  Your Honor, can we raise two very brief

7    issues?

8         THE COURT:  Yes.  Do we want to wait?  Let's wait

9    for the defendant.

10        MR. MILLER:  I'm sorry.

11        THE COURT:  That's all right.

12        (Pause.)

13        (Defendant present.)

14        THE COURT:  All right.  The government indicated it

15   wanted to raise something.

16        MR. MILLER:  Yes, Your Honor.

17        We have spoken with defense counsel about this.

18   There are two issues we wanted to raise.

19        The first one was an issue that I brought up before

20   one of the jurors came in and, that is, I wanted to ensure

21   that the jurors before they actually are chosen and begin to

22   serve understand that they are not only anonymous to the media

23   and the public but also to all of the parties in the well of

24   the courtroom on both sides and I think -- I spoke to

25   Mr. Bachrach and Mr. Goltzer about that issue and I think we

1    all agree that that can be accomplished on Thursday morning,

2    with Your Honor's approval, of course, if Your Honor could

3    instruct -- could so instruct the folks who come back.  I

4    think that will accomplish the objective, which is getting

5    that instruction to them before they start serving.

6            THE COURT:  Fine.

7            MR. MILLER:  The second -- the government had

8    submitted that as part of its proposed examination for today

9    as a possible way to do that.

10           The second issue was, Ms. Dean was approached by a

11   potential juror who asked I think directions within the

12   courthouse.  She indicated she couldn't speak to that juror.

13   We just wanted to raise that with the Court and the defense.

14           THE COURT:  Thank you.  That's a good point.  Thanks

15   very much.

16           MR. GOLTZER:  Your Honor, I have a like issue with

17   one of the potential jurors.  I was getting on line at the

18   cafeteria and said excuse me to somebody.  I didn't know if I

19   was getting ahead of.  And then I realized it was a

20   prospective juror.

21           THE COURT:  Thank you.  Thank you both for telling.

22           All right.

23           THE CLERK:  The next juror is number 79, 79.

24           THE COURT:  All right.

25

1             (Juror present.)

2             THE COURT:  Good afternoon.

3             THE PROSPECTIVE JUROR:  Hi.

4             THE COURT:  After you put your things down and if

5    you want to take your jacket off, you are more than welcome

6    to.

7             THE PROSPECTIVE JUROR:  It is kind of chilly.  I

8    will keep it on.

9             THE COURT:  Okay.  Where do you live?

10            THE PROSPECTIVE JUROR:  I live in Melville.

11            THE COURT:  Melville?

12            THE PROSPECTIVE JUROR:  Yes.

13            THE COURT:  Long Island?

14            THE PROSPECTIVE JUROR:  Yes.

15            THE COURT:  Could you speak nice and loud so that --

16            THE PROSPECTIVE JUROR:  I live in Melville.

17            THE COURT:  Good.  That's perfect.  Nobody is going

18   to be mad at you for yelling.  That's okay.

19            THE PROSPECTIVE JUROR:  An admitted oddity

20   anonymity, or whatever it is.

21            THE COURT:  What did you say?

22            THE PROSPECTIVE JUROR:  To be anonymous.

23            THE COURT:  Yes.  I don't know your name.  Nobody

24   here knows your name, other than maybe the Clerk.  I don't.

25   None of the lawyers do.  The defendant doesn't.  Nobody is

1  going to know your name. So you don't have to go into anything

2  about your name.

3          We know you live in Melville.  Do you own your own

4  home or do you rent?

5          THE PROSPECTIVE JUROR:  I own.

6          THE COURT:  Okay.  Are you married?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  What does your husband do for a living?

9          THE PROSPECTIVE JUROR:  Self-employed.

10         THE COURT:  As what?

11         THE PROSPECTIVE JUROR:  Real estate appraiser.

12         THE COURT:  Okay.  Do you work outside of the home?

13         THE PROSPECTIVE JUROR:  Yes, I do.

14         THE COURT:  What do you do?

15         THE PROSPECTIVE JUROR:  I run a division for a

16  clothing manufacturer.

17         THE COURT:  Is that in the city or --

18         THE PROSPECTIVE JUROR:  It's in Manhattan.

19         THE COURT:  In Manhattan.

20         In the garment area?

21         THE PROSPECTIVE JUROR:  Yes, exactly.

22         THE COURT:  Okay.  How long have you been doing

23  that?  About?

24         THE PROSPECTIVE JUROR:  I don't want to say; many

25  years.

Prospective Juror 79                                    114

1          THE COURT:  All right.  Many years.

2          THE PROSPECTIVE JUROR:  My whole life.

3          THE COURT:  All right.

4          THE PROSPECTIVE JUROR:  I feel like.

5          THE COURT:  All right.

6          THE PROSPECTIVE JUROR:  Since I'm born.

7          THE COURT:  You age gracefully.

8          THE PROSPECTIVE JUROR:  Thank you.

9          THE COURT:  Now --

10         THE PROSPECTIVE JUROR:  I didn't say my age.

11         THE COURT:  I know you didn't.

12         THE PROSPECTIVE JUROR:  I might be only be 20.

13         THE COURT:  But you did age gracefully.

14         All right.  What is your educational background?

15         THE PROSPECTIVE JUROR:  Just high school.

16         THE COURT:  Just high school.

17         Did you go to high school in the city or in Long

18     Island?

19         THE PROSPECTIVE JUROR:  In Brooklyn.

20         THE COURT:  Brooklyn.

21         How long have you lived out in Melville?  About?

22         THE PROSPECTIVE JUROR:  Twenty -- about 28 years.

23         THE COURT:  Do you have children?

24         THE PROSPECTIVE JUROR:  Two.

25         THE COURT:  Are they grown?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  What do they do.

3          THE PROSPECTIVE JUROR:  My son works for B and H in

4    the city and my daughter is a student.

5          THE COURT:  Where does she go to school?

6          THE PROSPECTIVE JUROR:  Westbury.

7          THE COURT:  Okay.  Now, in this case there are going

8    to be FBI agents testifying.  If it was a case where there

9    were thefts from the United States mails, there would be

10   people, or charged, if there was a charge of theft from the

11   mails, there would be people from the post office.  People

12   from the post office are not entitled to any greater belief

13   because they work for the post office than are firemen.

14          Do you understand that?

15          In other words, each witness, no matter what their

16   occupation, or no matter who they work for, has to be judged

17   as an individual not as a group.  The point being, that law

18   enforcement agents, whether they are FBI agents, whether they

19   are policemen, whether they work for Secret Service, they are

20   not entitled to any greater or less belief because of their

21   job.

22          Do you understand that?

23          THE PROSPECTIVE JUROR:  So they are not God.

24          THE COURT:  They are not.  They certainly aren't.

25          THE PROSPECTIVE JUROR:  Got it.

Prospective Juror 79                                          116

1          THE COURT:  Do you have any --

2          THE PROSPECTIVE JUROR:  I watch Homeland.

3          THE COURT:  What?  You watch Homeland?

4          All right.  Do you have any problem with that rule?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  Okay.  Do you have any close friends or

7     relatives in the FBI?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  Have you ever been on a jury before?

10         THE PROSPECTIVE JUROR:  No.

11         THE COURT:  You say that sort of affirmatively.

12         THE PROSPECTIVE JUROR:  What?

13         THE COURT:  I said, you say that sort of

14    affirmatively, although it was a negative answer, you never

15    have been on a jury.

16         THE PROSPECTIVE JUROR:  I've never been on a jury.

17         THE COURT:  Okay.  I.

18         THE PROSPECTIVE JUROR:  I didn't want to say my next

19    line.

20         THE COURT:  What was your next line?

21         THE PROSPECTIVE JUROR:  I am not sure if this would

22    be like a comfortable first experience.

23         THE COURT:  Why not?

24         THE PROSPECTIVE JUROR:  Just because of the charges.

25    Just because of the type of -- just because -- just because.

Prospective Juror 40                    117

1  I am from Brooklyn, born and raised in Brooklyn.  I watched

2  the Sopranos.  Just because.  I don't know.  I feel that way.

3           THE COURT:  What does that mean?  Does that mean if

4  you start off -- you start off with a feeling --

5           THE PROSPECTIVE JUROR:  Fearful.

6           THE COURT:  Fearful?

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  Of what?

9           THE PROSPECTIVE JUROR:  Just because of the type of

10 charge that it is and the type of case that it is.  You are

11 talking about, you know, something that's very violent,

12 possibly.  It's an attempted type of --

13          THE COURT:  Thank you very much.  Thank you.

14          You are excused.

15          (Juror leaves courtroom.)

16          THE CLERK:  The next juror is number 40, number 40.

17          (Juror present.)

18          THE COURT:  Good afternoon.

19          THE PROSPECTIVE JUROR:  Hi.  Good afternoon.

20          THE COURT:  Make yourself comfortable.  Put your

21 coat down and have a seat.

22          THE PROSPECTIVE JUROR:  Thank you.

23          THE COURT:  Where do you live?

24          THE PROSPECTIVE JUROR:  I live in Jamaica, Queens.

25          THE COURT:  In Jamaica, Queens?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Okay.  Would you speak nice and loud so

3    that everybody at that far table hears you as well as the

4    closer table?

5          THE PROSPECTIVE JUROR:  Sure.

6          THE COURT:  Do you have your own home in Jamaica,

7    Queens?

8          THE PROSPECTIVE JUROR:  Yes, I do.

9          THE COURT:  Are you married or single?

10         THE PROSPECTIVE JUROR:  I'm married.

11         THE COURT:  Do you work outside the home?

12         THE PROSPECTIVE JUROR:  Yes, I do.

13         THE COURT:  What do you do for a living?

14         THE PROSPECTIVE JUROR:  Right now I work at -- as a

15   medical records in a health care facility.

16         THE COURT:  How long have you been doing that?

17         THE PROSPECTIVE JUROR:  About two years and

18   six months.

19         THE COURT:  What did you do before that?

20         THE PROSPECTIVE JUROR:  I was doing home health aide

21   and before that I was in school.  I graduated with my

22   bachelors.

23         THE COURT:  Where did you get your bachelors?

24         THE PROSPECTIVE JUROR:  I went to Stony Brook

25   University.

Prospective Juror 40                                    119

1          THE COURT:  What does your husband do for a living?

2          THE PROSPECTIVE JUROR:  He's a -- he owns furniture

3    stores.

4          THE COURT:  Do you have any children?

5          THE PROSPECTIVE JUROR:  No, not yet.

6          THE COURT:  Do you think you could be fair and

7    impartial in this case?

8          THE PROSPECTIVE JUROR:  Yes, I could.

9          THE COURT:  Okay.  Have you ever been on a jury

10   before?

11         THE PROSPECTIVE JUROR:  This would be my first one.

12         THE COURT:  Your first one?

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  Are you a native of Long Island or the

15   New York area?

16         THE PROSPECTIVE JUROR:  No.

17         THE COURT:  Where are you from originally?

18         THE PROSPECTIVE JUROR:  Nigeria.

19         THE COURT:  How long have you been here now?

20         THE PROSPECTIVE JUROR:  I have been living in this

21   country since 1997.

22         THE COURT:  All right.  Long time.

23         THE PROSPECTIVE JUROR:  Yes; 16 years.

24         THE COURT:  Okay.

25         THE PROSPECTIVE JUROR:  Thereabouts, yes.

Prospective Juror 40                    120

1          THE COURT:  Do you have any close friends or

2   relatives in the FBI or in law enforcement?

3          THE PROSPECTIVE JUROR:  No, not that I know of.

4   Right now, no, no family members.

5          THE COURT:  Do you understand that law enforcement

6   testimony has to be treated the same as everybody else's

7   testimony?  In other words, the fact that somebody is an FBI

8   agent doesn't give them an advantage or doesn't put them at a

9   disadvantage?

10         Do you accept that.

11         THE PROSPECTIVE JUROR:  Yes.  I understand.

12         THE COURT:  Okay.  You are going to hear tapes or

13  tape recordings in this case and some of the language on the

14  tape recordings is going to be a little rough.  Do you

15  understand what I mean?

16         Would that affect your service?

17         THE PROSPECTIVE JUROR:  Not -- I don't think so.

18         THE COURT:  Okay.  You've heard that before?

19         THE PROSPECTIVE JUROR:  Right.

20         THE COURT:  Is that right?

21         THE PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Okay.  Unfortunately, sometimes people,

23  to express themselves, speak a little too affirmatively with

24  the kind of language they use; right?

25         THE PROSPECTIVE JUROR:  Yes.

GR      OCR      CM      CRR      CSR

Prospective Juror 40                          121

1          THE COURT:  Okay.  Do you think you could be fair

2   and impartial?

3          THE PROSPECTIVE JUROR:  I'm sorry?

4          THE COURT:  Can you be fair and can you be

5   impartial?

6          THE PROSPECTIVE JUROR:  I think I could be fair.

7          THE COURT:  Okay.  Any challenge for cause?

8          MR. MILLER:  I think if Your Honor could ask I think

9   the victim question and the government issue.

10         THE COURT:  I'm sorry.  Excuse me.  Yes.  I didn't

11  ask that.

12         Have you or your husband ever been the victim of a

13  crime?

14         I'm sorry.  I should have asked you that.

15         THE PROSPECTIVE JUROR:  It's okay.

16         No.  We've never.

17         THE COURT:  Never been?

18         MR. MILLER:  Any issue with the government?

19         THE PROSPECTIVE JUROR:  No, I haven't.

20         THE COURT:  In other words, the IRS ever been after

21  you?

22         THE PROSPECTIVE JUROR:  No.

23         THE COURT:  Okay.  Have you ever been chased by the

24  Census Bureau because you didn't give them the right

25  information?

GR      OCR      CM      CRR      CSR

Prospective Juror 40                          122

1          THE PROSPECTIVE JUROR:  They haven't gotten to me.

2          THE COURT:  Okay.

3          THE PROSPECTIVE JUROR:  No.

4          MR. MILLER:  No objection, Your Honor.

5          MR. GOLTZER:  No challenge.

6          THE COURT:  Okay.  All right.  You come back

7   Thursday morning, if you will.  You are qualified.  You may be

8   on the jury.  We are not sure yet.  Thursday morning to the

9   central jury room.

10          THE PROSPECTIVE JUROR:  Thank you very much.

11          THE CLERK:  At 10:00 o'clock.

12          THE PROSPECTIVE JUROR:  Do I just wait outside?

13          THE COURT:  No.  You go home now.

14          THE PROSPECTIVE JUROR:  Just come back Thursday

15   morning?

16          THE COURT:  Yes.  You can go to work tomorrow and

17   Wednesday but you have to come back here Thursday, to the

18   central jury room.

19          THE PROSPECTIVE JUROR:  Thank you.

20          THE COURT:  Thank you very much.  Nice to see you.

21          THE PROSPECTIVE JUROR:  Have a good day, everybody.

22          THE CLERK:  Have a good day.

23          (Juror leaves courtroom.)

24          THE CLERK:  The next juror is number 77, 77.

25          (Juror present.)

GR      OCR      CM      CRR      CSR

Prospective Juror 77                    123

1          THE COURT:  Good afternoon.

2          THE PROSPECTIVE JUROR:  Good afternoon.

3          THE COURT:  Put your coat down.  Make yourself

4   comfortable.

5          THE PROSPECTIVE JUROR:  Okay.

6          THE COURT:  Okay.  Where do you live?

7          THE PROSPECTIVE JUROR:  I live in Queens.

8          THE COURT:  In Queens.

9      Would you speak nice and loud so the gentleman there

10  at the the end of the table can hear you?

11          THE PROSPECTIVE JUROR:  I live in Queens, South

12  Ozone --

13          THE COURT:  Perfect.  Good.

14      What part of Queens?

15          THE PROSPECTIVE JUROR:  South Ozone Park.

16          THE COURT:  South Ozone Park.

17          THE PROSPECTIVE JUROR:  By JFK.

18          THE COURT:  Do you have your own home or do you

19  rent?

20          THE PROSPECTIVE JUROR:  I rent.

21          THE COURT:  You rent.

22      Is it a home or an apartment?

23          THE PROSPECTIVE JUROR:  It's a home.

24          THE COURT:  Are you married or single?

25          THE PROSPECTIVE JUROR:  Single.

Prospective Juror 77                          124

1          THE COURT:  What do you do for a living?

2          THE PROSPECTIVE JUROR:  I'm a legal secretary.

3          THE COURT:  A legal secretary.

4          Is the law office in Manhattan, Queens or somewhere

5     else?

6          THE PROSPECTIVE JUROR:  It's here on Court Street.

7          THE COURT:  Court Street.

8          Does the lawyer do criminal work?

9          THE PROSPECTIVE JUROR:  No.

10         THE COURT:  Just civil work?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  What does he specialize in or she

13    specialize in?

14         THE PROSPECTIVE JUROR:  It's mostly landlord-tenant

15    law.

16         THE COURT:  Okay.  Is there anything about this

17    particular case that would cause you any problem in serving?

18         THE PROSPECTIVE JUROR:  I don't think so.

19         THE COURT:  Can you be fair and impartial?

20         THE PROSPECTIVE JUROR:  I'm sorry?

21         THE COURT:  Can you be fair and impartial?

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  Okay.  You say that sort of

24    hesitatingly.

25         Do you think you can be fair?

Prospective Juror 77                            125

1           THE PROSPECTIVE JUROR:  I could be fair.

2           THE COURT:  Okay.  Now, have you ever been on a jury

3    before?

4           THE PROSPECTIVE JUROR:  No, sir.

5           THE COURT:  What is your educational background?

6           THE PROSPECTIVE JUROR:  I have a bachelors in

7    accounting and business management and finance.

8           THE COURT:  Where did you get that from, what --

9           THE PROSPECTIVE JUROR:  Brooklyn College.

10          THE COURT:  Are you a native of Brooklyn.

11          THE PROSPECTIVE JUROR:  No.

12          THE COURT:  Queens?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  Where?

15          THE PROSPECTIVE JUROR:  I was born in the Dominican

16    Republic.

17          THE COURT:  How long have you been here?

18          THE PROSPECTIVE JUROR:  Seventeen years.

19          THE COURT:  You speak perfect English.

20          THE PROSPECTIVE JUROR:  Thank you.

21          THE COURT:  You don't have any ailments, do you?

22          THE PROSPECTIVE JUROR:  No.

23          THE COURT:  Have you ever been the victim of a

24    crime?

25          THE PROSPECTIVE JUROR:  No.

GR      OCR      CM      CRR      CSR

1          THE COURT:  Anybody very close to you, near and dear
2   to you, ever been the victim of a crime?
3          THE PROSPECTIVE JUROR:  No.
4          THE COURT:  Okay.  Did you ever have any disputes
5   with the government?  I mean about about income taxes or
6   anything else.
7          THE PROSPECTIVE JUROR:  No.
8          THE COURT:  Okay.  There are going to be law
9   enforcement officers testifying in this case, law enforcement
10  officers being FBI agents and other people who work in law
11  enforcement.  Their testimony is not to be given any greater
12  weight because of their job than anybody else's testimony.
13         Do you accept that?
14         THE PROSPECTIVE JUROR:  Yes, I do.
15         THE COURT:  Do you have any problem with it?
16         THE PROSPECTIVE JUROR:  No.
17         THE COURT:  Okay.  If you are chosen, you will weigh
18  the evidence and decide who you believe and who you don't
19  believe, is that right?
20         THE PROSPECTIVE JUROR:  Yes.
21         THE COURT:  Any challenge for cause?
22         MR. MILLER:  No, Your Honor.
23         MR. GOLTZER:  No.
24         THE COURT:  All right.  If you would come back,
25  ma'am, on Thursday morning to the central jury room at 10:00

1   o'clock.  Thank you very much.  You are excused until Thursday

2   morning.

3           THE PROSPECTIVE JUROR:  Thank you.

4           THE COURT:  Thank you again.

5           THE PROSPECTIVE JUROR:  Thank you.

6           (Witness leaves courtroom.)

7           THE CLERK:  The

8    next juror is number 22, 22.

9           (Juror present.)

10          THE COURT:  Good afternoon, sir.

11          THE PROSPECTIVE JUROR:  Good afternoon.

12          THE COURT:  Make yourself comfortable.  Have a seat.

13          Would you speak in a nice loud voice so everybody at

14   the far end there can hear you?

15          THE PROSPECTIVE JUROR:  I'll try.

16          THE COURT:  What is your county of residence?  Where

17   do you live?

18          THE PROSPECTIVE JUROR:  Nassau.

19          THE COURT:  What city or town in Nassau?

20          THE PROSPECTIVE JUROR:  Jericho.

21          THE COURT:  Do you own your own home, sir?

22          THE PROSPECTIVE JUROR:  No.

23          THE COURT:  Do you rent a home or do you rent an

24   apartment?

25          THE PROSPECTIVE JUROR:  I rent an apartment.

Prospective Juror 22                          128

1          THE COURT:  Are you married or single?

2          THE PROSPECTIVE JUROR:  Single.

3          THE COURT:  What do you do for a living?

4          THE PROSPECTIVE JUROR:  I work for an automobile

5   insurance company.  I handle automobile claims.

6          THE COURT:  Have you ever testified as a witness?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  In civil cases involving automobile

9   insurance or in other kinds of cases?

10          THE PROSPECTIVE JUROR:  In civil cases.

11          THE COURT:  Involving automobiles?

12          THE PROSPECTIVE JUROR:  Involving automobile claims,

13   yes.  Just a couple of times.

14          THE COURT:  Was that in federal court or in state

15   court?

16          THE PROSPECTIVE JUROR:  Just state court.

17          THE COURT:  Are you married or single?

18          THE PROSPECTIVE JUROR:  Single.

19          THE COURT:  I'm sorry.  You told me that, I believe.

20          THE PROSPECTIVE JUROR:  That's all right.

21          THE COURT:  I don't want to be repetitive.  I

22   apologize.

23          THE PROSPECTIVE JUROR:  That's okay.

24          THE COURT:  What's your educational background.

25          THE PROSPECTIVE JUROR:  I have a bachelor's degree.

Prospective Juror 22                                    129

1           THE COURT:  In what?

2           THE PROSPECTIVE JUROR:  Political science.

3           THE COURT:  From where?

4           THE PROSPECTIVE JUROR:  New York Tech.

5           THE COURT:  How long have you been doing the work

6    that you are doing?

7           THE PROSPECTIVE JUROR:  Approximately 25 years.

8           THE COURT:  Okay.  Have you lived where you are

9    living now for a while?

10          THE PROSPECTIVE JUROR:  Just a couple of years.

11          THE COURT:  Before that, where did you live?

12          THE PROSPECTIVE JUROR:  In Farmingdale, New York.

13          THE COURT:  You were there a while?

14          THE PROSPECTIVE JUROR:  About five years.

15          THE COURT:  Okay.  Have you ever been on a jury

16   before?

17          THE PROSPECTIVE JUROR:  No.

18          THE COURT:  Have you ever been the victim of a

19   crime?

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  Do you understand that law enforcement

22   testimony, the testimony of FBI agents and anybody else in law

23   enforcement, is not entitled to any greater or less belief

24   just because somebody is an FBI agent?

25          Do you accept that proposition?

GR        OCR        CM        CRR        CSR

Prospective Juror 22                     130

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Okay.  In this case, you are going to

3    hear tape recordings, if you are chosen as a juror.  Some of

4    the language on the tape recordings is less than gentlemanly,

5    if you follow what I mean.  Would that affect your ability to

6    be fair and impartial?

7          THE PROSPECTIVE JUROR:  No.

8          THE COURT:  Okay.  Can you think of any reason why

9    you couldn't serve?

10          THE PROSPECTIVE JUROR:  No.

11          THE COURT:  All right.  Any challenge for cause?

12          MR. MILLER:  No, Your Honor.

13          MR. GOLTZER:  No.

14          THE COURT:  All right.  There is one question they

15    want me to ask you that I didn't ask you.  I apologize.

16          THE PROSPECTIVE JUROR:  Okay.

17          THE COURT:  Did you ever have any problems with the

18    government?  In other words, did you ever have problems with

19    the IRS or any other governmental agency?

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  Thank you very much.  Okay.

22          Still no challenge for cause, I take it.

23          MR. MILLER:  No.

24          THE COURT:  Thank you very much.

25          Come back, if you would, please, Thursday morning at

Prospective Juror 31                     131

1   10:00 o'clock to the central jury room.  10 o'clock Thursday.

2             THE PROSPECTIVE JUROR:  Thursday morning, 10:00

3   o'clock?

4             THE COURT:  Yes.

5             THE PROSPECTIVE JUROR:  To the central assembly

6   room?

7             THE COURT:  Right, please.

8             THE PROSPECTIVE JUROR:  I am free to go now?

9             THE COURT:  Yes, you can.

10            THE PROSPECTIVE JUROR:  Thank you.

11            THE COURT:  Thank you again.

12            (Juror leaves courtroom.)

13            THE CLERK:  The next juror is number 31, 31.

14            (Juror present.)

15            THE COURT:  Good afternoon, sir.

16            THE PROSPECTIVE JUROR:  How are you, sir?

17            THE COURT:  Good.

18            Take your time.  Make yourself comfortable.

19            What do you have there?

20            THE PROSPECTIVE JUROR:  My sweatshirt?

21            THE COURT:  Yes.

22            THE PROSPECTIVE JUROR:  I am a martial arts

23   instructor.

24            THE COURT:  You are a martial arts instructor?

25            THE PROSPECTIVE JUROR:  Yes.

Prospective Juror 31                                    132

1          THE COURT:  You beat me to my first question, which

2    is what is your occupation?

3          THE PROSPECTIVE JUROR:  That's on the side.  My

4    occupation, that pays the bills, is an insurance company.

5          THE COURT:  You work for an insurance company?

6          THE PROSPECTIVE JUROR:  Yes, sir.

7          THE COURT:  Okay.  Would you speak nice and loud so

8    that everybody hear can hear you, particularly people in the

9    corner over there?

10          THE PROSPECTIVE JUROR:  Yes, sir.

11          THE COURT:  You look over there.  You will speak

12    over there.  Don't worry about looking at me.  Talk to them.

13          How long have you been with the insurance company?

14          THE PROSPECTIVE JUROR:  I have been in the insurance

15    business for about 15 years now.  This particular company,

16    will be 12 this April.

17          THE COURT:  Are you married or single?

18          THE PROSPECTIVE JUROR:  I am single.

19          THE COURT:  Where do you live?

20          THE PROSPECTIVE JUROR:  Staten Island, New York.

21          THE COURT:  Which part of Staten Island.

22          THE PROSPECTIVE JUROR:  I will say the north side,

23    closer to the Verrazano Bridge.

24          THE COURT:  Okay.  What area do you call that?

25          THE PROSPECTIVE JUROR:  Willowbrook.

1           THE COURT:  Willowbrook?

2           THE PROSPECTIVE JUROR:  Yes.

3           THE COURT:  All right.  Have you lived in Staten

4    Island most of your life?

5           THE PROSPECTIVE JUROR:  My entire life.

6           THE COURT:  All right.  Where did you go to high

7    school?

8           THE PROSPECTIVE JUROR:  Monsignor Farrell.

9           THE COURT:  Did you go to college?

10          THE PROSPECTIVE JUROR:  I went to about a year and a

11   half of college and then went to computer school after that.

12          THE COURT:  Okay.  You are single you said?

13          THE PROSPECTIVE JUROR:  Yes, sir.

14          THE COURT:  Do you live in a private home or do you

15   live in an apartment?

16          THE PROSPECTIVE JUROR:  Apartment.

17          THE COURT:  In this case, there are going to be FBI

18   agents testifying, as I think I basically I said earlier when

19   you were all here this morning.

20          Do you understand that law enforcement agents are

21   not entitled to any greater or less belief because of their

22   occupation than anybody else?  Does that make sense to you.

23          THE PROSPECTIVE JUROR:  Yes, sir.

24          THE COURT:  I mean, if you just stop and think,

25   people in the insurance business are not entitled to any

Prospective Juror 31                                      134

1   greater or less belief because they are in the insurance

2   business.

3                THE PROSPECTIVE JUROR:  Correct.

4                THE COURT:  The same thing applies to FBI agents,

5   lawyers, doctors, judges and Indian chiefs and anybody else

6   you can think of, right?

7                THE PROSPECTIVE JUROR:  Yes, sir.

8                THE COURT:  Okay.  You are going to hear tapes in

9   this case.  You are going to hear the voices from tapes.  Some

10  of the tapes are going to have language in them that is rough.

11  Is that going to affect your ability to be fair and impartial?

12               THE PROSPECTIVE JUROR:  I don't think so, no.

13               THE COURT:  Okay.  You hear that language in

14  New York?

15               THE PROSPECTIVE JUROR:  Yes.

16               THE COURT:  Unfortunately.

17               THE PROSPECTIVE JUROR:  All over.

18               THE COURT:  All over, right?

19               THE PROSPECTIVE JUROR:  Yes, sir.

20               THE COURT:  The martial arts, do you do that on

21  weekends?

22               THE PROSPECTIVE JUROR:  That's pretty much on the

23  weekends, yes.

24               THE COURT:  Have you ever been on a jury before?

25               THE PROSPECTIVE JUROR:  No, I have not.

Prospective Juror 31                          135

1          THE COURT:  Have you ever been the victim of a

2   crime?

3          THE PROSPECTIVE JUROR:  No, I have not.

4          THE COURT:  Did you ever have any difficulties with

5   the government, with the IRS or any other agency?

6          THE PROSPECTIVE JUROR:  No, sir.

7          THE COURT:  Okay.  Do you think you can be fair and

8   impartial in this particular case?

9          THE PROSPECTIVE JUROR:  I believe I could be, yes.

10          THE COURT:  Okay.  Any challenge for cause?

11          MR. MILLER:  No, Your Honor.

12          MR. GOLTZER:  No, sir.

13          THE COURT:  All right.  If you would return on

14   Thursday morning, please, of this week, 10:00 o'clock, to the

15   central jury room, where you were earlier today.

16          THE PROSPECTIVE JUROR:  Yes, sir.

17          THE COURT:  10:00 o'clock.

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Thank you very much.

20          THE PROSPECTIVE JUROR:  You are welcome, Your Honor.

21          (Juror leaves courtroom.)

22          THE CLERK:  The next juror is number 15, 15.

23          (Continued on next page.)

24

25

                GR      OCR      CM      CRR      CSR

Prospective Juror 15                              136

1          THE COURT:  Good afternoon.

2          THE PROSPECTIVE JUROR:  Sit?

3          THE COURT:  Just have a seat.  Put your coat down.

4    Make yourself comfortable as you can.  Don't be nervous.

5    Relax.  And would you speak nice and loud so that everybody

6    here in the courtroom can hear, particularly the people in

7    that corner because they're furthest away.  If you speak loud

8    enough for them, everybody and the government.  Okay?

9          THE PROSPECTIVE JUROR:  Okay.

10         THE COURT:  Where do you live?

11         THE PROSPECTIVE JUROR:  I live in Queens, Forest

12   Hills.

13         THE COURT:  And how long have you lived there?

14         THE PROSPECTIVE JUROR:  I actually just got divorced

15   and I just moved there, like, a few months.

16         THE COURT:  And you moved there recently?

17         THE PROSPECTIVE JUROR:  Yeah, I live in Bayside

18   before.

19         THE COURT:  I you lived in Bayside?

20         THE PROSPECTIVE JUROR:  Bayside.

21         THE COURT:  Do you have an apartment in Forest

22   Hills?

23         THE PROSPECTIVE JUROR:  No, I rent with a friend.

24         THE COURT:  You rent with a friend?

25         THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Do you have any children?

2          THE PROSPECTIVE JUROR:  No.

3          THE COURT:  What do you do for a living?

4          THE PROSPECTIVE JUROR:  I'm an accountant.  I'm an

5    accountant.

6          THE COURT:  And where did you go to school to learn

7    to become an accountant?

8          THE PROSPECTIVE JUROR:  New York and Baruch.

9          THE COURT:  Baruch College.  Are you a native New

10   Yorker?

11         THE PROSPECTIVE JUROR:  No.

12         THE COURT:  Where are you from?

13         THE PROSPECTIVE JUROR:  Originally from China.

14         THE COURT:  Originally from China.  What part?

15         THE PROSPECTIVE JUROR:  Salsberry (phonetic) Park.

16         THE COURT:  How long have you been here?

17         THE PROSPECTIVE JUROR:  About 14 years.

18         THE COURT:  Fourteen years.  You speak beautiful

19   English.

20         THE PROSPECTIVE JUROR:  Thank you.

21         THE COURT:  Did they teach you English in China?

22         THE PROSPECTIVE JUROR:  They did.

23         THE COURT:  Have you ever been on a jury before?

24         THE PROSPECTIVE JUROR:  No, this is my first time.

25         THE COURT:  You heard a little bit about the case

Prospective Juror 15                        138

1    from me this morning at about 10:30.  Do you think you can be

2    a fair and impartial juror in this particular case?

3                THE PROSPECTIVE JUROR:  I will be fair, yes.

4                THE COURT:  Okay.  Now, I should tell you this,

5    there's going to be FBI agents who testify, and the FBI agents

6    have to be judged the same as any other witnesses.  In other

7    words, they're not entitled to greater belief or less belief

8    just because they're FBI agents.  Judge every witness the

9    same.  In other words, everybody starts off equal; do you

10   understand that?

11               THE PROSPECTIVE JUROR:  Uh-huh.

12               THE COURT:  If for some reason, let's say, a person

13   of the cloth, in other words, a minister, a priest, a rabbi, a

14   yemen (phonetic), if somebody came who is a religious person,

15   they're not entitled to greater belief, just because they're

16   religious, as anybody else.

17               THE PROSPECTIVE JUROR:  Yes.

18               THE COURT:  That makes sense, doesn't it?

19               THE PROSPECTIVE JUROR:  Uh-huh.

20               THE COURT:  All human beings start off equal, and

21   you decide who you believe and who you don't believe based

22   upon the testimony of that person; does that make sense to

23   you?

24               THE PROSPECTIVE JUROR:  I'm a little confused.

25               THE COURT:  If somebody tells you that they drove

NICOLE CANALES, CSR, RPR

1  their car yesterday on the Long Island Expressway at 300 miles

2  an hour, that's ridiculous?

3          THE PROSPECTIVE JUROR:  That's ridiculous.

4  Impossible.

5          THE COURT:  You wouldn't believe that?

6          THE PROSPECTIVE JUROR:  No, no.

7          THE COURT:  That's ridiculous.

8          THE PROSPECTIVE JUROR:  Oh, yes.

9          THE COURT:  If somebody told you that they flew

10  without a helicopter or an airplane from here to the Empire

11  State Building in Manhattan you wouldn't believe that, would

12  you?

13          THE PROSPECTIVE JUROR:  No.  Impossible.

14          THE COURT:  Sometime people exaggerate, and that

15  means they're not telling the truth.

16          THE PROSPECTIVE JUROR:  Right.

17          THE COURT:  Your job as a juror is to decide whether

18  somebody's telling you the truth or not.  Makes sense?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  When you study books, you do an

21  accounting; right?

22          THE PROSPECTIVE JUROR:  Uh-huh, I'm doing payroll.

23          THE COURT:  You do payroll?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Had people padded payrolls over the

Prospective Juror 15                                          140

1    years, not where you work but other places; is that right?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  You've heard of that; right?

4              THE PROSPECTIVE JUROR:  (Inaudible response.)

5              THE COURT:  I'm not making something up that doesn't

6    happen, am I?

7              THE PROSPECTIVE JUROR:  Yeah.

8              THE COURT:  No.  So have you ever been the victim of

9    a crime?

10             THE PROSPECTIVE JUROR:  No.

11             THE COURT:  Have you ever had any difficulty with

12   the government of any kind?  In other words, with the internal

13   revenue service or with the immigration service, ever have any

14   difficulty with the government?

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  And have -- you've never been on a jury,

17   have you?

18             THE PROSPECTIVE JUROR:  No, it's my first time.

19             THE COURT:  And you've never been the victim of a

20   crime?

21             THE PROSPECTIVE JUROR:  No.

22             THE COURT:  Can you be fair and impartial?  Can you

23   be fair?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  And you went to Baruch College?

Prospective Juror 15                                    141

1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  Where did you go to high school?

3              THE PROSPECTIVE JUROR:  In China.

4              THE COURT:  In China.  I see.  But you studied some

5      English in China?

6              THE PROSPECTIVE JUROR:  Yes, just very little.

7              THE COURT:  In Baruch they taught you in English?

8              THE PROSPECTIVE JUROR:  No, I went to another

9      school, like, Queens Community College for one year, English

10     class.

11             THE COURT:  Before going to Baruch?

12             THE PROSPECTIVE JUROR:  Before Baruch.

13             THE COURT:  When they taught you in Queens, they

14     taught you in English.  Did you get good grades?

15             THE PROSPECTIVE JUROR:  Yes.  Very good.

16             THE COURT:  Okay.  All right.  Any challenge for

17     cause?

18             MR. MILLER:  No, your Honor.

19             MR. GOLTZER:  A brief sidebar, just brief follow up

20     to explain?  A follow up?

21       (Sidebar - Outside the presence of the prospective juror.)

22             MR. MILLER:  Your Honor, just want to have follow-up

23     on whether or not she -- with respect to law enforcement

24     witnesses, when you were covering that area, that was where

25     she got confused.  And then you explain to her --

1        THE COURT:  All right.  Okay.  Stay there stay

2   there.  Why don't you wait there also.

3        (In the presence of the prospective juror.)

4        THE COURT:  Do you understand that law enforcement

5   witnesses, FBI agents, they're to be gauged in whether they're

6   telling the truth or not?  That's to be decided the same as

7   you do with every other witness; do you understand that?

8        THE PROSPECTIVE JUROR:  Yeah, I understand that.

9        THE COURT:  Okay.  Thank you.  Anything else?  Thank

10  you.

11        MR. MILLER:  Thank you, your Honor.

12        THE COURT:  No challenges for cause, I take it?

13        MR. MILLER:  No.

14        MR. GOLTZER:  No, your Honor.

15        THE COURT:  You're excused, now, until Thursday,

16  10:00 o'clock, central jury room.

17        THE PROSPECTIVE JUROR:  It's going to be here?

18        THE COURT:  They know where it is, the central jury?

19        THE CLERK:  You know where the central jury room is,

20  the room that you came to this morning, the first room?

21        THE PROSPECTIVE JUROR:  Which floor is that on?

22        THE CLERK:  Second.

23        THE COURT:  Make sure you tell each of them that.

24        THE PROSPECTIVE JUROR:  Thank you.

25        THE CLERK:  Next juror is Number 14.  That's 14.

Prospective Juror 14                          143

1          THE PROSPECTIVE JUROR:  Good afternoon.

2          THE COURT:  If you're comfortable, put your coat

3    down.  And where do you live?  Which county?

4          THE PROSPECTIVE JUROR:  Nassau.

5          THE COURT:  Which town do you live?

6          THE PROSPECTIVE JUROR:  Westbury.

7          THE COURT:  Do you own your own home, or do you

8    rent?

9          THE PROSPECTIVE JUROR:  Yes, I own my own home.

10         THE COURT:  Could you speak nice and loud.

11         THE PROSPECTIVE JUROR:  I own my own home.

12         THE COURT:  Are you married or single?

13         THE PROSPECTIVE JUROR:  Married.

14         THE COURT:  And do you work outside the home?

15         THE PROSPECTIVE JUROR:  Yes, I do.

16         THE COURT:  What do you do?

17         THE PROSPECTIVE JUROR:  I am a customer service rep

18   for a bank.

19         THE COURT:  For a bank?

20         THE PROSPECTIVE JUROR:  Uh-huh.

21         THE COURT:  So do you work in a branch?

22         THE PROSPECTIVE JUROR:  In a branch.

23         THE COURT:  Do you work in the city?

24         THE PROSPECTIVE JUROR:  No, I walk right up the

25   block, right at the corner of my block.

1          THE COURT:  Near where you live?

2          THE PROSPECTIVE JUROR:  I walk right up the block.

3          THE COURT:  Does your husband work?

4          THE PROSPECTIVE JUROR:  Yes, he does.

5          THE COURT:  What does he do?

6          THE PROSPECTIVE JUROR:  He's an accounting manager

7    for a brokerage firm.

8          THE COURT:  Has he worked there for several years?

9          THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Do you have children?

11          THE PROSPECTIVE JUROR:  Yes, I have two.

12          THE COURT:  Grown?

13          THE PROSPECTIVE JUROR:  They're both married.  One

14    is in marketing, and one is a -- what does she do?  An X-ray

15    tech.

16          THE COURT:  X-ray tech.

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  What is your educational background?

19          THE PROSPECTIVE JUROR:  I went to post for

20    three-and-a-half years, LIU.

21          THE COURT:  LIU.  And what is your degree at LIU?

22          THE PROSPECTIVE JUROR:  I majored in Criminal

23    Justice and Business.

24          THE COURT:  Criminal Justice and Business?

25          THE PROSPECTIVE JUROR:  Uh-huh.

Prospective Juror 14                    145

1          THE COURT:  That's an interesting combination.  Did

2    you ever do any work in criminal justice?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  And, now, do you understand that all

5    witnesses are to be viewed and gauged -- when I say "gauged,"

6    I mean their testimony is to be analyzed the same, no matter

7    what their business or occupation.  In other words, because

8    somebody works in law enforcement they're not entitled to

9    greater belief than everybody else.

10          THE PROSPECTIVE JUROR:  Gotcha.  Yes.

11          THE COURT:  Have you ever been the victim of a

12    crime?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  Has your husband ever been the victim of

15    a crime?

16          THE PROSPECTIVE JUROR:  No.

17          THE COURT:  Have you ever had any difficulties with

18    the federal government?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  The IRS?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  Have you ever been on a jury before?

23          THE PROSPECTIVE JUROR:  No.

24          THE COURT:  And is there anything about this case

25    that makes you think you couldn't be fair or you think you

1  could be fair?

2          THE PROSPECTIVE JUROR:  I think I can be fair.

3  Everybody's an individual.  Everybody has a right.

4          THE COURT:  The defendant, as I told you, is

5  presumed to be innocent.

6          THE PROSPECTIVE JUROR:  Uh-huh.

7          THE COURT:  And the government has the burden of

8  proving his guilt beyond a reasonable doubt; do you accept

9  that?

10          THE PROSPECTIVE JUROR:  Uh-huh.

11          THE COURT:  And you've never been on a jury?

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  All right.  Any challenge for cause?

14          MR. MILLER:  No, your Honor.

15          MR. GOLTZER:  No.

16          THE COURT:  All right.  If you'd come back, ma'am,

17  on Thursday morning to the central jury room, which I

18  understand is on the second floor, Thursday morning

19  10:00 o'clock.

20          THE PROSPECTIVE JUROR:  Okay.

21          THE COURT:  Thank you very much.

22          THE PROSPECTIVE JUROR:  You're very welcome.

23          THE COURT:  Watch your step.

24          THE PROSPECTIVE JUROR:  Yeah, thanks.

25          THE CLERK:  Next juror is Number 32.  That's 32.

1           THE COURT:  Hello.  How are you?

2           THE PROSPECTIVE JUROR:  Fine, thank you.

3           THE COURT:  Have a seat.  Make yourself comfortable.

4   You can put your coat down on the rail, if you would like,

5   whatever you'd like.  All right.  And where do you live?

6           THE PROSPECTIVE JUROR:  In Queens, Astoria.

7           THE COURT:  Which part?

8           THE PROSPECTIVE JUROR:  Astoria.

9           THE COURT:  And do you have an apartment there?

10          THE PROSPECTIVE JUROR:  I'm renting.

11          THE COURT:  You're renting an apartment?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Good.  Would you talk nice and loud so

14   that the people at the end of the table can hear you.  And if

15   you'd like, face them.  Don't worry about me.  You face them,

16   you'll talk to them, not to me.  Okay.  So you rent an

17   apartment in Astoria, Queens.  Are you married or single?

18          THE PROSPECTIVE JUROR:  I'm single.

19          THE COURT:  You're single.  Do you work?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  What do you do for a living?

22          THE PROSPECTIVE JUROR:  I'm clerk in a hospital,

23   laboratory.

24          THE COURT:  I'm sorry.  You're a clerk in a

25   hospital.  Is the hospital is Queens?

```
1              THE PROSPECTIVE JUROR:  Yes, Mount Sinai.

2              THE COURT:  In Queens?

3              THE PROSPECTIVE JUROR:  Yes, historic Queens.

4    Mount Sinai, Queens.

5              THE COURT:  Mount Sinai, Queens.  Okay.  How long

6    have you been working there?

7              THE PROSPECTIVE JUROR:  Twenty-one years.

8              THE COURT:  You keep a job pretty good, huh?  Have

9    you ever been on a jury before?

10             THE PROSPECTIVE JUROR:  No.

11             THE COURT:  And have you ever been the victim of a

12   crime?

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  Now, there's going to be law enforcement

15   testimony; that means people who are in the Federal Bureau of

16   Investigation.  They call that the FBI; right?

17             THE PROSPECTIVE JUROR:  Uh-huh.

18             THE COURT:  They're going to testify.  Do you

19   understand that all witnesses, whether they're FBI agents or

20   whether they're people who work in an insurance company, or

21   people who work in a hospital, their testimony, when they give

22   evidence, in other words, when they speak from the witness

23   stand under oath, you have to judge their testimony, FBI

24   agents, the same as everybody else?  Do you understand that?

25   In other words, they're not entitled to greater belief because
```

1    they're FBI agents; do you accept that?

2              THE PROSPECTIVE JUROR:  I was brought up like -- I

3    tend to side with law enforcement.

4              THE COURT:  All right.  I'll excuse you.  Thank you.

5              THE PROSPECTIVE JUROR:  Thank you.

6              THE CLERK:  The next juror is Number 80.  That's 80.

7              THE PROSPECTIVE JUROR:  Hi.

8              THE COURT:  How are you?

9              THE PROSPECTIVE JUROR:  Fine, thank you.  I'm here.

10             THE COURT:  Nice to see you.  Why don't you sit

11   down.  Make yourself comfortable.

12             THE PROSPECTIVE JUROR:  Sure.

13             THE COURT:  Okay.  Good.  And where do you live,

14   ma'am?

15             THE PROSPECTIVE JUROR:  I live in Brooklyn.

16             THE COURT:  In Brooklyn.  Would you speak nice and

17   loud so the people over there at that table can hear you.  The

18   gentleman at the end of the table with the red tie who just

19   raised his hand, can you talk to him, because if you talk to

20   him, we'll all hear.  You don't have to look at me; I won't be

21   offended.  You just look at him.  What part of Brooklyn?

22             THE PROSPECTIVE JUROR:  Bedford Stuyvesant,

23   Bed Stuy.

24             THE COURT:  Bed Stuy.  Okay.  And do you have an

25   apartment there?

1          THE PROSPECTIVE JUROR:  I live in a house.

2          THE COURT:  Do you own the house or do you rent it?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  You own the house?

5          THE PROSPECTIVE JUROR:  Uh-huh.

6          THE COURT:  Are you married?

7          THE PROSPECTIVE JUROR:  No.

8          THE COURT:  And do you work?

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  What do you do?

11         THE PROSPECTIVE JUROR:  I'm a legal secretary.

12         THE COURT:  And what kind of law does the firm that

13    you work for practice?

14         THE PROSPECTIVE JUROR:  It's corporate.  Mainly

15    corporate.

16         THE COURT:  Do you work in Manhattan or Brooklyn?

17         THE PROSPECTIVE JUROR:  Manhattan.

18         THE COURT:  Downtown or Midtown?

19         THE PROSPECTIVE JUROR:  Midtown.

20         THE COURT:  How long have you been with the law

21    firm?

22         THE PROSPECTIVE JUROR:  Approximately 14 years.

23         THE COURT:  Fourteen years?

24         THE PROSPECTIVE JUROR:  Uh-huh.

25         THE COURT:  And have you ever been on a juror

1  before?

2          THE PROSPECTIVE JUROR:  No, I've never served.  No.

3          THE COURT:  All right.  Now, in trial's,

4  particularly in criminal trials, law enforcement people

5  testify.  It makes sense that if a person is charged with a

6  crime, law enforcement works on that type of case.  If it was

7  a tax case, we'd have people from the Internal Revenue.  That

8  makes sense; right?

9          THE PROSPECTIVE JUROR:  (Inaudible response.)

10          THE COURT:  Internal Revenue inspectors or whatever

11  they call them, agents, they're not entitled to any greater

12  belief because they're Internal Revenue agents than anybody

13  else.  That makes sense, doesn't it?

14          THE PROSPECTIVE JUROR:  Uh-huh.

15          THE COURT:  Same thing applies to FBI agents.  Do

16  you any problem with that rule?

17          THE PROSPECTIVE JUROR:  No.

18          THE COURT:  Have you ever been a convicted of a

19  crime?

20          THE PROSPECTIVE JUROR:  Aside from having car

21  stolen.

22          THE COURT:  You had a car stolen?

23          THE PROSPECTIVE JUROR:  Uh-huh.

24          THE COURT:  All right.  Was it parked and you were

25  not in the car, or were you in the car when it was stolen?

1          THE PROSPECTIVE JUROR:  Parked.

2          THE COURT:  Parked.  Did you get the car back?

3          THE PROSPECTIVE JUROR:  It was totalled.  They --

4          THE COURT:  Totalled it?

5          THE PROSPECTIVE JUROR:  Yeah.

6          THE COURT:  How many years ago was that?

7          THE PROSPECTIVE JUROR:  Quite some time.  Maybe

8   20 years ago, maybe.

9          THE COURT:  Do you think that would affect your

10  service here?

11         THE PROSPECTIVE JUROR:  I don't think so.

12         THE COURT:  All right.  Has nothing to do with this

13  case, does it?

14         THE PROSPECTIVE JUROR:  Right.  Although -- excuse

15  me.  Can I mention something?

16         THE COURT:  You can say anything you want.

17         THE PROSPECTIVE JUROR:  I just found out I may need

18  surgery, so I'm not sure --

19         THE COURT:  When do you think you need the surgery?

20         THE PROSPECTIVE JUROR:  Well, I'm not sure yet.  I'm

21  going to be going to different doctors.  I just found out just

22  this weekend.

23         THE COURT:  All right.  I think probably it would be

24  a better idea to excuse you, then, because if you're going to

25  need surgery, you're going to be concerned about that.  And so

Prospective Juror 80                                        153

1   thank you very much for telling us.  Thank you very much for

2   telling us.  You're excused.  You go back down to central

3   jury.

4              THE PROSPECTIVE JUROR:  Thank you.

5              THE CLERK:  The next juror is Number 38.  That's 38.

6              THE COURT:  Good afternoon, sir.

7              THE PROSPECTIVE JUROR:  How are you?

8              THE COURT:  Okay.  How about yourself?

9              THE PROSPECTIVE JUROR:  All right, I guess.

10             THE COURT:  You got a nice, loud voice.  That's the

11  first thing I tell everybody.  Keep your voice up.

12             THE PROSPECTIVE JUROR:  Because I like to yell at

13  work.

14             THE COURT:  What do you do?  That's my next

15  question.

16             THE PROSPECTIVE JUROR:  Well, I'll give it to you

17  easy.  I clean the streets that you got here, Sanitation

18  Department.

19             THE COURT:  Good for you.  You did a terrific job

20  over the weekend.

21             THE PROSPECTIVE JUROR:  I work in this area,

22  actually.

23             THE COURT:  You did a terrific job over the weekend,

24  no question about it.  I never met Mr. Dougherty.  He's a

25  pretty good guy?

Prospective Juror 38                            154

1          THE PROSPECTIVE JUROR:  I only met him once in

2     19 years.  He's all right.

3          THE COURT:  But he's had the job for a while?

4          THE PROSPECTIVE JUROR:  Yes, he has.

5          THE COURT:  For anybody who doesn't know, Dougherty

6     is the Sanitation Commissioner, and that's what we're talking

7     about.  All right.

8          You're obviously a Met fan.

9          THE PROSPECTIVE JUROR:  Yes, unfortunately.

10         THE COURT:  Well, you're hoping for improvement.

11         THE PROSPECTIVE JUROR:  Always.

12         THE COURT:  The only trouble with the Mets is that

13    frequently is the case, that they're hoping for improvement.

14    Well, the Jets and the Giants are hoping for improvement, and,

15    indeed, even the Yankees are.

16         THE PROSPECTIVE JUROR:  Let's not talk about the

17    Yankees.

18         THE COURT:  Okay.  All right.  So the little bit you

19    heard about this case, can you be fair and impartial?

20         THE PROSPECTIVE JUROR:  Yeah, I guess.  You know.

21         THE COURT:  I --

22         THE PROSPECTIVE JUROR:  Yeah.  If the evidence is

23    there, yeah.  You know, listen to the case, and I see how it

24    is, how I see the case being brought out by both parties,

25    and --

Prospective Juror 38                              155

1          THE COURT:  That's it.  Perfect.  That's a perfectly

2   reasonable, sensible approach.  You can't decide the case

3   until you hear the case.

4          THE PROSPECTIVE JUROR:  Right.

5          THE COURT:  You start off with a predisposition one

6   way or the other.  Do you start off favoring the government or

7   the defendant ahead of time?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  Ever been a victim of a crime?

10          THE PROSPECTIVE JUROR:  No.

11          THE COURT:  You ever been on a jury before?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  What kind?  Civil or criminal?

14          THE PROSPECTIVE JUROR:  Civil.

15          THE COURT:  What was the case about?  I don't want

16   to know the verdict.

17          THE PROSPECTIVE JUROR:  It was a rape case.

18          THE COURT:  That's criminal.

19          THE PROSPECTIVE JUROR:  Or was that criminal?  I

20   don't know.

21          THE COURT:  That's all right.  Was that in the

22   county court?

23          THE PROSPECTIVE JUROR:  Yeah, it was over in this

24   area.

25          THE COURT:  Up the street?

1           THE PROSPECTIVE JUROR:  Yeah.

2           THE COURT:  All right.  Where do you live?

3           THE PROSPECTIVE JUROR:  I'm in Staten Island.

4           THE COURT:  Staten Island.  Which part of Staten

5      Island?

6           THE PROSPECTIVE JUROR:  I'm, like, in New Dorp area.

7           THE COURT:  New Dorp.  Are you married or single?

8           THE PROSPECTIVE JUROR:  I just got divorced in July.

9           THE COURT:  Do you have children?

10          THE PROSPECTIVE JUROR:  No.

11          THE COURT:  And how long?  You've been with the

12     Sanitation Department for a long time?

13          THE PROSPECTIVE JUROR:  Eighteen-and-a-half years.

14          THE COURT:  What did your former wife do?

15          THE PROSPECTIVE JUROR:  Nothing.  That's why -- I

16     also do security at City Field and Madison Square Garden,

17     so --

18          THE COURT:  You do security.  That brings you in

19     contact with cops?

20          THE PROSPECTIVE JUROR:  Not -- if they're escorted

21     out of the building, like, Madison Square Garden, if needed,

22     if force be needed, because we're not supposed to use force on

23     our guests.

24          THE COURT:  When is the last time -- when you say

25     "guests," you mean the customers who pay for the tickets?

Prospective Juror 38                        157

1          THE PROSPECTIVE JUROR:  Right.

2          THE COURT:  Cost a fortune there; right?

3          THE PROSPECTIVE JUROR:  Yeah, it's pretty bad.

4          THE COURT:  And when is the last time you had to use

5    the services of the New York Police, you yourself?

6          THE PROSPECTIVE JUROR:  Probably two -- oh, me

7    personally?

8          THE COURT:  Yeah.

9          THE PROSPECTIVE JUROR:  I just made a report against

10   my wife, my ex-wife that moved to Texas.  That was it.

11   Because she's, like, abusing me, texting and stuff like that,

12   but that's it.

13         THE COURT:  But that has nothing to do with the

14   New York Police; that has something to do with Texas.

15         THE PROSPECTIVE JUROR:  No, that's just a report I

16   made with them in case something happened.

17         THE COURT:  I see.

18         THE PROSPECTIVE JUROR:  Not with the texts.

19         THE COURT:  With who?  State or feds?

20         THE PROSPECTIVE JUROR:  No, no, New York City

21   Police.

22         THE COURT:  About taxes?

23         THE PROSPECTIVE JUROR:  No, not about taxes, about

24   my ex-wife.  She was sending me text messages.

25         THE COURT:  Oh, text.  I'm sorry.

Prospective Juror 38                              158

```
1           THE PROSPECTIVE JUROR:  That's fine.  That's fine.
2           THE COURT:  She was sending you text messages?
3           THE PROSPECTIVE JUROR:  Right, like, my family
4   should die and stuff like that.  That has nothing do with
5   this.
6           THE COURT:  There's going to be tapes in this case.
7   They're not text messages, they're tapes.  There's going to be
8   bad language on the tapes.  And some of the tapes are going to
9   sound like they're threats, maybe.  Is that going to affect
10  you because of the text with your wife?
11          THE PROSPECTIVE JUROR:  It shouldn't.
12          THE COURT:  Okay.  And do you hold any grief,
13  particularly, for FBI agents?
14          THE PROSPECTIVE JUROR:  I knew one guy that worked
15  for the FBI many years ago.  I used to bum around in the bars
16  in Bay Ridge when we were a little younger.  But, yeah, that
17  was it, just --
18          THE COURT:  So you bounced around the bars, too?
19          THE PROSPECTIVE JUROR:  Yeah, Irish guy.
20          THE COURT:  And he bounced around bars and he was
21  Irish?
22          THE PROSPECTIVE JUROR:  Yeah.  Sure.
23          THE COURT:  Now, my name is Keenan.  All right.
24  I've been known to be in a pub myself once in awhile.
25          THE PROSPECTIVE JUROR:  What time you get out today?
```

Prospective Juror 38                          159

1        THE COURT:  That was a long time ago, so now I'm

2   little past those days.  But to be very serious, now, not

3   kidding around.  Now, you have to judge the testimony of FBI

4   witnesses the same you do anybody else.  Do you have any

5   problems with that rule?

6        THE PROSPECTIVE JUROR:  No.

7        THE COURT:  Okay.  You've never been the victim of a

8   crime, other than your wife sends you these text messages

9   which, obviously, annoy you and --

10        THE PROSPECTIVE JUROR:  Right.

11        THE COURT:  You thought they were threats and you

12   reported that to the cops.  What precinct did you report it;

13   do you remember?

14        THE PROSPECTIVE JUROR:  The 72.  My cousin works

15   there.  She took care of it for me.

16        THE COURT:  She took care of it.  Ever talk about

17   any cases with your cousin, other than the text?

18        THE PROSPECTIVE JUROR:  No.

19        THE COURT:  All right.  The jury that you were on

20   with the rape case, you said.  How long ago was that, about?

21        THE PROSPECTIVE JUROR:  I want to say probably four

22   or five years ago, because they told me after that I was good

23   for, like, seven years.

24        THE COURT:  You certainly were in the state.  This

25   is fed.

1          THE PROSPECTIVE JUROR:  Yeah, I know.

2          THE COURT:  Now, let me ask you this --

3          THE PROSPECTIVE JUROR:  Sure.

4          THE COURT:  -- if you're chosen here, will you be

5    fair?  That's the bottom line.

6          THE PROSPECTIVE JUROR:  I have no choice to be fair.

7          THE COURT:  You mean you will be fair?

8          THE PROSPECTIVE JUROR:  That's -- yes.

9          THE COURT:  Ever had any problems with the

10   government?  I thought you were saying tax and you were saying

11   text.  You ever have any problems with your taxes or anything

12   else like that with the government?

13         THE PROSPECTIVE JUROR:  Who doesn't?

14         THE COURT:  Well, I don't know.  I mean, did the IRS

15   call you in?

16         THE PROSPECTIVE JUROR:  No, no, never had any

17   problem like that.  Complaining, I thought you talked about.

18         THE COURT:  You don't like to pay them?

19         THE PROSPECTIVE JUROR:  Of course.

20         THE COURT:  Exactly.  That's perfectly normal, but

21   I'm not talking about that.

22         THE PROSPECTIVE JUROR:  No, never had a problem with

23   that.

24         THE COURT:  And you think you can be fair; you told

25   me you can.

Prospective Juror 38                                        161

1              Any challenge for cause?

2              MR. GOLTZER:  Would your Honor ask about the priors.

3              THE COURT:  Whether he's ever been the victim of a

4     crime?

5              MR. GOLTZER:  No, arrests or family members.

6              THE COURT:  Have you ever been arrested?

7              THE PROSPECTIVE JUROR:  I had a DWI.

8              THE COURT:  How long ago?

9              THE PROSPECTIVE JUROR:  Four years.

10             THE COURT:  Okay.  Did you plead?

11             THE PROSPECTIVE JUROR:  Uh-huh.

12             THE COURT:  Guilty?

13             THE PROSPECTIVE JUROR:  Uh-huh.

14             THE COURT:  What?  Did they do fine you?

15             THE PROSPECTIVE JUROR:  Yeah, fine me.  Car

16    insurance, rates go up.  Everything -- lost my license for a

17    year.  Was grounded from the Sanitation Department for two

18    years while my court was pending.  That's about it.  I'm

19    Irish.  I like to -- I made a mistake.  I like to party.

20             THE COURT:  All right.  Any challenge for cause?

21             MR. GOLTZER:  No.

22             MR. MILLER:  Your Honor, if you would ask whether --

23    without finding out what the verdict was, whether there was a

24    verdict in the rape case.

25             (Proceedings continued on next page.)

NICOLE CANALES, CSR, RPR

Prospective Juror 39                                        162

1          THE COURT:  Yes.  That's a perfectly reasonable

2   question.

3          I don't want to know the verdict.  It is none of my

4   business.  Was there a verdict in the rape case?

5          THE PROSPECTIVE JUROR:  Yes, there was.

6          THE COURT:  Fine.  Thank you.

7          Any challenge for cause?

8          MR. MILLER:  No, Your Honor.

9          MR. GOLTZER:  No, Your Honor.

10          THE COURT:  Thank you.

11          Come back Thursday morning, central jury room,

12   second floor, 10:00 o'clock, Thursday morning.

13          Thank you very much.

14          THE PROSPECTIVE JUROR:  Thursday morning, 10:00

15   o'clock?

16          THE COURT:  Yes.

17          THE CLERK:  Thursday.

18          THE PROSPECTIVE JUROR:  I have to write that down.

19          THE CLERK:  The next juror is number 39.  That's

20   three-nine.

21          (Juror present.)

22          THE COURT:  Good afternoon, sir.

23          Have a seat.  Make yourself comfortable.

24          Where do you live, sir?

25          THE PROSPECTIVE JUROR:  I live in Queens.

GR      OCR      CM      CRR      CSR

Prospective Juror 39                                    163

1           THE COURT:  You live in Queens.

2           What part of Queens do you live in?

3           THE PROSPECTIVE JUROR:  Whitestone.

4           THE COURT:  Would you speak nice and loud so the

5    last gentleman there at the other table could hear you?

6           THE PROSPECTIVE JUROR:   Okay.

7           THE COURT:  Do you have your own home in Whitestone?

8           THE PROSPECTIVE JUROR:   No; I rent.

9           THE COURT:  You rent.  It is a home, not an

10   apartment?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Are you married, sir?

13          THE PROSPECTIVE JUROR:  Yes, I am.

14          THE COURT:  What do you do for a living?

15          THE PROSPECTIVE JUROR:  I am self-employed.

16          THE COURT:  As what?

17          THE PROSPECTIVE JUROR:  I do security and personal

18   protection.

19          THE COURT:  Okay.  Security and personal protection.

20   Were you in law enforcement?

21          THE PROSPECTIVE JUROR:  Yes, I was.

22          THE COURT:  What were you?

23          THE PROSPECTIVE JUROR:  I was a correction officer.

24          THE COURT:  Correction officer?

25          THE PROSPECTIVE JUROR:  Yes.

Prospective Juror 39                          164

1          THE COURT:  New York City?

2          THE PROSPECTIVE JUROR:  New York City.

3          THE COURT:  How long were you a correction officer?

4          THE PROSPECTIVE JUROR:  Twenty years.

5          THE COURT:  You retired from the Department of

6   Correction?

7          THE PROSPECTIVE JUROR:  Yes, I did.

8          THE COURT:  Where did you work?

9          THE PROSPECTIVE JUROR:  I did 17 years on Rikers

10  Island and three years I was out on the street with

11  certain -- with programs.

12         THE COURT:  I see.

13         Does your wife work outside of the home?

14         THE PROSPECTIVE JUROR:  No, she doesn't.

15         THE COURT:  Do you have children?

16         THE PROSPECTIVE JUROR:  Yes, I do.

17         THE COURT:  How old are they?  Not -- when I say how

18  old, are they grown?

19         THE PROSPECTIVE JUROR:  Yes, they are grown.

20         THE COURT:  What do they do for a living.

21         THE PROSPECTIVE JUROR:  My daughter is going to

22  college.  My son right now is working, he's doing fliers.

23         THE COURT:  Fliers?

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  I'm sorry?

Prospective Juror 39                                165

1          THE PROSPECTIVE JUROR:  Handing out fliers,

2    pamphlets.

3          THE COURT:  Times are tough, is that the point?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Where is she going to college?

6          THE PROSPECTIVE JUROR:  LaGuardia.

7          THE COURT:  What was his educational background?

8          THE PROSPECTIVE JUROR:  He dropped out of school.

9          THE COURT:  How about yourself, what is your

10   educational background?

11         THE PROSPECTIVE JUROR:  High school.

12         THE COURT:  In New York City?

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  Where did you go?

15         THE PROSPECTIVE JUROR:  I went to school over in

16   Queens, over in Little Neck.  Then I was in Bayside.

17         THE COURT:  Then Bayside High.

18         THE PROSPECTIVE JUROR:  No; Cardozo.

19         THE COURT:  I see.

20         You are a native New York New Yorker?

21         THE PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Have you ever been on a jury before?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  Having been a correction officer, you

25   used to come into contact often with police officers and as a

GR      OCR      CM      CRR      CSR

Prospective Juror 39                                         166

1   private security person you probably from time to time come

2   into contact with New York policemen, right?

3                 THE PROSPECTIVE JUROR:  Yes.

4                 THE COURT:  The rule is that correction officers,

5   policemen, FBI agents, doctors, lawyers, judges, Indian

6   chiefs, they all start equal when they get on that witness

7   stand.  Nobody has an advantage because he is an FBI agent or

8   a correction officer.  Nobody has a disadvantage because he is

9   a correction officer or she is a correction officer or an FBI

10  agent.

11                Do you have any problem with that rule?

12                THE PROSPECTIVE JUROR:  No.

13                THE COURT:  Okay.  Does that make sense to you?

14                THE PROSPECTIVE JUROR:  Yes.

15                THE COURT:  Okay.  You never have been on a jury?

16                THE PROSPECTIVE JUROR:  No.

17                THE COURT:  Have you ever been the victim of a

18  crime?

19                THE PROSPECTIVE JUROR:  No.

20                THE COURT:  Were you sued ever personally when you

21  were a correction officer?

22                THE PROSPECTIVE JUROR:  No.

23                THE COURT:  Did you ever sue anybody?

24                THE PROSPECTIVE JUROR:  No.

25                THE COURT:  As a correction officer?

Prospective Juror 39                                    167

1           THE PROSPECTIVE JUROR:  No.

2           THE COURT:  Or for any other reason?

3           THE PROSPECTIVE JUROR:  No.

4           THE COURT:  Do you have any problems with the

5   government in the sense of the IRS, the immigration, anything?

6           THE PROSPECTIVE JUROR:  No.

7           THE COURT:  Okay.  You've never been the victim of a

8   crime, you told me.  I don't like to repeat myself.  I

9   apologize.

10          All right.  You are going to hear tape recordings

11  here if you are chosen as a juror.  When you hear the tape

12  recordings, some of the language is not the language that you

13  will hear in church if you went to church on Sunday.  Okay?

14  You get the picture?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Will that influence your verdict in any

17  way?

18          THE PROSPECTIVE JUROR:  No.

19          THE COURT:  In other words, you can judge the case

20  no matter whether nice language is used or bad language is

21  used?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  It's not the swearing or the profanity

24  that's going to affect you.

25          THE PROSPECTIVE JUROR:  No.

Prospective Juror 39                                    168

1      THE COURT:  It's the testimony and whether or not

2  the government has proven the defendant's guilt beyond a

3  reasonable doubt, is that correct?

4      THE PROSPECTIVE JUROR:  Yes.

5      THE COURT:  All right.  Any challenge for cause?

6      MR. GOLTZER:  May we have a side bar?

7      THE COURT:  Side bar.

8      (Side bar.)

9      MR. GOLTZER:  We would challenge him for cause.  We

10  have a very real concern because the crime alleged in this

11  case took place in a prison.  There may be evidence that

12  Mr. Romano allegedly corrupted correction guards.

13      THE COURT:  I asked him if he ever sued anybody or

14  was sued or was in any kind of -- I didn't use the word

15  fracas, but was he ever involved in any incident as a

16  correction official that in any way -- I asked him that.

17      MR. GOLTZER:  The question is more his attitudes

18  about prisoners and the like, Judge.  We have a whole thing

19  about the prisons in this case.

20      MR. MILLER:  Your Honor, perhaps if Your Honor just

21  inquired whether he could put aside any experiences that he

22  had as a corrections officer and judge just based on the facts

23  that come before the Court.  That assuage any concerns.

24      MR. GOLTZER:  I am concerned more -- we are

25  concerned that Romano is in prison.  He is accused of

Prospective Juror 39                                  169

1   conspiring to kill while in prison.  He is accused of using

2   other inmate's pin numbers.  He's accused of -- the government

3   is going to try to bring out some --

4           THE COURT:  What you are essentially saying is,

5   nobody who is a correction official should be on the jury?

6           MR. GOLTZER:  I think we are close to that in this

7   case.  But this -- yes, I think we are close to it as a matter

8   of implied bias.

9           MR. BACHRACH:  Your Honor, there is --

10           THE COURT:  Implied bias?

11           MR. GOLTZER:  Right.  Meaning -- I'm sure you know

12   what it means.

13           THE COURT:  Yes.

14           MR. BACHRACH:  Your Honor --

15           THE COURT:  Usually, Mr. Bachrach, I let one lawyer

16   speak on an issue.  But I am going to make an exception in

17   this case at the side bar.  What is it you want to say?

18           MR. GOLTZER:  We do appreciate it because he's

19   smarter than me.

20           MR. BACHRACH:  Thank you, Your Honor.

21           There is a piece of evidence in this case where --

22   which will presumably come in where Mr. Romano is accused of

23   corrupting correction officers.  That's part of our concern as

24   well.  Specifically, corrupting correction officers and that

25   that might affect him knowing that former fellow --

Prospective Juror 39                           170

1      THE COURT:  Tell me what question you would put to

2  him if you were asking the question.

3      MR. GOLTZER:  You have been around prisoners for

4  20 years.  You are going to learn that Mr. Romano was a

5  prisoner sentenced for committing a crime.

6      THE COURT:  You want me to bring out, in your voir

7  dire, you want me to bring out that he's serving time and he's

8  convicted?

9      MR. GOLTZER:  It's going to come out in the

10  prosecution's opening statement.  Quite frankly, you know me

11  well enough.  This guy is not going --

12      THE COURT:  I understand.

13      MR. GOLTZER:  I am trying to get a challenge for

14  cause.  I would like you to ask him as much as you can about

15  that.  So we get his real attitudes.

16      MR. MILLER:  Your Honor, I just think the question

17  is whether he can put aside his own prior experience and judge

18  on the facts.

19      THE COURT:  I will ask a few more questions.

20      (In open court.)

21      THE COURT:  The evidence is going to be in the case

22  that the defendant was in prison for another crime, nothing to

23  do with this charge.  And the evidence is going to be,

24  according to the government, that he allegedly engaged in this

25  conspiracy to kill this judge and to kill this prosecutor

1    while he was in prison.

2           You were a corrections official for 20 years.  Would

3    your history, background and life as a correction official

4    affect your service in this case?

5           THE PROSPECTIVE JUROR:  I don't think so.

6           THE COURT:  Okay.  I think I have asked it as best I

7    can.

8           Any challenge for cause?

9           MR. MILLER:  No, Your Honor.

10          MR. GOLTZER:  Yes.

11          THE COURT:  The same.

12          All right.  Challenge for cause is overruled.

13          You will be back, please, if you would, on Thursday

14   morning in the central jury room at 10:00 o'clock.

15          THE PROSPECTIVE JUROR:  10:00 o'clock.

16          THE COURT:  Second floor.

17          Thank you.

18          (Juror leaves courtroom.)

19          MR. GOLTZER:  May it please the Court, may I place

20   something on the record?

21          THE COURT:  Yes.

22          MR. GOLTZER:  His last answer wasn't sufficiently

23   definitive and clear.  In other words, "I don't think so" is

24   more like, probably.  It's not --

25          THE COURT:  Could you read the question and answer,

GR     OCR     CM     CRR     CSR

Prospective Juror 3                                        172

1   please, Mr. Rudolph.

2            (Record read.)

3            THE COURT:  I think that's an adequate answer.

4            MR. GOLTZER:  We just take the position, most

5   respectfully, that it's sufficiently tentative that it's not

6   definitive enough that we could exclude the reasonable

7   possibility that he bears a state of mind that would prevent

8   him from being both fair and impartial.

9            MR. MILLER:  Your Honor, I just want to put on the

10  record, that you can say "I don't think so" in many ways.  He

11  said "I don't think so" in a very definitive way rather than

12  one where he thought about it, he hemmed and hawed or said so

13  in a way that seemed uncertain.

14           THE COURT:  He certainly didn't hem and/or haw and I

15  thought his answer was an unequivocal "I don't think so."

16           Thank you.

17           The objection for cause is overruled.

18           THE CLERK:  The next juror is number three, number

19  three.

20           (Juror present.)

21           THE COURT:  Come on up here, sir.  Right over there.

22           Good afternoon, sir.

23           THE PROSPECTIVE JUROR:  Good afternoon, Your Honor.

24           THE COURT:  Thank you.  You speak nice and loud.

25           THE PROSPECTIVE JUROR:  Yes, I do.  I am very

Prospective Juror 3                                    173

1    bombastic.

2              THE COURT:  That way is perfect.

3              Where do you live.

4              THE PROSPECTIVE JUROR:  Staten Island, New York.

5              THE COURT:  What part of Staten Island?

6              THE PROSPECTIVE JUROR:  Richmondtown.

7              THE COURT:  Okay.  Are you married?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  What do you do for a living?

10             THE PROSPECTIVE JUROR:  Educator.

11             THE COURT:  High school, grammar school?

12             THE PROSPECTIVE JUROR:  Elementary.

13             THE COURT:  What do you teach?

14             THE PROSPECTIVE JUROR:  Fifth grade general ed.

15             THE COURT:  How long have you been doing that?

16             THE PROSPECTIVE JUROR:  Nineteen years.

17             THE COURT:  Do you have a bachelors degree,

18   obviously?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  In what?

21             THE PROSPECTIVE JUROR:  Education.

22             THE COURT:  Do you have a further degree?

23             THE PROSPECTIVE JUROR:  Special education and

24   administration supervision.

25             THE COURT:  Okay.  Do you have your own home?

GR      OCR      CM      CRR      CSR

Prospective Juror 3                                        174

1           THE PROSPECTIVE JUROR:  Yes, I do.

2           THE COURT:  You are single, you said?

3           THE PROSPECTIVE JUROR:  That's correct.

4           THE COURT:  Have you ever been on a jury?

5           THE PROSPECTIVE JUROR:  No, I have not.

6           THE COURT:  Is there anything about this case that

7    you feel would make it difficult for you to be fair and

8    impartial?

9           THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  What?

11          THE PROSPECTIVE JUROR:  The fact that it's a federal

12   case.

13          THE COURT:  The fact that it is a federal case?

14          THE PROSPECTIVE JUROR:  A hum, correct, yes.

15          THE COURT:  Why?  I don't understand that.

16          THE PROSPECTIVE JUROR:  Well, not too long ago, I

17   had to come here a couple of years back for a family member

18   who was incarcerated from the federal government as a result

19   of the actions --

20          THE COURT:  In other words, you feel that the feds

21   take advantage of people?

22          THE PROSPECTIVE JUROR:  No, not at all.  I didn't

23   say that at all.

24          What I'm saying is that I have a couple of relatives

25   that unfortunately had to be incarcerated as a result of

Prospective Juror 36                                        175

1   federal cases brought against them.

2          THE COURT:  Do you feel that it would be difficult

3   for you to be fair in a federal case, is that it?

4          THE PROSPECTIVE JUROR:  That's correct.

5          THE COURT:  All right.  I will excuse you.

6          Thank you very much for being frank.

7          THE PROSPECTIVE JUROR:  I go home?

8          THE COURT:  Yes.

9          THE PROSPECTIVE JUROR:  You have a good day now.

10         THE COURT:  Thank you very much.

11         Just report to the central jury room first on the

12  second floor.

13         THE PROSPECTIVE JUROR:  Got you.

14         (Juror leaves courtroom.)

15         THE CLERK:  The next juror is number 36.  That's

16  three-six.

17         (Juror present.)

18         THE COURT:  Good afternoon, sir.

19         THE PROSPECTIVE JUROR:  Good afternoon.

20         THE COURT:  Have a seat.  Make yourself comfortable,

21  if you can.

22         THE PROSPECTIVE JUROR:  Thank you.

23         THE COURT:  Would you speak nice and loud so the

24  gentleman there at the other table, the table far over there,

25  speak to him.  You don't have to look at me.  Just speak to

1    him.   If you talk loud enough for him to hear, then everybody

2    can hear.

3                 THE PROSPECTIVE JUROR:  Okay.

4                 THE COURT:  Where do you live, sir?

5                 THE PROSPECTIVE JUROR:  Queens.

6                 THE COURT:  What part of Queens do you live in?

7                 THE PROSPECTIVE JUROR:  East Elmhurst.

8                 THE COURT:  I'm sorry?

9                 THE PROSPECTIVE JUROR:  East Elmhurst.

10                THE COURT:  Okay.  How long have you been living

11   there?

12                THE PROSPECTIVE JUROR:  Seven years.

13                THE COURT:  Do you own your own home or do you rent?

14                THE PROSPECTIVE JUROR:  Own.

15                THE COURT:  What do you do for a living?

16                THE PROSPECTIVE JUROR:  Right now, I'm unemployed.

17                THE COURT:  You are unemployed?

18                THE PROSPECTIVE JUROR:  Yes.

19                THE COURT:  When you worked, what did you do, sir?

20                THE PROSPECTIVE JUROR:  Retail.

21                THE COURT:  What kind of material was it that you

22   were selling?

23                THE PROSPECTIVE JUROR:  Ladies' accessories.

24                THE COURT:  Ladies' accessories?

25                THE PROSPECTIVE JUROR:  Yes.

GR        OCR        CM        CRR        CSR

Prospective Juror 36                              177

1          THE COURT:  Did you work in a department store or

2    small store?

3              THE PROSPECTIVE JUROR:  Department store.

4              THE COURT:  Department store.

5          Did you work at Christmas?

6              THE PROSPECTIVE JUROR:  No.  I was off.

7              THE COURT:  You were off?

8              THE PROSPECTIVE JUROR:  Yes.  I mean, laid off.  I

9    lost my job December 7th.

10             THE COURT:  Of last year?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  A month ago?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  How long were you working for the store

15   that you worked for?

16             THE PROSPECTIVE JUROR:  Six years.

17             THE COURT:  Six years.

18         What's your educational background, sir?

19             THE PROSPECTIVE JUROR:  I have a bachelor degree in

20   business administration.

21             THE COURT:  From where?

22             THE PROSPECTIVE JUROR:  Boricua College.

23             THE COURT:  Where is that college?

24             THE PROSPECTIVE JUROR:  Brooklyn.

25             THE COURT:  Physically, where was the college in

Prospective Juror 36                    178

1    Brooklyn?  I'm sorry.  I didn't hear of the college until just

2    now.

3                  THE PROSPECTIVE JUROR:  It's on the north side.  I

4    don't remember the address.

5                  THE COURT:  Okay.

6                  THE PROSPECTIVE JUROR:  It was about 12 years ago.

7                  THE COURT:  Are you a native New Yorker?

8                  THE PROSPECTIVE JUROR:  I was born in the Dominican

9    Republic.

10                 THE COURT:  You were born in the Dominican Republic?

11                 THE PROSPECTIVE JUROR:  Yes.

12                 THE COURT:  How long have you been here, sir?

13                 THE PROSPECTIVE JUROR:  For about 21 years.

14                 THE COURT:  Twenty-one years.

15                 Are you married or single?

16                 THE PROSPECTIVE JUROR:  I am single.

17                 THE COURT:  Have you ever been on a jury before?

18                 THE PROSPECTIVE JUROR:  Yes.

19                 THE COURT:  What kind of a case?

20                 THE PROSPECTIVE JUROR:  It was a robbery.

21                 THE COURT:  Did you reach a verdict in the case?

22                 THE PROSPECTIVE JUROR:  Yes, we did.

23                 THE COURT:  How long ago was that?  About?  I don't

24    want to know exactly.  Five years, 10 years?

25                 THE PROSPECTIVE JUROR:  About five years.

GR      OCR      CM      CRR      CSR

Prospective Juror 36                                      179

1            THE COURT:  Five years, you'd say.

2            All right.  Do you understand that the testimony of

3    law enforcement agents is not to be believed any more than

4    anybody else's testimony just because the person is a law

5    enforcement agent?

6            Do you accept that?

7            THE PROSPECTIVE JUROR:  Yes.

8            THE COURT:  All right.  You heard that in the other

9    case that you tried, right?

10           THE PROSPECTIVE JUROR:  Yes.

11           THE COURT:  There were police officers probably who

12   testified, right?

13           THE PROSPECTIVE JUROR:  Yes.

14           THE COURT:  The judge told you that, right?

15           THE PROSPECTIVE JUROR:  That's correct.

16           THE COURT:  You remember that?

17           THE PROSPECTIVE JUROR:  Yes.

18           THE COURT:  And you followed that instruction?

19           THE PROSPECTIVE JUROR:  Yes.

20           THE COURT:  Would you follow it here?

21           THE PROSPECTIVE JUROR:  Definitely.

22           THE COURT:  Okay.  Now, there are going to be tape

23   recordings played here.  The tape recordings are going to have

24   some tough language on them.

25           Would that affect your ability to serve?

Prospective Juror 36                                          180

1          Unfortunately, probably you hear some tough language
2     around town from time to time; is that right?
3          THE PROSPECTIVE JUROR:  Yes.
4          THE COURT:  Would the rough language affect your
5     service in any way?
6          THE PROSPECTIVE JUROR:  I don't think so.
7          THE COURT:  All right.  When you say you don't think
8     so, can you think of any reason why it would?
9          THE PROSPECTIVE JUROR:  If it's complicated
10    language.
11         THE COURT:  Excuse me?
12         THE PROSPECTIVE JUROR:  If it is a term that I don't
13    understand I might ask.
14         THE COURT:  If it is a term you don't understand,
15    sure, you can ask.  Certainly, sure.  But I am not talking
16    about that.
17         I am saying using bad language.
18         THE PROSPECTIVE JUROR:  Bad language?  Oh.
19         THE COURT:  Would that affect you, sir?
20         THE PROSPECTIVE JUROR:  No.
21         THE COURT:  Okay.  You have heard bad language in
22    your life, right?
23         THE PROSPECTIVE JUROR:  I'm sorry?
24         THE COURT:  You have heard bad language in your
25    lifetime?

Prospective Juror 36                                      181

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  The point being, there are going to be

3   tape recordings played and there is some rough, tough language

4   on the tape recordings.  Do you understand that?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Have you ever been the victim of a

7   crime?

8          THE PROSPECTIVE JUROR:  No.  I'm sorry.

9          THE COURT:  Take your time.

10         THE PROSPECTIVE JUROR:  I was robbed many years --

11         THE COURT:  You were robbed many years ago?

12         THE PROSPECTIVE JUROR:  Yes, in the subway.  I did

13  not report it.

14         THE COURT:  You did not report it?

15         THE PROSPECTIVE JUROR:  No.

16         THE COURT:  When you say you were robbed, did

17  somebody hold a knife or gun to you?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  A knife?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  You didn't report it?

22         THE PROSPECTIVE JUROR:  No.

23         THE COURT:  Why?

24         THE PROSPECTIVE JUROR:  I was ignorant back then.

25  It was my recently arrived to this country.  So I didn't much

Prospective Juror 36                    182

1    understand.

2              THE COURT:  You were newly in the country?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  You were hesitant, in other words?  You

5    thought --

6              THE PROSPECTIVE JUROR:  Yes.  I felt just took a --

7    a chain.

8              THE COURT:  A chain from you?

9              THE PROSPECTIVE JUROR:  Yes, a chain.

10             THE COURT:  What time of day was it, that you were

11   robbed?

12             THE PROSPECTIVE JUROR:  I remember it was about

13   five.

14             THE COURT:  In the afternoon?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Do you think you can be fair and

17   impartial in this case?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Anything about the charges make you feel

20   that you'd have a problem being fair and impartial?

21             THE PROSPECTIVE JUROR:  No.

22             THE COURT:  Okay.  Have you had any difficulty with

23   the federal government?  In other words, the IRS or

24   Immigration?  You came from the Dominican Republic, you said.

25             THE PROSPECTIVE JUROR:  No.

1          THE COURT:  No problems?

2          THE PROSPECTIVE JUROR:  No.

3          THE COURT:  Okay.  Any problems with the police

4   ever?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  Okay.  Any challenge for cause?

7          MR. MILLER:  No objection, Your Honor.  No

8   challenge.

9          MR. GOLTZER:  No, sir.

10          THE COURT:  No challenge for cause.

11          All right.  If you'd come back, please, to the

12   central jury room on Thursday morning at 10:00 o'clock.

13   That's on the second floor.  Just come back and report there

14   Thursday morning 10:00 o'clock.

15          THE PROSPECTIVE JUROR:  Thursday morning.

16          THE COURT:  Okay.  Thank you very much.

17          THE PROSPECTIVE JUROR:  You are welcome.

18          THE COURT:  Safe home now.

19          (Juror leaves courtroom.)

20          THE CLERK:  The next juror is number 13.  That's

21   one-three.

22          (Juror present.)

23          THE COURT:  Good afternoon, sir.

24          THE PROSPECTIVE JUROR:  Good afternoon.

25          THE COURT:  Would you speak nice and loud so the

Prospective Juror 13                    184

1   gentleman there at the other table can hear you?

2           THE PROSPECTIVE JUROR:   Okay.

3           THE COURT:  The gentleman with the red tie, way down

4   there.

5           THE PROSPECTIVE JUROR:  Okay.

6           THE COURT:  Speak to him.  You don't have to speak

7   to me.  Just speak to him.  We will all hear you.

8           THE PROSPECTIVE JUROR:  Okay.

9           THE COURT:  Where do you live?

10          THE PROSPECTIVE JUROR:  Brooklyn, New York.

11          THE COURT:  Okay.  What part of Brooklyn do you live

12  in?

13          THE PROSPECTIVE JUROR:  I live in

14  Mill Basin-East Flatbush area.

15          THE COURT:  All right.  Do you have an apartment

16  there or do you rent -- you rent an apartment or house?

17          THE PROSPECTIVE JUROR:  In a house.

18          THE COURT:  Are you married or single?

19          THE PROSPECTIVE JUROR:  I am married.

20          THE COURT:  What do you do for a living?

21          THE PROSPECTIVE JUROR:  I'm a security guard at

22  Maimonides Medical Center.

23          THE COURT:  You are a security guard at a hospital?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Okay.  How long have been a security

Prospective Juror 13                          185

1    guard?

2              THE PROSPECTIVE JUROR:  At the hospital, I've been

3    there for five years.

4              THE COURT:  Before that, what did you do?

5              THE PROSPECTIVE JUROR:  I was a correction officer

6    in Maryland.

7              THE COURT:  Correction officer in Maryland?

8              THE PROSPECTIVE JUROR:  Yes, sir.

9              THE COURT:  You are going to learn -- how long were

10   you a correction officer?

11             THE PROSPECTIVE JUROR:  For four years, four and a

12   half years.

13             THE COURT:  Was that in Baltimore or Annapolis or

14   some other place?

15             THE PROSPECTIVE JUROR:  It's in Baltimore, Jessup

16   area.  It's Jessup.

17             THE COURT:  You are going to learn in this case --

18   well, before I get to that, let me talk a little bit with you

19   about the correction life-style.

20             When you were a correction guard, were you ever

21   accused of assaulting an inmate?

22             THE PROSPECTIVE JUROR:  No.

23             THE COURT:  Did any inmates ever assault you?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  Okay.  Did that end up in court?

Prospective Juror 13                          186

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Were they punished administratively?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  In this case you are going to learn in

5    the evidence that the defendant was in jail, was in prison, at

6    the time that this conspiracy allegedly took place.  He was in

7    jail or in a federal holding facility on another charge.  I am

8    telling you that ahead of time. That is a fact and the defense

9    wouldn't dispute it.

10          Do you think that will affect your service here?

11          THE PROSPECTIVE JUROR:  No.

12          THE COURT:  It won't?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  Do you think you could still be fair?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Any incidents, occurrences or events

17   while you were a correction guard down in Maryland that in any

18   way would affect your service as a juror in a case like this?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  Okay.  So you think you can be fair and

21   impartial?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  You are married?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Does your wife work.

Prospective Juror 13                                187

1          THE PROSPECTIVE JUROR:  I'm separated at this time.

2          THE COURT:  Do you have children?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  What does your wife, before you were

5     separated, what did she do for a living?

6          THE PROSPECTIVE JUROR:  She is a banker.

7          THE COURT:  A banker?

8          THE PROSPECTIVE JUROR:  She works in a bank.

9          THE COURT:  Do you have children?

10         THE PROSPECTIVE JUROR:  Yes.

11         THE COURT:  How old are they.

12         THE PROSPECTIVE JUROR:  Twenty-one -- actually, 20

13    and 14.

14         THE COURT:  The twenty-year old, what does he or she

15    do?

16         THE PROSPECTIVE JUROR:  She goes to Arundel

17    Community.

18         THE COURT:  Arundel?  That's down in Maryland?

19         THE PROSPECTIVE JUROR:  In Maryland.

20         THE COURT:  Very close to Annapolis?

21         THE PROSPECTIVE JUROR:  Correct.

22         THE COURT:  Just outside of Annapolis, actually.

23         THE PROSPECTIVE JUROR:  She also works.

24         THE COURT:  Excuse me?

25         THE PROSPECTIVE JUROR:  She also works.

Prospective Juror 13                          188

1           THE COURT:  She also works.  What does she do?

2           THE PROSPECTIVE JUROR:  I believe she is a manager

3    of one of the retail firms.

4           THE COURT:  A manager of a retail firm.

5           Okay.  You are originally from Maryland?

6           THE PROSPECTIVE JUROR:  No.  I am originally from

7    Guayana, South America.

8           THE COURT:  From Guayana?

9           THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  How long have you been in the United

11   States?

12          THE PROSPECTIVE JUROR:  Since 1983, about 30 years.

13          THE COURT:  A little louder.

14          THE PROSPECTIVE JUROR:  About 31 years.

15          THE COURT:  Thirty-one years.

16          Have you ever had any problems with the United

17   States Government?

18          THE PROSPECTIVE JUROR:  No.

19          THE COURT:  In other words, with the income tax

20   people?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  With the Immigration people?

23          THE PROSPECTIVE JUROR:  No.

24          THE COURT:  None of them?

25          THE PROSPECTIVE JUROR:  No.

1        THE COURT:  Okay.  If I told you that the law is

2   that you have to judge law enforcement testimony the same as

3   anybody else's testimony, that is, you have to evaluate it and

4   analyze it the same, whether somebody is an FBI agent or a

5   drug enforcement act, do you have any difficulty or

6   disagreement with that rule?

7        THE PROSPECTIVE JUROR:  No.

8        THE COURT:  Would you judge a law enforcement

9   official's testimony the same as anybody else's?

10       THE PROSPECTIVE JUROR:  Yes.

11       THE COURT:  All right.  Can you think of any reason

12  why you couldn't be fair and impartial?

13       THE PROSPECTIVE JUROR:  No.

14       THE COURT:  Have you ever been the victim of a crime

15  of any kind?

16       THE PROSPECTIVE JUROR:  Yes.

17       THE COURT:  What kind?

18       THE PROSPECTIVE JUROR:  I was shot in the leg in --

19       THE COURT:  You were shot in leg?

20       THE PROSPECTIVE JUROR:  Yes.

21       THE COURT:  When were you shot in the leg?

22       THE PROSPECTIVE JUROR:  I believe it was 1987.

23       THE COURT:  19?

24       THE PROSPECTIVE JUROR:  '87.

25       THE COURT:  1987.

Prospective Juror 13                    190

1           If you would talk a little louder so they can hear

2    you.

3           THE PROSPECTIVE JUROR:  I'm sorry.

4           THE COURT:  Were you a correction official when you

5    were shot in the leg?

6           THE PROSPECTIVE JUROR:  No, I wasn't.  I was a

7    teenager.

8           THE COURT:  You were a teenager?

9           THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Was this in Baltimore?

11          THE PROSPECTIVE JUROR:  No.  It was actually in East

12   Flatbush.

13          THE COURT:  Where?

14          THE PROSPECTIVE JUROR:  East Flatbush.

15          THE COURT:  Whoever shot you, did they catch them?

16          THE PROSPECTIVE JUROR:  No.

17          THE COURT:  Have you yourself ever been in trouble?

18          THE PROSPECTIVE JUROR:  No.  I was arrested for a

19   false arrest.

20          THE COURT:  You were arrested but it was a wrong

21   arrest?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  How long did they hold you?

24          THE PROSPECTIVE JUROR:  I would say, maybe for about

25   15 to 30 minutes.

Prospective Juror 13                                191

1          THE COURT:  Fifteen or 30 minutes.

2          What was it all about when you were arrested?

3          THE PROSPECTIVE JUROR:  Actually, they thought the

4    car I was driving was actually stolen, a stolen vehicle.

5          THE COURT:  That it was a stolen car?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  They tried to hold you for it?

8          THE PROSPECTIVE JUROR:  Yes.  But it wasn't.  They

9    actually -- the numbers that they, or plate number, the number

10   filed on the engine, they mixed it up with something else.

11         THE COURT:  In other words, the car wasn't really

12   stolen?

13         THE PROSPECTIVE JUROR:  Right.

14         THE COURT:  And they let you go pretty soon?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Would you hold that against law

17   enforcement?

18         THE PROSPECTIVE JUROR:  No.

19         THE COURT:  Okay.  You are going to hear tapes in

20   this case and the tapes are going to be tapes that were made,

21   many of them, while the defendant was, as I understand, in

22   prison.  I told you that, right?

23         THE PROSPECTIVE JUROR:  Yes.

24         THE COURT:  Okay.  There is going to be some very

25   bad language, swearing, cursing, profanity on the tapes.

1   Would that affect your service?

2            THE PROSPECTIVE JUROR:  No.

3            THE COURT:  Do you think you can be fair and

4   impartial?

5            THE PROSPECTIVE JUROR:  Yes.

6            THE COURT:  All right.  Any challenge for cause?

7            MR. GOLTZER:  Follow-up question perhaps on

8   educational background?  I didn't hear.

9            THE COURT:  Correction department background?

10           MR. GOLTZER:  Education.

11           THE COURT:  Yes.  Sure.

12           MR. MILLER:  And jury service.  I didn't hear that.

13           (Continued on next page.)

14

15

16

17

18

19

20

21

22

23

24

25

1            THE COURT:  You haven't been on a jury?

2            THE PROSPECTIVE JUROR:  No.

3            THE COURT:  Okay.  And tell us your educational

4    background, if you would.

5            THE PROSPECTIVE JUROR:  I went to -- I went to

6    Lafayette High School here in Brooklyn.

7            THE COURT:  Went to Lafayette in Brooklyn.

8            THE PROSPECTIVE JUROR:  I dropped out in 1988 and

9    pursued getting my GED in 1991.

10           THE COURT:  He got his GED in 1991.

11           THE PROSPECTIVE JUROR:  Then proceeded to college in

12   Maryland, where as I was technology, where I didn't finish and

13   then I went into correction.

14           THE COURT:  He didn't finish the college.

15           Was that community college in Maryland?

16           THE PROSPECTIVE JUROR:  Actually, it was one of

17   those technical schools.

18           THE COURT:  Technical schools?

19           THE PROSPECTIVE JUROR:  Yes.

20           THE COURT:  And what were you studying primarily?

21           THE PROSPECTIVE JUROR:  Well, computer technology.

22           THE COURT:  Computer technology.

23           MR. GOLTZER:  Would your Honor ask him when he left

24   corrections?

25           THE COURT:  Yes.

1          When did you leave correction?

2          THE PROSPECTIVE JUROR:  I left correction June of

3     2000 -- it was 2007.

4          THE COURT:  And since then you've been --

5          THE PROSPECTIVE JUROR:  Since then -- well, I didn't

6     work for a year.  2008.  Well, 2007.  And then I proceeded to

7     became that security guard.

8          THE COURT:  Security guard.  And that's what he's

9     done since.  Okay.  Thank you very much.

10          Any challenge for cause?

11          MR. MILLER:  No, your Honor.

12          MR. GOLTZER:  No, sir.

13          THE COURT:  So if you'll come back, please, sir, on

14     Thursday morning at 10:00 o'clock and report to the central

15     jury room on the second floor.  Thank you very much.

16          THE PROSPECTIVE JUROR:  Thank you.

17          THE CLERK:  The next juror is Number 33.  33.

18          THE COURT:  Good afternoon.

19          THE PROSPECTIVE JUROR:  Good afternoon.

20          THE COURT:  Would you speak in a nice, loud voice,

21     please, so that they can hear you.  All the way over there,

22     the gentleman there with the red tie, talk to him.

23          THE PROSPECTIVE JUROR:  Good afternoon.

24          THE COURT:  If you talk to him, you'll be okay.  One

25     of the sides asked me to ask this -- I'm sorry.  I have a bad

1  cold, obviously.  One side asked me to ask all the jurors the

2  question I'm going to ask you, and I haven't done it.

3  Somebody wanted me to ask.  How old are you?

4          THE PROSPECTIVE JUROR:  Twenty-six.

5          THE COURT:  Twenty-six.  Because you look a lot

6  younger.  Okay.  You're 26.  And what do you do for a living?

7          THE PROSPECTIVE JUROR:  Right now I'm unemployed but

8  I --

9          THE COURT:  What did you do?

10          THE PROSPECTIVE JUROR:  I used to work as a pharmacy

11  intern for roughly four years.

12          THE COURT:  You worked for a pharmacy?

13          THE PROSPECTIVE JUROR:  As an intern.

14          THE COURT:  As an intern?

15          THE PROSPECTIVE JUROR:  Uh-huh.

16          THE COURT:  And where do you live?

17          THE PROSPECTIVE JUROR:  Bay Ridge, Brooklyn for over

18  a decade.

19          THE COURT:  Which part of Brooklyn?

20          THE PROSPECTIVE JUROR:  Bay Ridge.

21          THE COURT:  And do you live with your family?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  And what does your father do for a

24  living?

25          THE PROSPECTIVE JUROR:  He works with a travel

Prospective Juror 33                                    196

1    agency, doing the paperwork.

2            THE COURT:  A little louder.

3            THE PROSPECTIVE JUROR:  He does clerical work for a

4    travel agency.

5            THE COURT:  He works for a travel agency?

6            THE PROSPECTIVE JUROR:  And my mom's retired.

7            THE COURT:  Does your mother work outside the home?

8            THE PROSPECTIVE JUROR:  No, she's retired.

9            THE COURT:  What did she do?

10           THE PROSPECTIVE JUROR:  Data input.  Data input.

11           THE COURT:  Do you have brothers and sisters?

12           THE PROSPECTIVE JUROR:  No.

13           THE COURT:  Your mother and father come from China?

14           THE PROSPECTIVE JUROR:  Yes.

15           THE COURT:  And you were born here?

16           THE PROSPECTIVE JUROR:  Yes.

17           THE COURT:  Have you ever been on a jury before?

18           THE PROSPECTIVE JUROR:  No.

19           THE COURT:  Have you ever been the victim of a

20   crime?

21           THE PROSPECTIVE JUROR:  No.

22           THE COURT:  Have your mother and father ever been

23   the victim of a crime that you know about?

24           THE PROSPECTIVE JUROR:  When I was a baby, I

25   believe.

Prospective Juror 33                              197

1          THE COURT:  You were so young you don't even

2    remember.

3          THE PROSPECTIVE JUROR:  I know of it, but I don't

4    know.  I don't remember.

5          THE COURT:  Would it make you feel anything?

6          THE PROSPECTIVE JUROR:  Not really.  I was always

7    wondering why the bathroom was boarded up.

8          THE COURT:  Why the bathroom was --

9          THE PROSPECTIVE JUROR:  It was in Chinatown.  I used

10   to live in Chinatown.

11         THE COURT:  In Chinatown.

12         THE PROSPECTIVE JUROR:  Yeah.

13         THE COURT:  In Manhattan?

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Who was the victim; your mother, or

16   father or both?

17         THE PROSPECTIVE JUROR:  They weren't home, but it

18   was a burglary.

19         THE COURT:  A burglary.  And do you know what they

20   stole?

21         THE PROSPECTIVE JUROR:  No.

22         THE COURT:  That wouldn't affect you, would it?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  All right.  The rule is that law

25   enforcement agents, even FBI agents, or DEA agents, or secret

1  service agents, even, they're not entitled to greater belief

2  because they're law enforcement.  In other words, law

3  enforcement witnesses are the same as anybody else, in the

4  sense that you have to judge their testimony individually.

5  Would you accept that rule?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Okay.  And have you had any disputes or

8  difficulties with the federal government?

9              THE PROSPECTIVE JUROR:  No.

10             THE COURT:  Have your mother or father so far?

11             THE PROSPECTIVE JUROR:  No.

12             THE COURT:  In this case, you're going to hear tapes

13 of conversations, and on the tapes you're going to hear some

14 bad language.  Would that affect your ability to serve

15 impartially?

16             THE PROSPECTIVE JUROR:  No.

17             THE COURT:  Okay.  Because people sometimes use bad

18 language; right?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  You've heard it?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  And a lot of people use bad language in

23 New York, don't they?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  Okay.  And any challenge for cause?

1          MR. MILLER:    Just educational questions,

2    your Honor.

3          THE COURT:  What's your educational background?

4          THE PROSPECTIVE JUROR:  I graduated with a doctorate

5    in pharmacy.

6          THE COURT:  Okay.  You're right.  I didn't ask it.

7    She has a doctorate, pharmacy.

8          THE PROSPECTIVE JUROR:  I have my licensing -- I

9    have my boards exam tomorrow and the day after.

10          THE COURT:  Oh, good.  Perfect.  You know why that's

11    good?  Because unless something happens, you don't have to

12    come back until Thursday.

13          THE PROSPECTIVE JUROR:  Yeah, I'm hoping.

14          THE COURT:  So you don't have to worry about your

15    board exam.  This won't affect your board exam.

16          MR. GOLTZER:  Will your Honor ask where she studied

17    pharmacy.

18          THE PROSPECTIVE JUROR:  St. John's.

19          THE COURT:  Which college?

20          THE PROSPECTIVE JUROR:  St. John's University.

21          THE COURT:  St. John's University.  Did you ever

22    watch their basketball team?

23          THE PROSPECTIVE JUROR:  We still have a basketball

24    team.

25          THE COURT:  Any challenge for cause?

1        MR. GOLTZER:  No, your Honor.

2        MR. MILLER:  No, sir.

3        THE COURT:  All right.  Come back Thursday.  Good

4    luck in the exams tomorrow.

5        THE PROSPECTIVE JUROR:  Thank you so much.  Where do

6    I go?

7        THE COURT:  Come back Thursday at 10:00 o'clock, on

8    the second floor, to the central jury room.

9        THE PROSPECTIVE JUROR:  Do I go downstairs?

10       THE COURT:  Go home now.

11       THE PROSPECTIVE JUROR:  Go home?

12       THE COURT:  Thursday, though, you come back, as I

13   said, 10:00 o'clock.

14       THE PROSPECTIVE JUROR:  Okay.  Thank you.

15       THE COURT:  Thank you again.

16       THE CLERK:  The next juror is Number 37.  37.

17       THE COURT:  Good afternoon.

18       THE PROSPECTIVE JUROR:  Good afternoon.

19       THE COURT:  You just have a seat and make yourself

20   comfortable.

21       THE PROSPECTIVE JUROR:  All right.

22       THE COURT:  Okay.  And when you speak in a nice,

23   loud voice so the last gentleman there with the red tie can

24   hear you.

25       THE PROSPECTIVE JUROR:  Okay.

1       THE COURT:  And where do you live?

2       THE PROSPECTIVE JUROR:  I live in Brooklyn.

3       THE COURT:  In Brooklyn.  What part of town do you

4   live in?

5       THE PROSPECTIVE JUROR:  Park Slope.

6       THE COURT:  Park Slope, that's where the mayor

7   lives; right?

8       THE PROSPECTIVE JUROR:  Yeah, that's true.

9       THE COURT:  And have you ever been on a jury before?

10      THE PROSPECTIVE JUROR:  No.

11      THE COURT:  And are you married or single?

12      THE PROSPECTIVE JUROR:  Married.

13      THE COURT:  And do you work outside of the home?

14      THE PROSPECTIVE JUROR:  Yes, I do.

15      THE COURT:  What do you do?

16      THE PROSPECTIVE JUROR:  I'm a banker.

17      THE COURT:  A banker?

18      THE PROSPECTIVE JUROR:  Uh-huh.

19      THE COURT:  And big bank?  I don't want to know the

20   name, necessarily.  But a big bank?

21      THE PROSPECTIVE JUROR:  Yeah, a big bank.

22      THE COURT:  Manhattan?  Brooklyn?  Or where?

23      THE PROSPECTIVE JUROR:  Manhattan.

24      THE COURT:  Downtown.

25      THE PROSPECTIVE JUROR:  Midtown.

1      THE COURT:  How long have you been with the bank?

2      THE PROSPECTIVE JUROR:  Year and a half.

3      THE COURT:  What did you do before that?

4      THE PROSPECTIVE JUROR:  Before that, my husband and

5  I ran our own business.

6      THE COURT:  You ran your own business?

7      THE PROSPECTIVE JUROR:  Uh-huh.

8      THE COURT:  What kind of business?

9      THE PROSPECTIVE JUROR:  We produced theater.

10     THE COURT:  What kind of place?  A good place, but

11  what kind of place?

12     THE PROSPECTIVE JUROR:  Off Broadway plays based on

13  his writings.

14     THE COURT:  Based on his writings?

15     THE PROSPECTIVE JUROR:  Uh-huh.

16     THE COURT:  What kind of writing?

17     THE PROSPECTIVE JUROR:  Fiction, kind of --

18     THE COURT:  Did he ever write anything about a

19  trial?

20     THE PROSPECTIVE JUROR:  No, he didn't.

21     THE COURT:  Anything about crime or detective?

22     THE PROSPECTIVE JUROR:  There was a police officer

23  in one of the stories, but it wasn't about a trial.

24     THE COURT:  But mainly they were about other things?

25     THE PROSPECTIVE JUROR:  Yeah.

Prospective Juror 37                          203

1          THE COURT:  Do you have any children?

2          THE PROSPECTIVE JUROR:  One daughter.

3          THE COURT:  How old is she?

4          THE PROSPECTIVE JUROR:  Five.

5          THE COURT:  And is she in preschool or --

6          THE PROSPECTIVE JUROR:  Kindergarten.

7          THE COURT:  And does your husband work besides

8    writing?

9          THE PROSPECTIVE JUROR:  No, he was an attorney, but

10   he hasn't practiced.

11         THE COURT:  He hasn't practiced.

12         THE PROSPECTIVE JUROR:  In a while.

13         THE COURT:  What kind of law did he practice?

14   Criminal, civil or what?

15         THE PROSPECTIVE JUROR:  No, public finance.

16         THE COURT:  Public finance?

17         THE PROSPECTIVE JUROR:  Uh-huh.

18         THE COURT:  How long did he do that, if you know?

19         THE PROSPECTIVE JUROR:  I don't know.  Ten years,

20   let's say.

21         THE COURT:  All right.  How far did you go in

22   school?

23         THE PROSPECTIVE JUROR:  Graduate school.

24         THE COURT:  Where did you graduate from?

25         THE PROSPECTIVE JUROR:  From Harvard Kennedy School,

1  Public Policy.

2          THE COURT:  Cambridge?

3          THE PROSPECTIVE JUROR:  Uh-huh.

4          THE COURT:  Where did you go undergraduate?

5          THE PROSPECTIVE JUROR:  Wellesley and Connecticut.

6          THE COURT:  And what degree did you get?

7          THE PROSPECTIVE JUROR:  I got a B.A. in Economics

8  and then a Master's in Public Policy.

9          THE COURT:  Oh.  And at the bank, what do you do?

10          THE PROSPECTIVE JUROR:  I underwrite debt and equity

11  to finance affordable housing projects.

12          THE COURT:  And you've been doing that a year and a

13  half?

14          THE PROSPECTIVE JUROR:  Yeah.  But before I left to

15  start the business with my husband, I had been doing it for

16  ten years.

17          THE COURT:  You had done it for ten years?

18          THE PROSPECTIVE JUROR:  Uh-huh.

19          THE COURT:  You were with the same bank before?

20          THE PROSPECTIVE JUROR:  A different big bank.

21          THE COURT:  But it was the same bank for that

22  ten-year period?

23          THE PROSPECTIVE JUROR:  No, that bank for five

24  years, and before that for two nonprofit.

25          THE COURT:  I see.  Okay.  And have you ever been on

1    a jury?

2              THE PROSPECTIVE JUROR:  No.

3              THE COURT:  Have you ever been the victim of a

4    crime?

5              THE PROSPECTIVE JUROR:  No.  Someone broke into my

6    house once and my car.

7              THE COURT:  Ever catch anybody?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  Would that affect your service here?

10             THE PROSPECTIVE JUROR:  I don't think so.

11             THE COURT:  When you say you don't think so, that

12   means what?  That's a way of saying no; is that correct?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Okay.  And have you ever had any

15   difficulty with the federal government?

16             THE PROSPECTIVE JUROR:  No.

17             THE COURT:  Okay.  By that I mean like the IRS?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  All right.  And the law is that FBI

20   agents and other law enforcement people, you have to gauge, or

21   evaluate or analyze their testimony the same as anybody else's

22   testimony.  In other words, because somebody has a title, they

23   call them Special Agent Jones, let's say his name is, from the

24   FBI, that doesn't mean that he's entitled to any greater or

25   less belief than anybody else; do you accept that?

1           THE PROSPECTIVE JUROR:  Yes.

2           THE COURT:  Do you have any problem with it?

3           THE PROSPECTIVE JUROR:  No.

4           THE COURT:  You think you can be fair and impartial?

5           THE PROSPECTIVE JUROR:  I think so.

6           THE COURT:  Okay.  Any challenge for cause?

7           MR. MILLER:  No, your Honor.

8           MR. GOLTZER:  No, sir.

9           THE COURT:  All right.  So if you come back, please,

10   at 10:00 o'clock on Thursday morning and report to the central

11   jury room on the second floor, and you're excused until

12   Thursday.  Thank you.

13          THE PROSPECTIVE JUROR:  Okay.  Does that mean I'm

14   going to be serving?

15          THE COURT:  We don't know.

16          THE PROSPECTIVE JUROR:  I'm trying to figure out

17   what to tell my job.

18          THE COURT:  We don't know yet.  Just know you

19   qualify.  You may be, you may not be.

20          THE PROSPECTIVE JUROR:  Thursday at 10:00.

21          THE COURT:  Please.  Second floor.

22          And this is our last juror for the day?

23          THE CLERK:  Yes, judge.  Next juror is Number 50.

24   That's 50.

25          THE COURT:  Hello there.  How are you?

NICOLE CANALES, CSR, RPR

Prospective Juror 50                                    207

1          THE PROSPECTIVE JUROR:  High how are you.

2          THE COURT:  Nice to see you.  And you can put your

3    coat down and make yourself comfortable.  Would you speak to

4    the gentleman there at the far table, the one with the red

5    tie.  Speak loud so he hears you.  Make believe you're talking

6    to him.  Talk to him.  You don't worry about me, just talk to

7    him.  Talk to him he'll hear you and I'll hear you and

8    everybody at every other table can hear you.  Where do you

9    live?

10          THE PROSPECTIVE JUROR:  West side New York, Queens.

11          THE COURT:  Queens.  Which part of Queens?

12          THE PROSPECTIVE JUROR:  Woodside.

13          THE COURT:  Woodside.  And how long have you been

14   living there?

15          THE PROSPECTIVE JUROR:  Nine, ten years.

16          THE COURT:  Nine, ten years.  And what do you do for

17   a living?

18          THE PROSPECTIVE JUROR:  A graduate student right

19   now.

20          THE COURT:  Where are you a graduate student.

21          THE PROSPECTIVE JUROR:  City College.

22          THE COURT:  What are you studying?

23          THE PROSPECTIVE JUROR:  Biomedical Engineering.

24          THE COURT:  Biomedical Engineering.  What are your

25   hours at school?

1         THE PROSPECTIVE JUROR:  It's pretty flexible, but

2    9:00.  10:00 to 5:00, 6:00.

3         THE COURT:  I want to ask counsel something at the

4    sidebar.

5      (Sidebar - Outside the presence of the prospective juror.)

6         THE COURT:  Reason I got you over here, she's a

7    student.  She said she goes from 9:00 to 6:00 or 9:00 to 5:00.

8    Now, I think she said she was a graduate student.  Do you want

9    me to excuse her or you want me to pursue this?

10        MR. MILLER:  Just suggesting maybe she should be

11   excused if, indeed, she's going to miss three works of her

12   classes.

13        MR. GOLTZER:  Of course.

14        THE COURT:  All right.  Okay.

15        (In the presence of the prospective juror.)

16        THE COURT:  All the lawyers are very accommodating,

17   so you should know that.  This is going to take about three

18   weeks.  Now, if you were here three weeks, you wouldn't be

19   here tomorrow and the next day.  But if you were here three

20   weeks, would that so prevent you from getting your degree that

21   it would really foul you all up, or could you still pursue

22   your studies later in the evening?

23        THE PROSPECTIVE JUROR:  I guess three weeks is a

24   lot.

25        THE COURT:  What's that?

1          THE PROSPECTIVE JUROR:  Well, I'm doing research

2    right now.

3          THE COURT:  What do you say?

4          THE PROSPECTIVE JUROR:  I'm doing research right

5    now, so I do have lab work planned, and three weeks would be

6    difficult.

7          THE COURT:  Three weeks would be --

8          THE PROSPECTIVE JUROR:  -- difficult.

9          THE COURT:  I'll excuse you.  Thank you very much.

10         THE PROSPECTIVE JUROR:  Thank you.

11         THE COURT:  We'd like to have you, but we don't want

12   to mess up your education.

13         THE PROSPECTIVE JUROR:  Thank you.

14         THE COURT:  Thanks very much.

15         THE CLERK:  Just report to the central jury room on

16   the second floor and let them know you've been excused.

17         THE COURT:  Thank you.  We'll recess until tomorrow

18   morning at 10:00 o'clock.  Any other counsel need anything?

19   All right.  Thank you very much.

20                 (Proceedings adjourned.)

21

22

23

24

25

210

1                          I N D E X

2

3    C O U R T    E X H I B I T S:

4

5      Court's Exhibit 1                                    4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T I O N


I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled

matter.


_____

s/Gene Rudolph, Official Court Reporter


Date:   January 6, 2014