RECEIVED

SFP 04 2019

JUDGE KEENAN'S CHAMBERS

## CERTIFICATE OF SERVICE

I hereby certify that on ___Avg. 18th 2019___ I sent a copy of
[date]

the ___Supplement   Case No. 19-956___,
[name of document]

to: ___Clerk of the Court / United States District Court   Chambers of John F. Keenan___
___United States Courthouse___

at ___500 Pearl Street   New York N.Y. 10007-1312___

___Registered insured USPS___, the last known address,

by way of United States mail or courier. ___Reg # 7018 0360 0002 2031 1650___

___8-18-19   Avg. 18th, 2019___
Date

___[signature]___
Signature

**Federal Rules of Appellate Procedure Form 7.  Declaration of Inmate Filing**

United States District Court for the District of _____E·D·N·Y·_____

|  |  |  |  |
|---|---|---|---|
|  | *Plaintiff,* | ) | |
| v. | | ) | Case No. ___19-956___ |
|  | | ) | |
|  | | ) | |
|  | | ) | |
|  | *Defendant.* | ) | |

I am an inmate confined in an institution. Today, Aug-13, 2019 _____ [*insert date*], I am depositing the Supplement _____ [*insert title of document; for example, "notice of appeal"*] in this case in the institution's internal mail system. First-class postage is being prepaid either by me or by the institution on my behalf.

I declare under penalty of perjury that the foregoing is true and correct (see 28 U.S.C. § 1746; 18 U.S.C. § 1621).

Sign your name here _____

Signed on Aug. 13/2019 [insert date]

[***Note to inmate filers:*** *If your institution has a system designed for legal mail, you must use that system in order to receive the timing benefit of Fed. R. App. P. 4(c)(1) or Fed. R. App. P. 25(a)(2)(C).*]

# In THE U.S. District
# For THE E.D.N.Y

Joseph Romano,
        petitioner,
   V.                     No. 12-CR-691

United States of        16-CV-5689
   America            19-956
        Respondent.

## Petitioner Pro Se Supplemental Notice

Petitioner Romano is proceeding here as Pro Se litigant and providing this court with Supplemental Notice so as to be read along with the following § 2255 Motion still open Per Second Circuit order case Number 19-956, dated 8th May 2019.

In order to avoid repetition we rely on previous motions, and additions for issues Not directly addressed here in.

The Second Circuit Ordered "Matter" transferred to this Court.

Hereby in this Supplemental Notice, Petitioner ROMANO is providing this court, to assist in achieving Justice with the following Exhibits for the purpose shown per each document.

Exhibit A Two Pages United States Court of Appeals for the Second Circuit Mandate.

Exhibit B 28 USC § 2244 dated March 26 2019 (18) pages.

Exhibit C Petitioners combined 2244, and Successive USC § 2255 Dated December 11, 2018 Nine pages in total.

Exhibit D Petitioners suggestion for Re-hearing with United States Court of Appeals for the Second Circuit Case 18-2770. Information

2 of 4

provided within this Nine page motion is to be considered along with all relative material here-in.

Exhibit E   Five Pages from United States Versus Adam Velazquez 197 F. Supp. 3d 481; 2016 Dist. Lexis 82611 No. 11-CR-639 (JFB) Pages: 1, 6, 9, 16, 31 Judge Bianco acknowledged that Machacek has a long history of lying. Machacek is willing to fabricate stories to help both the F.B.I., and local law enforcement agencies. Judge Bianco overturned above said case, and ordered a New trial.

Petitioner would also like this court to consider a recent case from the Supreme Court of North Carolina Miller, 477 SE. 2d 915 (N.C. 1996)

3 of 4

which shows that even an actual payment for an informant to Murder a person is Not an overt act— Compared with allegations against Petitioner ROMANO who Never paid anyone to do anything.

Conclusion

For aspects shown above, Petitioner prayers this court to take into consideration all above Exhibits so as that Justice May be served.

Executed this 18th day Aug— Respectfully Submitted 2019.

/s/ *[signature]*

Joseph ROMANO

Aug. 18, 2019

# EXHIBIT

# A

Aug. 18, 2019

# MANDATE

E.D.N.Y.–Bklyn
12-cr-691
16-cv-5689
Keenan, J.

## United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of May, two thousand nineteen.

Present:
> Robert D. Sack,
> Gerard E. Lynch,
> Denny Chin,
> > *Circuit Judges.*

---

Joseph Romano,
> *Petitioner,*

v.

19-956

United States of America,
> *Respondent.*

---

Petitioner moves for leave to file a successive 28 U.S.C. § 2255 motion challenging his conviction and sentence based on *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *Johnson v. United States*, 135 S. Ct. 2551 (2015). Upon due consideration, it is hereby ORDERED that the motion is DENIED as unnecessary. It is further ORDERED that the matter is transferred to the district court for further proceedings. *See Whab v. United States*, 408 F.3d 116, 120 (2d Cir. 2005); 28 U.S.C. § 1631. We note that the district court already has pending before it another § 2255 motion presenting claims similar to those in the present motion. *See* E.D.N.Y. 12-cr-691, doc. 247. The transferred papers may be construed as a motion to amend the pending § 2255 motion.

Before a subsequent § 2255 motion can be considered successive, the adjudication of the first motion must be "final." *See Hom Sui Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002). Adjudication of a § 2255 motion does not become "final until petitioner's opportunity to seek review in the Supreme Court has expired." *Whab*, 408 F.3d at 120. A petition for writ of certiorari in a civil case must be filed within 90 days after the entry of the order of judgment sought to be reviewed. 28 U.S.C. § 2101(c); S. Ct. R. 13(3). This Court denied Petitioner's request for a certificate of appealability in his first § 2255 proceeding on January 16, 2019, and Petitioner filed

MANDATE ISSUED ON 07/01/2019

his current motion, and the § 2255 motion currently pending in the district court, before the period to seek certiorari expired in his first § 2255 proceeding.

It is further ORDERED that the stay entered by the Court on April 16, 2019 is TERMINATED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

# EXHIBIT

# B

Aug. 18, 2019

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

Docket Number(s): _____          _____ Caption [use short title] _____

Motion for: _____

28 U.S.C. § 2244

Set forth below precise, complete statement of relief sought:

2244's Motion requesting leave to file a successive 2255 Motion to Dist. Ct. of E.D.N.Y.

ROMANO

v.

United States of America

MOVING PARTY: Joseph ROMANO      OPPOSING PARTY: A.U.SA. - EDNY

☐ Plaintiff      ☐ Defendant

☑ Appellant/Petitioner      ☐ Appellee/Respondent

MOVING ATTORNEY: Pro Se      OPPOSING ATTORNEY: A.U.SA. - EDNY

[name of attorney, with firm, address, phone number and e-mail]

Joseph ROMANO (72247053)      J. Mathew Haggans
USP-ADMAX Po Box 8500      271 Cadman Plaza East
Florence, Co. 81226      Brooklyn, N.Y. 11201

Court- Judge/ Agency appealed from: Dist. Court of E.D.N.Y. - Judge John F. KeeNAN

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed  ☐ Opposed  ☑ Don't Know
Does opposing counsel intend to file a response:
☐ Yes  ☐ No  ☑ Don't Know

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:
Has this request for relief been made below?  ☐ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☐ No
Requested return date and explanation of emergency: _____
_____
_____
_____
_____

Is oral argument on motion requested?  ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes ☑ No If yes, enter date: _____

Signature of Moving Attorney:

Pro - Se      Date: Mar. 26 2018  Service by: ☐ CM/ECF  ☑ Other [Attach proof of service]

Form T-1080 (rev.12-13)

# Pro Se Certificate of Compliance with

# Word or Page Limits Adapted from Federal Rules of Appellate Procedure Form 6

A document filed with the Court must not be longer than the Federal Rules of Appellate Procedure or the Court's Local Rules permit. Check the box for the document you are filing and state the number of words or pages.

☐     **Brief** contains _____ words. [14,000 word limit - LR 32.1(a)(4)(A)], or
       **Brief** contains _____ pages. [30 page limit - FRAP 32(a)(7)(A)]

☐     **Reply Brief** contains _____ words. [7,000 word limit - LR 32.1(a) (4)(B)], or
       **Reply Brief** contains _____ pages. [30 page limit - FRAP 32(a)(7)(A)]

☐     **Writ of Mandamus/Prohibition** contains _____ words. [7,800 word limit - FRAP 21(d)(1)], or
       **Writ of Mandamus/prohibition** contains _____ pages. [30 page limit - FRAP 21(d)(2)]

☒     **Motion** or **Response to the Motion** contains _____ words. [5,200 word limit - FRAP 27(d)(2)(A)], or
       **Motion** or **Response to the Motion** contains ___16___ pages. [20 page limit - FRAP 27(d)(2)(B)]

☐     **Reply to the Motion** contains _____ words. [2,600 word limit - FRAP 27(d)(2)(C)], or
       **Reply to the Motion** contains _____ pages. [10 page limit - FRAP 27(d)(2)(D)]

☐     **Petition for Panel or En Banc Hearing** contains _____ words. [3,900 word limit - FRAP 35(b)(2)(A)], or
       **Petition for Panel or En Banc Hearing** contains _____ pages. [15 page limit - FRAP 35(b)(2)(B]

☐     **Petition for Panel Rehearing** contains _____ words. [3,900 word limit - FRAP 40 (b)(1)], or
       **Petition for Panel Rehearing** contains _____ pages. [15 page limit - FRAP 40 (b)(2)]

February 2017

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### MOTION FOR AN ORDER AUTHORIZING THE DISTRICT COURT TO CONSIDER A SUCCESSIVE OR SECOND MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT to 28 U.S.C. §§ 2244 (b), 2255(h) BY A PRISONER IN FEDERAL CUSTODY

NAME: JosEPH RoMANo

PLACE OF CONFINEMENT: P.O Box 8500 U.S PeNitentiary Max. FloreNCE, Co - 81226

PRISONER NUMBER: (72247053)

### Instructions–Read Carefully

(1) This motion must be legibly handwritten or typewritten and signed by the movant under penalty of perjury. All documents must be on 8½ x 11 inch paper; the Court will not accept other paper sizes. Any false statements of a material fact may serve as the basis for prosecution and conviction for perjury.

(2) All questions must be answered concisely in the proper space on the form.

(3) Movant seeking leave to file a second or successive petition is required to use this form.

(4) Movant may use additional pages only to explain additional grounds for relief and set forth additional facts and documents that support any alleged grounds. Separate petitions, motions, briefs, arguments, etc. should not be submitted.

(5) In capital cases only, the use of this form is optional, and separate petitions, motions, briefs, arguments may be submitted.

1

## MOTION

1. (a) State and division of the United States District Court which entered the judgment of conviction under attack

New York, EASTERN District oF New York

(b) Case number  12 CR-691 (JFK)

2. Date of judgment of conviction  April 14, 2014

3. Length of sentence  Two Concurrent LIFE  Sentencing Judge  John F. KeeNAN

4. Nature of offense or offenses for which you were convicted:

2 CouNts of 18 USC § 1117 Conspiracy to MurderR a Federal Employee (Dist-Judge and AUSA)

5. Have you taken a direct appeal relating to this conviction and sentence in the federal court?

Yes [✓]  No [ ]  If "yes", please note below:

(a) Name of court  Court of APPEAls for the 2Nd Cir.
(b) Case number  14-1588
(c) Grounds raised (list all grounds; use extra pages if necessary)

GrouNds explaiNed oN Page 3

(d) Result  DeNied
(e) Date of result  November 17, 2015

6. Related to this conviction and sentence, have you ever filed a motion to vacate in any federal court?

Yes [✓]  No [ ]

If "yes", how many times?  ONe  (if more than one, complete 7 and 8 below as necessary

(a) Name of court  EDNY
(b) Case number  16-Civ-5689 (JFK)
(c) Nature of proceeding  Pro Se filing of A memorandum OF LAW iN February 1, 2016

## Grounds Raised In Appeal To 2ND Circuit

1. Motion to supress incriminating statement After ARREst should have been granted.
2. Deceit by Arresting Agents.
3. Jury instructions on entrapment were erroneous. The 2nd Circuit is exclusively using that erroneous instruction.
4. Defense fell short regvarding Entrapment issue.
5. Defendant was, in fact, induced by Govt.

Exh-B 6

(d) Grounds raised (list all grounds; use extra pages if necessary)_____

_____ See Page 5 and 6 _____

_____

_____

(e) Did you receive an evidentiary hearing on your motion? Yes ☐ No ☑
(f) Result_____ Denied _____
(g) Date of result Aug. 20, 2018 _____

7.  As to any second federal motion, give the same information:
    (a) Name of court _____
    (b) Case number _____
    (c) Nature of proceeding _____ N/A _____

    (d) Grounds raised (list all grounds; use extra pages if necessary)_____

    _____ N/A _____

    (e) Did you receive an evidentiary hearing on your motion? Yes ☐ No ☐
    (f) Result_____
    (g) Date of result_____

8.  As to any third federal motion, give the same information:
    (a) Name of court _____
    (b) Case number _____
    (c) Nature of proceeding _____ N/A _____

    (d) Grounds raised (list all grounds; use extra pages if necessary) _____

    _____ N/A _____

    (e) Did you receive an evidentiary hearing on your motion? Yes ☐ No ☐
    (f) Result_____
    (g) Date of result _____

## Grounds Raised In 2255 Motion

1. Sentencing and Appellate Counsel Rendered ineffective assistance, in Violation of the 6th Amendment of the U.S. Constitution, by failing to object to and or Appeal from Petitioner's Conviction on Count 2 which charged the identical conspiracy as the conspiracy charged in Count 1, a double Jeopardy Violation, and the Conviction, and Sentence on Count 2 of the indictment must be Vacated, set aside and or corrected.

2. In as much as Counsel rendered ineffective assistance in failing to raise an obvious and undeniable double Jeopardy claim premised on Multiplicitous Counts, Counsel's ineffectiveness also denied Petitioner a New trial based on the Psychological effect of the overcharging would have on the Jury, a New Trial should be ordered on Count one of the indictment after Vacating the Judgment of Conviction and Sentence on Count two of the indictment.

3. Both Trial and Appellate Counsel

5

rendered ineffective when Counsel failed to seek dismissal of the indictment on the ground that the A.U.S.A. of E.D.N.Y. engaged in mis-conduct by drafting the indictment in a way that it well knew would work a violation of tactical and constitutionally impermissible advantage by prejudicing the jury against this Petitioner by artificially in-flating the alleged criminality, and the court should vacate the convictions, and sentences, and dismiss the indictment.

4. The Court should appoint Counsel in the interest of Justice.

6

9.    Did you appeal the result of any action taken on your federal motions? (Use extra pages to reflect additional federal motions if necessary)
(1) First motion No ☐   Yes ☑   Appeal No. _____ 18 - 2770_____
(2) Second motion No ☐   Yes ☐   Appeal No. _____
(3) Third motion No ☐   Yes ☐   Appeal No._____

10.    If you did not appeal from the adverse action on any motion, explain briefly why you did not: _____

N/A

11.    State concisely every ground on which you now claim that you are being held unlawfully. Summarize briefly the facts supporting each ground.
A.    Ground one: Vagueness and deprivation of Proper Due Process in Judgement of Petitioner Case opposed to Supreme Court Recent ruling in Johnson and Dimaya
Supporting FACTS (tell your story briefly without citing cases or law):

Supporting Facts Explained
See pages 8 - 11. Legal issues Page 12,13

Was this claim raised in a prior motion? Yes ☐   No ☑

Does this claim rely on a "new rule of constitutional law?" Yes ☑   No ☐
If "yes," state the new rule of constitutional law (give case name and citation):
Johnson, 135 S. Ct. 2551 (2015)
DiMaya, 138 S. Ct. 1204 (2018)

Does this claim rely on "newly discovered evidence?" Yes ☐   No ☑
If "yes," briefly describe the newly discovered evidence, attach a copy (if available), state when you obtained it, and why it was not previously available to you.

## Petitioner's Statement of Case

THE GOVERNMENTS ENTIRE FARFetched "CONSPIRACY CASE" To ALLEGEDLY Kill District Judge Bianco And AUSA. Gatz Relied solely upon Governments SELF SERVING USE OF A Well Known in-Custody Jailhouse informants UNCORROBORATED Testimony. No Physical EVIDENCE OF A CRIME Exists. The GOVERMENT Also Failed to Establish AN "AGREEMENT" to said Conspiracy — Nor the ELEMENT OF "AN Act in the FurtHERANCE" To AllegeD said Conspiracy. INSTEAD the Governments CaSE REvolved Around The ConFlicted Testimony oF THE Agents who "inSTructeD" inFORMANT — was Proven to be ContRADictory. DEMONStrating EitHER oNE or Both OVERZEAlous Agents Had LiED UNDER OATH. THE GOVERNMENTS CASE WAS WEAK AND not OVERWHELMING.

1. SPECIAL AGENT Torichi TEStifieD that No instruction WAS GiVEN to Jailhouse inFORMANT GERALD MACHACEK.
2. AGENT Cox WHEN ASKED THE SAME Question testifieD THAT Both instruction AND NARRATIVE WERE in FACT GIVEN to GERALD MACHACEK.

3. UNDERCOVER AGENT STRECKER TESTIFIED ABOUT AUDIO/VIDEO RECORDING CONCERNING STRECKER'S UNSOLICITED VISIT TO N.C.C.F. STRECKER'S AWKWARD VISIT AMOUNTED TO AN OBVIOUS ATTEMPT TO COERCE PETITIONER INTO MAKING SOMEKIND OF INCRIMINATING STATEMENT — WHILE KNOWING PETITIONER WAS REPRESENTED BY COUNSEL. PETITIONER ADMONISHED AND EXPELLED STRECKER AND TERMINATED VISIT. AT TRIAL PROSECUTOR'S CLAIMED STRECKER'S UNLAWFUL RECORDING WAS SOMEHOW INCOMPLETE DUE TO A "MALFUNCTION"! NOTABLY, AGENT STRECKER NEVER TESTIFIED PETITIONER DESIRED TO KILL ANYONE.

4. AGENT STRECKER ALSO TESTIFIED AS TO ANOTHER RECORDED PHONE CONVERSATION STRECKER HAD WITH A MR. MIRKOVIC. STRECKER CLAIMED THAT THIS RECORDING WAS ESSENTIALLY INAUDIBLE DUE TO IT BEING "WINDY"! IN ANY EVENT THE GOVERNMENT CHOSE NOT TO CALL MIRKOVIC TO TESTIFY AT TRIAL.

5. PETITIONER, WHILE LOCKED IN COURTHOUSE HOLDING CELL WITH PLANTED INFORMANT MACHACEK WEARING A WIRE; MACHACEK

INstANtly AND INCESSANtly (over AND OVER AgAiN) uttERED CoNtEMPt- uous REMARKS ABout Judge BiANco BAiting PEtitioNER to JoiN. This WEll KNOWN F.B.I. TActic is CAllED CoNDucting A "Push AND Pull" opERAtioN. ONCE oN TAPE THE GoVERNMENT thEN WENt oN to "REVERSE ENgiNEER" (i.E. FAbriCAtE) A So CAllED "ConspiRAcy" CASE ARouND PEtitioNERS wORDS — But igNoRiNg MACHACEKS DriVEN WORDS.

6. IN AN IRoNic TWiSt, IN A SubSEQUENt CASE, Just WEEKS AFTER PEtitioNERS TRiAl — F.B.I. iNForMANt MACHACEK CoopERAtED AgAiNSt A MR. VELAZQUEZ. OF All THE PEople AND PLACES iN thE wORLD, Judge BiANco's CourtRoom! IN AN OMENous WRitteN OPiNioN Judge BiANco TosseD out the Jury CoNViction oF MR. VELAZQUEZ citing iRREgulARitiEs AND TRoubling TEStiMoNy AND stAtEMENts MADE FRom MAchACEK AND othERS. SEE GENERAlly: UNitED STATES V. ADAM VELAZQUEZ, 197 F. Supp. 3d 481 (DisT CT. ED/NY)

7. On or about November 2017 Petitioner Supplemented Habeas Petition (16-Civ-5689 (JFK)), and submitted said, Velazquez opinion to District Court (JFF), who has ignored Judge Bianco's Judicial Findings.

8. On or about December 2018 Petitioner filed the Dimaya motion; this also was ignored

## THE US SUPREME COURT RECOGNIZED NEW RULE IN DiMAYA APPLIES TO Petitioner ROMANO's Case

Petitioner was indicted in a Grotesque "CRIME of Violence" Alleged Conspiracy to supposedly Kill A Judge and Prosecutor. Petitioner strongly asserts the US. SUPREME Courts' Recent Decision in DiMaya applies directly to Petitioners Same set of Legal facts Analysis For the Following Reasons: (1) Petitioners indictment clearly alleges A Felony "Crime of Violence" by its definition implicates 18 USC 16(B)'s "Residual clause"; (2) More Precisely, 18 USC 16(B) Requires a Court to ask whether "The Ordinary case" of an offense Poses The Requisite Risk". DiMaya. Set aside for a moment, that Alleged "Conspiracy" in Petitioner's case has no basis in Reality — and was Patently absurd. Reality is, that Empty Jailhouse Bravado (i.e. "PuFFing") does not Qualify as a Criminal offense. The Residual clause 16(b) Analysis of "Ordinary Risk" in Petitioner's case is Completely canceled out by a Common sense ZERO Risk Factor — in that both The in-custody informant

and Petitioner were tightly incarcerated, Thus clearly removing Any and all Risk Possibilities. Significantly, Special Agent Torichi, testified Judge Bianco and A.U.S.A. Gatz were Never in Any Danger. T.T. ___.; and (3) Again, The government Alleged "Conspiracy" had Zero Basis in Reality, Other than to leave both District Court and Jury to "Guessing" what could or couldN't possibly Take Place. Thus we have "Statutory Vagueness" Equals "Hopeless Indeterminacy," inconsistent with Due Process. Put in another way, The Residual clause 16(b) summarized — "OFFERS No Reliable way" to DiscerN what The ordinary Version OF Petitioners offense Even looked like in Reality.

Petitioner RespectFully Requests This Court Grant Petitioners 2244 Petition and Return Case to District Court For Further Proceedings.

B.   Ground two: _____

_____

Supporting FACTS (tell your story briefly without citing cases or law):

_____
_____
_____
_____
_____
_____

Was this claim raised in a prior motion? Yes ☐   No ☐

Does this claim rely on a "new rule of constitutional law?" Yes ☐   No ☐
If "yes," state the new rule of constitutional law (give case name and citation):

_____
_____

Does this claim rely on "newly discovered evidence?" Yes ☐   No ☐
If "yes," briefly describe the newly discovered evidence, attach a copy (if available), state when you obtained it, and why it was not previously available to you.

_____
_____
_____
_____
_____
_____
_____

**[Additional grounds and facts and documents supporting any alleged grounds may be set forth on extra pages if necessary]**

12.   Do you have any motion or appeal now pending in any court as to the judgment now under attack? Yes ☐   No ☑
If "yes," Name of court _____ Case number _____

Rev. 1.24.2018

Wherefore, movant prays that the United States Court of Appeals for the Second Circuit grant an Order Authorizing the District Court to Consider Movant's Second or Successive Motion to Vacate under 28 U.S.C. § 2255.

_____
Movant's Signature

I declare under Penalty of Perjury that my answers to all the questions in this motion are true and correct.

Executed on March 26, 2019
[date]

_____
Movant's Signature

## PROOF OF SERVICE

Movant must send a copy of this motion and all attachments to the United States Attorney's office in the district in which you were convicted.

I certify that on __March 26, 2019__ , I mailed a copy of this motion*
[date]

and all attachments to _J. Mathew Haggans_ at the following address:

_271 Cadman Plaza East_

_Brooklyn, N-Y. 11201_

_____
Movant's Signature

---

\*  Pursuant to FRAP 25(a), " Papers filed by an inmate confined in an institution are timely filed if deposited in the institution's internal mail system on or before the last day of filing. Timely filing of papers by an inmate confined in an institution may be shown by a notarized statement or declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid."

Rev. 1.24.2018

Exh. B 18

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Romano -Petitioner

**CERTIFICATE OF SERVICE***

Docket Number: 19-956

v.

USA - Respondant

I, _____, hereby certify under penalty of perjury that

on March 2019, I served a copy of 28 USC § 2244 Motion
(print name) (date)
For leave to File Successive 2255

(list all documents)

by (select all applicable)**

___ Personal Delivery  ✓ United States Mail  ___ Federal Express or other
First-Class Postage is prepaid  Overnight Courier

___ Commercial Carrier  ___ E-Mail (on consent)

on the following parties:

→ 2nd Cir. Cf. of Appeals - Thurgood Marshall Courthouse - 40 Foley Sq. N.Y. N.Y. 10007

| Name | Address | City | State | Zip Code |

AUSA-EDNY (J. Haggans) 271 Cadman, Plaza East, Brooklyn N.Y. 1121

| Name | Address | City | State | Zip Code |

| Name | Address | City | State | Zip Code |

| Name | Address | City | State | Zip Code |

→ Original + two copies by Cert. Mail No. 7017 10000000 0130 4547

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

March 26, 2019

Today's Date

Joseph Romano -Petitioner

Signature

Certificate of Service Form (Last Revised 12/2015)

16

Aug. 18, 2019

# EXHIBIT
# C

Aug. 18, 2019

In THE United States District
COURT FOR THE Eastern District
of NEW YORK

| | |
|---|---|
| Joseph Romano, | Civil Action No: |
| Petitioner, | Criminal No. 12-CR-691 |
| V. | (JFK) |
| United States of | |
| America | |
| Respondent. | |

Motion for permission to file second
and successive Motion - Petition in accord
with 28 U.SC. § 2255 and Motion to vacate,
set aside and change Petitioners conviction
and sentence Pursuant to 28 USC § 2255
and Supreme Court's decisions in
Johnson V. United States and Dimaya
V. Sessions.

On April 17, 2018, The United States
Supreme Court decided the monumental
and Magnanimous case of Sessions V. Dimaya
138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018).
This case held that the residual
clause of the federal Criminal code's
definition of "Crime of Violence",
was impermissibly Vague and violative

of the 5th Amendments Due Process Clause.

Petitioners Motion to Vacate must be granted because the Court's reliance on the definition of violence as delineated and relied upon, is now unconstitutionally vague in light of <u>Johnson v. United States</u>, 135 S. Ct. 2551, 192 L. Ed. 2nd 569 (2015) and <u>Sessions v. Dimaya</u>, 138 S. Ct. 1204, 200 L. Ed. 2nd 549 (2018).

B. <u>Background</u>

On November 7, 2012, a Grand Jury indicted Petitioner for <u>Conspiring to Murder</u> a Federal Judge and an Assistant United States Attorney, a two Count indictment. (Emphasis added).

~~Petitio~~ Petitioner steadfastly maintained his innocence and a trial resulted in verdicts of guilty. He was sentenced to terms of life imprisonment, and he remains in Federal custody since the date of arrest.

## C. Argument

The current Motion to vacate rests on two Supreme Court cases respectively addressing § 924(e) of Title 18 USC. and section 16 of the same statute.

Johnson and Dimaya considered a due process vagueness challenge to the portion of § 924(e) defining a violent felony as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another (the ACCA residual clause"). See Johnson, 135 S. Ct. at 2255. The Johnson court wholeheartedly opined that the ACCA residual clause violated "the Constitutions prohibition of vague criminal laws," id. at 2556. The court held that "the indeterminancy of the wide ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges" and that "a defendants sentence under the clause denies due process of law" id. at 2557.

3 of 9

In *Dimaya*, Our highest Court affirmed that Section 16(b) "Suffers from the same Constitutional defect as delineated in *Johnson*, *Dimaya*, 138 S. Ct. at 1210.

In *Dimaya* The Court read *Johnson* as relying on two specific features of the ACCA residual clause to find it unconstitutionally vague: "By Combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a crime of violence – violent felony, the residual clause violates the guarantees of due process." *Id*. at 1214 (quoting *Johnson*, 135 S. Ct. at 2558), according to the court, § 16(b) "has the same two features ... Combined in the same Constitutionally problematic way." *Id*. at 1213. As with the ACCA residual clause, § 16(b) calls for an ordinary-Case analysis and, because the "Ordinary case" of a given Crime remains an "inscrutable thing," 16(b) does not provide a clear way to measure the risk posed by a given crime.

Moreover, as with the ACCA residual clause, § 16(B) employs an uncertain risk threshold ("Substantial risk") that, when applied to "an idealized ordinary case of the crime"... ceases to work in a way consistant with due process" Id. at 1215-16.

Accordingly, the Dimaya Court held that § 16(b) was unconstitionally vague and in clear violation of Due process.

THIS NEWLY RECOGNIZED RIGHT BY THE SUPREME COURT MAKES THIS MOTION TIMELY. (Emphasis Added).

Chief Justice Roberts eloquently wrote that § 16(b) Serves as the universal definition of "Crime of Violence" for all of Title 18 of the United States Code.

Dimaya made absolutely certain that its holding is NOT (emphasis added) restricted but instead applies to invalidate any provision that possesses "An ordinary-case requirement and an ill-difined risk

threshold." See Dimaya, 138 S. ct. at 1223.

This is what makes this monstrous case wholly applicable to the case subjudice.

This Court must not deprive Petitioner of his unfettered rights to life, Liberty, or property. His conviction undisputably and unconstitutionally included both an ordinary-case requirement-logic and an ill defined threshold. Consequently, his convictions for the crime of conspiracy are unconstitutionally vague. It is a "Newly Recognized right", meritorious and he remains convicted and incarcerated pursuant to un-constitutional provisions. Most importantly, Petitioner languishes away in prison and This Motion remains his only means to perfect the evisceration and trampling of fundamental principles of Our Constitution.

The Government cannot (emphasis added) articulate a viable argument even under the "Force Clause" that would meaningfully stymie -impede - or still

Petitioners argument - position.

Under the force clause, any felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" is a crime of Violence."

As is obvious from the plain language of the force clause, analyzing whether a particular offense falls within its ambit requires the court to focus on "the statutory definition of the offense". United States V. Fuentes, 805 F. 3d 485, 498 (4th Cir. 2015).

Petitioner was convicted of two Conspiracy offenses. The elements of a conspiracy under 18 USC § 371 "are (1) an agreement by two or more persons to perform some illegal act, (2) willing participation by the defendant, and (3) An overt act in furtherance of the conspiracy." The predicate offenses to wich the petitioner was convicted "Portends the future use of force by making such a use "more likely." This is insufficient with the elements of a conspiracy

crime, to invoke the "Force clause"
Henceforth, this argument is flawed
and rebuked.

Dimaya, applying the ordinary-
case approach to determine whether
a predicate offense is encompassed by
§ 924 c (3)(B) produces an unconstitutional
result because it involves "both an
ordinary-case requirement" and the
same "ill-defined risk threshold" as
16(b), rendering it unconstitutionally
vague for precisely the same reasons
as the Supreme Court articulated in Dimaya

A court is "obligated to construe
a statute to avoid" any "serious
constitutional problems" as long as
"an alternative interpretation of
the statute is fairly possible."
INS v. St. Cyr, 533 US. 289, 299-300
121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001).
Adopting a conduct-specific
approach - could never avoid the
constitutional problems, identified in
Dimaya. It has no constitutional
infirmity. See Dimaya, 138 St. Ct. at 1215-16.

It is for these Paramount reasons and in the interests of Justice, That Petitioner's Second and Successive Motion Pursuant To 28 U.S.C. § 2255 and the merits of this extraordinary Writ be granted. Petitioners convictions must be energetically and decisively reversed.

Dated this December 11, 2018  Most Respectfully

*Joseph Romano*

Joseph Romano
Pro Se
(72247053)
P.O. Box 8500
U.S. Penitentiary Max.
Florence, Co.
81226

Aug-18, 2019

# EXHIBIT
# D

Avg-18, 2019

United States Court
OF APPEALS for the
Second Circuit

Joseph ROMANO,
Petitioner, -Appellant

v.

United States of     E.D.N.Y. —BKLN
America     12-CR-691
Respondent-Appellee     16-CV-5689
    KEENAN, J.

April 16, 2019     Case 18-2770

Defendant Appellants Petition for
Re-hearing with Suggestion for re-
hearing EN BANC

1) Compliance with Circuit Rule 26

2) Statement of facts for suggestions
of Rehearing EN BANC

3) Reasons for Granting Rehearing

Not only are Petitioners claims
meritorious, Petitioner has made
more than a substantial showing,
that Constitutional Violations occurred
in Petitioners Trial.

1 of 9

ON November 7, 2012 a Grand Jury indicted Petitioner for <u>conspiring</u> to murder a Federal Judge and Assistant United States Attorney, a two count indictment. (Emphasis added).

Petitioner steadfastly Maintained his innocence and a trial resulted in verdicts of Guilty. He was sentenced to terms of Life imprisonment, and he Remains in Federal custody, since the date of arrest.

## Facts

1) August 2012, Agent Strecker records Petitioner (ROMANO) at the County Jail (NCCF). ROMANO, Petitioner flagrantly, accedes to assaulting Burgular/Mechanic.

2) September 2012 Agent Strecker again appears at Jail (NCCF) and attemps to induce Petitioner into a heinous conspiracy; Petitioner breaks off visit.

3) September 2012 Incentivized Government witness (Gerald Machacek) records Petitioner in a "Push and Pull" operation. Machacek incessantly baits Petitioner to negatively comment about Judge Biano and AUSA. Gatz. Petitioner say's he would like to cut off the Judges head and cut off the Ausa tits.

4) Dejuid Mirkovic (Government witness) Attempts to hire Under Cover agent to kill his girlfriends ex-husband. Agent (UC2) say's we will but

first need to do some jobs
for Petitioner (Romano).

5) Mirkovic recorded tells UC2
Romano, Petitioner wants to
Kill Bianco and Gatz; adding
Cut off the Judges head and
cut off Gatz tits.

Agent Strecker testified at Petitioners Trial. T.T. _____ AUSA. Miller Masterfully Questioned Strecker about Strecker's brief encounter with Petitioner, while Skillfully avoiding to ask Strecker the seminal Question to the Governments Case Did Petitioner (Romano) ever say he (Romano) wanted to kill anyone? Why would the Prosecutor disingenuously avoid asking this obvious Question? The Governments entire Case hinges on this very key Question. IN fact the entire Question of wether or not there are two seperate Conspiracies, or one, or NONE Also hinges on this one key Question. Petitioner strongly asserts AUSA. Miller was acutely Aware that Petitioner NeveR Solicited Agent Strecker to commit Any Act whatsoever. Petitioner Further Asserts AUSA. Miller Also kNew that the ANswer he was "wishing" for would of Amounted to Subornation of Perjury. Prosecutor formed his Questions around Strecker's incomplete Recording.

Audio Recordings Played at Trial:
Mirkovic initiated Telephone Call
to Strecker, Strecker replied
"Did ROMANO tell you to call me?"
When Mirkovic replied back Mirkovic's
was Not Audible. Again Strecker
said, "Yeah, But did ROMANO tell you
to call"? Petitioner strongly Asserts
Strecker heard and understood Mirkovic.
This Tug of War between Strecker and
Mirkovic, went on for Four to Five
times, Strecker not only heard Mirkovic
but Also understood what Mirkovic
was saying, however the Jury could
Not. Clearly, Mirkovic (Judging by Streckers
response) was NOT the answer the
Prosecution wanted anyone to hear —
yet streckers answer indicated he
(Strecker) did hear and understood
Mirkovic. T.T. _____ Telephone
Recording was incomplete (inaudible).

Did the F.B.I abide by the Law in Making an initial determination of any "Relevant Crime that could have occured before it opened its investigation of Petitioner"? It appears the bureau did not in its Reliance of their incentivized witness (Gerald Machacek). The Government had little if any reliable facts, or verified evidence that would support a crime. Machacek was to put Petitioner in touch with a private Investigator; an undercover showed up (Strecker). The Government claimed "Private investigator was a euphemism for "Hitman."

Under F.B.I. guidelines, "Preliminary investigations may be initiated on the basis of any allegation, or information indicative of possible Criminal Activity.. but Substantial factual predication is required for full investigations." (Machacek is the Governments instructed, and advised source (witness) I.T.___) There must be "an articulate factual basis for the investigation." That indicates that a crime has or will take place. IN January 2012

Machacek signed an agreement with the Government and was dispatched to "look" for "crimes" with expectation of Reward for his service. Machacek Approached Petitioner in the Jail Library in July 2012 and concocted the story about Petitioner with the Governments help - as affirmed by Agent Cox in his testimony at Petitioners Trial. T.T.

Machacek is involved with many wrongful convictions, one such case U.S. v. Velazquez 197 F. Supp. 3rd 481; 2016 No. 11-CR-639 (JFB). The conviction was overturned by Judge Bianco Ironically Bianco is the very same Judge, Machacek say's Petitioner wants to kill. Furthermore Bianco Presided over Machaceks case's. Judge Bianco Made a Judicial finding that Machacek is an unreliable Heroin addict.

Exceptional Claims Require Exceptional Evidence. Just like any Government agency, the F.B.I. (Bureau) must abide by a set of strict rules that are set forth in a lengthy book entitled "The Attorney Generals Guideline for Domestic F.B.I. operations." Government witness Machacek receiving instructions, and direction is in accord with exceptional corruption- 18 U.S.C § 1515(b) The operative word in the statute is "Corruptly." Congress define it as "Acting with an improper purpose, Personally, or by influencing another, including making a false, or misleading statement, or withholding, concealing, altering, or destroying a document, or other information.

I believe Petitioner has met the arbitrary, and vague threshold of "Substantial showing" of Constitutional violations.

Respectfully submitted

Joseph Romano
ADmax Florence
Po Box 8500
Florence, Co. 81226

# EXHIBIT

# E

Aug. 18, 2019

```
UNITED STATES OF AMERICA, VERSUS ADAM VELAZQUEZ, Defendant.
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK
197 F. Supp. 3d 481; 2016 U.S. Dist. LEXIS 82611
No 11-CR-639 (JFB)
June 24, 2016, Decided
June 24, 2016, Filed
```

## Editorial Information: Prior History

United States v. Valasquez, 55 F. Supp. 3d 391, 2014 U.S. Dist. LEXIS 151993 (E.D.N.Y., 2014)

**Counsel** For The United States: Robert L. Capers, United States Attorney, Eastern District of New York, by Burton T. Ryan, Jr. and Charles P. Kelly, Assistant United States Attorneys, Central Islip, NY.

For Defendant: Gail E. Laser, Park City, UT.

**Judges:** JOSEPH F. BIANCO, United States District Judge.

**CASE SUMMARY** Under the Strickland standard, defendant had shown his counsel's performance was ineffective and that his Fed. R. Crim. P. 33 motion for a new trial was proper, as counsel's failure to subpoena defendant's cell phone records and failure to obtain defendant's employment records (which would have constituted valuable alibi evidence) was unreasonable.

**OVERVIEW:** HOLDINGS: [1]-Under the Strickland standard, defendant had shown that his counsel's performance was ineffective and that his motion for a new trial was proper, as counsel's failure to subpoena defendant's cell phone records, failure to obtain defendant's employment records (which would have constituted valuable alibi evidence), and failure to investigate whether defendant in fact owned a black four-door sedan was unreasonable; the black car was the only piece of evidence other than cooperator testimony linking defendant to the robberies; [2]-Had the additional evidence been placed before the jury and had other errors by defense counsel not occurred, it was reasonably likely that, in light of the evidence at trial, the outcome of defendant's trial would have been different in that the jury would not have convicted him on any counts.

**OUTCOME:** Motion granted.

**LexisNexis Headnotes**

*Criminal Law & Procedure > Postconviction Proceedings > Motions for New Trial*

A district court may grant a Fed. R. Crim. P. 33 motion only in extraordinary circumstances, and only if there exists a real concern that an innocent person may have been convicted. The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. In deciding a Rule 33 motion, the court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation.

*Criminal Law & Procedure > Postconviction Proceedings > Motions for New Trial*

Pursuant to Fed. R. Crim. P. 33(b)(1), a motion for a new trial based upon newly discovered evidence must be filed within three years after the verdict or, finding of guilty. Fed. R. Crim. P. 33(b)(1). It is well

rbcases

1

'17 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the ctions and terms and conditions of the Matthew Bender Master Agreement.

also identified the defendant in connection with the robbery crew (even though their identifications were unrelated to any charged crimes) or, at the very least, had identified the defendant in connection with some other criminal activity. In short, although the Court has carefully considered the explanations offered by trial counsel regarding these issues, the Court cannot attribute any of these decisions to trial strategy, but rather concludes, in each instance, that it was an error by trial counsel.2 Moreover, the Court believes that, in the aggregate, these errors by trial counsel satisfy the first prong of the *Strickland* standard.

With respect to the prejudice prong of *Strickland*, this Court recognizes that a defense lawyer's failure to obtain phone or car records, even if such records would have been helpful to the defense, does not necessarily mean that such failures affected the outcome of the case. However, having presided over this particular trial, this Court concludes that it is reasonably likely that, had the jury heard this additional evidence (and had the other errors regarding the stipulation and Lovly cross-examination not occurred), the jury would not have convicted the defendant of any of the counts in this weak case. The only substantive robbery for which the jury returned a guilty verdict was the 152nd Street robbery of a drug dealer and (from the verdict sheet and the evidence) it is highly likely that the other counts of conviction (robbery conspiracy, brandishing a firearm, conspiracy to distribute marijuana, and conspiracy to launder money) all arose from the jury's conclusion that the defendant participated in that robbery of a marijuana dealer, as well as the subsequent splitting of the proceeds from that robbery. The government's proof for that robbery was based primarily on the testimony of two cooperating witnesses - Martin Lovly ("Lovly") and Timothy Glass ("Glass") -whose out-of-court identifications were unusual (to say the least), and whose largely uncorroborated testimony contained numerous, and often troubling, inconsistencies with other proof in the case.



For example, Glass (the leader of this robbery crew who committed over 100 robberies) admitted that he did not know the defendant well and picked out another individual in a photo array as having done robberies with him and, after the circling of that other individual, an arrow was drawn on the array to the defendant to indicate Glass also knew the defendant. In other words, Glass picked out two co-conspirators in the same array. Moreover, Glass testified that he was introduced to the defendant by co-conspirator Gerry Machacek ("Machacek"), whom Glass understood knew the defendant extensively from other criminal activities. However, Machacek, who also was a cooperating witness for the government, failed to identify the defendant as someone he knew *at all* in three separate photo arrays. In addition, Glass's girlfriend (Teri Bedell), who is also a cooperating witness for the government and is alleged to have participated in the 152nd Street robbery (and the Advanced Dermatology robbery) with the defendant, also did not recognize the defendant in a photo array. Finally, Glass had stated, among other things, that the person known to him as "Rob" or "Alex," and who the government argued was the defendant (based upon the identification in the array), had the following personal characteristics: (1) he had a scar on his hand from a dog bite; (2) he was "in his early 20s" at the time of the robberies; and (3) he spoke Spanish. However, (1) it is uncontroverted that the defendant has no scar on his hand; (2) it is unconverted that the defendant was over 30 years old at the time of the alleged robberies; and (3) there is no evidence (independent of Glass) that the defendant speaks Spanish. It is clear that, even without the additional evidence that trial counsel did not obtain that would have been helpful to the defense (such as the cell phone records and car information), the jury already had significant issues with Glass's credibility because they found the defendant not guilty on two substantive counts - the New Jersey warehouse burglary (Count Two) and the Advanced Dermatology robbery (Counts Five and Six) - even though Glass testified extensively as to the defendant's alleged involvement in those crimes.

The other main cooperator on the 152nd Street robbery, Martin Lovly, also had substantial

1ybcases             6

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

then divided the cash among his crew (including defendant). (*See id.* at 474-76.)

B. Procedural Background

Following the presentation of the government's case-in-chief, defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). (*See id.* at 1059.) The Court denied the motion as to Counts One through Seven, stating that "there is no question that there is sufficient proof with respect to each and every element of these, counts one through seven." (*Id.* at 1059-60.) Pursuant to Rule 29(b), the Court reserved judgment as to Count Eight, the money laundering conspiracy count. (*Id.*)

The Court submitted all eight counts of the superseding indictment to the jury. On May 1, 2014, the jury returned a verdict of guilty as to Count One (Hobbs Act robbery conspiracy from April 2008 through April 2010), Count Three (robbery of Olic at 152nd Street in Queens), Count Four (brandishing a firearm during the 152nd Street robbery), Count Seven (conspiracy to distribute marijuana), and Count Eight (conspiracy to commit promotion money laundering). The jury acquitted defendant as to Count Two (the theft of clothing from the New Jersey warehouse), Count Five (the robbery of the medical office in Queens), and Count Six (the firearm charge premised upon Count Five).

Defendant renewed his motion for a judgment of acquittal as to Count Eight on June 9, 2014, which the Court denied in an October 27, 2014 Memorandum and Order.

On August 3, 2015, defendant filed a motion for a new trial under Rule 33 of the Federal Rules of Civil Procedure. On October 26, 2015, the government filed its opposition. After oral argument on November 6, 2015, the Court determined that an evidentiary hearing was necessary to hear testimony from trial counsel (and any other relevant witnesses) regarding the allegations of ineffective assistance of counsel. The Court held an evidentiary hearing over several days: March 31, 2016, and April 20-22, 2016. There was a substantial delay in the scheduling of the hearing because trial counsel, who was a critical witness at the hearing, was unavailable for a substantial period of time due to significant medical issues. After the hearing, defendant's new counsel asked for several weeks to prepare for post-hearing argument. Thus, the post-hearing argument was heard on June 8, 2016. On June 17, 2016, the government submitted an additional letter in response to issues raised by the Court at the post-hearing argument. On June 20, 2016, defendant submitted a letter in response to the government's submission.6

C. Evidentiary Hearing

Set forth below is a summary of the testimony at the evidentiary hearing that the Court conducted in connection with defendant's motion for a new trial based upon ineffective assistance of trial counsel.

1. Detective Holmes

Detective Edwin Holmes testified on March 31, 2016, and April 20, 2016. Detective Holmes worked for 34 years with the Nassau County Police Department, and is currently an investigator with the Nassau County District Attorney's Office. (Tr. at 4.)7 Detective Holmes was the case agent and one of the central investigators on the case, though he did not testify at trial. (*Id.* at 5.) Detective Holmes interviewed all of the cooperators who testified at the defendant's trial, including Glass, Lovly, Odoms, and Michalides, as well as cooperators who did not testify at trial, such as Terry Bedell and Gerry Machacek. (*Id.* at 5-6.) Detective Holmes testified that both Bedell and Machacek failed to positively identify the defendant as a perpetrator in the robberies. (*Id.* at 6.) Detective Holmes also testified that he helped prepare the cooperators for their testimony at trial. (*Id.*)

Detective Holmes testified that he believed that he was present for all of the identifications by the

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Mr. Ponze testified that he never received 3500 material or any discovery either before or during the trial, nor did he review any 3500 material with the defendant. (Tr. at 294.) Mr. Ponze further testified that he was not involved in any aspect of trial preparation and was not present for the last three days of trial. (*Id.* at 294-95.)

Mr. Ponze testified that on, April 24, he told Mr. Jenks that he thought that "Adam must testify," to which Mr. Jenks responded "Adam can testify. His testimony will be short. His cross risky. They will bring Stravello on marijuana and Adam dealing. They still have two more informants: Odoms and Sacci." (Tr. at 305; *see also* Gov. Ex. L.) Mr. Ponze further testified that, although he originally told Mr. Jenks that the defendant "must testify" on April 24, on April 26, he told Mr. Jenks that "Adam does not think it is necessary to testify," and Mr. Jenks agreed that it was "smart Adam not testify." (Tr. at 306; *see also* Gov. Ex. L.)

Mr. Ponze testified that on April 25, 2014, in the middle of the trial, he sent Mr. Jenks an e-mail regarding Machacek's plea, which he felt was contradictory to Glass's testimony at trial and could be exculpatory because (1) Machachek stated in his plea allocution that he stood watch outside and the eyewitness stated that only one gunman entered the doctor's office, whereas Glass testified at trial that both Machcek and the defendant went into the doctor's office, and (2) the eyewitness to the robbery described the gunman as 5'3" and 150 lbs., whereas the defendant is 5'11" and 170 lbs. (Tr. at 280-82; *see also* Def. Ex. 137.) Mr. Ponze testified that Mr. Jenks brought this information to the Court's attention, and on April 30, the parties stipulated to the Machacek plea. (Tr. at 283.)

Mr. Ponze testified that he never discussed the black car with the defendant, and that he was not at trial for the final two days when the government was trying to link the car to the defendant. (Tr. at 321-22.) Mr. Ponze testified that he was present when the issue of the defendant's facial scars came up at the trial and remembered the defendant's family saying that the facial scars were not from a motorcycle accident. (*Id.* at 323.) Mr. Ponze testified that he remembered "bringing it up to Mr. Jenks, because it seemed like he didn't know that that stuff was going to come into evidence" and that he did not think that Mr. Jenks knew that the defendant had been in two different motorcycle accidents. (*Id.*) However, Mr. Ponze testified that he was not a part of any discussions regarding childhood photographs of the defendant with his scar. (*Id.* at 323-24.)

Mr. Ponze also testified as to his cell phone records, which he obtained from Verizon, and summarized his calls with Mr. Jenks, including that Mr. Jenks first returned his call on March 24, 2014, that he had a seven minute phone call with Mr. Jenks on March 26, after visiting the defendant for the first time, and that on April 24 and 25, he spoke with Mr. Jenks regarding delivering the trial transcripts to the defendant at the MDC and his April 25 visit with the defendant. (Tr. at 284-89; *see also* Def. Exs. 446-71.)

Mr. Ponze confirmed that, during the trial, in his e-mails to Mr. Jenks, he told him that "I'm with you 100 percent." (Tr. at 303; *see also* Gov. Ex. L.) Mr. Ponze testified that, after the trial was over, on May 9, in an e-mail regarding filing a Rule 29 motion, he told Mr. Jenks "As I've said repeatedly, the outcome of this case was not indicative of your performance during trial. You did a fine job and going into summation I was confident that we would prevail." (Tr. at 310-11; *see also* Gov. Ex. L.) Mr. Ponze confirmed that he told Mr. Jenks that he was doing a "fine job" throughout the trial and that Mr. Jenks promptly responded to the various e-mails Ponze sent him throughout the trial. (Tr. at 316.) Mr. Ponze testified that, when he sent these e-mails, he was not aware whether Mr. Jenks had done any investigation into possible alibi evidence. (*Id.* at 330.)

Mr. Ponze testified that he sent an e-mail to Mr. Jenks on May 5, 2014, four days after the trial ended, to relay questions from the defendant, including "[w]hat exactly he was charged with," "what

1ybcases

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

introduced, trial counsel would have discredited the government's attempt to link the defendant to the robberies based on his ownership of a black four-door sedan, which was a crucial component of its case that was stressed in witness testimony, (see Trial Tr. at 881-84, 887-88), as well as the government's summation. (See id. at 1090 ("What were they in? A four-door black sedan. You heard about that car many times that the defendant was in and his partner was in. What did the government put into evidence? Government's Exh. 7. Who had a four-door sedan? Adam Todd Valazquez, the defendant.").)

Further, there were no witnesses, other than co-conspirators, who could directly connect the defendant to the crimes. Critically, even without this additional evidence undermining the government's case, the key cooperating witnesses in this case - Timothy Glass and Martin Lovly - had substantial credibility issues. Glass's second identification of the defendant was in a photo array in which he identified two individuals, which Detective Holmes testified had never occurred in any other identification he had done over thirty years, and there was nothing in Detective Holmes's notes regarding this identification. (Tr. at 220-22; see also Def. Ex. 281.) Additionally, Glass had credibility issues. During the trial, he admitted that when he initially cooperated with the NYPD in 2009, he "was pretty much making things up" and "totally lying" about the robberies and who was involved in them. (Trial Tr. at 727-30.) Glass also cooperated two years before identifying the defendant, and once he ultimately identified the defendant, he did not know his name, but rather, referred to him interchangeably as either "Rob" or "Alex." (Id. at 610-11, 635-36, 695, 726.) Glass also had stated that the defendant had the following personal characteristics: (1) he had a scar on his hand from a dog bite (Def. Ex. 285);22 (2) he was "in his early 20s" at the time of the robberies (Trial Tr. at 731); and (3) he spoke Spanish (Id. at 573). However, all of these descriptive characteristics appear to be inconsistent with those of the defendant. It is undisputed that the defendant has no scar on his hand from a dog bite, or anything else. Second, given the defendant's date of birth of August 22, 1978, (Gov. Ex. 7), he was over 30 years old at the time of the alleged robberies. Third, there is no evidence in the record that the defendant speaks Spanish (and both the defendant and his family testified at the hearing that he does not). (See Tr. at 141, 380.)

The substantial weaknesses in Glass's testimony is further reflected in the fact that his testimony was not corroborated by other government cooperating witnesses who did not testify. In particular, Glass told investigators that Machacek had extensive contacts with the co-conspirator whom Glass had picked out as the defendant, including that: (1) Machacek introduced Glass to the defendant "at the end of '08" (Trial Tr. 416-17, 588, 677, 693); (2) Machacek was in the presence of the defendant "many times" and "vouched for [defendant] and trusted him" (Id at 685, 725); (3) Machacek participated in the charged New Jersey warehouse burglary with the defendant (*Id.* at 423-42); (4) Machacek and the defendant drove together to commit the charged doctor's office robbery (*Id.* at 465, 469-71); (5) Glass, Machacek, and the defendant robbed the Glen Oaks Bar together (which was part of the charged robbery conspiracy) (*Id.* at 481-86); and (6) Glass, Machacek, and the defendant burglarized a construction company and all left there in the same vehicle (*Id.* at 473-75). However, Machacek, who is a cooperating witness with the government, was present with three photo arrays containing the defendant's photo, and failed to identify the defendant at all. (Apr. 7, 2014 Hrg. Tr. at 11, 21; Trial Tr. at 1035; Trial Ex. 10; Tr. at 6.) Similarly, Teri Bedell, who was a coconspirator and Glass's girlfriend, also was a cooperating witness for the government. Bedell participated in several of the charged robberies against **Velazquez**, including the 152nd Street robbery, the doctor's office robbery, and the New Jersey warehouse robbery. (Trial Tr. at 451-54, 586-88.) However, Bedell also did not identify the defendant as a participant in those robberies. (Tr. at 6; Trial Ex. 10.)

Cooperating witness Martin Lovly also had substantial credibility issues. Initially, Lovly did not

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Name: Romano, Joseph
Reg No: (72247053)
U.S. Penitentiary MAX
P.O. Box 8500
Florence, CO. 81226-8500

19 72247053-0820-mo-216

7018 0360 0002 2081 1650

7018 0360 0002 2081 1650

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7018 0360 0002 2081 1650



AUG 27 2019

FLORENCE CO 8122

AUG 27 2019

USPS

Clerk of the Court
United States District Court
Chambers of John F. Keenan
500 Pearl St.
New York, N.Y. 10007-1312

USM P3
SDNY

Mailed
Aug. 13th 2019
Prison legal
mail.
Supplemental Motion
enclosed
Case# 19-956
JR