Case 1:12-cr-00691-DC    Document 266    Filed 04/07/20    Page 1 of 31 PageID #: 2771



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 0 7 2020 ★

BROOKLYN OFFICE

RECEIVED
APR 0 7 2020
PRO SE OFFICE

In the United States District Court For the Eastern District of New York

Joseph Romano,
              Petitioner,

        v.

United States of
America
        Respondent

No. Criminal
12-CR-691 (JFK)

March 20, 2020

Motion for Newly discovered Evidence. Motion to vacate set aside Petitioners Conviction

① In a letter written by Petitioners <sup>Exhibit</sup> A wife Karen Romano to Petitioner dated February 26, 2020, and received March 15, 2020, Petitioner learned New evidence. The Newly discovered Public Records information below, is also Corroborated in Previous Governmental Record filings, and demonstrates the following:

A) A Manifest conflict of interest

1 of 5



of Epic proportion had taken place, and denied Petitioner a fair process.

(2) Unbeknownst to Petitioner is that:

a) Petitioner hired Private investigator, Brian Aryai a former Federal Agent who by 2009 had become an "Outed Whistleblower."

b) Aryai was involved in a sexual relationship with E.D.N.Y. U.S. Attorney Loretta Lynch.

                              Exhibit B

(3) In March 2011 A.U.S.A. Gatz was also aware of the Aryai/Lynch sordid affair. In March 2011 Ms. Gatz at the request of Lynch warned Government witness Mirkovic, and intentionally interfered with Petitioners Pre Trial investigation, and Trial witness preperation.

                              Exhibit C

④ Mr. Aryai had an affirmative responsibility and ethical duty to disclose his status as both:

A) A Government operative.

b) His unethical and unprofessional relationship with the prosecuting Attorney Loretta Lynch.

⑤ Substantial and irreparable prejudice occured in Petitioners Case. Mr. Aryai was in effect a Government Spy (Paid $60,000) working in Petitioners Defense Camp. Mr. Aryai violated Petitioners Attorney-Client privileges with untold amounts of Ex-Parte communications with Lynch, and others.                    Exhibit D

Loretta Lynch and others are inextricabley intertwined in both of Petitioners case's. First, Lynch obtained a conviction in Case # 09 CR 170 SJ (JFB). Then

obtained a Grand Jury indictment in Case # 12 CR 691 JFK (EDNY) and recused herself, too little, too late.

Had the aforementioned been known to Petitioner, Petitioner would have called both Aryan and Lynch as a hostile witness. It should be noted after Lynch, Gatz, and Hessle got caught they retaliated with a conspiracy.

The Government will argue that Newly discovered evidence must be presented within three years. The Governments Argument is not viable; essentially saying if you dont catch us, with holding evidence within the allotted time it didnt happen. Facts dont change because a lower court Judge acquiesced to a Prosecutors scheme formulated to Prevent Petitioner of a fair Process. And does so using Solitary Confinement, and Prison employees. These said rules are created to benefit the people who wrote them; but they dont subvert the Constitution.

4 of 5

It is for these Premier reasons, and in the interest of Justice, That Petitioners Convictions be overturned.

Its important that this Court, and ultimately the higher court read Exhibit C 1—4 pgs. for clarity.

Dated this March 23, 2020    Most Respectfully

/s/ Joseph Romano

Joseph Romano
Pro-Se
(72247053)
P.O. Box 8500
U.S. Penitentiary Max-
Florence, Co.
81226

5 of 5

# EXHIBIT

# A

March 23, 2020
Exhibit A 1 pg.

Exhibit A    1

2/26/2020
Hey BABE,

████████████████████████████████████████

████████████████ The house needs your TLC. The kids need you now more than ever. This is an inhumane and absolutely unfair treatment my family is receiving from this. My children deserve their father. I need you. Life is never going to be the same until you get home. Now as I told you I troll Dan Scavino on social media. I say a lot. I'll send you copies of some of the messages. I basically speak my absolute truth. My family suffers from the abuse of power by the Eastern District of NY. I point out the unethical practices done by the prosecution in your coin case and how I sent Brian Aryai to speak to Lorretta Lynch on behalf of our family to speak to her about the abuse of power and specific on the record clear unethical practices done to you by the Eastern District.

Soon after this meeting in Brooklyn; you were charged with a made-up crime to set you up and shut you up in solitary confinement at ADX. Seriously it's very hard to live everyday knowing this truth and knowing Joe that you do not belong in jail. Especially under S.A.M.S

My Family deserves a second chance. We need you now more than ever. This is not justice. Just know I won't stop until I reach the President. I know I will have my 5 minutes with him. I feel if I keep messaging everyday to them eventually I will have a response. I am very hard to ignore. I just won't stop. Thank you for remembering my anniversary, I am glad it's a date you remember. The kids are ok. But I know we need you now more than ever. This needs to change soon. I pray to God everyday, I know there's always reasons for everything. It's time for a miracle. I Need the President. You do not belong there. I love you. I know I am getting close. I still have danielle that will help me. But I don't put all my eggs in one basket. Jean Margrella met the President this month. I am telling you, I am getting closer and closer. I will continue with my social media too. I also will try other ways to get to him. He is the only one that can help.    Happy Ash Wednesday

Karen Romano

# EXHIBIT

# B

March 23, 2020
Exhibit B 1-4 Pgs-



# Whistleblower Trapped In Turf Battle Between Two Former U.S. Attorneys

www.forbes.com

In February 2009, Brian Aryai, then Controller and New York CFO of Bovis Lend Lease (now Lend Lease Construction LMB Inc.), walked into the New York offices of law firm Hogan & Hartson (since renamed Hogan Lovells) to meet with partner and former U.S. Attorney for the Eastern District of New York (EDNY) Loretta Lynch.  Aryai, who previously had served as a special agent at the Department of Homeland Security, had known Lynch from their days of working organized crime and white collar cases at the EDNY.  Aryai laid out a massive scheme of overpayments to labor union foremen by large construction firms, including the one that employed him.  Lynch latched on to the case, forwarding it on to her colleagues at the EDNY.  She went on to serve again as the US Attorney for the EDNY and the case would become just one of many that defined her storied career. In 2015, she became the 83rd Attorney General of the United States.

Known as the "eight plus two" scheme, Aryai had discovered that unions billed an additional two hours of overtime pay for labor union foremen, who had not not worked those hours, on to 8 hours of regular hours that they had.  His evidence included surveillance of foremen on the work site of 130 Liberty Street (Deutsche Bank skyscraper) in lower Manhattan, a building heavily damaged in the 9/11 attacks and then left abandoned for years.  It was the same building where Bovis was found responsible for a fire in 2007 that cost the lives of two New York Fire Department firefighters, resulting in a non-prosecution agreement with Manhattan District Attorney Robert Morgenthau.

The overcharging of hours was a practice known to many in the industry for decades and resulted in billions of dollars being passed on to the builders, mostly in New York.  With Lynch at the helm of the EDNY, she entered into a deferred prosecution agreement (DPA) in April 2012 with Bovis for $56 million in criminal fines and restitution.  Other construction companies would soon settle, but what has been unusual about these DPAs was that they did not include civil penalties and restitution, something that is a common practice in the DOJ.  However, a few individuals were held accountable as two former senior executives at Bovis, James Adabie and John Hyers, would plead guilty in the scheme and be sentenced to probation.  Their sentencing hearing was in the federal courthouse in Brooklyn that had been built by Bovis … with the bogus overcharges included.  As for Aryai,

```
WW      WW  IIIIII  DDDDD     EEEEEEEE RRRRRRR   PPPPPPP  TTTTTTTT
WW      WW  IIIIII  DDDDDD    EEEEEEEE RRRRRRRR  PPPPPPPP TTTTTTTT
WW      WW    II    DD   DD   EE       RR    RR  PP    PP    TT
WW      WW    II    DD    DD  EE       RR    RR  PP    PP    TT
WW      WW    II    DD    DD  EEEEE    RRRRRRRR  PPPPPPPP    TT
WW      WW    II    DD    DD  EEEEE    RRRRRRR   PPPPPPP     TT
WW WW   WW    II    DD    DD  EE       RRRR      PP          TT
WWWWWWWWWW    II    DD    DD  EE       RR RR     PP          TT
WWW    WWW    II    DD   DD   EE       RR   RR   PP          TT
WW      WW  IIIIII  DDDDDD    EEEEEEEE RR    RR  PP          TT
W        W  IIIIII  DDDDD     EEEEEEEE RR    RR  PP          TT


    AAAAAA   CCCCCC    CCCCCC   DDDDD    EEEEEEEE EEEEEEEE
   AAAAAAAA CCCCCCCC  CCCCCCCC  DDDDDD   EEEEEEEE EEEEEEEE
   AA    AA CC    CC  CC    CC  DD   DD  EE       EE
   AA    AA CC        CC        DD    DD EE       EE
   AAAAAAAA CC        CC        DD    DD EEEEE    EEEEE
   AAAAAAAA CC        CC        DD    DD EEEEE    EEEEE
   AA    AA CC        CC        DD    DD EE       EE
   AA    AA CC        CC        DD    DD EE       EE
   AA    AA CC    CC  CC    CC  DD    DD EE       EE
   AA    AA CCCCCCCC  CCCCCCCC  DDDDDD   EEEEEEEE EEEEEEEE
   AA    AA  CCCCCC    CCCCCC   DDDDD    EEEEEEEE EEEEEEEE


    EEEEEEEE IIIIII  TTTTTTTT EEEEEEEE LL
    EEEEEEEE IIIIII  TTTTTTTT EEEEEEEE LL
    EE         II       TT    EE       LL
    EE         II       TT    EE       LL
    EE         II       TT    EE       LL
    EEEEE      II       TT    EEEEE    LL
    EEEEE      II       TT    EEEEE    LL
    EE         II       TT    EE       LL
    EE         II       TT    EE       LL
    EE         II       TT    EE       LL
    EEEEEEEE IIIIII     TT    EEEEEEEE LLLLLLLL
    EEEEEEEE IIIIII     TT    EEEEEEEE LLLLLLLL
```

| SPOOLID: | 0123 | | USER/NODEID: | ACCDEE | IBIVMP |
|---|---|---|---|---|---|
| CLASS: | O | | FILENAME/TYPE: | WIDERPT | LISTING |
| PRINTER: | P27D1 | | FILE CREATE DATE: 06/16/2010 | | |
| SYSTEMID: | IBIVMP | | FILE CREATE TIME: 09:04:12 | | |
| PRINT DATE: 06/16/2010 | | | DIST: | EITEL | |
| PRINT TIME: 09:04:13 | | | | | |

```
START
```

he was fired by Bovis months after complaining internally about the practice and turning his findings over to Lynch.

On June 12, 2009, just two months before Preet Bharara was sworn into office as U.S. Attorney for the Southern District of New York, Aryai filed a Qui Tam complaint under the Federal False Claims Act that was placed under seal (Southern District of New York, Case 1:09-cv-05456). Aryai was seeking to be a whistleblower to receive part of the civil damages associated with the overcharges, something that Lynch had not done in her settlement with numerous firms entwined in the scheme. In addition to Bovis, Aryai named huge construction firms that were also involved in the same overfilling scheme ... Skanska, Turner Construction and Plaza Construction, among others. The civil penalties could potentially be in the hundreds of millions of dollars. However, Aryai was upset and perplexed when his attorney filed the case in the SDNY since the criminal cases against the construction companies were in the EDNY. So why not just transfer the case? It happens all the time between districts. It was not that easy and the move would put Aryai in the middle of two rival US Attorneys.

After Bovis, Aryai returned to public service as a contractor for the Department of Justice's Asset Forfeiture Program ("AFP") at the United States Marshals Service ("USMS"). It was there that he would have a run-in with Bharara. AFP was responsible for finding, seizing and selling assets recovered from criminal activities. It is a big job and the organization brings in over $200 million a year from the sale of assets. While working there, Aryai claimed that the person charged with selling those assets, Len Briskman, was involved in insider dealings. When the actions were brought to the attention of those within the DOJ, Aryai again found that his revelations were not welcome. He was outed as a whistleblower within the USMS by Assistant US Attorney Barbara Ward, who worked in Bharara's office. Aryai was subsequently fired. An Office of Inspector General report released in September 2011 found no wrongdoing on the part of Briskman, but it did find that he "did not publicly announce the sale of some complex assets, which we [OIG] found limited the ability of the general public to purchase assets. Briskman also made these decisions without sufficient oversight by his supervisor." The organization was overhauled.

Aryai went after Bharara with a number of letters stating that revealing his identity had cost him his job. As he wrote to Bharara in September 2010, "*Ethical conduct must be praised and rewarded not punished.*" Bharara responded through AUSA John McEnany "*We do not believe that it was inappropriate for this Office to advise the then-Acting Assistant Director of the Asset Forfeiture Division of the United States Marshals Service that you were the source of information regarding questionable outside activities of Len Briskman.*" The letter

2 of 4

# DA00012

\\IBIPRINT\27D1

PSCRIPT Page Separator

Case 1:12-cr-00691-DC     Document 266     Filed 04/07/20     Page 17 of 31 PageID #: 2787

closed by stating that if Aryai thought he was a wronged whistleblower, he should get an attorney.

The friction with Bharara posed a bigger problem for Aryai as he wanted his Qui Tam case transferred to the EDNY. Bharara would not budge on transferring the case and Aryai filed extension after extension to keep the case under seal with hopes that one day it would gain some traction in either the SNDY or EDNY.

Lynch seemed sympathetic to Aryai's situation and wanted the case transferred but acknowledged in an email to Aryai on July 1, 2012 that:

> *I must tell you I am not entirely sure what the issues are here, or why you feel they should be laid at the EDNY's door. We tried to have the case moved to the ENDY early on, but SDNY did not acquiesce. Our ability to direct action in a case in another office is extremely constrained, and dependent on that office's accepting our direction.*

> *To my knowledge, your attorney is aware of that, and has had both positive relationship and positive communication with our office. I don't have any information on how things have gone with your counsel and SDNY (although it sounds like it has not been as positive).*

As we all know, Preet Bharara was fired by President Donald Trump, previously a builder of major projects in New York, in March 2017. Upon his firing, Aryai was optimistic that another US Attorney would take up his case and move forward. On August 24th, acting US Attorney Joon H. Kim wrote a letter to U.S. District Judge Lorna Schofield regarding Aryai's case that "*the United States has decided not to intervene in this action.*" Aryai was on his own without the support of the US government. In September of 2017, over 8 years after Aryai's claim was filed, the case was unsealed.

Aryai continues to make noise about his case and has taken his concerns directly to members of Congress and even to President Trump. In a letter to Trump in May 2017, Aryai outlined how he was caught between the two US Attorneys and how the Trump Organization itself was a victim to the "eight plus two" scandal. He wrote that Lynch, his one-time girlfriend, had snubbed him because of their breakup many years before and Bharara had refused to transfer or act on the case because of Aryai's disclosure of misdeeds within the USMS. He also wrote that the two US Attorneys had no love-loss between them, telling Trump "Loretta and Preet hated each other, but both loved the podium."

3 of 4

# DA00012

\\IBIPRINT\27D1

PSCRIPT Page Separator

Aryai wrote to Bharara on November 14, 2016 and promised to one day take his complaints public, " ... once the seal is lifted," Aryai wrote, " *I will ensure as I have done before that my appalling journey through your office finds a place on the front pages of our national newspapers.*"

As for Aryai's next steps, he provided me with the following statement:

"*The cases were given back to me as result of non-intervention.  The task now rests with me to move the case beyond the horrific corruption by Loretta and Preet.*"

The case brings more questions than answers.  Let's see what transpires next.

Follow me on Twitter or LinkedIn. Check out my website or some of my other work here.

I established 500 Pearl Street as a strategic consulting firm for attorneys and their clients as an advisor on federal criminal cases. I write here on criminal justice matters, particularly related to white collar crime, and speak nationally on the topic. In 2007, I co-authored a book with journalist Neil Weinberg called "Stolen Without A Gun" after serving more than 18 months in prison for wire fraud and money laundering.

Read Less

4 of 4

# DA00012

## \\IBIPRINT\27D1

## PSCRIPT Page Separator

# EXHIBIT

# C

March 23, 2020
Exhibit C 1-4 pgs

*Exhibit C*

**State of Florida**
**County of Palm Beach**

**BEFORE ME**, the undersigned Notary,

_____ *[name of Notary*
*before whom affidavit is sworn]*, on this 1st day of March, 2011, personally appeared Dejvid Mirkovic, known to me to be a credible person and of lawful age, who being by me first duly sworn, on his oath, deposes and says:

1. I, Dejvid Mirkovic ("Mirkovic"), reside at 7090 Via Leonardo, Lakeworth, FL 33467-5236. I am the president and chief executive officer of Universal Coin Collections, Inc. ("UCCI"), which formerly operated as Collectible Coins, Inc. ("CCI"). CCI was based at 1300 NW 17th Avenue, Suite 218, Delray Beach, Florida 33445. UCCI is currently headquartered at the aforesaid address.

2. On February 25, 2011, at approximately 3:30 p.m., I met with Brian S. Aryai ("Aryai"), a certified public accountant ("CPA") and a retired federal agent, at my office. Aryai has been retained by Joseph Romano to conduct a forensic accounting investigation on Joseph Romano's behalf to determine facts and circumstances leading to Joseph Romano's indictment by the United States Government.

3. I am a prosecution witness in the aforesaid matter.

4. I voluntarily agreed to meet Aryai to discuss payments, both directly and indirectly, I had made to Charles Carnesi ("Carnesi"). Carnesi is a former counsel for Joseph Romano ("Romano"). These payments were paid for legal expenses incurred by Romano. I do not know whether or not the payments demanded by Carnesi actually represented bona fide services rendered by Carnesi. These payments to Carnesi were made through my operating business account number 0095248250, held in the name of CCI,

1

Exhibit C 2

at Regions Bank, a financial institution that conducts business in the State of Florida.

5. In total I paid Carnesi's purported legal fees in the amount of $263,800.00. The total amount represented checks made payable to Charles Carnesi for a total amount of $35,000.00, which is reflected in Exhibit A, attached herewith, and $228,800.00 withdrawals in cash, attached herewith as Exhibit B, highlighted in yellow color, which were withdrawn from CCI's business account and physically delivered to Karen Romano, Romano's spouse, to be turned over to Carnesi. Based on my discussions with Karen Romano, I was advised by Karen Romano that Carnesi had demanded that his fees be paid in cash. In spite of several requests to Carnesi, he refused to provide me with any invoices, receipts, tax identification number or social security number for the referenced payments. It is unclear to me what work Carnesi has performed; additionally, this is the first time I have heard of an attorney who demands bundles of cash for payment of fees.

6. On February 25, 2011, at approximately 4:30 p.m., while meeting with Aryai, I received a phone call from Jason Wandner ("Wandner"), who was previously retained as my counsel, until I dismissed Wandner and retained Jack Goldenberger in June of 2010. Wandner was introduced and recommended to me by Carnesi. At the time I received the call from Wandner, he was not my attorney. In the course of this conversation, Wandner, who in my observation and belief is very close and friendly with Lara Gatz ("Gatz"), the assistant United States attorney in the Eastern District of New York assigned to Joseph Romano's criminal case, made certain statements, some of which Aryai heard as I spoke on my cellular phone. Wandner stated to me that Gatz' secretary had just called him, telephonically, and informed him that "Carnesi is under investigation by the U.S. Attorney and an investigator is going to be contacting you to gather information about payments to Carnesi". Wandner further stated that under no circumstances I should talk to this investigator. I understood that Wandner was alerted by Gatz about Aryai's planned meeting with me about payments to Carnesi.

*Exhibit C 3*

7.  I am a law abiding businessman and would like to help with any legitimate law enforcement matter. In my view, the unauthorized disclosure by Gatz' office to Wandner about Carnesi being under investigation is unlawful and represents prosecutorial misconduct.  This event should be addressed with an independent investigation. Furthermore, in my view, the revelation of my planned meeting with Aryai by Gatz's office to Wandner is unethical in Gatz' attempt to obstruct Romano's inalienable right to defend himself, through his representatives, in collection and presentation of facts to the court in the course of the adjudication of the criminal case against him, including the sentencing phase and Romano's arguments for appropriate allocation of points.

8.  In my meeting with Aryai and Thomas Cleere, Esq. ("Cleere"), both retained by Joseph Romano, I was presented with and reviewed documents attributed to me for having made certain statements in two separate memoranda of interview.  One memorandum is dated April 28, 2010 and the other is dated August 17, 2010, attached herewith as Exhibits C & D respectively, both compiled by William J. Hessle ("Hessle"), who is either a contract employee of the United States Postal Service ("USPS") or a postal inspector employed by the USPS.  This was the first time I had seen these documents. I am not aware of Hessle's true position and relationship to the United States Government. After reviewing the above referenced documents, with respect to Exhibit D, I make the following declarations:

    i)  I have never stated that Joseph Romano had told Russell Barnes ("Barnes") to use the "investor pitch".

    ii) I have never stated that "Romano admitted that he (Romano) knew his employees were lying to customers in New York using the "investor pitch". I told Gatz and Hessle that Romano became aware of these misrepresentations only subsequent to his indictment.

3

Exhibit C 4

**[signature of affiant]**

_____

Dejvid Mirkovic

7090 Via Leonardo, Lakeworth, FL 33467-5236

**State of Florida**
**County of Palm Beach**

Sworn to (or affirmed) and subscribed before me this ___1ˢᵗ___ day of
___March___, _2011_ (year), by
___Dejvid Mirkovic_____ (name of person making
statement).

_____
(Signature of Notary Public - State of Florida)

Adele Durocher
_____
(Print, Type, or Stamp Commissioned Name of Notary Public)

Personally Known _____ OR Produced Identification ___X___

Type of Identification Produced _Florida Drivers License_

4

# EXHIBIT

# D

March 23, 2020
Exhibit D  1 pg.

*EXHIBIT D*

## AFFIDAVIT

The State of New York )

) S.S.

County of Nassau )

I, KAREN ROMANO , of LEVITTOWN, New York, MAKE OATH AND SAY THAT:

1.In the fall of 2010 Mr. Brian S. Aryai, CPA, CFF, CIA, CFE, CAMS was hired as a forensic accountant on my husbands coin case.

Mr. Aryai was highly recommend. From the beginning, Mr. Aryai asserted that my husband's lawyer at the time, Mr. Charles Carnesi, broke moral and ethical practices as his counsel. Mr. Aryai also believed that there was serious, alarming prosecutorial misconduct against my husband in the coin case, so much so that Mr.Aryai brought the matter to Ms. Lorretta Lynch, current Attorney General of the US but then United States Attorney for Eastern District , and alerted her to his concerns. In early 2011 Mr. Ayai set up a meeting at the Brooklyn office. I waited outside the building while this meeting took place. I have emails between myself and Mr. Aryai discussing his concerns and his plans to discuss my husband's case with Ms. Lynch.

*Karen Romano*

SUBSCRIBED AND SWORN TO)

BEFORE ME, on the)

31st day of August, 2016)

)

)

_____)_____
NOTARY PUBLIC)KAREN ROMANO

My Commission expires: ____11/14/17____ )

KAREN C. JACKSON
Notary Public, State of New York
No. 01JA4988666
Qualified In Nassau County
Commission Expires Nov. 12, 20 17

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT. E.D.N.Y.

★    APR 07 2020    ★

BROOKLYN OFFICE

## CERTIFICATE OF SERVICE

I hereby certify that on __March 23, 2020__ I sent a copy of
[date]

the __Newly found evidence Motion__,
[name of document]

to: __Judge J.F Keenan__

at __U.S. District Court 225 Cadman Plaza East__
__Brooklyn, N.Y. 11201__
__USPS Reg.#7d803600022082 0270__, the last known address,
by way of United States mail or courier.

__3-23-2020__
Date

Signature (72247053)
PO Box 8500
US Penitentiary Max-
Florence, Co. 81226

RECEIVED
APR 07 2020
PRO SE OFFICE

C.C.
Chief Judge Katzmann
Dr. Celia Wells
Karen Romano

__Motion__

Motion 5 pgs-
Exhibit A 1 pg-
Exhibit B 4 pgs-
Exhibit C 4 pgs
Exhibit D 1 pg-

Pro Se

7018 0360 0002 2082 0270

**Name:** Joseph Romano
**Reg No:** (72297053)   cm-20-72247053-323-mo-099
**U.S. Penitentiary MAX**
**P.O. Box 8500**
**Florence, CO. 81226-8500**

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 07 2020 ★

BROOKLYN OFFICE





USMS

RECEIVED
APR 07 2020
PRO SE OFFICE

Clerk of the Court
Judge J. F. Keenan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201

FEDERAL PRISON CAMP
P.O. BOX 5000
FLORENCE, COLORADO 81226

DATE: _____

"SPECIAL/LEGAL MAIL"
The enclosed letter was processed through special mailing
procedures for forwarding to you. The letter has neither



7018 0360 0002 2082 0270