IN THE UNITED STATES DISTRICT
Court FOR THE EASTERN DISTRICT OF
NEW YORK

November 25, 2022

Honorable Judge Keenan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201


RECEIVED
DEC 15 2022
PRO SE OFFICE

Criminal # N. 12 CR691 (JFK)
Civil # No 16-2189 (JFK)

Motion Pursuant to 28 U.S.C. § 2255
and in accord with Johnson V.
United States, 576 U.S. 591 (2015)
and United States V. Davis, 139 S.Ct.
2319 (2019).

To:

Honorable Judge Keenan:

I most respectfully plead with
this Honorable District Court to consider
this supplement to my pending application
pursuant to 28 USC. § 2255.
There has been No decision made
on my pending legal submission and I
am firmly convinced that the Supreme
Court's new decision in the case of
United States V Taylor, 142 S.Ct, 2015
(2022) will aid and assist this Honorable
Court in determining the Monumental
decision to be made in my existing-
meritorious and open, application before
this Court.
Most Significantly, this supplement

1 of 26

and fervently dominant new "SCOTUS" opinion unequivocally and categorically evinces that my offenses of conviction were NOT (emphasis added) "Crimes of violence" nor "Violent crimes", and, consequently, my sentence was, both, inappropriate and unconstitutional.

Please incorporate by reference as if realleged and inserted in its entirety here in my pending 2255 motion before thise Honorable Court.

I am imploring and pleading, with this Court with upmost genuity that you sincerely consider and favorably decide my case. I was wrongfully convicted and unconstitutionally sentenced to two terms of life in prison. A grave miscarriage of justice has occurred to me and I suffer immeasurably. I am an innocent man serving a life sentence for a non-violent crime.

On, June 21, 2022, SCOTUS held that an attempted Hobbs Act robbery is Not a "Crime of violence" and thus, cannot (emphasis added) support nor qualify under harsh federal gun laws to sustain a § 924(c)(3)(B) offense-conviction. See Taylor Id..

Paramount and magnanimous to deciding the issues in my pending motion is the fact that our Highest Court issued the Taylor opinion subsequent to decisions in

_Johnson_ and _Davis, Id._ and would never have granted Certiorari to _Taylor_ if it was going to merely re-affirm the precedant of _Johnson_ and _Davis._

It is clear to an absolute certainty, that when "SCOTUS" determined the constitutionality of sentencing Guidelines § 4 B1.2(a)(1) and the residual clause of 18 U.S.C.A. § 924(c)(3) it vociferously opined that when applying a categorical approach to determine whether an offense is a "Crime of violence" the crime must contain the essential elements which includes - involves the use, attempted use, or threatened use of physical force.

None of my crimes of conviction includes these "essential elements" which would make them "Crimes of violence" or "violent crimes." Consequently, as argued _supra_ I will prove that my sentence which was tempered on me being convicted of a violent crime is unconstitutional and contravenes Supreme Court precedent. My sentence is the antithesis of justice and, contravenes the factors enunciated in 18 U.S.C. § 3553.

The Supreme Courts cogent and precise opinions clearly determining what constitutes a "Crime of violence" or "violent crime" or "violent felony" is absolute and irrefutable. If an offense does not contain the enumerated "essential elements" then it cannot be interpreted nor considered a "Crime of violence" nor "violent felony." Most

importantly and pertinent to the case sub-judice is the indisputable fact that "SCOTUS" opinions do Not (emphasis added) limit thes definitions to the underlying-predicate offense used for deciding whether § 924 (c) is applicable. It is relevant to all crimes contained in our penal code - Title 18.

As the petitioner, I was charged in a two count indictment inter-Alia with Conspiracy (emphasis added) to murder an employee of the United States, in violation of 18 usc. § 1117 - Conspiracy to Murder United States District Court Judge Joseph Bianco in Count one and, Conspiracy to murder Assistant United States Attorney Lara Gatz in Count two. Following a January 2014 Jury trial wherein I unequivocally and categorically plead not guilty and Vociferously objected to the accusations, I was convicted on both counts.

I am innately cognizant that we live in a world wherein words matter. My case, I submit is the antithesis of a true and just verdict, and a sentencing that tempers justice with mercy. I genuinely believe in our system of Democracy and justice and honorably - proudly served for six years in the United States Navy to prove ~~this~~ this. I was willing to defend our Constitution with devout distinction.

This case is clearly illustrative of the most fervent issues that

denegrade the most problematic-troublesome issues in our criminal justice system. It is symbolic of an experienced, manipulative, career criminal, preying on my vulnerabilities, naivity, joviality and the inordinate pain, misery and suffering of having been sentenced to a long term of imprisonment and the atrocious torment it caused me, my wife and our three children. I contemplated how I could live being away from my loved ones and the life changing suffrage they were enduring. It was unbearable and suggestive and leading antidotes were thrown in my face by a criminal, whom then became the critical-material witness against me.

I was gamed by the most prevalent scheme used by experienced cooperating witnesses and informants; but to an absolute certainty I would never hurt, harm, kill nor cause pain to any human being; especially a Judge or Prosecutor. My words were fictitious!

In prison it is common to portray an ardent image of chivalry for your honor-family and so you hyperbolize your manliness, boast, embellish and blatantly lie so that you appear tougher than you are; when in fact you are really weak and cannot walk the talk. Nor do you ever intend to. It is an act with each utterance making you appear as a gangster. That is the only way to survive. It is all about survival.

I was an overweight marshmallow thrust into an extremely violent

environment whose mind-set was to prevent abhorrent deviants from preying, extorting or assaulting him. So I lied, boisterously and abrasively made obnoxious and impossible to commit statements and with idle banter and the use of words wholly devoid of either intent or substance, I got myself convicted.

In the coming weeks I will follow up this motion with an "actual innocence" motion - petition and conclusively provide magnanimous evidence to prove this. My use of language that I learned from viewing to many mobster movies with Al Pacino, James Cagney and the likes of Dinero and Pesci was a sign of my immaturity and lack of sincere intent. I mirrored to an informant movie themes and lines.

I truly leared that the "spoken word" is enormously potent and, as in this case could lead to impactful and deletereous consequences. Naturally my mouth is much to big but veraciously I am and have never been a danger to anyone except my self. I know to an absolute certainty that neither Judge Bianco nor Lara Gatz were never in danger because Dejvid Mirkovic was vociferously advised that I was never serious about my statements and that he intended to "bait and switch" the undercover officers from Judge Bianco and Lara Gatz, to the husband of his lover. I made sure he knew my statements were in jest.

Moreover, Markovic went on his own drug induced rampage of uttering words I never spoke nor directed and the cash paid by HIM (emphasis added) to the undercover was HIS (emphasis added) own funds, to be used for HIS (emphasis added) benefit and not mine. In his warped and deranged mind and life, he fell in love with a married stripper and could not live without her. He knew that I had manifested nothing but certainty that I never intended to hurt anyone.

It is irrefutable that I was incarcerated at the time of these offenses, and the Government's theory of prosecution and liability was limited to aiding and abetting and conspiracy.

The Statutory Language of 18 USC §§ 1201 Penalizing Conspiracy to Commit a "Crime of violence" and aiding and abetting of it is unconstitutionally vague and Conspiracy to Commit Kidnapping. Kidnapping and aiding and abetting, of its convictions accordingly must be vacated.

The most basic due process protection is that of fair notice. See Connally v. Constr. Co., 269 U.S. 391 (1926). That is fundamental principles of fairness, embodied in the Due Process guarantee, require that, criminal defendants never be convicted or punished based upon laws that do not put them on notice that what they did was wrong, or that they will be punished to the extent (emphasis added) they will. As the

Supreme Court has recently reiterated, vague laws undermine these principles. They invite "arbitrary or discriminatory law enforcement," Sessions v. Dimaya, 138 S. Ct. 1204, 1212 (2018), they "hand off the legislatures responsibility for defining criminal behavior to unelected prosecutors and Judges, and they leave people with no sure way to know what consequences will attach to their Conduct." United States v. Davis, 139 S. Ct. 2319 (2019); see also Note, The Void-for-Vagueness Doctrine In the Supreme Court, 109 U. Pa. L. Rev. 67, 68-69 (1960) (discussing purpose of void for vagueness doctrine); see also Jennifer Lee Koh, Crimmigration and the Void for Vagueness Doctrine, 2016 Wis. L. Rev. 1127, 1134 (2016) ("Under Modern jurisprudence, courts have recognized two explicit goals behind the [void for vagueness] doctrine: (1) Notice and (2) avoiding arbitrary or discriminatory enforcement of the law.").

Recent developments in federal Due Process doctrine have cast significant doubt on whether statutory categorizations based upon the vague concept of whether a crime is considered "violent" meet the fundamental requirement that a law "give ordinary people fair notice of the conduct it punishes" and not to be "So standardless that it invites arbitrary enforcement." Johnson v. United States, 135 S. Ct. 2551, 2556 (2015) citing Kolender v. Lawson, 461 U.S. 352, 357-358 (1983); See Also United States v. Taylor, 142 S. Ct. 2015, 2026 (2022); Davis, 139 S. Ct. 2319, Dimaya, 138 S. Ct. 1204.

Thus, the Supreme Court has, over the past few years, issued a seminal series of decisions overturning statutes that enhance penalties for a "Violent felony" or "Crime of violence," Davis, 139 S. Ct. 2319 (2019); Dimaya, 138 S. Ct. 1204; Johnson, 135 S. Ct. at 2563. Each statute sought to identify prior or predicate offenses by characterizing them as violent, and each failed to withstand constitutional scrutiny, having been held to be unconstitutionally vague. (emphasis added).

As this Court is aware, ROMANO was convicted and ultimately sentenced under the statute of conspiracy to commit murder by aiding and abetting and, attempting to violate that statute. Neither of these means, methods and even the statute have the "ESSENTIAL ELEMENTS" wich would define them as "crimes of violence" or "violent crimes." This is irrefutable.

1. New United States Supreme Court Precedent Now Dictates That Certain Statutory Characterizations Based on Violence Are Void For Vagueness.

In Mid-2015, the United States Supreme Court began to recognize significant problems with statutory characterizations of crimes as "Violent" in Johnson, which involved the Armed Career Criminal Act ("ACCA") provision defining a "Violent felony." 135 S.Ct. at 2563. The statute enhanced a

defendant's sentence - from a maximum of ten years to between fifteen years and life - where he had three or more prior convictions for a "violent felony". 18 U.S.C. § 924 (a)(2),(e)(i). AccA defined "violent felony" as any crime punishable by imprisonment for a term exceeding one year .... that

(i) has an element the use, attempted use, or threatened use of physical force against the person of another [(the "elements clause")] or

(ii) is burglary, arson or extortion, [or a felony] that involves use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another (the "residual clause"), 18 USC § 924 (e)(2)(B). The defendant in Johnson had a prior conviction under a Minnesota law for possession of a short-barreled shotgun, which the district court considered a felony, despite there being no actual violence in his mere possession of the weapon and merely the chance of violence were he to utilize the weapon. Id. at 2556.

After hearing argument about whether the underlying offense was a violent felony, the Supreme Court ordered supplemental briefing and re-argument to address whether AccA's violent felony provision was uncostitutionally vague on its face. Johnson v. United States, 135 S.Ct. 939 (2015). Concluding that it was, the Court, in the resulting opinion, articulated the well-known standard that the government violates the Fifth Amendment's

guaranty of Due process of law "by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Johnson, 135 S. Ct. at 2556 (citing Kolender, 461 U.S. at 357-358). These principles apply with equal force, the Court held, to statutes "fixing sentences," such as the AccA, which increased the defendant's sentencing exposure. Id. (citing United States v. Batchelder, 442 U.S. 114, 123 (1979). Submits that when a Court opines that an offense is a violent crime despite none of its essential elements consisting of the Supreme Courts definition, then you must find it to be vague and vacate his sentence as a violent felon.

Applied to the statutory language of AccA, the Court concluded that Congress's attempt to define the term "violent felony" in the residual clause was insufficient to provide fair notice to ordinary people or to set forth a standard that could be enforced in a non-arbitrary fashion. Id. Indeed despite nine years and four prior Supreme Court cases [/] examining and interpreting the term "violent felony," the Court had been unable to develop a principled,

---

[/] Johnson summarized the case law which, the Court showed, demonstrated the arbitrary results of such vague standard. 135 S. Ct. at 2556-59. For example between 2007 and 2011, the Supreme Court

objective standard, and concluded that the "residual clause yields No answers" to the question of whether and when a crime may qualify as a "Violent felony." Id at 2559. Given the "guesswork" required by so shapeless a provision, the Court concluded that condemning one to an extended prison term based upon the application of this vague term did Not comport with the Fifth Amendment's guarantee of due process Id. at 2560. Romano was sentenced to life in prison for conspiracy, the aiding and abetting and attempt to commit a crime.

    Perhaps most importantly, Johnson also made clear that a vague statute cannot be saved "merely because there is some conduct that clearly falls within the provisions grasp". Id. at 2560-61 (squarely rejecting the dissents contention that "a statute is void for Vagueness only if it is vague in all it's application"). Thus, the existence of crimes that involve an obvious risk of injury—and therefore that would fall within the language of the statute—cannot make the residual

"held that the residual clause covered Florida's offense of "attempted burglary" and Indiana's offense of vehicle flight from a law enforcement officer," but Not New Mexico's offense of "driving under the influence" or Illinois offense of failure to report to a penal institution." Id. at 2556 citing Sykes v. United States, 564 U.S. 1, 13 (2011); Chambers v. United States

clause any less vague. Id.; see also *Baptiste v. Attorney Gen. United States*, 841 F. 3d 601 (3d Cir. 2016) (Concluding that predicate offense constituted a crime of violence, but nevertheless holding "crime of violence" to be unconstitutionally vague after *Johnson*), cert. denied, 138 S.Ct. 2018 *Johnson* was made retroactive the following year. *Welch v. United States*, 136 S.Ct. 1257 (2016).

Three years after *Johnson*, the Supreme Court extended it in *Dimaya*, holding that a provision of the Immigration and Nationality Act (INA) defining "crime of violence" suffered from the same constitutional defect as did "violent felony" in ACCA. [2] *Dimaya*, 138 S.Ct at 1212 (quoting *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972). The Court continued:

..... the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges. *See Kolender v.*

555 U.S. 122, 128-29 (2009); *Begay v. United States* 553 U.S. 137, 139, 144-145 (2008); *James v. United States*, 550 U.S. 192, 203, 215 (2007). (Mem) (2018).

[2] The definition of "crime of violence" in INA was identical in the first part and similar in the second subsection to that of "violent felony" in ACCA:

*Lawson*, 461 U.S. 352, 357-58 (1983). In that sense the doctrine is a ~~cotto~~ corollary of the separation of powers — requiring that Congress, rather than the Executive or, judicial branch, define what conduct is sanctionable and what is not. Cf. id., at 358 n. 7 (" [I]f the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, [it would] substitute the judicial for the *legislative department*[.]" *Dimaya*, 138 S. Ct. at 1212

More recently, in *Davis* the court sought to determine what other crimes constitute "crimes of violence" under a federal statute providing heightened prison sentences when a firearm is used in connection with an offense qualifying as a crime of violence. 139 S. Ct. at 2323-24. The Government urged the Court to employ a case-specific approach that is, to look to the particular facts of the offense. *Id.* at 2327. Recognizing that such an approach would

---

(a) an offense that has as an element the use, ~~attempted~~ use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and, that, by it's nature involves a substantial risk that physical force against the person or property of another maybe be used in the course of committing the offense.

avoid the vagueness problems that plagued Johnson and Dimaya, the Supreme Court nonetheless held that the statute did not call for such a case-by-case approach, and refused to legislate such language into the statute (emphasis added), even if it would avoid a constitutional problem. Id. at 2332.

The Court succinctly set forth the rule: "Even if you think it's possible to read the statute to impose such additional punishment, it's impossible to say that Congress surely intended that result." Id. at 2333. Vague laws "hand off Legislature's responsibility for defining criminal behavior to unelected prosecutors and Judges, and they leave people with no sure way to know what consequences will attach to their conduct." Id. at 2323. To read a case-specific approach into a statute that does not otherwise require it would, then, "consign thousands of defendants to prison for years — potentially decades, not because it is certain or even likely that Congress ordained those penalties, but because it is merely possible Congress might have done so. In our republic, a speculative possibility that a man's conduct violative the law should never be enough to justify taking his liberty." Id. at 2335 (internal quotation marks omitted). And when a Court is faced with a vague law, its role is not to fashion a clearer law but to "treat it is a nullity to invite Congress to try

again." *Id.* at 2323.

Since this trilogy of cases, other courts – both state and federal – have applied their reasoning to invalidate statutes that define "crimes of violence" or "violent crimes." See, e.g. *Scione v. Commonwealth*, 114 N.E. 3d 74, 80 (Mass. 2019) (citing *Dimaya v. Johnson*, to invalidate state pretrial detention statute as unconstitutionally vague); *Baptiste*, 841 F. 3d at 603-04 (concluding that "crime of violence," as defined in 18 U.S.C. § 16(b) and incorporated into the Immigration and Nationality Act's definition of "aggravated felony," is unconstitutionally vague given the Supreme Court's decision in *Johnson*); *Mateo v. Attorney Gen. United States*, 870 F.3d 228, 231-232 (3rd Cir. 2017) (dicussing *Johnson* and *Dimaya v. Lynch*, 803 F. 3d 1110 (9th Cir. 2015) and applying constitutional vagueness standard from *Baptiste* in the civil immigration context); *United States v. Calabretta*, 831 F. 3d 128, 133-34 (3d Cir. 2016) (noting that "crime of violence" definition in the United States Sentencing Guidelines is interpreted identically to the "violent felony" definition in the AccA and striking down similar language in the Career offender Guideline), overruled on other grounds, *Beckles v. United States*, 137 S. Ct. 886 (2017). 37

The impetus of this brief-Motion and catalyst behind why this Court must vacate sentence and order his resentencing in the Supreme Court's decision in the *United States v. Taylor* 142 S.Ct. 2015, 2026

(2022), when considered in conjunction with the precedent Supra. Taylor reviewed yet another case of what constitutes a "crime of violence" and _expanded_ (emphasis added) Johnson in a "new way. 4/

2. _Romano's Case Demonstrates The Fair Notice and Due Process Concerns Inherent In The Johnson Line of Cases, And His Conviction Should Accordingly Be Overturned._

The Conspiracy statute under which Romano was convicted and pursuant to which he was ultimately sentenced to life in prison, penalizes conduct by an individual who "threatens to commit a "_Crime of violence_".... - or attempts or conspires to do so." _Id._ (emphasis added). Most importantly, it permitted albeit unconstitutionally, illegally and wrongfully prosecutors and the sentencing court to interpret it as a violent crime. The phrase "crime of violence" is completely undefined in that statute, 18 U.S.C. §1201, and therefore has far fewer parameters and thus invites even more guesswork as

3/ _In Beckles_, the Court concluded that the Guidelines are not subject to a vagueness challenge under the Due Process Clause because they merely guide a Court's discretion in choosing an appropriate sentence with a statutory range and do not "fix the permissible range" of sentences. _Id_ at 892. In any event, however, the Sentencing Commission

to which crimes can be so categorized than do the now-invalidated federal provisions in _Taylor_ that was upheld as well as those of the ACCA, the INA, and 18 USC §924, the kidnapping and conspiracy statutes contains no express limitation restricting "Crime of violence" to offenses that have <u>violence or physical force as an element of the offenses.</u> See, e.g. 18 USC §924(c)(3)(A); 18 USC 924 (e)(B)(i). This means that they permit an even broader, more unguided approach than that deemed unconstitutional in other federal statutes.

The category of conduct and offenses that might fall within this nebulous phrase is broad; indeed contrary to _Taylor_, this statutory language allows its application to cases in which no physical violence was visited upon the victim, or performed by Romano, the individual being prosecuted. In my case I'm indicted as an aider-abetter and/or co-conspirator graphically demonstrates the problem.

The Governments testimony and theory was that I directed Dejvid Mirkovic to meet with the undercovers and arrange

removed the residual clause from the career offender guideline prospectively, effective August 1, 2016, and it has been reinserted post-_Beckles_. _In Re Hoffner_, 870 F. 3d 301, 305 (3d Cir. 2017); USSG. § 4B1.2 (a).

4/ As is readily apparent, _Taylor_ is the latest in a line of cases, each announcing new rules in the Court's vagueness

the Murders. This is a fallacy and absurd. I was Neither at the scene nor did I ever touch nor assault the victim. Indeed it is undisputed, and was Never the Government's theory, that I took any (emphasis added) violent action but instead conspired to commit a "crime of violence", although there is nothing in the statute that indicates Congress intended it to apply to offenses involving No physical violence committed by the defendant, in contrast to other statutes. See, e.g. 18 USC. § 16(a) (defining "crime of violence" as an offense that has as an element the use, attempted use, or threatened use of physical force") emphasis added). Rather, as the jury instructions and government's proofs unequivocally delineate, it was someone other than Romano whom was alleged to have committed an averred act of attempted violence, and that is all the government would have to concede they made an attempt to prove. Specifically, the jury was that it could convict me of conspiracy to commit Murder offenses based upon others acts and statements that were

Jurisprudence, which have been given retroactive application. See, e.g., Welch v. United States 136 S.Ct. 1257 (2016) (applying Johnson retroactively); Jones v. United States 39 F. 4th 523, 526 (8th Cir. 2022) (applying Davis retroactively). Romano's application has been amended-supplemented throughout these developments in the law, incorporating these arguments

"done and made even in his absence."
5/ He must not be convicted and absolutely sentenced for a crime of violence.

Moreover, as the jury instructions evince the Government was only required to prove that Romano conspired and or aided and abetted the attempted murder for hire of victims even though he never actually committed any of the offenses himself. Of course, conspiracy requires merely an agreement or mutual understanding between two individuals but not the completion - or even the attempted completion - of any violent offense or act; the ultimate success of the objectives of the conspiracy is immaterial. ("The first element of the crime of conspiracy is the existence of an agreement."); ("The Government is not required to prove that any members of the conspiracy were successful in achieving any or all of the objectives of the conspiracy... Conspiracy is complete without the commission of the offenses."). This means that the jury was _free to convict_ (emphasis added) based on a mere

---

and given the pro se nature of his filings. This is of course filed within one year of Taylor, 28 USC. § 2255(f)(3).

5/ Similarly, the Governments evidence against Romano with respect to conspiracy to murder consisted of the acts, statements and the absence of anyone to engage in physical violence. He was convicted

20 of 26

"Mutual understanding" between him and at least one other individual; Romano need not have — and in fact the evidence indisputably makes clear that he did not actually commit any nor engage in any physical force whatsoever against anyone; As would BE NECESSARY For IT TO CONSTITUTE A "CRIME OF VIOLENCE." (emphasis added).

The case law regarding other similarly worded provisions only serves to demonstrate the likelihood of the very arbitrary application about which the Supreme Court was concerned, included with respect to categorization of conduct as constituting a "Crime of violence" were the defendant himself committed no violent act. See, e.g., United States v. Young, No. 20-6280, 2022 WL 3274167, at *12 (6th Cir. August 11, 2022) (convictions for conspiracy to commit robbery and for the attempted robbery, do not qualify as "Crimes of violence"); Bullis v. United States, No. 5:16-CV-628-FL, 2022 WL 4291332, at *6 (EDNC. Sept. 16, 2022) ("Mailing a nonmailable matter with intent to kill or injure another does not qualify

and sentenced to the most extreme and severe sentence statutorily permitted pursuant to the acts of others; in which he was never even present. His life in prison sentence must be vacated.

as a "crime of violence"); Finch v. United States, No. 3:20-CV-00653, 2022 WL 2392928, at *5 (M.D. Tenn. July 1, 2022) (conviction for attempted robbery and attempted extortion do not constitute "crimes of violence"); see also Alvarado-Linares v. United States, 44 F.4th 1334, 1346-47 (11th Cir. 2022) (interpreting Taylor to hold that, where a crime may be committed by the threatened use of force, an attempt to commit that crime does not constitute a "crime of violence"); United v. Winrow, No. 21-6069, 2022 WL 4476285, at *7 (10th Cir. Sept. 27, 2022) (finding that aggravated assault and battery in Oklahoma is not categorically a violent felony); United States v. Knight, No. 15-CR-004 (JLL), 2016 WL 223701, *1 (D.N.J. Jan. 19, 2016) (holding that prior conviction for robbery qualifies as "crime of violence", but prior aggravated assault does not, under USCG§ 4B1.2); aff'd 705 F. App'x 58 (3d Cir. 2017).

The varied applications of the term and wide range of results of these cases - as well as the particular facts of Romano's case, in which the Government adduced no evidence Romano himself (emphasis added) engaged in any violent conduct - demonstrates that there was and is no principled standard for what constitutes a "crime of violence" in the context of the conspiracy and attempt and aiding and abetting murder statutes. In light of that his words or conduct would be categorized as a "crime of violence"

It is implored that this Court step in to address the resulting Constitutional problem which resulted in a grave miscarriage of justice to Romano and vacate his sentence and conviction.

## Conclusion

There cannot (emphasis added) be enough accentuation for the fact that to an absolute certainty, Johnson, Id., Dimaya, Id., Davis, Id. and now Taylor, Id.; are not restrictively limited and only indigenous to offenses in accord with § 18 U.S.C. § 924.

The Supreme Court would never have issued another opinion nor even granted Certiorari to Taylor which emphatically supports all (emphasis added) the above captioned cases; if it was not intended to expand and expound upon the applicability of the "vagueness" doctrine as enunciated in the Constitutions 5th Amendment.

Rhetorically, how can it be logically, rationally and deductively averred that the underlying-predicate offense in a § 924 case is not (emphasis added) a "crime of violence" or "violent felony" because it lacked the "essential elements"; but then argue it is (emphasis added) a crime of violence for delivering a harsh sentence. The offense-crime is or is not a crime of violence. There is only one single definition.

In *Dimaya, Id.*, Chief Justice Robert's wrote-opined that § 16 serves as the *universal* (Emphasis added) definition for what constitutes a "crime of violence" in the United States Federal Penal Code. Its language is incorporated into many procedural and substantive provisions of criminal law, including racketeering (Rico), money laundering, domestic violence, using a child to commit a crime, drug distribution crimes, making and using explosives and many more. *See*, § 25(a)(i), 842, 1952(a), 1956, 1959, 2261, 3561 and many more. Of special concern to Justice Roberts was that § 16 is replicated in the definition of "crime of violence" applicable to § 924 (c) as well as many off-prosecuted offenses. *Dimaya*. 138 S.Ct. at 1241 (Roberts, C.J. dissenting).

It is evident that the catagorical approach requires that the courts consider the crime as defined rather than the offender's conduct. *See*, *Shepard v. United States*, 544 U.S. 13, 19 (2005) and *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004). The courts in these cases reasoned that a judges personal feelings as to what constitutes a "crime of violence" is ~~irreve~~ irrelevant because it invites irrationality and error. *Esquevel v. Sessions* 137 S.Ct. 1562, 1568 (2017).

Lastly, Supreme Court Justice Kavanaugh's disent in *United States v. Davis*, 139 S.Ct. 2319 (2019), fervently argued that when defendants use firearms during *conspiracies* (Emphasis added)

to commit robbery, arsons, attempted Carjackings and kidnappings, to name just a few, they may no longer be subject to prosecution under § 924(c). *See, eg., United States v. Sims*, 914 F. 3d 229, 233-34 (conspiring to commit robbery (2019); *United States v. Salas*, 889 F. 3d 681, 683-84 (car02018) (arson); *United States v. Jenkins*, 849 F. 3d 390, 393 (CA7 2017) (kidnapping).

Moreover, Kavanaugh enunciated that offenders whom may now potentially avoid conviction under § 924(c) will be defendants whom commit assault with intent to commit murder, *United States v. Prickett*, 839 F. 3d 697-98 (Ca8 2016); arson, *United States v. Salazar*, 2014 WL 12788997, 1 (D.N.M., Aug. 14, 2014) and kidnapping, *See* Pet. for Cert. in *United States v. Jenkins*, O.T. 2017, No. 1797, p.2.

Kavanaugh vociferously wrote that offenders who have already committed violent crimes (Emphasis Added) may be released from prison early.

Henceforth, it is evident that Our Highest Court knew and was inherently cognizant that these new pre eminent- prolific decisions effect the underlying predicate offenses and whether they are "crimes of violence" or "violent felonies" anymore." THEY ARE NOT! (Emphasis added). Any use of Petitioner's offense as an aggravating factor because it was at the time of sentencing a crime of violence or violent felony is unconstit- utional, wrongful and illegal.

For the foregoing reasons, Petitioner respectfully requests that the Court grant his motion, to vacate, set asside, or correct sentence pursuant to 28 USC. § 2255.

Most respectfully Submitted,

Joseph Romano

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 15 2022 ★

BROOKLYN OFFICE

## CERTIFICATE OF SERVICE

I hereby certify that on <u>November 25, 2022</u> I sent a copy of
[date]

the <u>Motion in accord with § 2255</u>.
[name of document]

to: <u>Judge Keenan</u>

at <u>225 Cadman Plaza East Brooklyn, N.Y. 11201   26 Pages.</u>
<u>Certified Mail Receipt</u>
<u>USPS  7022 2410 0001 4498 8002</u>, the last known address,
by way of United States mail or courier.


<u>November 25, 2022</u>
Date

<u>Joseph Romano</u>
Signature  Joseph Romano


Pro Se

CM-22-72247053-1129-mo-243

7022 2410 0001 4498 8002

7022 2410 0001 4498 8002

Name: Romano Joseph
Reg No: (72247053)
U.S. Penitentiary MAX
P.O. Box 8500
Florence, CO. 81226-8500


CERTIFIED MAIL®
7022 2410 0001 4498 8002





Denver,
FRI 09

Clerk of the Court
Honorable Judge Keenan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York
11201