IN THE EASTERN District OF
NEW YORK

United States

v

Joseph Romano

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   SEP 23 2025   ★

BROOKLYN OFFICE

I, Joseph Romano, do hereby swear under penalties of perjury that the Facts averred and contained herein are true and accurate to the best of my recollection and ability. As a matter of fact (emphasis added), the government should concede the facts are true, irrefutable and uncontroverted.

This is my Certification in accord with Glossip.

So Help Me God!

Dated this September 3, 2025    Joseph Romano

RECEIVED
SEP 23 2025
PRO SE OFFICE

ORIGINAL

REC'D IN PRO SE OFFICE
SEP 23 '25 PM 12:23

1 of 1

September 3, 2025

Clerk
United States District Court
Eastern District of New York

Re: Joseph Romano, Petitioner v.
United States of America, NOTICE OF MOTION, DKT.
No. 22-2224.

Dear Honorable Clerk of the United States
District Court for the Eastern District of
New York: Please assign a Judge to this
Case.

On February 25, 2025, the Supreme
Court of the United States decided
Glossip v. Oklahoma, 602 U.S. ——— (2025). It
is an Monumental case clearly applicable to
me.

This Motion is filed in accord with the
Supreme Court's ruling and pursuant to
28 U.S.C. § 2255 (H)(1); A New rule of
Constitutional law which retroactively
applies to my right to submit this Magnanimous
Motion with Monumental consequences. My 5th
Amendment Due Process Rights were violated
and I was denied an substantial Constitutional
right.

1 of 2

I respectfully request an expedited hearing relevant to this issue and appointment of counsel to orally argue my cause of action.

My likelihood for success is significant.

Most respectfully,

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK

Joseph Romano,
        Petitioner
    v.

United States of America,
        Respondent.

A.

On February 25, 2025, in the case of
Glossip v. United States, 602 U.S. _____ (2025),
the Supreme Court decided that a "New rule
of Constitutional law" required the reversal
of Glossip's Murder Conviction and that he
deserved a New trial. Most importantly, this
ruling fervently established that the
prosecutor's Violated the 5th Amendment's
Due Process Clause by failing to correct
false testimony which may have effected
the jury verdict. It is a watershed
holding which emphatically and irrefutably
places a burden on the prosecution to Not
only correct false testimony but to ensure
that breaches of fundamental-foundational
due process result in trial reversal; and
that harmless-error review and arguments

are considered irrelevent.

    Moreover, the holding Mandates the
Prosecutions affirmative duty to turn
over _Brady_ Material, especially psychiatric
or credibility related evidence which the
prosecution should have known about or
reasonably discovered. The prosecution in
My case failed in all aspects of _Glossip_.

    In the case _sub-judice_ Petitioners
Due Process Rights were eviscerated and
he was denied protected Constitutional rights.

    Petitioners claims pursuant to
_Napue v. Illinois_, 360 U.S. 264 (1959) are
Now amplified pursuant to _Glossip, Id._
as the prosecution not only permitted
false testimony to go uncorrected but
overtly concealed material witnesses and
evidence from cross examination, eviscerating
Petitioners 5th, 6th and 14th Amendments
Constitutional Rights as well as seminal
rights Vociferously Mandated in the prolific
cases of _Pointer v. Texas_, 380 U.S. 400, 404-
05 (1965), Crawford V. Washington, 541 U.S. 36
(2004), Chambers V. Mississippi, 410 U.S. 284,
294-95 (1973); and the progeny of case's
delineating therefrom.

This Motion will unequivocally and categorically prove how the prosecution's presentation of evidence violated the tenets of _Glossip_, _Id._ and that their deliberate antithetical abominations of the 6th Amendment fostered their violations of the New rule of law. Simply put, they contravened both my 5th and 6th Amendment Rights!

Petitioner's convictions must be emergently reversed and Vacated. I am respectfully demanding imminent action as I was wrongfully and Unconstitutionally convicted.

B. THIS MOTION - PETITION IS TIMELY AND MUST BE CONSIDERED

The Supreme Court's enunciation-opinion of _Glossip_, _Id._; A New retroactive legal right upon which this Motion-petition is based makes this a timely cause of action. The _Glossip_ decision became effective on February 25, 2025 and in accord with 28 U.S.C. § 2255 (f)(3) (2006) and _United States v. Adams_, No. 90-00431-08, 1996 U.S. Dist. Lexis 8875, at *5 N.2 (E.D.Pa. June 24 1996)

(unpublished), Petitioner has until February 24, 2026 to raise this issue. See also, Dodd v. United States 545 US. 353, 125 S. Ct. 2478, 2482, 162 L. Ed. 2d 343, 349 (2005). I raise it emergently and Now.

Most importantly, New facts became discoverable in light of an opinion written by the Honorable Joseph F. Bianco, United States District Judge, Eastern District of New York, in the case of United States of America v. Adam Velazquez, 197 F. Supp 3d 481, 2016 US. Dist. Lexis 82611 (E.D.N.Y. June 24, 2016). In a momentous decision wholly and critically relevant to one of My omnipotent witnesses, Gerald Machacek, Petitioner became cognizant of material facts unavailable to him at the time of his trial; because of deliberate acts of concealment by the prosecution and intentional as well as reckless acts of omission. Petitioner ascertained that Machacek, whom cooperated and testified against him, was an severe alcoholic and drug addict, with extreme addictions, psychologically unfit, unstable and had fabricated, contrived and given intricate false testimony and bore

false witness against another defendant;
He had completely lied, Made up inculpatory-
incriminatory facts and criminally-cospiratorily
set up another innocent man in a major
criminal prosecution; all with the desired
intent to receive the benefits of cooperation.
The exact same Modus operandi he used
against Petitioner. The witness was a known
career criminal with mental and psychological
tendencies whom compulsively lied; and the
prosecution never redealed this to Petitioner.
     It is submitted that if these extraordin-
arily crucial facts had been known to Petitioner,
and the prosecution had "Corrected Machaceks
testimony" about his motives to testify, what
expectations he had for benefits of cooperation
and whether he was being veracious in
seeking justice, Petitioner would be vindicated.
The prosecution failed to correct this witness
testimony although they knew of his false
incrimination of Velazquez and his
nefarious, incredulous and palpable deception
against both Velazquez and the Petitioner.
They also failed to reveal and concealed
the witnesses known psychiatric-mental
illness, acute drug addiction and alcoholism;

and his pattern of giving false statements,
perjuring himself and gross manipulation
of the criminal justice system.

## C. THE CASE OF UNITED STATES V. Velazquez AND GERALD MACHACEKS Conspiratorial Criminal Misconduct and Repugnant - Gross Incrimination

The prosecution must concede as the
evidence is irrefutable and beyond dispute,
that they knew or should have known
Machaceks testimony against Petitioner was
rife with contrived, fabricated and fictitious
assertions and replete with lies.
        The opinion of preeminent United
States District Judge Joseph F. Bianco,
United States District Judge, Eastern
District of New York conclusively affirms
that Machacek is a fraudster, liar, known
conspirator in setting up innocent inmates
and incriminating then in serious crimes,
in order to deceive the government into
benefitting him as a cooperator. His
testimony against Petitioner must be
discredited, most importantly: None of

these facts were disclosed, revealed
Nor in any manner brought out by
the government as Machacek spewed
out lies and perjurous averments against
Petitioner; Nor did the Prosecution
even attempt to correct his corruptly
false testimony. As a matter of fact
they condoned and highlighted the witness
testimony albeit knowing it was incredulous.

The case at hand exemplifies the
most aggriegious and factuall atrocious
<u>Glossip</u>, <u>Id</u>. contraventions conceivable
in a trial.

The deluded, fantastical representations
at trial, by this depraved, degenerate
witness will never be evinced betterthan
the prose opined by a knowledgeable
jurist, like Judge Bianco; although he
reversed the conviction of <u>Velazquez</u>
because his counsel was unequivocally
a categorically ineffective under the 6th
Amendment of the Constitution and the
essential cases emanating therefrom; it
<u>cannot</u> (emphasis added) be accentuated
enough that it was counsel's <u>failure</u>
<u>to investigate</u> (emphasis added) omnipotent

facts which would have proved to
an absolute certainty that the exact
same crew whom falsely incriminated
Petitioner, were the catalyst, enzyme
and conspirators whom criminally and
wrongfully framed, made up and even
perjurously testified against Velazquez,
did the same to Petitioner; but
Petitioner compared to Velazquez
never knew this. The Prosecution concealed
it. Consequently, the conspiracy to defraud
the government through the use of false
and perjurous official statements, criminal
allegations and entrapment of innocent
inmates, acted in concert against both
Petitioner and Velazquez; and government-
prosecutor's in both Velazquez and Petitioners
case permitted Machacek to testify and
spew out perjurous lies at the investigatory
stage and trial, because he fit their
theory of their case; and all they
sought was to win at all cost; they
never corrected any of their witnesses
false trial testimony and the witness
won the case for them with "UNCORRECTED
FALSITIES"; in order to gain the

benevolent benefits of his false incriminatory-inculpatory testimony.
 The testimony of this devious witness which went unabated by the prosecution, single handedly influenced the jury to convict Petitioner.

 An examination of the Velazquez trial testimony and undisputed facts, prove the complicit accomplice witnesses were actually, implicitly and circumstantially know by the prosecution to be a crew of perjurers: These same witnesses such as Glass, Machacek and others were involved in an multitude of schemes, ploys and conspiracies to frame unsuspecting inmates at their penal institutions in order to reduce their sentences and appear as veracious cooperators; they did not care about the impactful, consequential and deletereous ramifications of those they conjured up fake facts against in order to inculpate them in serious-major crimes. It was this act of artful manipulation of Petitioner, Velazquez and many others, by known career criminals whom

schemed prosecutors and system in order to obtain their freedom, that requires Petitioners convictions to be reversed.

If the government had scrutinized the evidence of their witnesses against Petitioner they would have corrected their testimonial inaccuracies, informed the jury that they possessed evidence *their* (emphasis added) witness failed to tell the truth, whole truth and nothing but the truth at trial; and the jury would not have been persuaded by impeached witnesses. Most importantly, prosecutors had a duty to reveal the witnesses prior scheme against Velazquez to implicate him in crimes he was wholly innocent of. The Prosecutor's not only failed to inform Petioners jury of Machacek's Modus Operandi to distort, twist and make up facts to falsely incriminate defendants, but to inform of his mental disabilities.

In the United States V. Velazquez, 197 F. Supp. 3d 481, 2016 U.S. Dist. Lexis 82611 (E.D.N.Y. June 24, 2016), the court held that under Strickland V. Washington, 466 U.S-668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984),

had defendant's counsel subpoenaed
defendants cell phone records, employment
records (all which would have evinced
valuable alibi evidence) Motor vehicle records
to prove defendant did not own a black
four door Sedan and placed this evidence
before the jury, the outcome of him being
convicted would have been different.

The Court specifically enumerated that
this precise evidence would have conclusively
proved that Gerald Machacek fabricated
the entire case against Velazquez; This
Same witness was an essential-Material
witness against both _Petitioner_ as well
as Velazquez and his deceptions and
Mendaciousness resulted in both of their
wrongful convictions. Machaceks fallacies was
corrupt and criminal.

The records would have established
that when Machacek perjurously informed
the jury that he committed armed robberies
with Velazquez who was according to the
witnesses' distortions the principal, that this
could not have been true; as Velazquez'
objective alibi records evince he was
in Mahattan, when Machacek testified

he was in Queens conducting an armed
robbery and in Woodhaven, Queens
during an serious armed robbery and
in Whitestone Queens. Furthermore
Machacek testified Velazquez drove the
getaway cars in all the armed robberies
and that he used his private black sedan
vehicle. When in fact Velazquez never
owned a four door black sedan as
sworn to by Machacek. Machacek just
fabricated one deluded deception after
another.

   Moreover, Machacek wholly lied about
committing past robberies with Velazquez,
failed to identify Velazquez during photo
arrays and couldnt even give Velazquez
real name. He also convinced Glass (his
scheming co-operator) girlfriend, Teri Bedell,
another cooperating government witness against
Velazquez, to admit she was an accomplice
to robberies with him and Velazquez;(she
was unable to identify Velazquez from
array's or give his Name). This monumental
evidence was both withheld from Petitioner
during his trial, wherein he faced multiple
counts of life imprisonment; nor was it

revealed by the government—prosecution
when Machacek testified in his case. In
other words, the government concealed it
from Petitioner and his Counsel, as well,
and most importantly from his <u>JURY</u>
<u>AND THE COURT</u>. (emphasis added).
The prosecution turned a blind eye to
Machacek, failed to investigate his atrocious
tricks and deceptions, nor reveal it to
Petitioner or jury.

    Machacek worked in concert with
another skilled, manipulative career criminal
to frame Velazquez and Petitioner. The
degenerate co-conspirator Glass and Co-
schemer—Conspirator Machacek, artfully
plotted to trick the criminal justice system
and played the government in both major
cases. They lead both Velazquez into traps
as well as Petitioner; and obtained innocuous,
harmless background information, which they
manipulated into facts they used to convince
the government and juries they were
truthful cooperating witnesses.

    For instance, Glass implicated Velazquez
in approximately ten (10) other armed
robberies that if investigated or scrutinized

would have evinced it was impossible
for Velazquez to have committed. It
is extremely troublesome how Glass as
well as Machacek concocted their criminal
conspiracies to work in concert with each
other and how jointly they investigated
personal background information against
both Petitioner and Velazquez; such
as familial relationships, scars, injuries
and basic background knowledge, to trick
prosecutors into falsely believing they had a
special relationship with Petitioner; and
so they could both conspire and plot their
cooperative efforts. See, Velazquez opinion,
ID 6-10.

    Most specifically, both (emphasis added)
Machacek and Glass perjuriously swore at
the Velazquez trial that Machacek introduced
Glass to Velazquez at the end of 2008,
that Machacek was in Velazquez'
presence many times and that Velazquez
trusted him, that Machacek participated
in a New Jersey warehouse burglary with
Velazquez, that Machacek and Velazquez
robbed a doctors office together, the
Glen Oaks bar and burglarized a

Construction Company. All complete lies created by Machacek and Glass; these are the same two individuals that resulted in Petitioners convictions; as Machacek testified against Petitioner and Glass assisted the prosecution in preparing him for trial. (See, Velazquez Id. at 31-34), and Velazquez Trial Transcripts, 416-17, 423-42, 465-469-71, 481-486, 588, 677, 685, 693, 725.

    IN SUM: Judge Bianco vehemently posited that "there is clear evidence that the cooperating witnesses interacted with each other in the jail[/] in the courthouse, or in the Marshall's bus, prior to testifying at trial." Velazquez, Id. at 34. None of these watershed facts were revealed to Petitioner, nor brought out by the prosecution at his trial.

    Although all these facts existed at the time of Petitioner's trial and Machecek fabricated one answer after another at his trial, the prosecution never made any

[/] This is the exact institution where Petitioner was also incarcerated with Machacek and Glass.

15 of 90

effort to prevent an Manifest injustice,
by correcting him on either direct or
cross examination. It was atrocious,
an abomination to the integrity of our
entire Justice system.
    This will be further analyzed in
Petitioners <u>Glossip</u> analysis.
    Please note the Prosecution Never
called Glass as a witness in Petitioner's
case because they knew of his baggage,
repugnant and criminal conspiratorial
schemes and plots with Machacek; and
were terrified this revelation would
have resulted in acquittals. Yet, they
were availed and cognizant of all
the information, <u>supra</u>, and about
Machacek — Glasses troublesome actions
and criminality; but Never exposed,
revealed or took through corrective
actions; or did anything corrective before
the trial Jury. (emphasis added); they
refused to justly act Nor Constitutionally
and permitted perjurous, false and
evilly schemed evidence to infuence
Petitioner's Jury and impede their
Constitutionally sworn obligations-duties.

16 of 90

They failed to defend and protect
the United States Constitution; especially
The Due Process Clause.

D.    <u>Glossip V. Oklahoma Requires</u>
      <u>Reversal of Petitioner's Convictions</u>

a. Abraham Lincoln fervently wrote that
you "Don't interfere with anything in the
Constitution. That must be maintained,
for it is the only safeguard of our liberties.
And not to Democrats alone do I make
this appeal, but to all who love these great
and true principles."
       Our Amendment V of the Constitution
categorically espouses that "No person shall be
deprived of life, liberty or property without
due process of law."
       Petitioner was indicted, convicted and
sentenced to life in prison devoid of due process
of law and <u>Glossips</u> watershed holding
mandates reversal of his unconscionable
convictions; which are the antithesis of the
5th Amendment.
       Glossip v Oklahoma, 602 U.S. ——
(2025), Now imposes a strict duty on

prosecutors and their witnesses to tell the truth and share important information. They _must_ (emphasis added) _Correct_ (emphasis added) false testimony and share any important evidence that could help the defense, especially if it is about a witnesses Mental health or how believable they are, They "cannot (emphasis added) hide critical evidence" or "stand by while their witness knowingly lie." This is precisely what prosecutors in the case _sub-judice_ did. They failed to call Gerald Machacek as a witness in the trial against Petitioner and used a federal agent to testify as to his hearing statements; thereby precluding the cross-examination and impeachment of this witness and compelling defense to call him as a hostile witness. They also did the exact same thing with critical-essential-material witness David Mirkovic; and used an agent to provide testimony to the jury relevent-pertinant to him; and thereby insulating and Maliciously concealing extraordinary impeachment and credibility evidence from the jury. They sanitized both these incredulous witnesses from meaningful cross-examination, depiction of their enmity,

paramount inconsistencies and illusory conspired deceptions and blatant-flagrant misrepresentations. They cleansed the jury from hearing the tricks, lies, sham-schemed falsities of these witnesses and the jury was concealed from ever hearing existential, mendacious lies by them. The agents whom testified were never corrected in their testimonies as to statements made by Machacek and Mirkovic, nor their specious backrounds, motivations to lie and conjure up false testimony; which would have proved the witnesses completely unbelievable. The agent hid the nefarious backgrounds of both these depraved-degenerate witnesses from jury scrutinization.

b. Preceding an _Glossip_, _Id._ analysis, this Honorable Court _must_ (emphasis added) first decide whether the tenets of the 6th Amendment's Confrontation Clause were violated; especially in light of the new Supreme Court's ruling. _If it was,_ which Petitioner submits you do not even have to consider _Glossip_; which to an absolute certainty also mandates reversal and must now be considered conjunctively with

the 6th Amendment's Confrontation Clause.
    What is consequential and exceptionally
important is that the prosecutions refusal
to call both these witnesses and use an agent
to sneak in miniscule—deminimis parts of
their fictitious accounts or bits and pieces
of segments of recordations, is indicia
that they were wholly cognizant the witnesses
veracity could not withstand scrutinization;
that their trial testimony would consist of
perjury; and that they could get away with
essentially vouching for these witnesses
credibility. The jury never received the
whole truth and nothing but the truth. Instead
they eviscerated Petitioner's Cofrontation
Rights under Our 6th Amendment and know
evidently exenterated the Cornerstone decrees
in <u>Glossip</u>.

C.  <u>My Sixth Amendment Confrontation Clause</u>
     <u>Rights were Violated and Trampled Upon</u>
The Sixth Amendment guarantees that a criminal
defendant "Shall enjoy the right.... to be
confronted with the witnesses against him".
United States Constitution, Amendment VI. A
criminal defendants right to confrontation

includes the "fundamental right" to cross-examine
and confront government witnesses, Pointer v. Texas,
380 US. 400, 404—05 (1965). See also Crawford v.
Washington 541 US. 36 (2004); Chambers v.
Mississippi 410 US. 284, 294—295 (1973).

Cross-examination is essential to the
fairness and accuracy of a criminal trial.
In Crawford, the Supreme Court traced the
historical value of the truth—seeking process
and concluded that the confrontation clause
demands that "reliability of evidence be
assessed in a particular Manner: "by testing
in the crucible of cross-examination", 541
US- at 61, See also United States v. Begay
937 F. 2d 515, 520 (10th Cir. 1991) (cross-examination
"critical for ensuring the integrity of the fact-
finding process and is a principal means by
which believability of a witness and the truth
of his testimony are tested") (quotation omitted).
See also United States v. Esparsion, 930 F.2d
1461, 1469 (10th Cir. 1991) ("[r]eaching the truth is
a fundamental goal of trials and cross-examination
is critical to the process").

Most importantly, the Confrentation Clause
guarantees not merely the formal opportunity
to cross-examine but the opportunity for

effective cross examination. See also
Delaware v. Arsdall 475 US-673,679
(1986). The Supreme Court has consistantly and
emphatically held that the "denial or significant
diminution of the right to cross-examination
calls into question the "integrity of the fact
finding process." Chambers, 410 US-at 295.
    The High Courts decision in Hemphill v.
New York, 142 S. Ct. 681 (2022) cannot be
accentuated enough. IN a decision authored
by the Honorable Justice Sotomayer,
and which was decided recently vociferously
evinces that the errors committed against
a Petitioner that categorically and unequivically
violated his 6th Amendment Rights, compels
Vacation of all convictions. The statements
admitted against Petitioner solely and
exclusively by a Non-testifying alleged
co-defendant, co-conspirator by an Agent
of the Federal Bureau of Investigation
(F.B.I.), in which inflammaterily and magnan-
imously prejudiced even an scintilla of me
receiving a fair trial was crucial. This
was overwhelmingly potent and resulted,
single-handedly in the convictions in Hemphill.
It is exactly analagous to the rational

used by Justice Sotomayer when she
reversed Hemphill's Murder Conviction.
The Justice opined that forensic evidence
was unconstitutionally admitted by a
witness devoid of knowledge and whose
whose veracity was incapable of confrontation.
The maker of the evidence-testimonial
was not cross-examined.

IN Md. V. Craig, 497 U.S. 236 (1990), the
Supreme Court opined that face to face
confrontation enhances accuracy of fact
finding by reducing the risk that a witness
will wrongfully implicate an inocent person.
I AM AN INNOCENT-MAN (emphasis added).
See also Bullcoming V. N.M., 564 U.S. 647 (2011),
Wherein the High Court ruled that "the
clause does not tolerate dispensing with
confrontation simply because the court
believes that questioning one witness about
anothers testimonial statements provides
fair enough opportunity for cross-examination.
Coy V. Iowa, 487 U.S. 1012, 1019 (1988) Replicative
and analagous of my case.

IN the case sub judice the District
Court committed reversible error when it
permitted an F.B.I agent, Special Agent Toriche,

to testify as to all the alleged inculpatory
and incriminatory statements I allegedly
made, to my alleged co-defendant-co-
conspirator Dejvid (David) Mirkovic; without
ever calling Mirkovic to testify and be
confronted → cross-examined as prescribed
by the 6th Amendment. Mirkovics recorded
statements both he allegedly made, which
excoriated and falsely incriminated with
contrivations and fabrications, were used
in my prosecution and admitted through an
F.B.I. Agent, it was virtually imposible to
examine the testifying Agent whom admitted
Mirkovics statements against me. The
credibility of the statements used to
convict me went uncontested-uncontroverted
as Mirkovic Never testified.
    Agent Toriche and other agents testified
to Mirkovics statements (recorded-incomplete)
and he was not even the one who recorded
them. This devastated and destroyed me
in the eyes of the jury and I never
made the statements; Nor had an opportunity
to contest them. Mirkovic an admitted drug
abusing, alcohol abusing and fraudster,

with potent and compelling ulterior
Motives, such as admitted retribution
and violent hatred against his girlfriends
ex-spouse; that he wanted to murder.
He falsified his motives, inculpated
Petitioner and was drug addled and under
duress when he made these statements,
and by being denied my 6th Amendment
right to cross-examine Mirkovic I
~~was~~ wrongfully - erroneously lost trial.
    These irrefutable facts demonstrate
that Mirkovic met with an undercover
law inforcement Agent posing as a "Hitman,"
and he was recorded for hours. <u>Mirkovic</u>
was recorded by the Agent and it was <u>Mirkovic</u>
whom relayed statements attributed to me
but I never made. (emphasis added). He
informed the government that he travelled
from Florida to New York on at least two
occasions to meet with me and the alleged
"Hitman." He met with me socially but
I never gave him orders like he said to
kill my former Judge and Prosecutor, like as
he fabricated to the Agent. I fully accepted
responsibility in my prior case, pled guilty
and admitted to stipulated facts.

The case was uncontested. Mirkovic further contrived that after visiting me in jail and on my instruction, he offered the Agent $40,000 in cash to kill the Judge and Prosecutor and would pay $20,000 up front. This was <u>Mirkovics</u> personal money. It was <u>Mirkovic</u> whom removed $18,000 in cash from his personal safe at his private home in Florida and handed it to the Agent, Not me arranging the funding. (emphasis added). What is paramount to recognize is that Mirkovic was recorded "flipping the script" with the "Agent-Hitman" and requesting he kill his girlfriends ex-husband. That was Mirkovics ulterior-motive and reason for this whole scenario. Mirkovic -Not me- absurdly and comically told the Agent that I would pay extra if the Agent cut off the victims heads and preserve them in formaldehyde. These ludicrous facts along with statements elicited by jailhouse informants Machacek and Glass, known conspiratorial schemers and fabricators, whom jumped on other inmate cases and intentionally lied for

their own benefits that lead to my demise.

I couldn't even contest the comical-comments, mob movie ad hominens that I sincerely intended-ordered that the Judge and Prosecutor — the victims be fed to sharks in a fish tank, placed in a barrel, a spinning cement truck or their heads be cut off and preserved. These comments-testimonies by Machacek and Mirkovic resulted ~~ay~~ in my life in prison. The government removed, impeded and eradicated meaningful cross-examination.

Unless I waived my 5th Amendment right and testified I was never given any opportunity to test the veracity of statements used against me and the credibility of their makers; and that is precisely what the government intended; to get in Mirkovics statements, albeit false without them being crossed.

The government had firm-actual knowledge Mirkovic was involved in millions of dollars in fraud, was an a-moral and incredulous schemer and

wholly incapable of ever uttering an iota
of truth; yet they purposely deprived
the jury of these enormous benefits in
determining the truth - the whole truth
that would have resulted in my acquittal.
There could not have been greater prejudice
to me.

The Supreme Courts most recent Confrontation
Clause case, Samia V. U.S., No.22-196 (2023),
evinces the evisceration of my Constitutional
Rights. Justice Thomas' opinion fervently and
expressly would require reversal of my
convictions. Justice Thomas upheld Crawfords
Id. tenets but ruled that an confession -
by an defendant (Minkovic) which implicates
a second defendant, alleged Co-conspirator/
co-defendant can only be admitted in a
trial like mine, if my Name is replaced
with a Natural Sounding Noun or pro-Noun.
(emphasis added); and under No circumstances
could Minkovic's recanted statements to the
Agent (Hitman), ever be admitted against me
in my trial, by using my actual Name as
Minkovics recording did. The testifying Agent
Made it Crystal clear to my jury that Minkovic
incriminated me, inculpated Joseph Romano,

all in contravention of my 6th Amendment Rights. Extremely pertinent to this cause, is the fact that the audacious government called Agent Toriche to admit Mirkovic's inculpatory recordings against me. Agent Strecker whom conversed with Mirkovic, played the "Hitman" and recorded Mirkovic, induced Mirkovic and pressured Mirkovic to say my name and blame me for his (mirkovic's) interactions; then convienently the wind would block out Mirkovics statements which didn't help but hurt the governments cause. This is the antithesis (bolstering Mirkovics credibility keeping Mirkovic from cross-examination) of the Constitution and bedrock rights; convicting me through my alleged co-conspirators statements without fundamental 6th Amendment protections.

Lastly, it was reversible error by the trial court's failure to ex-parte and sua sponte giving a limiting instruction on the recording and its purpose and that Mirkovic made it.

A. The government knew or should have known that witness Gerry Machacek

had conspired with other Jail house informants- witnesses to falsely incriminate Petitioner and others.

The government had a duty obligation and ethical-moral-Professional responsibility to copiously investigate, scrutinize and reveal Machaceks' credibility issues and false incrimination of another defendant-Adam Velazquez. The government built their Case upon David Mirkovics recordings by Agent Strecker acting as a "Hitman" and fabricated hyperbole exaggerations, lies and blatantly contrived conspiratorial statements of Gerald Machacek; An F.B.I. informant known for his incredulousness. It was their foundation for charging indicting and arresting Petitioner; and the Motive for interrogating him and terrifying him with threats of life in Prison which resulted in a fake-false inculpatory statement.

Presently there is a Judicial determination that the Jail house Cooperating informants (especially Machacek) whom wholly concocted, Manufactured and Manipulated statements against Petitioner (which had incriminated

30 of 90

him) had lied in the past. Yet this was repugnantly, illegally and un-constitutionally concealed from the defense; and, substantially prejudiced the manifest interest of justice against Petitioner.

On June 24, 2016, in the case of United States v. Adam Velazquez, 197 F. Supp. 3d 481, 2016 U.S. Dist. Lexis 82611 (E.D.N.Y. 2016), Honorable Joseph F. Bianco reversed a defendants convictions and granted his motion in accord with Fed. Rule Crim. P. 33 Bianco ordered a new trial. He conclusively found that the defense Counsels failure to properly and competently-objectively, investigate leads, resulted in a wrongful conviction, Analagous to the case sub judice.

Velazquez was convicted by a federal Jury on May 1, 2014, at or about the same time as Petitioner; for five crimes related to him being falsely implicated by Machacek and Timothy Glass, of conspiring to rob drug traffickers and business owners in New York City and Long Island, New York. His participation in the crimes were wholly schemed up by the exact same F.B.I cooperators as in Petitioners case.

Both Machacek and Glass were the exact two cooperating witnesses relied upon by the government to arrest, indict and convict Petitioner. What is troublesome is that these witnesses were professional career criminals, whom knew how to manipulate and use the criminal justice system to their advantage. The government knew or should have known, through a cursory-simple investigation that they were acting in concert to falsely incriminate inmates at their penal institution and gain the benefits of their fraudulent cooperation. They lied, conspired and plotted to manufacture evidence that supported, corroborated and substantiated the governments case. It is disheartening that but for the governments apathetic and lackadaisical atrocities and failure to seek justice both Velazquez and Petitioner would never have been convicted and wrongfully imprisoned. Petitioner has been wrongfully condemned to life in Prison.

In Velazquez Supra, his cellular telephone records, the sale of his black sedan months preceding these crimes and other exculpatory evidence was never sought, investigated,

scrutinized Nor presented to the Jury, by either
defense counsel Nor government; when it should have.
   It was obvious to Judge Bianco, that
Machacek falsely stated that he introduced Glass
to Velazquez (although Machacek was unable to
identify Velazquez during three photo arrays)
and Glass blatently lied about committing
Multible robberies with him.
   The Honorable Judge wholly opined that,
there was clear evidence that the cooperating
witnesses interacted with each other in the
Jail, in the Courthouse, or in the Marshalls bus,
prior to testifying at trial. Velazquez at 34.
What is most important is that this is the same
Modus Operandi used by these same two
criminals to devise and invent deluded
atrocities against Petitioner. But for Machaceks
criminal acts both Velazquez and Romano
would have never had to endure this injustice.
   Moreover, Judge Bianco, an extremely conservative
Jurist wrote that he does not overturn a Jury's
Verdict lightly, but none the less, that is exactly
what he did. The government was remiss in their
duties to seek the truth and Justice, and this
resulted in grave Miscarriages of Justice for
both Velazquez and Petitioner and a Contravention
of our Constitutional Principles. Most relevant

Velazquez was arrested and tried the same
time as Petitioner.

A Prosecutor cannot vindictively prosecute
a defendant, for reasons - motivations as they
did in the case at hand, they retaliated against
Petitioner for their belief that he threatened
the life of one of their Brethren. Blackledge v.
Perry, 417 U.S. 21, 28-29 (1974).

Furthermore the Prosecutor must correct false
testimony, like that given by Machacek and they
ignored evidence discrediting him. See Napue v.
Illinois, 360 U.S. 264, 269 (1959) See Also, Giglio v.
U.S. 405 U.S. 150 (1972). The government ignored their
responsibilities and violated Napue v. Illinois.

The governments extreme and significant
malfeasance by abandoning signs of Machacek's
propensities to scheme, conspire and plot
to falsely incriminate jail house defendants
was atrocious and is intolerable. The fact
that they housed them together in the same
unit and permitted them to interact daily,
knowing (or that they should have known) what
they did to Velazquez, illustrates their
bad faith. They sought conviction against
Petitioner at all cost.

The Prosecutor had a firm duty to investigate both these scoundrels and cronies whom were wrongfully and criminally incriminating Multiple defendants and to copiously investigate their accusations. Failure to do so was not only unconstitutional but morally bankrupt.

In Mooney v. Holohas, 294 U.S. 103, 112 (1935) (percuriam) the Supreme Court laid the foundation for reversal of convictions by false or perjured testimony.

The government should have advised Petitioner of the impeachment evidence they should have known existed against these individuals. Failure to do so in light of Machaceks testimony requires reversal.

Machacek was a critical witness against Petitioner. The government knew or should have known this and their dereliction to seek and search for the truth contravened the interest of Justice.

There can be no sincere and genuine argument averred that I was not estopped from meaningful and at most times, any cross-examination - confrontation of

witnesses, evidence and illegally admitted hearsay testimony.

It is incumbant upon me to vociferously bring this fervant issue to the Court's attention, in spite of the fact that the Court has yet to determine and adjudge the paramount claims in my motion or Order an evidentiary hearing.

I am wholly cognizant and cautiously optimistic that the grave-miscarriage of justice that permeates the legal, factual and Constitutional issues in my case will both control and dominate your decision making process and my motion- Petition and will be granted. This Court bears witness to the bedrock Constitutional Rights of mine that were ignored and scoffed at; and while my legal submission before this Honorable Court remains pending and open, I respectfully implore your sincere consideration of the enormous claims in my brief; and brand new Supreme Court case law that fervently

supports my position.

The enormity of elemental, basic and fundamental Constitutional errors, especially my vehement right under the 6th Amendment's Confrontation Clause estopped me from receiving a fair trial rooted in the search for truth; because only when the veraciousness of witnesses and evidence is discovered and methodically-copiously scrutinized can justice be done. I sought justice but instead received and am burdened-overwhelmed with dire injustice.

This most Honorable Court's opinion will determine whether a Mockery has been made of my bedrock Constitutional Rights or whether justice, fairness and equity prevails.

This supplement espouses the Highest Court of our lands Newly published opinion in the case of, Hemphill v. New York, 142 S.Ct. 681 (2022); an 8-1 decision that emphatically

protects and supports the 6th Amendment's
Confrontation Clause and expands its
application and protections. Hemphill, Id.
ardently highlights the gross defects in my
trial and the total evisceration of my
rights to confront and cross examine
witnesses and contrived-fabricated
allegations made against me.

The Confrontation Clause of the Sixth
Amendment to the United States Constitution
guarantees to every defendant in a criminal
prosecution the absolute right to be confronted
with the witnesses against them especially
for the purposes of conducting cross-examination.

A fair trial for me was solely and
exclusively contingent upon my 5th Amendment
Right to Due Process of law and most
importantly my 6th Amendment Right under
the Confrontation Clause. My rights were
not only trampled upon by the Court and
Government but acutely treated as unworthy

and denied. The impact of these denials
eliminated even a scintilla of any
opportunity I had to receive a fair
trial. The consequences of a trial replete
with Constitutional errors resulted in
my sentence to life in prison until my
natural death.

Consequently, the magnitude of your
decision cannot be accentuated enough and
the Hemphill decision reinforces why my
Convictions and sentences must be vacated.
The admission of unconfronted evidence
against me was the antithesis of Justice
Sotomayer's profound and compelling opinion,
as she reversed a State Court murder
conviction because a defendant had no
reasonable chance-oppurtunity to confront
and cross-examine ballistic evidence
admitted against him. The forensic analysis
evidence was unconstitutionally admitted
by a witness devoid of knowledge
and veracity subject to confrontation.

In *Md. v. Craig*, 497 U.S. 836, 846 (1990), the Supreme Court held that face to face confrontation enhances the accuracy of fact finding by reducing the risk that a witness will wrongfully implicate an innocent person. See also *Bullcoming v. N.M*, 564 U.S. 647 (2011), wherein the Highest Court opined that "The Clause does not tolerate dispensing with confrontation simply because the Court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination." *Cox v. Iowa*, 487 U.S. 1012, 1019 (1988). Precisely - exactly what occurred in my case *subjudice*.

The confrontation right is explicitly designed to promote the truth-finding function at trial, even when it imposes restrictions and overwhelming burdens upon the government, in the truth seeking process. *Craig*, 497 US. at 845; see also *Ky v. Stincer*, 482 US. 730, 737 (1987).

My case was legitimized by the false
and fabricated, but nefarious accusations
against me. I wholly lacked the specific
intent to ever commit the alleged offenses
and what commenced as hyperbole and
statements uttered in comical anger-fustation
ended up being spun into-from non-fiction
to reality by depraved criminal minds.
The search for the truth ceased to exist
and cooperating witnesses with significant
motives to fabricate, ended up being lead
and condoned as life-saving heroes; when
a search for the truth would have evinced
the foundational premise as completely false
and their evidence against me as baseless-
meritless and devoid of reality, actually
delusional. My 5th and 6th Amendment Constitution-
al Rights were trampled upon with the
governments win at all costs philosophy.
They admitted evidence against me with the
determination of advancing a conviction in
the trial court and devoid of any concerns
for an appeal or whether I was

actually innocent. They were incensed by my statements made in jest and I became a target for their scorn. The case <u>sub-judice</u> exemplifies why Judge Sotomayers 8-1 decision required reversal of the case and buttresses why my convictions and sentences must be vacated.

As this Honorable Court is inherently cognizant I entered a plea of guilty to a multi-million dollar fraud case, that evolved around the sale of coins. The plea was entered on the eve of trial and was the final contingency in an offer made to all my co-defendants. If I failed to plead guilty my brother's, brother in law and others would be compelled to proceed to a highly contested trial. The coercion, pressure and duress placed upon me by my family-loved ones and all whom meant anything to me was immeasurable.

Subsequent to my plea of guilty I received an substantial and unexpected

term of lengthy imprisonment. I was hurt,
in pain and both me and the love of my
life My wife and three children were
devastated. We were inseparable homogenous,
an unit. I vented to other prisoners and
a former associate and made unintended
comments I never meant; statements
relevant to my trial-sentencing Judge and
Prosecuting attorney. As the result of these
idiotic and veilled rants - threats I was
reindicted and charged with multiple
conspiracies. I unequivocally and catagorically
averred My innocence in the case from its
inception-commencement and even gave
a false incriminatory statement; out of
fear, threats and a fictitious-deceptive
schemed ploy, to get me to confess; which
the government conceded to. I demanded
a Jury trial as I was intent on proving
My innocence.
    The prime material witness against
me was the same seminal government
cooperating witness as in the fraud case,

Dejvid (David) Mirkovic. Mirkovic was
indicted as my co-conspirator, although
there were crucial issues pertaining
to this issue-position; as he had ulterior
motives such as retribution against his
girlfriends husband and he exasperated
my case and attributed motives, statements
and intended actions - consequences to
me that I had no knowledge of nor ever
intended. It seems as if every word he
made up he falsely attributed to me. There
was never a shred of evidence I made
such statements; only Mirkovic.
   Mirkovic met with an undercover
law enforcement officer-agent and was
recorded for substantial hours.
   The government in the trial subjudice
played Mirkovics recordings which
extended over three hours. The tapes
were potent as Mirkovic expressed his
own delusional fantasies which he credited
to me; except there was no foundational
evidence proving that the recordings were

ever made in the course and in furtherance of the conspiracy and to even consider their admission pursuant to Fed. R. Evid. 801 (d)(2)(e).

Additionally, large portions of the tapes were classified as unintelligible. and the government speculated as to what Mirkovic said or meant. It was pure conjecture

Most importantly, although Mirkovic entered a cooperating plea agreement, the government refused to call him as a witness; and instead used the recording agent to testify as to the multi hour recordings, unintelligible portions of the tape and even Mirkovics cooperating plea agreement; to prejudice me further in the presence of the jury, the Court made an inflamm- atory comment about the plea.

I was profusely denied the absolute and profound right to cross-examine and confront Mirkovic. If I was given the Constitutional Right I submit that the

Motive, knowledge, intent and actions of Mirkovic attributed to me in the Audio's would have been conceded by him to be his creation and fantasy; statements I never made and hereby vindicating me.

The government was completely cognizant of Mirkovic's immorality, incredulous and systemic pattern of lies. Furthermore they knew he was incapable of telling the truth and had a tendency of scheming, plotting and conspiracy to realize his own objectives. Consequently they kept him off the witness stand and deprived me of my 6th Amendment Right of confrontation. I could not seek the truth as Mirkovic never took the witness stand in my trial. The government also knew Mirkovic was an drug addict desperate to appease them and would never withstand vigorous cross-examination.

Moreover, This Honorable Court could logically adduce the governments concerted effort to deprive me of my Constitutional

46 of 90

Right of Confrontation by their
"Opening Statement; which was more akin
to a summation laiden with conjecture
and argument.

In their opening statement the
government copiously delineated the facts
of my prior fraud conviction and exact
sentence; equating me to the Devil
reincarnated. Their sole and exclusive
objective was to depict me as a professional
Con Man, deviant, insensitive and morally
bankrupt career criminal; when as a matter
of fact the fraud case was the first time
in my life I had ever had a nexus to
the criminal justice system. I had
served my Country Honorably and proudly
in the Navy and was now an expert
Pilot in both Rotary and fixed wing
Aviation. Yet the government falsely
portrayed me to the jurors.

The intended consequences of the
governments win at all cost opening statement
was never to give the jurors a

road map to the trial, but to testify as to facts I could not controvert nor confront. (emphasis added). Rightfully, the governments method of establishing a motive in the case sub judice should have been to merely state that I had a prior case to which the Honorable Judge Bianco sat as the Jurist and the U.S. Attorney was Lara Gatz. There was no need to recitate methodical facts and the prior sentence. It merely inflamed, prejudiced and preconditioned the jury against me. It also eviscerated my 6th Amendment Confrontation Rights; which was the obvious motive of the government in its own words and again by not calling Mirkovic. The government testified and gave evidence against me in the opening which I could not confront. They tried to bait and induce me to take the witness stand all in violation of the 5th and 6th Amendment.

　　　During the course of the investigation

to the Conspiracy to Murder cases,
the government was permitted to admit
my false incriminatory statement, despite
their concession that it was obtained
by the use of promises, threats, coercion
and falsities by the agent involved. I
was terrified by the agents threats of life
in prison and he promised me lienency,
although he lacked any authority. I
genuinely believed that I would be set
free from jail-prison and detrimentally
relied on his representations; although it turned
out to be a ruse - a play.
　　The repugnant-abhorrent, illegal and
unConstitutional act of NOT (emphasis added)
calling the Agent (Hesslin) whom tricked and
lied to me in order to try to obtain an
confession; then used his hand written
version of events to trick Mirkovic
into thinking I was cooperating, prompting
Mirkovic into spinning lies which he
attributed to me, to testify as to all the
surrounding facts of my statement, trampled

upon my Confrontation Rights. It was a scheme to deprive the Finders of Fact as to all critical-devious actions by the Agent whom was intrically related to my remarks. A different agent whom was not the same character, attitude. and atrocious nefarious personality as F.B.I. agent Hesslin testified for the government. The prosecution knowingly, purposely and with malice aforethought kept the jurors from the truth, whole truth and nothing but the truth. They intentionally deprived the Jury of the ability to envision, observe and feel the intimidation I felt and which caused me to incriminate myself, albeit falsely; Agent Hesslin should have testified; Agent Cox (not an F.B.I. agent) a contractor is not and could never be the substitute for Agent Hesslin (FBI); yet the Court allowed Cox to testify in Hesslins stead.

The governments miserous misuse and dichotomous contravention of the Confrontation

Clause created the antithesis of
Hemphill's admonitions and holding. My
6th Amendment Rights were clearly
trampled upon and resulted in me never
receiving a fair and just trial. Hemphill,
Id. The government abused the Rules
of Evidence to get around the Hearsay
Rule, when in fact all their evidence was
wrongfully admitted for the truth of the
matter asserted; and never fell within
an exception to the Hearsay Rule. They
abandoned my Confrontation Rights.

The plethora of RANK, DOUBLE AND
TRIPLE HEARSAY (emphasis added) became
the norm at my trial. This in conjunction
with my Attorney's gross ineffectiveness—
ineptness and lack of investigation, prepar-
ation inhibited me from a Constitutionally
fair trial.

The interests of justice must always be
paramount in our system of justice. My case
and the Hemphill, Id. analysis, as well as and
the formative opinion by Justice Sotomayer compels
this Honorable Court to Vacate my Convictions.

E. THE GOVERNMENT EXENTERATED THE
   INTEGRITY OF THE PROCEEDINGS AND
   PETITIONERS CONVICTION(S) MUST BE REVERSED,

   a. Petitioner incorporates by reference
every word, argument and shred, scintilla and
iota of writings contained supra as if
realleged and reasserted in its entirety.

   b. The genesis and impetus for commencing
the investigation of Petitioner was a letter
written to law enforcement by Gerald Machacek,
whom was confined at the Nassau County Jail
with Petitioner. The government must concede
that this letter was authored by an
degenerate, depraved, manipulative career
criminal with a criminal history replete
with violence, fraud, schemes, plots and
methodical knowledge and manipulation
of our criminal justice system. An
evil human being defined by an extensive
and vast working cognizance of the "System"

and facing an multitude of armed robberies through multiple Counties, upon innocent victims and legitimate businesses; as well as burglaries and theft related crimes; all while being an career criminal given the benefits of prior cooperation, whom scammed professionals such as law enforcement officers, agents, probation and parole officers, as well as state, Federal and Municipal Judges; into ordering reduced sentences and even probation because of his cooperation - information and evil schemes to deceive and work the justice system. His defense Attorney labelled him "The Babe Ruth of cooperation."

What is extraordinarily troublesome is the irrefutable fact that the letter sent by Machacek imploring, pleading and begging to be a Cooperat Cooperator and "that he receive the benefits of cooperation - an substantially reduced sentence" as well as his background,

were deliberately and with malice
aforethought, hidden and clandestinely
concealed from Petitioner; who only
learned of the missive subsequent
to conviction and when Special
Administrative Measures were imposed
upon his condition of confinement;
Restrictions that impose upon Petitioner
solitary confinement in a 70 square feet
cell, in complete solitary confinement
with no intrapersonal communication
with another living soul nor personal
contact (holding, hugging, kissing) any of
my beloved children, wife, mother nor
other immediate family members.
A life of Condemnation, ridicule, pain,
torture and suffrage imposed in whole
violation of "watershed", "foundational"
and "fundamental" Constitutional Rights
and in indisputable contravention of
5th and 8th Amendments.
        The Government refused to
Call Machacek as a witness in

either their direct case or case
in chief; thereby preventing the
fact finder from ever having the
benefit of knowing his background,
motive to fabricate, prior abominable
crimes and plots to reduce his penal
responsibilities and most importantly,
expansive-inordinate knowledge of the
justice system; and how he has used
it a plethora of times in the past to
cleverly exploit the "System"

    Moreover, the government contravened
the 5th Amendment tenets, "FOUR CORNERS"
of Glossup V. Oklahoma, Id. (emphasis
added) by intentionally refusing to call
this witness and betraying their oath to
seek Justice, and not "win at all costs"
through a manifest injustice. The prosecution
hid from the jury the known facts that
Machacek was an devout Junkie pathologically
addicted to heroin, Crack Cocain, Methamph-
etimine and an extreme Alcoholic.

He had been to rehabilitation many times for all his sicknesses, illnesses and hard core propensities, but all to no avail. He was desperate, destitute and would do anything and say anything to feed his diseases; and return to the streets expeditiously as he frenzied for drugs and alcohol. Instead, the prosecution hid all these magnanimous—monumental facts motivations and incredulous abnormalties from the jury and had a federal agent testify as to statements made to him by Machacek and minor deminimus jail house recordings full and alive with jail house—idle banter, boastings, jokes and half truths; devoid of essential—material conversations between parties which would actually depict how the conversations evolved and truly occurred. Instead their testifying, sanitized and credible agent regurgitated, accelerated leading suggestions by Machacek;

and his conspiratorial cronies like
Timothy Glass and other individuals to
inculpate Petitioner and Velazquez; while
conversing with both Petitioner and
Adam Velazquez at the Nassau County
Jail and other facilities these degenerate
and skilled cooperators worked in a
fraudulent, corrupt, criminal conspiracy to
wrongfully induce, convince and sickedly
befriend innocent individuals into making
false inculpatory statements; all while
scheming, plotting and evilly planing to fabricate,
contrive and use the system to escape
punishment for their own heinous and
atrocious crimes - misdeads and violence.
    The Agent whom portrayed the investigation
of Petitioner while he was at the Nassau
County Jail, was never corrected, directed,
nor truthfully evinced the credibility
issues of Machacek nor any other witnesses
to whom and wherein his entire testimony
was based; as the agent had no direct
knowledge of any critical, material and

elemental facts; Nor did the agent ever
advise the jury as to the vexatious,
troublous and incredulous known facts;
Such as the witnesses providing the
recordings and other facts falsely
incriminating an completely innocent
Adam Velazquez of major serious violent
armed robberies; as well as Petitioners
known propensities for being a prankster,
Jokester, jovial and boisterous comic, in
an environment new to him and his family.
In other words, a scared, obese, easy
Manipulated family man terrified of
being in jail and easily susceptible —
Vulnerable to manipulation by career recidivist
Criminals like Machacek and Glass and their
Sycophant wolves. An inmate like Petitioner
who talked jail house tough to fit in and
Not be abused.
     Furthermore, despite both Machacek
and Glass being the catalysts, enzymes and
provocators in the foundation of Petitioner's
case, the government, like _Glossup_ , Id.

(witness Sneed), knowingly and intention-
ally concealed from the jury Machaceks
mental illness and elongated history
of DSM diagnosed psychiatric,
psychological illness and treatment records;
since his conception and initial confrontations
with the Juvenile Justice System. Machacek
had a propensity for fabrication, falsely
implicating others and knowingly conspiring
through deviousness to outrageously trick
others into believing him. His mental health
issues, treatments, diagnosis and prognosis
would have fundamentally prove that the
core of Petitioner's case was based
upon him taking advantage of an innocent
man; an inmate easily entrapped by an
evil, maniacal and psychologically dysfunction-
al career criminal, destitute for his
freedom and missing a lifestyle of
drug addiction and alcoholism.
        The Prosecutor destroyed the
"integrity of the proceedings" and this
case requires reversal.

There exists absolutely no
independent nor objective evidence
of Petitioners knowing and Voluntar-
ily participation in any crime other than
the conspiratory contrived fabrications of
Machacek, Glass and their sycophant cronies.
Law enforcement agents -officers and prosecuters
acted in concert to curruptly, illegally and
unconstitutionally conceal the backgrounds
of every material-essential witness. The
government intentionally failed to call these
witnesses as their means to hide serious-
substantial credibility evidence from the Jury
which would have unequivocally-categorically
impeached all the manufactured evidence
of crimes, to which Petitioner was wrongfully
convicted.
    Furthermore, it cannot be accentuated
enough that the prosecution never made any
attempts to verify their witness(es) veracity;
for instance when Machacek and Glass criminally
conspired to make Velasquez into a violent
raging armed robber and their co-conspirator,

the prosecution never made an effort to
obtain Velasquez' work records, cellular
telephone records nor evidence which would
have fervently established an iron clad
alibi and actual innocence. The same
injustice was perpetrated against Petitioner.
They never made even an cursury effort-
attempt to learn about Petitioners speach, language
demeanor, attitude and simpleness. That he
joked incessantly, attempted to act-sound
like a gangster, and, most relevantly how
Machacek put words into his mouth, played
and plotted against him and took advantage
of his vulnerabilities with leading and
suggestive diatribes against the system and
those involved in Petitioners case. Petitioner
merely responded with "jail-house" rants
totally devoid of intent and substance;
all firm evidence withheld from the sitting
Jury. The exact same routines, patterns and
Modus operandi Machacek and Glass used in
the past.
        King Soloman vociferously wrote in

Proverbs 18 " the first to plead his Case seems right, Till the other party examines him." The 5th and 6th Constitutional Amendments exemplify this, yet as in Glossip's scenario, Id. the prosecution prevented this from occurring in the case Sub-Judice. They Never Corrected their witnesses testimony relevant to its credibility, nor introduced evidence on the credibility of the source.

Lastly and summarily: every single time the source of Petitioner's agents testimony was even alleded to such as in recordings-testimony, investigative leads, actions and progression-steps, the entirety of Machacek, Mirkovic's and Glass nefarious and Nefarious and incredulous backgrounds should have been exposed through Government testimony and testimonial interruptions. The investigation was Never based on independent investigation of Petitioner, but derived from criminally conspiring witnesses; all highly motivated to lie and acting for self preservation.

The Jury had an absolute right to be fully cognizant about Machaceks initial letter which commenced the case and deals, expectations and prior cooperations, demands for leniency to cooperate and to provide information; criminal misconduct should have been exposed by government testifying witnesses. Additionally, the jury should have been apprised and provided recorded documentation relevant to the witnesses mental illness, treatments, addictions, expert analysis of their propensities for manipulating the system and other inmates, as well as addictions. There should've been counselling records depicting the current state of all diseases, addictions, illnesses and treatments; as well as evidence depicting how an acute alcoholic and drug dependent addict would do and say anything to lesson their time of confinement and return to the streets to both feed and continue with their sicknesses. This was especially apropos since the source of their entire testimony was Machacek,

Mirkovic and Glass.

It is horrifically atrocious and deeply saddening how Machacek and Glasses framing of Velasquez lead to his incarceration and how their Modus operandi was to plot and evilly incriminate even innocent defendants. They didn't care how many families they destroyed and loved ones were separated from their dependants. This is personality traits purposely kept from the jury in the fact finding quest. The jury never knew even a scintilla of any witnesses patterns of mendaciousness and only heard from clean, sanitized and impeccably articulate law enforcement officers - agents; whose testimony essentially vouched for the witnesses credibility. It was a disgrace, reprehensible and undermined the integrity of the entire trial.

The government not only failed to protect the integrity of the proceedings by making the deliberate decision to only call law enforcement to testify,

but did everything conceivable and in their corrupt powers to stymie the jury from hearing a shred of evidence about the criminal, nefarious protagonists and their disembowment of any semblance of the truth. The sanitized filthy scum witnesses.

Finally the prosecution compelled Petitioner to call Machacek as a hostile-defense witness. They placed the burden on defendant to attempt to impeach the witness, when it should have never been shifted, under the 5th Amendment. This Honorable Court in its infinite wisdom is wholly cognizant of the pitfalls and tribulations this placed on Petitioner and his counsel; but Constitutionally and now in accord with Glossip, Id. this never alleviated the prosecutions responsibilities to overtly correct and intelligently inform the jury of all material issues—problems with the veracity of the witnesses and case, especially when their case in chief was presented through law enforcement.

Glossip V. Oklahoma, Id. is not only a death penalty case— it is a due process blueprint for challenging convictions tainted by prosecutorial misconduct and suppressed credibility evidence. Petitioners trial was fundamentally unfair and Constitutionally infirm. There is no doubt whatsoever that the jury would've decided differently if they knew the truth. The truth, whole truth and nothing but the truth would have made a monumental difference in the verdict.

C. Dejvid Mirkovic (David)

The use of statements made by David Mirkovic, that the prosecution used against Petitioner, (as co-conspirator statements made during the course and in furtherance of the conspiracy FRE 801 (d)(2)(e)) through the testimony of again, an Law enforcement agent, was deplorable, and an glaring repudiation of the prosecutions

sworn duty to seek Justice. Mirkovic
Never testified and there existed
absolutely No independent evidence that
any of these statements were attributable
to Petitioner, or met the test of being
Co-conspirator statements.

The Prosecutions premeditated and
designed usurpation of the juries province
to see, hear and credit the witnesses
Veracity was stolen from them. Instead an
undercover law enforcement agent met
with Mirkovic, recorded him and it was
Mirkovic's spoken words that he fictitiously
attributed to Petitioner; that lead to his
wrongful convictions and sentences to life
in prison. The inherent-innate Glossip,
Id. issue the government's irrascible
enmity created was the fact that they
failed and purposely refused to provide
existential evidence they possessed that
Mirkovic was in a dire Psychological
state with extreme mental, emotional
and physical Manifestations. His marriage

had failed, he fell in love with a
stripper-dancer and he was abusing
and heavily addicted to drugs, alcohol
and incapable of handling these demons;
Mirkovic's world of privilege, fantasy
and abuse was unravelling and he fell
into a dark hole. He was motivated and
delusionally bent on murdering his
stripper-lovers husband and replaceing
himself in his stead. Not a single recording
between Mirkovic and Petitioner existed,
wherein any of Mirkovics designs while
he mollified the inducements of agents
could be attributed to Petitioner. In
a veiled attempt to en-dear himself
to Petitioner and his family, coddle
persuasions of agents, attempted to gain
favor to secure his fantasy to murder
his stripper-girlfriends husband, Mirkovic's
drug addled web of falsity was simul-
taniously spun with guidance of Agents.
Simply, Mirkovic's baggage, inordinate
impeachment attributes and specious

68 of 90

disqualifying inaccuracies were never
presented to the Court, jury or even
Petitioner; they were wholly concealed
and unknown by the jury. The bedrock
right for the jury to judge the
credibility of the statements made by
Mirkovic to the undercover agent and
wherein the jury was advised could
be used against Petitioner, were devastating
to Petitioner's cause of action—case.

The prosecution never corrected
the agent, again, whom essentially vouched
for the accuracy of the statements and
convinced the jury were made by Petitioner;
although the agent dealt only with Mirkovic.
As with Machacek the jury never had an
opportunity to observe, scrutinize and
judge these witnesses; to look in their eyes
and see an empty soul.

The agent baselessly and meritlessly
testified that Mirkovic informed-advised
him that:

(a) Petitioner sought his assistance
to kill his trial judge and Prosecutor;

(b) That Petitioner ordered-requested he pay the undercover agent, whom Mirkovic (emphasis added) believed was a hitman;

(c) That Mirkovic paid the undercover agent $22,000 out of the $ ... of the agreed upon price by Mirkovic, on Petitioner's behalf;

(d) That Petitioner agreed that Mirkovic should pay and hire the hitman and directed this conduct;

(e) That he acted at all times under the direction of Petitioner. It must be noted that Mirkovic, an his own voluntary volition paid Petitioner's legal fees on the first case (Tecoin-fraud case) and submitted multiple sworn affidavits exculpating Petitioner of all allegations. Consequently he is known to act wholly distinct, detached and disengaged from Petitioner. He also is discredited with converse sworn affidavits, which proves he is willing to lie (See exhibit A)

(What) is extremely important is that Not a single letter, telephone call, nor recording that Corroborates-Substantiates

Mirkovic; yet even though Mirkovic
was an material witness with
substantial credibility issues neither
the jury nor Petitioner ever had
an opportunity to confront, cross examine
or even review crucial impeachment
evidence against Mirkovic; nor did
the government make any effort to provide
the discoverable impeachment-exculpatory
evidence available; nor did they correct
the agents testimony as he vouched for the
credibility - veraciousness of Mirkovic
and the alleged co-conspiratorial state-
ments; that Petitioner vociferously-
vehemently denies ever making.
    The prosecution trampled upon
Petitioner's 5th Amendment Rights,
Glossip v. Oklahoma, 602 U.S. ___ (2025),
Crawford, Id.; Brady v. Maryland, 373
U.S. 83 (1963), Hemphill v. New York, 142 S.ct.
681 (2022).
    What is of utmost persuasion is
that Petitioner never had an opportunity
to contest any material essential witness
such as Machacek, Mirkovic nor glass;
in spite - despite the uncontroverted,

uncontested facts that the $40,000 (agent)
hitman payment suggestion was made
by and provided by _Mirkovic_, (emphasis
added), that it was _Mirkovic_ (emphasis added)
whom provided the names of both targets,
that it was _Mirkovic_ (emphasis added) whom
paid the $22,000 from his own-personal
funds, that he retrieved from a _safe_ in
his _own_ residence, that not a red cent
of these funds could be contributed nor
traced to Petitioner, that there exists
not a single record, recording, conversation
nor any correspondence wherein Petitioner
ever authorized or discussed any
payments with _Mirkovic_ nor to anyone
else; there exists no evidence-corroberation
or substantiation of Petitioner instructing
or ordering Mirkovic to take any action
or do anything illegal-criminal on his
behalf. The entire payment theory is
uncorroborated, unsubstantiated and the
government relied solely and exclusively
on _Mirkovic_ (emphasis added); an mentally
ill, alcoholic and addicted drug abuser-
user, whom they knew attempted to
divert and convert the undercover

agent, posing as a hitman to kill his
stripper girlfriends husband. If
the jury received a fair opportunity
to observe, survey, or examine Mirkovic,
Petitioner would be home with his
wife and three (3) children like Velasquez.
    Glossip, Id. was premised on
making it crystal clear that it is never
up to the defense to catch the lie — it
is the governments job, duty and unfettered
sworn obligation to tell the truth through
the use of credible-meticulously
scrutinized witnesses. It is evident
that this never occurred sub-judice as
not a single witness other than law
enforcement were called to testify on
behalf of the prosecution; and they
concealed significant impeachment and
exculpatory evidence—discovery. The
prosecution manipulated our system of
justice to conceal harmful deceptions,
by incredulous witnesses.
    The integrity of the case of
United States v. Romano, is non-existent
and Judge Sotomayer had emphatically
opined in Glossips majority opinion,

that when the integrity of the
proceedings are breached the case must
be reversed. Justice implores reversal.

The Proverbs of one of the wisest
men whom ever existed is exeptionally
applicable to the case at hand. King Solomon,
thousands of years ago wrote that "a false
witness will Not (emphasis added) go unpunished"
and "he who testifies lies will Not
(emphasis added) escape." He also prophesized
that "he who testifies falsely is doomed"
and it is "better to be poor than a liar",
Proverb 19. Machacek, Mirkovic and Glass are
false Non-testifying witnesses whom scoffed at
the truth, with complicity of the government.
    What is most pervasive in Petitioners
case and why it must be reversed, is the
FACT (emphasis added) that No matter which
government agent or federal law enforcement
officer took the witness stand and swore
to tell the truth, that every word, investigative
lead, step they took and word they spoke was
derived from the mouths originated and
its genesis was rooted-in repugnant,
repulsive and scheming criminal liars

and co-conspirators that have NO respect
Nor Moral Compass. Witnesses whose patterns
of lies, schemes, plots and criminal acts
were proven unreliable, unconsionable and
rooted in falsity-fiction and innate lies.
They never considered the negative
consequential impact derived from their obsessions
to be free and reduce the time of their sentence;
or quality of incarceration received from
leniency. They — Machacek — Glass did it
against poor-innocent Adam Velasquez who
lost years of his life wrongfully; and they
along with Mirkovic in their consistant,
disgusting pattern of abuse of the system,
did it to Petitioner.

What is extremely troublesome as
alluded to <u>supra</u>, is that the prosecution-
government must have — should have smelled,
seen and conducted investigation into glaring
red flags; but they did not. Their apathy
toward seeking justice must not be ignored.
They set fire to the Constitution, abandoned
their solemn-sacred oaths to seek justice
while defending our institutions and
simply put, just never cared. The nature
of the allegations blinded them; they were

blinded by the anthem and creed of
"Lady Justice."
    They — the prosecution — evinced their
apathy and blindness — and impervious—
lackadaisical attitudes in Velasquez and
again against Petitioner.

    THIS CASE BECAME TAINTED WHEN
THE ORIGINAL SPOKEN WORDS CAME OUT
OF THE MOUTHS OF MACHACEK ALONG
WITH GLASS AND THEN MIRKOVIC;
inhumane and devilish degenerates devoid
of any qualms for convicting an innocent
man, taking him away from loved ones
and placing him into living hell and the
auspices of inhumanity. (emphasis added).
Right now, Petitioner is relegated to a
life of hell based on Constitutional
contravention and lies!
    The prosecution knew who these
men were, what they were capable of
but did nothing to confirm, investigate
and substantiate baseless averments. They
took advantage of a vulnerable Petitioner,
all while contravening Crawford, Id.,
Glossip, Id., Napue, Id., Hemphill, Id.
and our Constitution.

THIS CASE MUST BE REVERSED
EMERGENTLY LIKE JUDGE BIANCO
OPINED IN _VELASQUEZ_ AND JUSTICE
SOTOMAYER RULED IN _GLOSSIP_ (emphasis
added)

Studying the Law and copiously
analyzing the stare decisis cases and
their progeny has taught me to continue
fighting for my Constitutional Rights
that were stripped away from me
unlawfully. That hidden in my days of
imprisonment was a profound cry of
the soul— Not Just to grieve what has
been broken, but to awaken the strength
within me to begin rebuilding. I learned
from the _Glossip_ cases and all those
mentioned _infra_, that within every decent
lies the potential for the greatest ascent.

I beg this Honorable Court to not
look at Petitioner as a Number or case,
but an individual whose soul has infinite
potential, but was harmed unconstitutionally.

This prison sentence was never a dead end, but rather a place where true transformation for the betterment of Petitioner, my devout love for my family, friends and society and to my dedication to God. That my life has true value and my loved ones taught me that I am never alone. That the smallest light like the New Glossip case can push away a great deal of darkness and that each of us has that light within us.

I have drawn closer to the essence of my soul and know this Court will reverse my case because it is the only right, just and equitable thing to do.

F. Glossip V. Oklahoma, 602 US. ___
(2025), 145 S. Ct. 612, 221 L. Ed. 2d 90,
2025 U.S. Lexis 865, 2025 LX 44110,
30 Fla. L. Weekly Fed. S 711 No. 22-7466
(2025), is iconic, prolific and renders
Petitioners Convictions wholly violative
of the 5th Amendment's Due Process Clause.
It also contravenes the established
law unequivocally and categorically
established in Napue V. Illinois, 360
U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959).
   In an extraordinary repudiation of
prosecutors whom permit uncorrected false
testimony at trial, The Honorable Justice
Sotomayer writing for our Highest Courts
Majority and joined by Chief Justice Roberts,
Justices Kagan, Kavanaugh and Jackson
emphatically opined that the Due Process
Clause imposes the duty to correct false
testimony on the government-prosecution;
and most importantly, that under Napue, Id.,
"a conviction obtained through the knowing
use of false evidence violates the
Fourteenth Amendment's Due Process Clause".
To establish a Napue violation, a defendant
must show that the prosecution knowingly

solicited or allowed false testimony to
go uncorrected. If a violation is established,
a new trial is warranted if the false
testimony could in any reasonable
likelihood have affected the jury's
judgment; meaning ordinarily, that the
prosecution must establish harmlessness
beyond a reasonable doubt. _Glossip_, _Id._
at 5. _United States v. Bagley_, 473 U.S.
667, 680, n.9, 105 S.Ct. 3375, 87 L.Ed.2d 481;
_Chapman v. California_, 386 U.S. 18, 24, 87
S.Ct. 824, 17 L.Ed.2d 705.

    _Glossip_ and _Napue(s)_ underlying
premise is to ensure that a conviction
does _not_ (emphasis added) occur based upon
false or misleading testimony, that may
influence the finder of fact. _Glossip_
accentuates the prosecutions obligation to
to uphold the integrity of the trial and
correct any false testimony.

    Justice Sotomayer emphatically
opined and this Majority opinion was joined
by Chief Justice Roberts, as well as Justices
Kagan, Kavanaugh and Barrett, that "the
prosecutions failure to correct a witness's
testimony violated the Due Process Clause,

and defendant is entitled to a new trial;
because the prosecution knew the witnesse's
statements were not only false but
knowingly failed to correct them, and there
is a reasonable likelihood that correcting
the testimony would have effected the
judgement. Glossip v Oklahoma, 145 S.Ct. 612;
221 L. Ed. 2d 90; 2025 U.S. Lexis 865;
2025 LX 44110; 30 Fla. L. Weekly Fed. S
711 No. 22-7466 (2025).
    In this prodigious-monumental
case (Glossip), the prosecutions key witness
(Sneed) was diagnosed with bipolar disorder
and prescribed lithium. At trial he
contradicted this irrefutable fact and denied
illness. It was subsequently determined
that the prosecuting attorney knowingly
elicited false testimony for Sneed and
failed to correct it, violating Napue v Illinois,
360 U.S. 264, 79 S.Ct. 1173, 3 L. Ed. 2d 1217,
which held that a prosecutor has an
Constitutional (2025 U.S. Lexis 4) obligation
to correct false testimony and violated this
absolute obligation. Furthermore, the Highest
Court specifically enunciated that under
Napue, an conviction obtained through

the knowing use of false or misleading evidence violates the Fourteenth Amendment's Due Process Clause. To establish a Napue violation, defendant must show that the prosecution knowingly solicited or _allowed_ (emphasis added) false testimony to go uncorrected. If a violation is established, a new trial is warranted if the false testimony could in any reasonable likelihood have affected a jury's judgment; meaning the prosecution must establish harmlessness beyond a reasonable doubt. _United States v. Bagley_, 473 U.S. 667, 680 n.9, 105 S.Ct. 3375, 87 C.Ed.2d 481; _Chapman v. California_, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.

It is indisputable that revelations of a witness's Bipolar diagnosis, alcoholism and or dire psychological-mental illness would severely undermine his credibility, veracity and render him incredulous.

It is well known in jurisprudence that evidence can be _material_ even if it "goes only to the credibility of a witness." _Napue_, Id. at 360 U.S. at 269.

"A Lie is a lie, No Matter what its subject.'" <u>Napue</u>, 360 U.S. at 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 quoting People V. Sawides, 1 N.Y. 2d 554, 557, 136 N.E. 2d 853, 854-55, 154 N.Y.S. 2d 885 (1956).

Mark Twain so eloquently stated: "If you tell the truth you don't have to remember." This is so very pertinant to this cause of action, because This Honorable Court must ask itself, why did the prosecution only use law enforcement agents to testify as to a double and triple hearsay; if they believed the testimony, statements or posits of Machacek, Glass, Bedell and most importantly, Mirkovic. The triers of fact would have had the opportunity to observe the physical, mental and psychological expressions and testimony of the witnesses. The defense could have scrutinized-tested-queried and brought forth the incredulous surrounding facts and circumstances of any recordings and the witnesses glaring manipulation of Petitioner and inexperienced agents. This inquiry was knowingly, purposely and

deliberately denied to the jury. The
jurors were corruptly denied the
opportunity they deserved to determine
false statements, the mental incapacitation
of witnesses whom were extreme drug
addicts using heroin, cocane and Metham-
phetamine. This is seperate from their daily
use of alcohol and their alcoholic diseases.
Each one of the essential witnesses were
hooked on the daily usage of mind altering
drugs even while imprisoned with
Petitioner at the Nassau County Jail,
Miami Federal, Oklahoma Federal, MDC
Blooklyn, Mcc in Manhattan (Machacek, Glass);
or while communicating with Petitioner
and scamming him— setting him up to be
falsely incriminated (Machacek, Glass and
Mirkovic). They were also diseased
alcoholics. Their daily use of psychodelic
drugs and hard liquer drinking, is beyond
dispute.
          Petitioners vulnerability and the
witnesses quest to achieve their own
objectives and benefits lead to his
manipulation and being falsely accused
of serious crimes he never intended

to ever commit. The witnesses were
in dire straits to reduce their imprisonment,
obtain leniency and return to the streets
to feed their obsessions—illness.

    Glossip — Napue is wholly appropos
to Petitioner in that the prosecution never
corrected, interrupted nor veraciously presented
to the jury, not a scintilla, shred nor iota
of evidence that the witnesses whom
provided the testifying law enforcement
officer's with all their testimony, were
mentally ill, alcoholics, substantial-significant-
daily use—drug addicts; whose minds
were altered and incapable of any semblance
of credibility and infirm.
    Moreover, the jurors never learned
that the Nassau County Jail's set-up-crew,
(The framing innocent inmate group) were career-
manipulative criminals, know to be devious—
devil's reincarnated whom used and were
addicted-dependent on serious drug usage.
Individuals whom were violent, fraudsters
and professional con-men whom had
manipulated the criminal justice

system in the past and did to Adam Velasquez the same things they did to Petitioner. They knew how to scam the system and would go to any extent to gain their freedom and release from bondage. Petitioners life, family and justice did Not enter into their equations

The prosecution Never informed Nor advised the jurors as to incredulous base or foundation of their witnesses testimony; and that the testifying agents based their testimony on these scoundrels and their proffers, statements and information. The government Never Corrected the agents- law enforcement officers, whom personally Vouched as to the reliability of these witnesses and averred as to their credibility. This is precisely – exactly what occurred in Glossip and Napue. The integrity of these proceedings were eviscerated and undermined when the law enforcement officers, whom were the "Voice" of the witnesses and standing in their stead, uttered words, made statements and attempted to altruistically relay incriminations against

Petitioner, that were wholly questionable.
They never corrected, gave substance
to, nor constitutionally and consistant
with their sworn duties sought "Justice";
pursuant to the ambits of the 5th
Amendments Due Process Rights. The
Jurors never knew due to the deliberate
concealment that all the testimony of
the undercover officers and agents were
exclusively based upon drug addicted,
substance dependent, alcohol seeking
mental cases and lunatics with motives
to fabricate, contrive and wrongfully
incriminate innocent inmates—like
Petitioner.

The atrociousness of the prosecutions
dismissive, troublesome and misleading present-
ation of sanitized agent testimony requires
reversal of all convictions. Their misconduct
was knowing, intentional and ground in
their futile attempt to portray the missing
witnesses as credible. They deceived
the jury by their misguided and troubling
"failure to correct" agents as to the source
of their testimony and by concealing the
grave—known impeachment evidence.

Napue does not require that
the false testimony itself must have
directly affected the trial's outcome:
Napue requires assessing whether the
prosecutor's failure to correct the testimony
could have contributed to the verdict.
In the case at hand, as well as Napue
a new trial is warranted. Napue, Id.
529 p. 3d 218.

    Glossip, Id. also quoted Brady v.
Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.
Ed. 2d 215 and chided the prosecution
for failing to reveal to the jury the
extent of a witnesses mental health
treatment when the witness falsely denied
it. Napue, 360 U.S. 264, 79 S.Ct. 1173, 3
L. Ed. 2d 1217. App to Pet. for Cert. 50a.
This is analagous to Petitioner's cause of
action in that law enforcement witnesses
presented testimony about their investigation
and what they were informed — advised
by Machacek, Glass and Mirkovic, without
the jury's cognizance as to all the
known facts effecting the witnesses credibility.

With hope and prayer Petitioner implores the federal government to concede error under Napue, 3 App. 978 and acknowledge as a matter of federal law, that the prosecutions failure to correct their witnesses misstatements and _Misleading of the jury as to credibility of evidence_ (emphasis added) entitles Petitioner to a new trial. Id. at 977, 978, 979. There can be no other conclusion drawn but that the credibility of the witnesses would have effected the jury's decision and outcome of the trial.

It is established precedent that "evidence can be material" even if it "goes only to the credibility of the witness," Napue, 360 U.S. at 269, 79 S. Ct. 1173, 3 L. Ed. 1217; indeed, "[T]he jury's estimate (2025 U.S. Lexis 28) of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence," ibid. What is most troublesome in the case sub-judice, is the FACT (emphasis added) that if the prosecution had called Machacek, Glass and or even Mirkovic

to the witness stand OR (emphasis added) the testifying agents had advised the jury of their backgrounds or history, the credibility of the prosecutions case would have suffered, it would've been undermined; which is exactly what Napue and Glossip stands for. The correction of the agents testimony would have revealed the untrustworthiness of the witnesses against Petitioner; Just as Sneed was to Glossip. "The jury's estimate (2025 US. Lexis 28) of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence". ibid. It proves that the non-testifying witnesses whose voices were represented by wholesome law enforcement officers would have been impeached so completely that Petitioner would have been acquitted.

    Justice is a search for the truth and only when the truth is discovered can justice be done. Petitioner did not have Justice nor Due Process.

    For the aforementioned reasons this case Must be reversed. Justice so demands.

Dated Sept-3, 2025

Respectfully,

Jarel Rumer

[A]

**State of Florida**
**County of Palm Beach**

**BEFORE ME**, the undersigned Notary,

_____ *[name of Notary*
*before whom affidavit is sworn]*, on this 1st day of March, 2011, personally
appeared Dejvid Mirkovic, known to me to be a credible person and of lawful age,
who being by me first duly sworn, on his oath, deposes and says:

1. I, Dejvid Mirkovic ("Mirkovic"), reside at 7090 Via Leonardo, Lakeworth, FL
   33467-5236. I am the president and chief executive officer of Universal Coin
   Collections, Inc. ("UCCI"), which formerly operated as Collectible Coins, Inc.
   ("CCI"). CCI was based at 1300 NW 17th Avenue, Suite 218, Delray Beach,
   Florida 33445. UCCI is currently headquartered at the aforesaid address.
2. On February 25, 2011, at approximately 3:30 p.m., I met with Brian S. Aryai
   ("Aryai"), a certified public accountant ("CPA") and a retired federal agent,
   at my office. Aryai has been retained by Joseph Romano to conduct a
   forensic accounting investigation on Joseph Romano's behalf to determine
   facts and circumstances leading to Joseph Romano's indictment by the
   United States Government.
3. I am a prosecution witness in the aforesaid matter.
4. I voluntarily agreed to meet Aryai to discuss payments, both directly and
   indirectly, I had made to Charles Carnesi ("Carnesi"). Carnesi is a former
   counsel for Joseph Romano ("Romano"). These payments were paid for
   legal expenses incurred by Romano. I do not know whether or not the
   payments demanded by Carnesi actually represented bona fide services
   rendered by Carnesi. These payments to Carnesi were made through my
   operating business account number 0095248250, held in the name of CCI,

[A]           1 of 4

at Regions Bank, a financial institution that conducts business in the State of Florida.

5. In total I paid Carnesi's purported legal fees in the amount of $263,800.00. The total amount represented checks made payable to Charles Carnesi for a total amount of $35,000.00, which is reflected in Exhibit A, attached herewith, and $228,800.00 withdrawals in cash, attached herewith as Exhibit B, highlighted in yellow color, which were withdrawn from CCI's business account and physically delivered to Karen Romano, Romano's spouse, to be turned over to Carnesi. Based on my discussions with Karen Romano, I was advised by Karen Romano that Carnesi had demanded that his fees be paid in cash. In spite of several requests to Carnesi, he refused to provide me with any invoices, receipts, tax identification number or social security number for the referenced payments. It is unclear to me what work Carnesi has performed; additionally, this is the first time I have heard of an attorney who demands bundles of cash for payment of fees.

6. On February 25, 2011, at approximately 4:30 p.m., while meeting with Aryai, I received a phone call from Jason Wandner ("Wandner"), who was previously retained as my counsel, until I dismissed Wandner and retained Jack Goldenberger in June of 2010. Wandner was introduced and recommended to me by Carnesi. At the time I received the call from Wandner, he was not my attorney. In the course of this conversation, Wandner, who in my observation and belief is very close and friendly with Lara Gatz ("Gatz"), the assistant United States attorney in the Eastern District of New York assigned to Joseph Romano's criminal case, made certain statements, some of which Aryai heard as I spoke on my cellular phone. Wandner stated to me that Gatz' secretary had just called him, telephonically, and informed him that "Carnesi is under investigation by the U.S. Attorney and an investigator is going to be contacting you to gather information about payments to Carnesi". Wandner further stated that under no circumstances I should talk to this investigator. I understood that Wandner was alerted by Gatz about Aryai's planned meeting with me about payments to Carnesi.

2 of 4

7. I am a law abiding businessman and would like to help with any legitimate law enforcement matter. In my view, the unauthorized disclosure by Gatz' office to Wandner about Carnesi being under investigation is unlawful and represents prosecutorial misconduct. This event should be addressed with an independent investigation. Furthermore, in my view, the revelation of my planned meeting with Aryai by Gatz's office to Wandner is unethical in Gatz' attempt to obstruct Romano's inalienable right to defend himself, through his representatives, in collection and presentation of facts to the court in the course of the adjudication of the criminal case against him, including the sentencing phase and Romano's arguments for appropriate allocation of points.

8. In my meeting with Aryai and Thomas Cleere, Esq. ("Cleere"), both retained by Joseph Romano, I was presented with and reviewed documents attributed to me for having made certain statements in two separate memoranda of interview. One memorandum is dated April 28, 2010 and the other is dated August 17, 2010, attached herewith as Exhibits C & D respectively, both compiled by William J. Hessle ("Hessle"), who is either a contract employee of the United States Postal Service ("USPS") or a postal inspector employed by the USPS. This was the first time I had seen these documents. I am not aware of Hessle's true position and relationship to the United States Government. After reviewing the above referenced documents, with respect to Exhibit D, I make the following declarations:

   i) I have never stated that Joseph Romano had told Russell Barnes ("Barnes") to use the "investor pitch".

   ii) I have never stated that "Romano admitted that he (Romano) knew his employees were lying to customers in New York using the "investor pitch". I told Gatz and Hessle that Romano became aware of these misrepresentations only subsequent to his indictment.

ADELE DUROCHER
MY COMMISSION # DD 750724
EXPIRES: January 22, 2012
Bonded Thru Notary Public Underwriters

*[signature of affiant]*

_____

Dejvid Mirkovic

7090 Via Leonardo, Lakeworth, FL 33467-5236

**State of Florida**
**County of Palm Beach**

Sworn to (or affirmed) and subscribed before me this ___1ˢᵗ___ day of
_March____, 2011___ (year), by
_Dejvid Mirkovic_____ (name of person making
statement).

_____
(Signature of Notary Public - State of Florida)

_Adele Durocher_____
(Print, Type, or Stamp Commissioned Name of Notary Public)

Personally Known _____ OR Produced Identification ___X_____

Type of Identification Produced _Florida Drivers License_

4 of 4

Name: Romano, Joseph
Reg No: (72249058)
**U.S. Penitentiary MAX**
P.O. Box 8500
Florence, CO. 81226-8500  CM-25-310

CERTIFIED MAIL

9589 0710 5270 2387 3995 21

Honorable Clerk
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York
11201

96 page
Motion enclosed
filed timely in
accordance with
Glossip 9-4-25
Joseph R.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 23 2025 ★

BROOKLYN OFFICE

U.S. OFFICIAL MAIL   PENALTY FOR
PRIVATE USE $300
**US POSTAGE** ᴾᴮPITNEY BOWES